# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.: 21-cr-564 CJN** |
| | : | |
| **MATTHEW DASILVA,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF THE SUPERSEDING INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits that this Court should deny defendant DaSilva's motion to dismiss Count Two of the Superseding Indictment for failure to state an offense and to dismiss Counts One and Two for lack of specificity (ECF No. 30).

## FACTUAL BACKGROUND

Defendant is charged in a seven-count Superseding Indictment with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1) (Count Two); Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1) (Count Three); Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2) (Count Four); Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(4) (Count Five); Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Six); and Act of Physical Violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Seven).

On January 6, 2021, DaSilva actively participated in the riot at the Capitol. The evidence

shows, among other things, that at about 2:45 p.m., DaSilva was on the West Plaza, where he forcibly pushed a flagpole against a door leading to the Lower West Terrace in an effort to prevent law enforcement from using the door. In the photograph below, DaSilva is circled in red.



At around 4:20 p.m., DaSilva was among a group of rioters pushing against the officers defending the Lower West Terrace entrance to the Capitol. In the screenshot from security video shown below, DaSilva is outlined in red.



At around 4:33 p.m., DaSilva approached the officers defending the tunnel. Despite being pepper-sprayed, DaSilva pressed forward and forcibly pushed against the riot shield held by the officers while other rioters attacked. Screenshots from public video and a body-worn camera are shown below.



**ARGUMENT**

I.      **COUNT TWO OF THE SUPERSEDING INDICTMENT STATES AN OFFENSE**

   **A. The Text of Section 111(a)**

DaSilva moves to dismiss Count Two based on the contention that "a conviction under the statute necessarily requires a finding of *assault*." (ECF 30, at 5) (emphasis in original). This interpretation conflicts with the plain text of the statute.

Title 18, United States Code, Section 111(a) authorizes punishment for a person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [*i.e.*, a federal officer] while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). A misdemeanor penalty is authorized where

the individual's act "constitute[s] only simple assault." *Id*. But where the individual's "acts involve physical contact with the victim of that assault or the intent to commit another felony," he faces a term of imprisonment of "not more than 8 years." *Id*. Finally, a person who "uses a deadly or dangerous weapon … or inflicts bodily injury" "in the commission of any acts described in subsection (a)" faces a term of imprisonment of "not more than 20 years." 18 U.S.C. § 111(b). Section 111 thus "establishes three separate crimes," namely, a misdemeanor "simple assault," a felony violation that involves either physical contact or the intent to commit another felony, or an aggravated violation that involves either a dangerous weapon or results in the infliction of bodily injury. *See United States v. Siler*, 734 F.3d 1290, 1296 (6th Cir. 2013).

Section 111 plainly identifies six categories of prohibited conduct, covering anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" with a federal officer engaged in official duties. 18 U.S.C. § 111(a)(1). By using commas between the verbs and the disjunctive "or," Congress made clear its intention that each category of prohibited conduct should be separate and independent of the others. *See Horne v. Flores*, 557 U.S. 433, 454 (2009). And although all six acts require the defendant to act "forcibly," *see United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002), only one is "assault." The other five prohibited acts involve behavior that threatens federal officers or obstructs their official activities but is not necessarily "assault."

Each of Section 111's three crimes points back to these six categories. Section 111(a)'s simple-assault clause points back to "the acts in violation of this section"; both alternatives identified in Section 111(a)'s felony clause (physical contact[1] or felonious intent) point back to

---

[1] A felony violation of Section 111(a) predicated on a physical contact theory does, however, require proof that the underlying act constituted assault.  That interpretation is not based on the six different verbs in Section 111(a)(1), but instead on the specification in Section 111's penalty

"such acts"; and Section 111(b)'s "enhanced penalty" provision points back to "any acts described in subsection (a)."  18 U.S.C. § 111. Because each clause references all six prohibited acts, each necessarily punishes that full range of obstructive conduct—not assaults alone.

