UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> V.   ) <br> ) <br> MATTHEW DASILVA,   ) <br> ) <br> DEFENDANT.   ) <br> ) | CASE NO: 1:21-CR-00564 |

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNTS ONE AND TWO OF THE SUPERSEDING INDICTMENT**

**I. Reply to Government's Inclusion of Facts Outside of the Indictment**

The government provided facts in their Response, ECF No. 32, which the government excluded from the four corners of the Indictment. As stated in Defendant's Memorandum, ECF No. 30, the consideration of these facts is outside the scope of the legal issues that may be considered on the particular Motion to Dismiss that is the subject of the argument before this court. See *United States v. Sunia,* 643 F.Supp.2d 51, 60 (D.D.C. 2009) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes.")

Nonetheless, the government made prejudicial factual allegations requiring the addition of context in response.

A summary of the government's facts alleged against the defendant are as follows:

- The defendant was in the crowd of people in front of the Capitol on January 6, 2021.

- The defendant "forcibly pushed a flagpole against a door," "in an effort to prevent law enforcement from using the door."
- The defendant was "in a group of rioters pushing against the officers defending the Lower West Terrace entrance to the Capitol."
- And, the defendant is accused of "forcibly push[ing] against the riot shield held by the officers."

While factual disputes are reserved for trial, the facts presented to the court are simply misleading without context. The defense thus adds undisputed facts to correct for context.

First of all, as far as the flagpole that was described as "forcibly" being pushed against the door — which is seemingly evocative of the language in 111(a) when coupled with the language "in an effort to prevent law enforcement from using the door" — it is misleading. The prosecutor admitted in prior discussions with defense counsel, and again confirmed in writing after the filing of this motion, that there were **no officers on either side of that door**. This factual scenario of pushing against a door is thus neither here nor there for consideration of 111(a). Indeed, in an email correspondence with defense counsel dated November 9, 2022, the government stated, "DaSilva was on the west front pushing a flag pole against a door… [these] actions relate to the 231 charge, and not the 111(a) charge." (Since the state of mind of the defendant is not undisputed, this issue will not be addressed in this Motion.)

Second, while the defendant is being accused of being "in a group" that was "pushing against the officers" — it is important to note that the government does not accuse Mr. DaSilva of pushing anyone while he was in the crowd. He is accused of simply being present.

Third, it is essential to elucidate that the government accuses Mr. DaSilva only of "forcibly push[ing] against the riot shield held by the officers," which they portray him doing with his hands, and without any allegation of responsive movement by the officers — but not of assault, which is defined in the D.C. Circuit as an (a) attempt to cause or purposely, knowingly or recklessly cause bodily injury to another; or (b) negligently cause bodily injury to another with a deadly weapon; or (c) attempt by physical menace to put another in fear of imminent serious bodily injury. *United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996).

Finally, it is important to note the government's timeline of events. The government's allegation in their factual Background is that the defendant committed a felonious assault at 4:20 PM (pushing on a police shield) because he had the "intent to commit another felony" (pushing a door closed with a flagpole) — references an alleged felony act that took place *almost two hours prior* at 2:45 PM. Meaning that the government bases its allegation of "intent to commit another felony" on an act that took place *prior to* the alleged assault. And, as communications from the government confirm, the alleged prior felony act — which is indicted as having been done against a law enforcement officer — actually *lacks a law enforcement officer*.

Now that the government has proffered facts that they believe constitute the alleged offenses, the defendant may file a Motion to Dismiss both of these offenses under Rule 12(b). See *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) (dismissing an indictment pretrial pursuant to Rule 12(b) where relevant facts were undisputed, only a question of law presented); *United States v. Nitschke,* 843 F. Supp. 2d 4, 8-9 (D.D.C. 2011) (dismissing an indictment pretrial when the relevant facts are undisputed and only a question of law is presented); see also *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) ("the government's own facts proffered to the

defendant and the district court simply did not conform to the allegations in the indictment");

*United States v. Brown,* 925 F.2d 1301, 1304 (10th Cir.1991) ("it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case"); *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) (dismissing an indictment pursuant to Rule 12(b) based on undisputed evidence that the defendant was not present when the alleged crime was committed, establishing that he could not, as a matter of law, be charged with knowingly committing the indicted offense).