### B. DaSilva's Interpretation of Section 111(a) is Incorrect

DaSilva's interpretation of Section 111(a) fails "to … give[] effect" to "every word" in the statute. *United States v. Stands Alone*, 11 F.4th 532, 536 (7th Cir. 2021) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)). As noted, the felony clause "refers back to the original list of [six] violative acts against current or former officials." *United States v. Briley*, 770 F.3d 267, 273 (4th Cir. 2014). If assault were an essential element of Section 111(a)'s felony clause, as DaSilva contends here, the "remaining five verbs [would be] superfluous." *Stands Alone*, 11 F.4th at 535; *see generally United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730, 738 (D.C. Cir. 2022) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (citation omitted).

The D.C. Circuit's decision in *United States v. Arrington*, 309 F.3d 40 (D.D.C. 2002), is instructive on Section 111(a)'s sweep. There, the court explained that "a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc." *Id*. at 44. *Arrington*'s emphasis on Section 111(a)'s disjunctive formulation supports the view that the statute punishes a broad range of conduct beyond assaults. Similarly, if assault were the only way Section 111(a) could be violated, one would not expect the title of the statute to include "resisting" and "impeding" as well as "assaulting." *See* 18 U.S.C. 111.

Contrary to DaSilva's claim, the history and design of Section 111 confirm its application

---

provision noting that "such acts" must "involve physical contact with the victim *of that assault*."

to non-assaultive conduct. The statute's predecessor made it an offense to "forcibly resist, oppose, impede, intimidate, or interfere with any" designated federal official "while engaged in the performance of his official duties, or [to] assault him on account of the performance of his official duties." Act of May 18, 1934, ch. 299, § 2, 48 Stat. 781 (18 U.S.C. 254 (1940)). That provision, which contained the same six offense-conduct verbs as the current version, was designed to "insur[e] the integrity of law enforcement pursuits." *United States v. Feola*, 420 U.S. 671, 682 (1975). As the Supreme Court recognized, the provision clearly "outlawed more than assaults." *Id*. at 682 n.17; *see Ladner v. United States*, 358 U.S. 169, 176 (1958) (explaining that the prior statute "ma[de] it unlawful not only to assault federal officers engaged on official duty but also forcibly to resist, oppose, impede, intimidate or interfere with such officers," noting that "[c]learly one may resist, oppose, or impede the officers or interfere with the performance of their duties without placing them in personal danger"). In *Ladner v. United States*, for example, the Court stated that "the locking of the door of a building to prevent the entry of officers intending to arrest a person within would be an act of hindrance denounced by the statute." 358 U.S. at 176. The Court noted that in 1948, Congress reordered the statute by placing the word "assaults" in front of the five other verbs. Act of June 25, 1948, ch. 645, 62 Stat. 688 ("Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes"); *see Ladner*, 358 U.S. at 176 n.4. That "change in wording," however, "was not intended to be a substantive one." *Ladner*, 358 U.S. at 176 n.4 (discussing Reviser's Notes). And courts therefore properly continued to uphold convictions for non-assaultive conduct under Section 111. *See United States v. Johnson*, 462 F.2d 423, 425, 429 (3d Cir. 1972) (upholding conviction for "willfully resisting, opposing, impeding and interfering with federal officers," despite jury's conclusion that defendant did not commit "assault").

6

Before 1994, Section 111 had a two-tier punishment structure: it punished a defendant who forcibly committed actions described by any of the six verbs with up to three years of imprisonment; but where "any such acts" involved a deadly or dangerous weapon, the maximum sentence was ten years. 62 Stat. 688. In 1994, Congress amended the penalty structure of Section 111 to its current tripartite structure by carving out less-severe forms of the offense into their own category. It introduced the phrase "simple assault" to encompass misdemeanor violations, punishable by no more than a year in prison; "all other cases" would remain punishable by up to three years; and offenses involving a dangerous or deadly weapon would remain punishable by up to ten years, as would any act that "inflicts bodily injury." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320101(a), 108 Stat. 2108; *see* Federal Judiciary Protection Act of 2002, Pub. L. No. 107-273, Div. C, Tit. I, § 11008(b), 116 Stat. 1818 (increasing second- and third-tier penalties). In so doing, however, Congress gave no indication that it intended to cut back on the statute's substantive reach by eliminating non-assaultive conduct from the statute's scope.