**II. Reply to Government's Reading of the Text of Section 111(a)**

The government contradicts itself in its presentation of 18 U.S.C. § 111(a), reading only the first sentence of the code and ignoring the sentences that follow, including the penalty clause — but then correcting itself in a footnote…

It is important to read § 111(a) in full, not to just stop at a semicolon, in order to understand the nature of the prohibitions within.

§ 111(a) states:

> (a) IN GENERAL.—Whoever— (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties**;**
>
> or (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service**,**
>
> shall, where the acts in violation of this section constitute **only simple assault**, be fined under this title or imprisoned not more than one year, or both, and **where**

<u>**such acts**</u> involve physical contact with the victim of that assault <u>**or the intent to commit another felony**</u>, be fined under this title or imprisoned not more than 8 years, or both.

The government argues that "Section 111(a) authorizes punishment for a person who 'forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title'… Because each clause references all six prohibited acts, each necessarily punishes that full range of obstructive conduct—not assaults alone." But where does the code authorize punishment for anyone who only "resists, opposes, impedes, intimidates, or interferes"? The penalty portion of the code section expressly **excludes** these behaviors from a penalty, and **only punishes assaults**. The government admits as such, to the extent of felonies, at least, in a footnote. The government's interpretation of the law requires us to read the words "resists, opposes, impedes, intimidates, or interferes" and to stop at the semi-colon, without reference to the language that comes after the semi-colon, which explains how the acts described are characterized and punished.

Moreover, the government's interpretation requires us to discard words in the penalty portion of 111(a). The portion of the sentence that reads, "and where **such acts** involve physical contact with the victim of that assault or the intent to commit another felony," requires a reference for "such acts" — which, if you look behind the preceding comma, are acts that constitute an *assault*. **That is why the sentence reads "*of that* assault" and not "*of an* assault."** The words "that assault" reference the assault resulting from "such acts." As such, the words "or the intent to commit another felony," which are also preceded by the terms "such acts" — there is no comma separating these words — necessarily require an assault for the application of a penalty.

The entirety of the penalty section of 111(a) thus requires an assault for conviction.

The government relies on the *United States v. Stands Alone* decision from the 7th Circuit, which was wrongly decided, and *United States v. Arrington*, which was decided in 2002, six years prior to Congress amending § 111(a) to the code that is effective today. *See United States v. Stands Alone,* 11 F. 4th 532 (7th Cir. 2021) (deciding that assault is not required for a conviction under § 111(a)); *United States v. Arrington*, 309 F.3d 40 (D.D.C. 2002).

The government also cites two local decisions, one by Judge McFadden and one decision by Judge Berman Jackson, neither of which discusses the penalty wording of § 111(a) in reference to their decisions, seeming to rely on the first words of the sentence that is 111(a), "forcible opposition, interference with and impeding officers."

What is the penalty for forcible opposition? How about interference with and impeding officers? Where is the penalty for these acts, done independent of an assault, stated? Has the defendant been put on notice of these acts as crimes, and with punishments certain?

The U.S. Code serves as notice to all People as to U.S. crime and punishment. As such, Courts cannot impose penalties in excess of these notifications without running afoul of the Fifth Amendment's Due Process Clause and the standard of fair notice to defendants. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."); *Winters v. New York*, 333 U. S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."); *United States v. Allen*, 983 F.3d 463, 472 (10th Cir. 2020) ("... the