Congress's 2008 amendment of the statute specifically limited the second tier to cases involving physical contact or felonious intent by striking the phrase "in all other cases" from Section 111(a) and inserting "where such acts involve physical contact with the victim of that assault or the intent to commit another felony." Court Security Improvement Act of 2007, Pub. L. No. 110-177, § 208(b), 121 Stat. 2538. In doing so, Congress necessarily understood the language of the first-tier misdemeanor provision to encompass non-assaultive conduct—like resisting arrest—that does not involve physical contact or felonious intent. Otherwise, such conduct would not be covered by the statute at all, "rip[ping] a big hole in the statutory scheme" and "leav[ing]

those officials without protection for the carrying out of federal functions." *Briley*, 770 F.3d at 274; *see United States v. Williams*, 602 F.3d 313, 317 (5th Cir. 2010) ("The recent change in the statutory language … also supports the conclusion that § 111(a)(1) prohibits more than assault, simple or otherwise.").

Thus, for almost a century, Congress has protected federal officials in the performance of their duties by criminalizing six categories of forcibly obstructive conduct. Although over time it has altered the punishment according to the severity of the defendant's behavior—eventually settling on the current three-tier punishment structure—at no point has Congress altered the six basic categories of forcible conduct covered by the statute. Section 111(a) therefore continues to apply to any defendant who forcibly "resists, opposes, impedes, intimidates, or interferes with" a federal officer, whether or not his conduct also constitutes assault. 18 U.S.C. § 111(a); *see Ladner*, 358 U.S. at 176 n.4.[2]

DaSilva contends that circuit courts disagree on whether a conviction under 18 U.S.C. § 111(a) requires proof of an assault (ECF No. 30, at 5). But he overstates the degree of disagreement and undercounts the number of decisions rejecting his argument.

---

[2] Because the wording of Section 111(a) is clear, DaSilva's reliance on the rule of lenity is inapposite. The rule of lenity does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

In *United States v. Chapman*, 528 F.3d 1215 (9th Cir. 2008), the Ninth Circuit considered the prior version of the statute that treated "simple assault" as a misdemeanor and "all other cases" as felonies. *Id*. at 1218 (citations omitted). In deeming the provision to require the defendant to have committed "some form of assault," *id*. at 1221, the court explicitly considered but rejected a distinction based on the presence of physical contact. "If Congress had intended to prohibit both assaultive and non-assaultive conduct and intended to distinguish between misdemeanors and felonies based solely on physical contact," the court stated, "it easily could have said so." *Ibid.* Congress now has spoken. As discussed, in 2008, Congress replaced the second punishment tier's "all other cases" language with language specifying that it applies "where such acts involve physical contact … or the intent to commit another felony." *See* p. 6, *supra*. In so doing, Congress abrogated the reasoning in *Chapman*. *See Williams*, 602 F.3d at 317 ("Congress addressed the ambiguity identified by the Ninth Circuit by explicitly drawing the misdemeanor/felony line at physical contact.").[3]

Even before the 2008 amendment, the Sixth Circuit recognized that common-law assault is not invariably an element of a Section 111 offense. *See United States v. Gagnon*, 553 F.3d 1021, 1024-1027 (6th Cir. 2009). Since the 2008 amendment, five other courts of appeals have addressed the interpretation of Section 111(a). In *United States v. Williams*, the Fifth Circuit recognized that "a misdemeanor conviction under § 111(a)(1) does not require underlying assaultive conduct," explaining that this reading "avoided rendering superfluous the other five forms of conduct

---

[3] Since the 2008 amendments, the Ninth Circuit has addressed Section 111(a)'s revised language only in dicta, *see United States v. Rivera-Alonzo*, 584 F.3d 829, 833 n.2 (9th Cir. 2009), and the proper interpretation of the current version of Section 111(a) presumably remains open in that court.