Due Process Clause requires that criminal laws have clear prohibitions and penalties, because persons 'of common intelligence cannot be required to guess' what conduct the law prohibits and what penalties apply when the law is violated."); *Lankford v. Idaho*, 500 U. S. 110 (1991) (due process violated because the defendant and his counsel did not have adequate notice that judge might impose death sentence); *Jones v. United States*, 526 U.S. 227 (1999). See also *United States v. Batchelder*, 442 U.S. 114, 121 (1979) (discussing the rule of lenity as it applies to sentencing and to substantive provisions used in determining penalties); *Miller v. Florida*, 482 U. S. 423 (1987) (Ex Post Facto Clause violated by the retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378 U. S. 347 (1964) (retroactive application of new construction of statute violated due process). Nowhere in the Code is notification given to the defendant that the Court can impose a penalty for *only* resisting, opposing, impeding, intimidating, or interfering under § 111(a). Therefore, penalizing a defendant under § 111(a), without holding the government to proof of an assault, is a violation of the defendant's due process rights. As such, "a § 111(a)(1) conviction for resisting, opposing, impeding, intimidating, or interfering … necessarily involves — at a minimum — simple assault." *United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016).

If this Court believes that the government's construction of § 111(a) remains equally plausible, then it is this Court's "duty" to adopt the construction that does not violate the defendant's constitutional rights. *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U. S. 366, 408 (1909); *Jones v. United States*, 526 U.S. 227, 239 (1999). The Court should adopt the defendant's construction under this reasoning.

Moreover, In the event that the wording of § 111(a) is concluded as equivocal, the rule of lenity directs courts to resolve such ambiguities in criminal laws in favor of the defendant. *Liparota v. United States*, 471 U.S. 419, 427 (1985). "'[N]o man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U. S. 612, 617 (1954)); *see also McBoyle v. United States*, 283 U.S. 25, 27 (1931) (refusing to expand a criminal statute's reach without "a fair warning ... given to the world in language the common world will understand"). Withal, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (describing lenity "as a sort of junior version of the vagueness doctrine" that "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered" (citation and quotation marks omitted)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. See also *Wooden v. United States*, 142 S. Ct. 1062, 1082 (2022) (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws.").

**III. Reply to Government's Assertion That the Indictment Can Be Remedied By a Court**

Aside from arguing the proper reading of the code section, the defense explains explicitly in its filing why the dismissal of the Indictment is appropriate: instead of using the language of the code section, **the government changed the wording of the law** in its indictment of Mr.

DaSilva, broadening the scope under which it can seek conviction by eliminating the operative terms "of that assault" following the word "victim" in the penalty section of the code, and randomly adding terminology not found in the code— "the acts in violation of this section." The Superseding Indictment, thus, impermissibly expanded the law and invalidly attempted to criminalize conduct more broadly than legislated by Congress.

Compare:

> **§ 111. Assaulting, resisting, or impeding certain officers or employees**
>
> (a) IN GENERAL.—Whoever—
>   (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
>   (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and <u>where such acts involve physical contact with the victim</u> *of that assault* or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

> **COUNT THREE**
>
> On or about January 6, 2021, within the District of Columbia, **CHRISTOPHER WARNAGIRIS**, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, and inflict bodily injury on, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, that is, A.W., an officer from the United States Capitol Police Department, while such officer or employee was engaged in or on account of the performance of official duties, and <u>where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony</u>.
>
> (**Assaulting, Resisting, or Impeding Certain Officers** in violation of Title 18, United States Code, Sections 111(a)(1))

The Fifth Amendment guarantees that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury" and the Sixth Amendment guarantees that a person accused of a crime shall "be informed of the nature and cause of the accusation." U.S. Const. Amend. V; U.S. Const. Amend. VI. A valid indictment "preserves the Fifth Amendment's protections against abusive criminal charging practice." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017). The government's failure to indict a statute correctly is not the type of error that can be solved by a Court. Only verbiage that "may normally

be treated as 'a useless averment'" may be struck by a court, see *Ford v. United States*, 273 U.S. 593, 602 (1927), otherwise described as superfluous language "unnecessary to an offense," see *United States v. Miller*, 471 U.S. 130, 144 (1985). The government would need this Court to rewrite the language of the Indictment. The actions sought by the government cannot be granted without the defendant's waiver of his Fifth Amendment right to have a Grand Jury review the government's allegations. See U.S. Const. Amend. V. And, Mr. DaSilva does not waive his constitutional rights.