9

[besides assault] proscribed by § 111(a)(1)." 602 F.3d at 317-318. In *United States v. Briley*, the Fourth Circuit likewise rejected the contention that "assault is a required element" for either a misdemeanor or felony conviction under Section 111(a)(1). 770 F.3d at 273-274 (noting that defendant's contrary reading "renders a slew of verbs in § 111(a) largely surplusage" and "wanders too far from congressional intent"). And most recently, in *United States v. Stands Alone*, the Seventh Circuit held that "assault is not an essential element of every § 111 offense." 11 F.4th at 536.

The Second Circuit has suggested a different view of offenses punishable under Section 111(a). In *United States v. Davis,* 690 F.3d 127 (2d Cir. 2012), the court concluded that "for a defendant to be guilty of the misdemeanor of resisting arrest under Section 111(a), he necessarily must have committed common law simple assault." *Id*. at 135; *see id*. at 134. But the Second Circuit expressly cabined this holding to Section 111(a)'s misdemeanor clause. It stated that "the statute's five non-assault acts would appear to be criminally prohibited by the felony clause 'where such acts involve … the intent to commit another felony,'" *id*. at 136-137—precisely the construction that the government advances in this case.

Only the Tenth Circuit has reached a contrary conclusion. In *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016), the court viewed a published circuit decision about the pre-2008 statute as compelling the conclusion that "assault is necessarily an element of any § 111(a)(1) conviction," *id*. at 1218, including a conviction under Section 111(a)'s felony clause, *id*. at 1219. The reasoning in *Wolfname*, however, is spare and unpersuasive.

At bottom, the present five-to-one circuit tally overwhelmingly supports the position that a defendant is subject to conviction under Section 111(a)'s felony clause if he committed any one

of the six prohibited acts with the intent to commit another felony. Thus, if a defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal law enforcement officer and harbored the intent to commit another felony, he is guilty of this offense.

This interpretation has also been adopted in this District. In announcing his verdict in *United States v. McCaughey, et al.*, No. 21-cr-40-TNM, Judge McFadden rejected the reasoning of *Wolfname*, and adopted the interpretation of the Fourth and Seventh Circuits in *Briley* and *Stands Alone*, finding:

> Section 111(a) explicitly refers to the acts in violation of Subsection (a)(1). To be sure, those acts encompass forcible assaults against officers. But they also cover forcible opposition, interference with and impeding officers.
> And the statute says a felony accrues when such acts involve the intent to commit another felony. The natural implication of this language means that forceful interference with officers, for example, with the intent to commit another felony is a felony violation of the statute. The phrase "such acts" refers to all six verbs in Section 111(a)(1), and those verbs go beyond physical assaults.

*McCaughey* Sentencing Transcript, at 12. Judge McFadden then found that the McCaughey defendants were guilty of felony violations of Section 111(a) because they committed their violations with the intent to commit civil disorder in violation of Section 231. *Id*. at 28-29, 36.

Similarly, in *United States v. Riley Williams*, 21-cr-618-ABJ, Judge Berman Jackson instructed a jury that it could find the defendant guilty of violating Section 111(a) if "the defendant resisted, opposed, intimidated, or interfered" with a federal officer, with no reference to assault. *Williams*, No. 21-cr-618, ECF. No. 122, at 32.[4]

---

[4] DaSilva inaccurately describes Judge Berman Jackson's oral ruling at a sentencing hearing in *United States v. Hamner*, No. 21-cr-689-ABJ (D.D.C. Sept. 23, 2002) for the proposition that Section 231(a)(3) cannot be the "other felony" which would render a Section 111(a) violation into a felony. The transcript shows that Judge Berman Jackson's concern was about the proper sentencing guideline to use for a violation of Section 231(a)(3), specifically whether it would qualify as an "aggravated assault" under U.S.S.G. § 2A2.4(c)(1) when the indictment otherwise