At this juncture, the Indictment that the government obtained from the Grand Jury is one for an offense that is broader than the law permits — which means the government did not put in front of a Grand Jury a lawful charge and the Grand Jury did not return an indictment on a lawful charge. There is no option to amend through the Court in such a case. "A defendant can only be prosecuted for offenses that a grand jury has actually passed up on." *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017).

**IV. Reply to Government's Assertion That "the Court cannot determine whether DaSilva's conduct violates the statute until after a trial"**

The government argues that "the Court cannot determine whether DaSilva's conduct violates the statute until after a trial." This directly conflicts with the law and Supreme Court precedent.

"[T]he indictment should state the particulars, to inform the court as well as the accused. It must be made to appear — that is to say, appear from the indictment, without going further — that the acts charged will, if proved, support a conviction for the offence alleged." *United States*

*v. Cruikshank*, 92 U.S. 542, 559 (1875). Accordingly, Fed. R. Crim. P. 7(c) states that an indictment "must be a plain, concise, and definite written statement of the *essential facts constituting the offense charged*." (Emphasis added.) This Court absolutely has the power to dismiss an indictment if, as alleged, the facts cannot or do not constitute a crime recognized by law, as well as for a variety of other reasons related to the facts alleged in an indictment. See Fed. R. Crim. P. 12.

Rule 12(b) allows the court to consider the facts presented in an indictment, or otherwise undisputed facts, in its dismissal of cases pre-trial. See *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) (a district court may consider undisputed facts and dismiss an indictment before trial under Rule 12(b) based on a question of law); *United States v. Nitschke,* 843 F. Supp. 2d 4, 8-9 (D.D.C. 2011) (Judge Boasberg held that the government cannot prevent a pretrial dismissal of an indictment so long as the relevant facts are undisputed and only a question of law is presented); see also *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) ("the government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment"); *United States v. Brown,* 925 F.2d 1301, 1304 (10th Cir. 1991) ("it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case"); *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) (dismissing an indictment pursuant to Rule 12(b) based on undisputed evidence that the defendant was not present when the alleged crime was committed, establishing that he could not, as a matter of law, be charged with knowingly committing the indicted offense); *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992) (dismissal of an

indictment is appropriate where undisputed facts showed that the government could not prove defendant's intent as a matter of law); *United States v. Phillips,* 367 F.3d 846, 855 & n. 25 (9th Cir. 2004). *Accord United States v. Chavez*, 460 F. Supp. 3d 1225 (D.N.M. 2020); *United States v. Lund*, No. CR16-4016-MWB (N.D. Iowa Mar. 15, 2016); *United States v. Marrowbone,* 102 F. Supp.3d 1101, 1105 (D.S.D. 2015); *United States v. Lafferty*, 608 F. Supp. 2d 1131 (D.S.D. 2009); *United States v. Edmonson*, 175 F. Supp. 2d 889 (S.D. Miss. 2001); *United States v. Rodriguez*, 931 F. Supp. 907 (D. Mass. 1996); *United States v. Brady*, 820 F. Supp. 1346 (D. Utah 1993).