### C. Even if DaSilva's Interpretation of Section 111(a) Were Correct, Dismissal of Count Two is Not Appropriate

DaSilva is correct that, in general, dismissal of an indictment is appropriate when it fails to recite an essential element of the offense. But that is not what DaSilva claims in this case. DaSilva admits that Count Two charges him with, among other things, assault. DaSilva's complaint is that Count Two encompasses conduct other than assault which is allegedly not criminalized by Section 111(a). In such a situation, the appropriate remedy would be to move to strike the surplusage under Federal Rule of Criminal Procedure 7(d), not dismissal of the entire count. *See United States v. Goodman*, 285 F.2d 378, 379 (5th Cir. 1960). In the alternative, a court may avoid any potential prejudice by not giving the indictment to the jury and specifically instructing the jury that the indictment is not evidence. *United States v. Williams*, 445 F.3d 724, 734 (4th Cir. 2006).

Even if the Court were to conclude that the only way to violate Section 111(a) is by an assault, dismissal of Count Two is not appropriate because the government could prove at trial that DaSilva's conduct violated the statute. Cases involving successful challenges by defendants concerning whether their *conduct*—and not merely the allegations against them—falls within the scope of the charged statute generally arise not under Rule 12 but following trials that establish the evidentiary record necessary to determine precisely what the defendant's conduct entailed. *See, e.g.*, *Marinello v. United States*, 138 S. Ct. 1101, 1105 (2018) (considering scope of 26 U.S.C. § 7212(a) following defendant's conviction at trial); *Yates v. United States*, 574 U.S. 528, 534-35

---

alleges that a separate Section 111(a) violation was done with the intent to commit the Section 231 violation. *See Hamner*, Sentencing Transcript, at 14-15. Judge Berman Jackson did not express any view on whether a violation of Section 111(a) could be done with the intent to violate Section 231. Indeed, the government is unaware of any court holding there is a limit to what felonies a Section 111(a) violation might be in furtherance of.

(D.C. Cir. 2019) (plurality opinion) (considering scope of the phrase "tangible object" in 18 U.S.C. § 1519 following defendant's conviction at trial); *United States v. Aguilar*, 515 U.S. 593, 597 (1995) (considering scope of omnibus clause in 18 U.S.C. § 1503(a) following the defendant's conviction at trial).

It is clear why that is so. Even assuming DaSilva's interpretation of Section 111(a) were correct, the Court cannot determine whether DaSilva's conduct violates the statute until after a trial, at which the government is not limited to the indictment's allegations. And at trial, the government could prove that DaSilva's acts of forcibly pushing one or more officers constituted an assault. *See, e.g.*, *United States v. Dombrowsky*, 111 F. App'x 716, 718 (5th Cir. 2004) (intentionally pushing officer constitutes assault); *United States v. Hernandez*, 921 F.2d 1569, 1577 (11th Cir. 1991) (poking agent in the chest constitutes assault); *United States v. Fernandez*, 837 F.3d 1031, 1035 (11th Cir. 1988) (bumping assistant U.S. Attorney constitutes assault); *United States v. Hightower*, 512 F.2d 60, 61 (5th Cir. 1975) (grabbing agent's jacket constitutes assault); *cf. United States v. Gonzales*, 449 F. App'x 392, 395 (5th Cir. 2011) (shoving victim constitutes "assault by striking" under 18 U.S.C. § 113).

## II.   COUNTS ONE AND TWO DO NOT LACK SPECIFICITY

DaSilva complains that Counts One and Two do not list "facts related to the conduct of the defendant" (ECF No. 30, at 2). This complaint misunderstands the purpose of an indictment and the low bar an indictment must clear to satisfy the federal rules and Constitution. As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must – in order to fulfill constitutional requirements – apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal

13

Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *Id*. at 124. Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). "While detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Id*. at 108; *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case in which "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

Applying these principles, judges in this District have upheld the sufficiency of indictments far less specific than DaSilva's. For example, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the defendants were charged with offenses under 18 U.S.C. § 924(c). The indictment provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States." *Id*. at 154. As to the "when" of the offenses, the indictments alleged that the offenses had occurred over a two- and nine-year period. *Id*. Finally,

14

the indictments "d[id] not specify a particular weapon that was possessed," or "specify whether the firearms were 'used, carried or brandished'" under the statute. *Id*. Nonetheless, the indictments were sufficient. *Id*. at 153-54.