Moreover, the government cites case law examples of defendants being convicted of assault for direct physical altercations with officers. But the government made no allegation that Mr. DaSilva assaulted an officer directly. Instead, the government states, in the facts section of their Response (not the Indictment) that the defendant pushed a shield that was being held by an officer. The government cites no case in which a defendant was found guilty of assault under federal law for pushing against a police shield being held by an officer. This is because **a conviction for assault under federal law requires contact that is capable of causing a bodily injury** — something that is not possible by merely *pushing against a shield* (which, by definition, *shields* the officer). In the District of Columbia Circuit, assault is defined as an (a) attempt to cause or purposely, knowingly or recklessly *cause bodily injury* to another; or (b) negligently cause *bodily injury* to another with a deadly weapon; or (c) attempt by physical menace to put another *in fear of imminent serious bodily injury*. *United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996). It is impossible to commit an assault in a fact pattern that has a defendant, with his hands, pushing on a police shield of an officer, who simply maintains his

stance in response. Bodily injury is simply impossible under the government's fact pattern, which, by the way, they have failed to plead in the Superseding Indictment. These issues *can be* resolved by the court in a Rule 12(b) motion, pre-trial.

**V. Reply to Government's Assertion That the Indictment Sufficiently Appraises the Defendant of Conduct Constituting an Offense**

It was not until the government alleged in their fact pattern that this case is about the defendant pushing on a police shield that this Court was made aware of the facts constituting the alleged offense of felonious forcible assault. And, it was not until the defendant placed the government's facts into context that this Court was made aware of the facts constituting each count charged. The arguments in the defendant's Motion, ECF. No. 30, lay the legal foundation for why the inclusion of such facts is necessary. This isn't a high bar for the government to meet — they simply need to add a few words to describe which conduct is at issue for each charge.

For an explanation of why the specification of facts in an indictment is of paramount importance to the defendant, a case out of Tennessee sets the example. In *United States v. Sheets*, the court found that "the defendant threatened Ranger Ramsey with the knife by opening it and pointing it at him, but given the distance and the terrain, the defendant did not have the present ability to harm the ranger, nor was Ranger Ramsey reasonably in fear of immediate bodily harm. The defendant was thirty feet away from Ranger Ramsey and down a steep embankment when he displayed the knife," holding that the defendant could not be convicted for this fact pattern for either 111(a) or 111(b). *United States v. Sheets*, Case No. 3: 07-CR-68 (E.D. Tenn. Mar. 27, 2009).[1] But the government was cunning and argued that they also "included evidence of the

---

[1] Available at https://scholar.google.com/scholar_case?case=6675987323180073315

events that occurred when the defendant attempted to leave the scene and resisted being handcuffed." *Id*. The Court, however, deemed this "an attempt to impermissibly broaden the Indictment" because the defendant was indicted for *assault with a deadly weapon* and at the time that he was resisting arrest, the knife was in his pocket. *Id*. "'A court cannot permit a defendant to be tried on charges that are not made in the indictment against him.'" *Id*, citing *Stirone v. United States*, 361 U.S. 212, 217 (1960).

The government in the *Sheets* case tried to expand the scope of its prosecution but was denied the opportunity to do so because of the facts they specified in the indictment, which included the language that the defendant, in the act charged, "used a dangerous weapon, that is, a knife." *United States v. Sheets*, Case No. 3: 07-CR-68 (E.D. Tenn. Mar. 27, 2009). In Mr. DaSilva's case, there is no limitation to the government's allegations — they can proceed in a variety of ways, unrestricted by a Grand Jury. And, the defense is left without the ability to particularize their defense preparations and arguments under the confines of the Indictment.

The addition of factual allegations constituting the offense charged delivers notice to the defendant and restrains the government from prosecuting offenses not approved by a Grand Jury. That is why "the indictment should state the particulars, to inform the court as well as the accused … that the acts charged will, if proved, support a conviction for the offence alleged." *United States v. Cruikshank*, 92 U.S. 542, 559 (1875); Fed. R. Crim. P. 7(c) (an indictment "must be a plain, concise, and definite written statement of the *essential facts constituting the offense charged*") (Emphasis added).

## VI. Conclusion

The defendant is simply seeking a fair indictment to which he is entitled under the Constitution and under federal law, nothing more. The government is seeking a free pass to go fact-fishing at trial. The defendant's motion should be granted to preserve his rights.

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

### CERTIFICATE OF SERVICE FOR CM/ECF

I hereby certify that on December 20, 2022, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.