All the elements of each offense are properly alleged in the indictment, which by itself identifies the criminal conduct with which he is charged. And the indictment provides sufficient information to fairly inform him of those offenses. DaSilva knows the exact day on which the alleged crimes occurred: January 6, 2021, which is alleged in both counts. (ECF No. 20, at 1-2). He knows that all charged conduct occurred in this District. *Id*. Counts One and Two relate specifically to an existing civil disorder and to a law enforcement officer engaged in the performance of official duties. *Id*. And the statutes charged are not so unusually vague that they require allegations beyond the elements of the offenses.

DaSilva complains that the indictment does not explain "what about DaSilva's conduct was unlawful" and "in what manner did he commit the charged offenses" (ECF No. 30, at 9). But this "complaint seems to result . . . from a general misunderstanding of the purpose of the indictment and, especially, from an inflated notion of what must be included therein." *Haldeman*, 559 F.2d at 124. As the D.C. Circuit concisely explained in rejecting the same argument in *Verrusio*:

> Verrusio contends that Count Two of the indictment failed to allege an official act because it failed to say "how Mr. Verrusio was going to use his position" to help United Rentals . . . . The indictment certainly need not allege precisely how Verrusio contemplated [committing the crime]. Would he do it by himself or ask someone else to do it? Would that someone else be Colonel Mustard or Professor Plum? With a candlestick or a rope, in the library or the study? Answering those questions is not required at the indictment stage.

762 F.3d at 14–15; *see also United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018)

(affirming denial of a motion to dismiss a count charging the defendant with making a threat against a federal law enforcement officer "with intent to retaliate against such . . . officer on account of the performance of official duties," 18 U.S.C. § 115(a)(1)(B), because the "statute speaks in terms of a threat made 'on account of the performance of official duties,' not to draw attention to a particular official duty, but instead to assure that the threat generally relates to the officer's performance of official duties rather than to a personal dispute having nothing to do with the officer's job functions"). The defendant's specificity argument fails.

DaSilva relies on *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. 2017), to argue that Counts One and Two are deficient. But the challenged indictment in *Hillie* only broadly stated the date of the offenses as "periods of time that span two to three years," the location of the offenses as "the District of Columbia," and was "devoid of any facts regarding the circumstances of Hillie's behavior" that led to the charges. *Id.* at 71-72. Indeed, the court in *Hillie* found it especially problematic that the government charged violations of the same statute in overlapping, multi-year periods, such that "one cannot tell whether the charges relate to distinguishable or separate offenses . . . and, indeed, it is not clear that these counts even reference *different* acts on the Defendant's part." *Id.* at 73. Here, there is no such problem. As noted above, the superseding indictment tracks the statutes, specifies the date of the offenses ("January 6, 2021"), the district in which they occurred, and the victims ("a law enforcement officer" and "an officer and employee of the United States"). *See Resendiz-Ponce*, 549 U.S. at 108 (2007) (upholding sufficiency of indictment that echoed statute while specifying time and place of the offense and identity of the threatened officer); *Williamson*, 903 F.3d at 131 (same). DaSilva is in no way uncertain about what conduct "allegedly constitut[es] the offense." *Hillie*, 227 F. Supp. 3d at 76. And he is in no way unable to prepare a

defense or invoke double jeopardy if he were prosecuted again for the same conduct.

DaSilva's claim that he is unclear as to "what exactly is the defense defending here" (ECF No. 30, at 9) fails. DaSilva has been provided with extensive discovery, including video footage of his conduct at the Capitol on January 6. He thus cannot claim that he is, for example, unable to determine what acts form the basis for the charges. The answer is apparent from the discovery.

Judge Hogan rejected these same arguments in *United States v. Sargent*, No. 21-cr-258, ECF No. 50. Sargent's indictment alleged violations of Section 111(a) and Section 231(a)(3) using identical language to that in DaSilva's Superseding Indictment. Sargent moved to dismiss, arguing that the indictment language lacked necessary factual detail. As for the Section 231(a)(3) charge, Judge Hogan found this language "fairly informs the defendant of the charge against which he must defend" and these allegations were "detailed enough that, if proven, a jury could find that the defendant committed Civil Disorder as charged" *Sargent*, ECF No. 50, at 5-7. As for the Section 111(a) charge, Judge Hogan found this language "contains all facts necessary for the jury to find defendant violated 18 U.S.C. § 111(a)(1)." *Id*. at 13.

DaSilva relies heavily on *United States v. Pugh,* No. 1:21-cr-00073-TFM, 2021 U.S. Dist. LEXIS 177266 (S.D. Ala. May 13, 2021), which stated, in dicta, that it would have found an indictment insufficient had the issue not been rendered moot by the return of a superseding indictment. *Id*. at *6-7. This reliance is misplaced because *Pugh* is inconsistent with the Constitution and the Federal Rules of Criminal Procedure.

Similar to the indictment here, the indictment in *Pugh* tracked the statutory language in Section 231. *Id.* at *26-27. Still, the court in *Pugh* found that indictment insufficient because it alleged only that the defendant "did something" to violate the statute "at some unspecified place

17

and generalized range of days/time." *Id.* at *28.

The unpublished, out-of-circuit dicta in *Pugh* is incorrect in multiple respects. First, it inaccurately describes the indictment's Section 231(a)(3) allegation—an allegation that closely parallels the Section 231(a)(3) charge found in Count One in this case. For example, the *Pugh* court's suggestion that the oft-used phrase "on or about" "expands" the allegation to encompass a "generalized range of days/time" finds no support in law or common sense. *Cf. United States v. Resendiz-Ponce*, 549 U.S. 102, 105, 108-11 (2007) (finding sufficient an indictment that tracked the relevant statutory language and used the phrase "on or about"). Similarly, no case that the *Pugh* court cited (or of which the government is aware) has concluded that an indictment's sole geographic reference to the judicial district in which the crime allegedly amounts to an insufficient "unspecified place." Nor did the original indictment in *Pugh* (or Count One here) merely allege that Pugh "did something"; it instead alleged that she committed or attempted to commit "an act to obstruct, impede, [or] interfere with" a law enforcement engaged in official duties during a civil disorder, which in turn adversely affected commerce. *Pugh* 2021 U.S. Dist LEXIS 177266 at *26-27; *cf.* Count One (making a similar allegation). Section 231(a)(3)'s statutory language alone incorporates considerable factual specificity.

Second, the decision in *Pugh* demands more than the Constitution and Rule 7 of the Federal Rules of Criminal Procedure require. As discussed above, an allegation is generally sufficient if it "contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Thus, the Supreme Court in *Resendiz-Ponce* concluded that "it was enough" for an indictment to "point to the relevant criminal statute"—an illegal re-entry offense—and allege that "on or about" a certain date, the

defendant attempted to enter the United States near a certain location in the District of Arizona. 549 U.S. at 108 (cleaned up). Similarly, the D.C. Circuit upheld as sufficient an indictment alleging a threat against a federal officer that "echoe[d] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). Yet the *Pugh* court faulted the Section 231(a)(3) allegation in the original indictment because it lacked additional specific information not required under the Constitution or Rule 7. *See Pugh*, 2021 U.S. Dist LEXIS 177266 at *28 (noting the absence of "information" that "establishe[d]" (1) that a civil disorder existed at the time of the defendant's conduct, (2) the way in which the civil disorder adversely affected commerce; (3) that law enforcement officers were lawfully responding to the civil disorder; and (4) the "conduct or some other means to relay *exactly* what Pugh allegedly did") (emphasis added).

Although some cases involve a crime "that must be charged with greater specificity," *Resendiz-Ponce*, 549 U.S. at 190, this is not one of them. The paradigmatic example comes from *Russell v. United States*, 369 U.S. 759 (1962), where the defendant was charged under a statute that makes it a crime for a witness called before a congressional committee to refuse to answer any question "pertinent to the question under inquiry." 2 U.S.C. § 192. The indictment's failure in *Russell* to identify the subject of the congressional hearing rendered it insufficient because "guilt" under that statute "depend[ed] so crucially upon such a specific identification of fact." *Russell*, 369 U.S. at 764. That feature is not present here because guilt under Section 231(a)(3)—or under any of the other charges that the defendant here faces—does not depend on any such "specific identification of fact." *See Resendiz-Ponce*, 549 U.S. at 110 (not applying *Russell* to the illegal re-entry statute at issue in that case because guilt did not turn upon "a specific identification of fact");

*Williamson*, 903 F.3d at 131 (not applying *Russell* to statute criminalizing threats against federal officers); *see also United States v. Apodaca*, 275 F. Supp. 3d 123, 153 n.17, 154-56 (D.D.C. 2017) (not applying *Russell* to statute criminalizing use of firearms in connection with drug trafficking crimes). The *Pugh* court's reasoning, if accepted, would require the approach in *Russell* for *every* indictment.

Third, the principal case on which the *Pugh* decision relies—*United States v. Johnson*, 981 F.3d 1171 (11th Cir. 2020)—is inapposite here, as it was in *Pugh* itself. *Johnson* considered the sufficiency of a count charging unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g), after the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019), which held that Section 922(g)'s "knowingly" mens rea encompassed a defendant's knowledge of any status that made it unlawful for him to possess a firearm. *Rehaif*, 139 S. Ct. at 2194. The indictment at issue in *Johnson* tracked the statutory language but failed to allege that Johnson knew that he was a domestic-violence misdemeanant—which disqualified him from legally possessing a firearm. *Johnson*, 981 F.3d at 1179. The indictment therefore failed to "set forth all the *elements* necessary to constitute the offense intended to be punished." *Id.* (quoting *Hamling*, 418 U.S. at 117) (emphasis added). The deficiency in *Johnson*—the indictment's failure to include an offense element—is not presented here (or in *Pugh*). DaSilva complains not that the indictment omits a necessary element of any offense but that the indictment should include more factual detail. Nothing in *Johnson* supports that claim.

Finally, the court in *Pugh* failed to consider the proper channel to enable a defendant to obtain the information he seeks: a bill of particulars which "can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand

the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). To be sure, a "bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770. But a valid indictment—such as the indictment in this case—"can be clarified through a bill of particulars." *United States v. Hillie*, 227 F. Supp. 57, 81 (D.D.C. 2017); *cf. United States v. Mostofsky*, No. CR 21-138 (JEB), 2021 WL 3168501, at *4 (D.D.C. July 27, 2021) (ordering a bill of particulars for a count alleging a violation of Section 231(a)(3)).

In rejecting Sargent's motion to dismiss, Judge Hogan specifically chose not to follow *Pugh*, and instead, found the reasoning of *United States v. Phomma*, No. 20-CR-465-JO, 2021 WL 4199961 (D. Or. Sept. 15, 2021) more instructive. In *Phomma*, the district court rejected a sufficiency challenge to an indictment that, as here, closely mirrored the language of Section 231(a)(1). As in this case, the *Phomma* indictment alleged that the offense was committed on or about a specific date (there, August 26, 2020), and that the offense was committed in a specific district (there, the District of Oregon). *Phomma*, 2021 U.S. Dist. LEXIS 175489 at *18. The court found that although the indictment "[did] not allege the specific facts of the defendant's conduct," it "track[ed] the wording of the statute." *Id.* at *20. This was enough for the indictment to survive a sufficiency challenge because that statutory wording "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (quoting *Hamling*, 418 U.S. at 117). Indeed, as the court noted, "bare-bones" charging instruments, which merely recite the statutory language, are "common" and "entirely permissible" in such circumstances. *Id.* (citing *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995)).

## CONCLUSION

For the reasons stated above, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052


By: /s/ *Robert Juman*
ROBERT JUMAN
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov