### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

               Plaintiff,

      vs.

MATTHEW DASILVA,

             Defendant.

_____/

Criminal Action
No. 1:21-564

Washington, DC
February 28, 2023

11:04 a.m.


TRANSCRIPT OF MOTIONS HEARING VIA ZOOM
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiff:**     **Katherine Boyles**
                   USAO - Criminal Division
                   157 Church Street, 25th Floor
                   New Haven, CT 06510
                   203-931-5088


**For the Defendant:**     **Marina Medvin**
                   MEDVIN LAW PLC
                   916 Prince Street, Suite 109
                   Alexandria, VA 22314
                   888-886-4127


**Reported By:**       **Lorraine T. Herman, RPR, CRC**
                   Official Court Reporter
                   U.S. District & Bankruptcy Courts
                   333 Constitution Avenue NW
                   Room 6720
                   Washington, DC 20001


*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3     criminal case year 2021-564, *United States of America versus*

4     *Matthew DaSilva*, who is present by video.

5          Counsel, please introduce yourselves for the

6     record, beginning with the government.

7          **MS. BOYLES:**  Good morning, Your Honor.  Katherine

8     Boyles on behalf of the United States.

9          **THE COURT:**  Ms. Boyles.

10          **MS. MEDVIN:**  Good morning, Judge.  Marina Medvin

11     on behalf of Matthew DaSilva.

12          **THE COURT:**  Ms. Medvin, good morning.

13          And I note Mr. DaSilva is on.

14          Ms. Medvin, does your client consent to proceed

15     with this, what I intend to basically be an oral argument on

16     the pending motions, and does he consent to proceed by video

17     this morning?

18          **MS. MEDVIN:**  He does.

19          **THE COURT:**  Thank you.

20          So here's how I'd like to proceed.  I'd like to

21     have maybe 5 to 10 minutes of argument from you, Ms. Medvin,

22     on the pending Motions to Dismiss, both the original Count 1

23     and 2 motion and then the Motion to Dismiss or For Judgment

24     on Counts 1, 2, 5 and 7.  You can do it in whatever order

25     you'd like, but I'd like to combine the argument.

1          And then, Ms. Boyles, I'll hear from you.  And

2     then I'll likely -- or at least attempt to resolve those

3     motions orally.  Okay?

4          So, Ms. Medvin, why don't you begin?

5          **MS. MEDVIN:**  Thank you, Judge.

6          I'll start with the second motion we filed, which

7     is a motion that requires us to review the facts.  It's a

8     Rule 12(b) Motion to Dismiss Counts 1, 2, 5 and 7.

9          And in that motion we are arguing that the facts,

10    as the government presented in their prior motion, which we

11    now have as a result of them not initially putting them in

12    the Indictment, but applying those facts to the allegations,

13    it creates an impossibility for these charges.

14         The defendant simply cannot be convicted as a

15    matter of law.  And because he cannot be convicted as a

16    matter of law, we're able to resolve these before trial.  So

17    I'll start with the simpler ones, the misdemeanors.

18         The misdemeanor counts, which are the Count 5 and

19    7 -- the misdemeanor counts require a finding in order for

20    him to be convicted of an act of physical violence.  And an

21    act of physical violence, as we discuss in the memorandum,

22    is actually defined in 40 U.S.C. 5104(a)(1).  And it's an

23    assault or other infliction of threat or infliction of death

24    or bodily harm on an individual or damage to or destruction

25    of real or personal property.

1          Well, in this case, the government is not putting

2     forward facts where the defendant had any contact, that he

3     didn't harm.  There's no bodily harm.  There's no infliction

4     on any individual person.  The government's argument is that

5     he had contact either with a door, with no police officer

6     involved at all whatsoever, or contact with a police shield,

7     which, again, is not a person, and he didn't --

8          **THE COURT:**  Why is the government limited, at this

9     time, to the facts in its brief?

10         **MS. MEDVIN:**  We can even go outside of the brief.

11    For purposes of this argument, for the Rule 12(b), I don't

12    believe they are limited to the brief.  For purposes of this

13    argument, as a matter of law and dismissal, they're not

14    limited to that as far as facts.

15         But any facts, if we were to take, as far as the

16    government's evidence presented, there is no individual

17    person who was physically bodily harmed by Mr. DaSilva.

18    There is no such fact in existence for this case.  This just

19    simply doesn't exist.  There is no damage or destruction of

20    property either.

21         So for purposes of this particular case and all

22    the facts that we know, this simply doesn't fit.  So the two

23    misdemeanors, applying these definitions, we just don't have

24    any kind of bodily harm to an individual nor do we have

25    damage or destruction of property.  It just doesn't exist

1    here under any consideration.  The government doesn't have

2    these facts.

3          So the two misdemeanors, as a matter of law, just

4    can't withstand scrutiny.  And we can -- you know, the

5    government can discuss what facts they have past what they

6    added, but I don't believe there is anything additional,

7    quite honestly, Judge.  This simply doesn't exist.  There is

8    just no existence of that.

9          And then we talk about the -- Counts 1 and Count

10   2, these are the two felony counts.  And, again -- and this

11   is interesting but the facts don't match the allegations.

12   So the Count 2, for example, requires physical contact with

13   a victim and the intent to commit another felony.  So it's

14   or one of those two.  All right.

15         Well, we don't have physical contact with a victim

16   in this case.  We already discussed that.  There is no

17   factual allegation of physical contact.

18         So then we have to examine whether they can prove

19   intent to commit another felony.  As discussed, the alleged

20   other felony here can only be the 231(a)(3) count.

21         **THE COURT:**  Why is that?  Why is the government

22   limited to the civil disorder count in Count 1?

23         **MS. MEDVIN:**  As the only Count that they indicted?

24   There simply is no other felony in existence that we're

25   aware of although the government -- or we have no reason to

1    believe, right now, nor has the government alleged any other

2    felony conduct.

3         **THE COURT:**  Is there some obligation for the

4    government to have indicted the defendant on that other

5    felony?

6         **MS. MEDVIN:**  I don't believe so.  I don't think

7    they are limited to the Indictment under this.  So I'm not

8    going to place that limitation on them.  However, there is

9    no factual allegation in this case of any other felony.  The

10   government doesn't have evidence to support, and I don't

11   think that they will argue otherwise.

12        Now, I think the government will concede there is

13   no other felony.  So this would be an issue of a fact that

14   could be resolved before trial.

15        **THE COURT:**  So then, if that's the case -- and I'm

16   not suggesting it is, but if the government were to concede

17   that the only potential other felony that it could prove for

18   purposes of the 111 count is the civil disorder count, Count

19   1, your argument is, as a matter of law, the chronology

20   can't be that the 111 count was committed with the intent to

21   commit the 231 violation because, chronologically, it

22   occurred something like two hours earlier?

23        **MS. MEDVIN:**  Correct.  That's one of the

24   arguments, yes.

25        **THE COURT:**  And what's the other argument?

1      **MS. MEDVIN:**  Court's indulgence to confirm.

2      (Brief pause.)

3      The definition of assault argument that we put

4  forward in our other motion.

5      **THE COURT:**  Yeah.  And that's a question about --

6  that's a question that goes to the sufficiency of the

7  Indictment but here, we're -- that's about the definition of

8  assault.

9      What I'm talking about just now is, I think you

10 concede that you can commit a felony violation 111 if you

11 engage in at least an assault with intent to commit another

12 felony.  For purposes of what the other felony is, other

13 than the chronological relationship between the civil

14 disorder count, in your view, and the 111, is there some

15 other reason that the civil disorder allegation could not

16 count as the other felony?

17     **MS. MEDVIN:**  In this case, other than they didn't

18 reference it but, as far as any arguments outside of what we

19 added in our filing, no.  We think that we are limited to

20 the particular arguments we put forward, as far as we know

21 right now.  So certainly, if I think of something later, I

22 will bring it up.  But right now, it's only the arguments

23 that we added to our 12(b) Motion to Dismiss.

24     **THE COURT:**  Okay.  So that's Count 2.  What about

25 Count 1?

1    **MS. MEDVIN:**  Count 1, the issue is the lacking of

2    the law enforcement officer.  So Count 1 requires a law

3    enforcement officer but the government's fact pattern is

4    that the defendant, as they argued -- well, the defendant

5    thought.

6         Now, they don't have any evidence to support this,

7    by the way, but it makes it even more comical but the

8    defendant thought -- there is no statements or anything like

9    that, but the defendant thought that there was an officer on

10   the other side.  But there was no officer on the other side.

11   There was no officer on either side of the door, in front of

12   the door, behind the door.

13        There is no officer involved in the fact pattern.

14   The government's charge is for an imaginary law enforcement

15   officer.  But an imaginary law enforcement officer cannot be

16   obstructed, impeded or interfered with.  There's no such

17   thing.  You can't just make up a crime with an imaginary

18   cop.  I'm not quite sure why this was charged.

19        And there's no disagreement between the parties

20   that there was no officer involved.  So the charge just

21   doesn't hold water on its own.  It just isn't a good charge.

22   So the government's assault felony is contingent on another

23   offense on a non-existent cop; and that's why neither crime

24   can go forward.

25        **THE COURT:**  Okay.

1    So now let's turn to the motion to -- the original

2    motion.  I assume you're still pursuing it with respect to

3    Counts 1 and 2 alone.

4         **MS. MEDVIN:**  Yes, Judge.

5         And this is -- the motion was rendered more

6    complicated by Judge Moss' ruling.  And I spent the weekend

7    going into significant details of that ruling and actually

8    deciphering a variety of opinions and classifying them and

9    making complex arguments for it that I'm ready to move

10   forward on, and I can file a supplemental argument on that

11   issue.

12        I don't know if it will be necessary for this case

13   if it can be resolved in the 12(b) motion for purposes of

14   this.  So I can hold back on that until after the government

15   makes their arguments and the Court considers what to do

16   with the 12(b) motion.  Otherwise, we can go into that.  But

17   I'll tell you right now, that is very complicated now.

18        **THE COURT:**  Do you disagree with Judge Moss'

19   opinion?

20        **MS. MEDVIN:**  I agree with it partially and I

21   disagree in part.  And I have argument from -- supported by

22   the Ninth Circuit, Tenth Circuit and Eleventh Circuit,

23   argument from Third Circuit dicta, from the Eighth Circuit

24   as well to support my position.

25        This is what I was working on for quite a bit of

1    time this weekend.  We're ready to move forward on that

2    argument but it is complicated.  It might be better to --

3           **THE COURT:**  Why don't you tell me what part you

4    disagree with and why of Judge Moss' opinion?

5           **MS. MEDVIN:**  I disagree with his finding that

6    assault is not required for purposes of the "other felony"

7    as he calls it.  This is an issue in this case, because in

8    this case it talks about "another felony."

9           And in his finding, an assault is only required

10   for a misdemeanor or if there are acts that involve physical

11   contact with the victim.  But a finding of assault is not

12   required if the defendant had the intent to commit another

13   felony.

14          Well, that is the complicated argument that I

15   believe he is wrong on, and I'm supported by the Ninth

16   Circuit, Tenth Circuit and Eleventh Circuit in my assessment

17   of that argument.

18          **THE COURT:**  So but wouldn't that interpretation

19   read out of the statute the words "resists, oppose, impedes,

20   intimidates or interferes"?

21          **MS. MEDVIN:**  No.  And this is why I say it's so

22   complicated, because we have to actually look at every word

23   of that statute, look at whether the statute is interpreted

24   under common law, under the Model Penal Code, because our

25   district -- or our circuit, rather, interestingly enough,

1    uses Model Penal Code, whereas everyone else uses common law

2    to review the definitions of this code section.

3            We are actually correct.  This is why it's

4    complicated, because why are we looking at Model Penal Code.

5    All of this is a complex -- I could start from the beginning

6    if the Court wishes to address this issue, but it's

7    something that needs to, actually, be resolved, because it

8    is a very complicated issue.

9            So if that's the case, I will start at -- well,

10   I'll start at the Model Penal Code versus common law.  So to

11   begin with -- and I read the statute from the bottom back to

12   the top.  I read it from the penalty section because that's

13   where the defendant is put on notice of what his penalties

14   are for the alleged conduct.  It starts with simple assault.

15   It uses the term "simple assault."

16           The term "simple assault" is not found in 18

17   U.S.C. 111 or actually anywhere else in federal Criminal

18   Code.  The entirety of the federal Criminal Code does not

19   define simple assault.

20           And the Supreme Court stated that its set of

21   principles, statutory construction, that unless there is a

22   contrary indication, we're going to adopt the common law

23   definition of a statutory term.  And so there is many courts

24   that have interpreted -- I think most, other than the D.C.

25   Circuit, have interpreted the simple assault concept under

1    common law, basically saying, Well, the Supreme Court says

2    it's not defined.  Let's look at common law.

3          But, actually, they're wrong.  So the D.C. Circuit

4    adopts the Model Penal Code definition of assault instead of

5    the common law definition.  They don't explain why in detail

6    but they're actually correct.

7          The Supreme Court carves out an exception for

8    contrary indications, as they call it, to rely on some

9    common law.  They are supported by another opinion,

10   actually, a Supreme Court opinion, *Johnson v. United States*.

11   It's a 2010 opinion but they declined to adopt a common law

12   meaning of the statutory analysis to the term force,

13   interestingly enough, because we use force in ours as well.

14   And they said, The meaning does not fit.

15         The D.C. Circuit relies on Model Penal Code.  And

16   actually, the language of the Model Penal Code uses the

17   terms bodily injury.  Bodily injury, of course, appears in

18   18 U.S.C. 111.  Actually, it appears in the entirety of

19   Chapter 7 of the U.S. Code.

20         Chapter 7 of the U.S. Code is section U.S.C. 111,

21   12, 113, 115, 117.  All of these are using terminology from

22   the Model Penal Code.  They don't use the terminology from

23   common law.

24         Common law assault, as we know it, is assault,

25   battery.  But they don't use that.  Instead, the Chapter 7,

1    the entirety of all of these assault statutes are discussing

2    terminology, such as bodily injury or they're using serious

3    bodily injury.  Well, these are all key phrases that are

4    used in the Model Penal Code.  These phrases are not common

5    law phrases.

6           Moreover, the entirety of Chapter 7 arch [sic] of

7    the U.S. Code doesn't use the term battery and, as we know,

8    simple assault or common law assault is necessarily

9    dependent on assaults and batteries.  That's how we define

10   assaults with touching.  We call it a battery.

11          We don't have that in the U.S. Code.  And so the

12   indication from the U.S. Code based on the terminology used

13   is that the Model Penal Code is what we use to define the

14   words used as opposed to common law.

15          So the proper definition is indeed the D.C.

16   Circuit's definition of assault.  It's controlling and it's

17   accurately applied in this case.  So while U.S.C. 111 does

18   not define the terms assault, bodily injury or serious

19   bodily injury, there are -- Chapter 7, there are other code

20   sections in Chapter 7 that point to these definitions in

21   another code section.

22          They point to 18 U.S.C. 1365 and, actually, a lot

23   of criminal law code sections throughout Title 18 will point

24   to 1365.  Section 1365 defines bodily injury and serious

25   bodily injury.  Those definitions also, by the way, are very

1    similar to the Model Penal Code definitions.

2             So serious bodily injury is defined as an injury

3    that involves a substantial risk of death or extreme

4    physical pain, protracted obvious disfigurement, protracted

5    loss or impairment of the function of a body or the mental

6    faculty, very similar to the Model Penal Code definition, by

7    the way, which is bodily injury which creates a substantial

8    risk of death or which causes serious permanent

9    disfigurement or protracted loss or impairment of the

10   function of any bodily member or organ.

11            Again, they are very much in line with each other.

12   The lesser term, bodily injury, in the U.S. Code is defined

13   more specifically:  A cut, abrasion, bruise, burn or

14   disfigurement, physical pain, illness, impairment of the

15   function of a bodily member or the mental faculty or other

16   injury to the body no matter how temporary.

17            Under the Model Penal Code, the bodily injury is

18   defined more summarily as physical pain, illness or an

19   impairment of the physical condition.  So while the Model

20   Penal Code does not define the term "forcibly," it does

21   define "unlawful force."  Forcibly, it matters as well

22   obviously for us, because that's going to be a term of art

23   for us -- not of art, a term that we need to define.

24            Unlawful force in the Model Penal Code is a force

25   including confinement which is employed without the consent

1    of the person against whom it is directed and the employment

2    of which constitutes an offense or actionable tort or would

3    constitute such an offense or tort.

4           And so applying these Model Penal Code definitions

5    to 18 U.S.C. 111(a), there can be no conviction of simple

6    assault without a defendant's use of force nor without an

7    actus reus that involves either causation of a bodily injury

8    or the fear of an imminent serious --

9           **THE COURT:**  Ms. Medvin, can I pause you for a

10   second?  Did you give me the Model Penal Code definition of

11   simple assault?

12          **MS. MEDVIN:**  Simple assault is -- the one we

13   have -- and I'm about to get to that.  Simple assault in

14   Model Penal Code is the one -- the exact definition we use

15   in the D.C. Circuit.

16          **THE COURT:**  And it is what?

17          **MS. MEDVIN:**  And it is an attempt to cause or

18   purposefully, knowingly or recklessly cause bodily injury to

19   another, negligently cause bodily injury to another with a

20   deadly weapon or attempt, by physical menace, to put another

21   in reasonable fear of imminent serious bodily injury.  And

22   this is *United States v. Duran*, and they are using the Model

23   Penal Code definition.

24          **THE COURT:**  Okay.

25          **MS. MEDVIN:**  So this review of the code section

1     actually forces us to then look at the term "forcibly."

2             **THE COURT:**  Right.  Let me just make sure I

3     understand where you are so far.  Your view is, if you're

4     thinking about the phrase "simple assault" as it's used in

5     the penalty section here at the end, that we have to draw

6     from the D.C. Circuit and Model Penal Code for the

7     definition of simple assault.  It's the definition you just

8     read.  It is different from the common law definition and --

9     and then what?

10            I mean, it seems to me that you still have to

11    grapple with the fact that, however simple assault is

12    defined, there are then two other penalty, or at least on

13    Judge Moss' view, potential penalty provisions.

14            **MS. MEDVIN:**  Yes.  Penalty provisions I'll get to.

15    I was about to start with the term "forcibly" and what that

16    implies because that is complicated for us as well.

17            So forcibly is this grammatical function serious

18    qualifier.  It modifies each verb that follows it.  Justice

19    Golita had a great book on this, *Reading the Law and*

20    *Interpretation of Legal Text*.

21            **THE COURT:**  I agree with that.  You don't have to

22    dwell on that.  It probably applies to all of the verbs

23    here.

24            **MS. MEDVIN:**  Force is generally defined as power,

25    violence or pressure directed against a person or thing,

1    according to Black's Law Dictionary.  This is also cited in

2    *Johnson v. United States*.  And the Supreme Court surmised in

3    *Johnson* that these definitions suggest a degree of power

4    that would not be satisfied by the merest of touching.  This

5    definition invokes a more serious degree of contact if we're

6    reading *Johnson*.  It's a 2010 decision.

7            Interestingly, when they talk about not satisfied

8    by the merest of touching, it goes back to my original

9    argument of whether we apply Penal Code definitions or the

10   common law definition because, of course, battery is defined

11   as merest of touching.  So the Supreme Court here is saying

12   that that's not an appropriate definition.

13           That being said, I do have to say there is a

14   "but-see" situation here.  *United States v. Castleman*, in

15   2014, the Supreme Court defined the use -- the use or

16   attempted use of physical force under the common law

17   definition of battery, offensive touching.  They say that

18   this is namely kinds of touching.

19           But they qualify -- they say that that's because

20   perpetrators of domestic violence are routinely prosecuted

21   under general applicable assault or battery statutes and, in

22   this case, the Court was looking at a state and local

23   conviction specifically for domestic violence.  And so it

24   does make sense to apply battery law definitions because

25   indeed they are using battery law statutes.

1          And so the *United States v. Castleman* decision

2     that talks about defining physical force as an offensive

3     touching would not apply to our case because we are not

4     looking at common law or state statutes.  We are looking at

5     the federal statutes.  So we are still under *Johnson*

6     *v. United States*, and I do believe that that supports the

7     terminology of defining what forcibly means.

8          So to forcibly assault or forcibly resist or

9     forcibly oppose or forcible impede, intimidate or forcibly

10    interfere, the defendant has to exert some power, some

11    violence or pressure on that officer to the point of being

12    able to cause a bodily injury or put the officer in fear of

13    serious bodily injury and with some degree of intent.

14          But what degree of intent?  What is conveyed by

15    this term "forcibly"?  And that opens the door to another

16    interesting question and another circuit split on this issue

17    as well.

18          So there are -- the Eleventh Circuit and the Fifth

19    Circuit, at least that I've been able to find, actually

20    imply a willful -- a willful intent, willful mens rea.  And

21    "willful" is defined as knowledge that one's conduct is

22    unlawful according to the Supreme Court.

23          But they're saying that there's a willful mens rea

24    when we're talking about forcible assault.  So forcible

25    assault in the Eleventh Circuit and Fifth Circuit is a

1    willful mens rea.

2         But then you have the Sixth Circuit, on the other

3    hand, and it defines forcible assault under Section 111 as a

4    general intent crime.  There is interesting dissents out of

5    the Sixth Circuit on this issue actually where they're

6    talking about that simply doesn't make sense.

7         But the element of intent is also one that we have

8    to decide at that point what level of intent.  There is no

9    element of intent in the indictment because it's tracking

10   the level of the code.  It doesn't specifically mention a

11   level of intent.  It simply uses the term "forcibly," and

12   the term forcibly does appear in the Indictment.

13        So for purposes of our Motion to Dismiss the

14   Indictment, this particular argument, I believe, would not

15   be applicable.  It would be applicable later on if indeed

16   this proceeds and we have to talk about conviction.

17        But going back to the term "forcibly" and what

18   else it conveys, it's really converting this less-serious

19   act of resisting, forcing, impeding, intimidating and

20   interfering into various variations of assaultive conduct.

21        We actually can see that when we compare Section

22   111 to Section 231(a)(3) for example.  So in this case both

23   appear.  Well, Section 231(a)(3) criminalizes the

24   non-forcible, non-assaultive variations of this behavior.

25   We have an act to obstruct, impede or interfere with a

1    federal law enforcement officer during a civil disorder.

2    And it's any act in that code section.  So we're looking at

3    any act to obstruct, impede or interfere versus forcible

4    versions of the same.

5          And so applying the Model Penal Code definition of

6    unlawful force which requires conduct that amounts to crime

7    or tort, and we're talking about these intent elements that

8    are also conveyed with the term "forcibly."  And we see a

9    very strong difference between usage of these words in

10   111(a) versus 231(a)(3).  The distinction appears to be that

11   of assault.

12         Accordingly and pursuant to the penalty section of

13   111(a) and how that terminology appears, the enumerated

14   behaviors, I think, under 111(a)(1) are all types of

15   assault.  So the D.C. Circuit's definition of assault --

16         **THE COURT:**  So can I just pause you?  So I want to

17   make sure I understand the argument and then I think I have

18   a question about it.

19         Is it fair to say your argument, or at least part

20   of your argument, is the word "forcibly" requires the kind

21   of physical act that makes forcibly resisting, forcibly

22   opposing, forcibly impeding, forcibly intimidating or

23   forcibly interfering basically species of assault and -- go

24   ahead -- is that generally what you're saying?

25         **MS. MEDVIN:**  I'm sorry.  I'm listening, Judge.

1          **THE COURT:**  Okay.  Is that part of your argument?

2          **MS. MEDVIN:**  Part of my argument is that they can

3     be considered that, yes.  Because if we look at the

4     underlying elements, they at least have an assault.  It's at

5     least an assault.  I would call -- assault would be a

6     lesser-included offense of any of these.  I think there are

7     different ways that define an assault.

8          **THE COURT:**  Okay.  So that would mean, for

9     example, that, if we're talking about not assaulting but

10    just take a different verb in one, whoever forcibly opposes

11    or impedes or intimidates or interferes, in your view, the

12    use of the verb "forcibly" there requires a fairly

13    significant amount of physical contact --

14         **MS. MEDVIN:**  Correct.

15         **THE COURT:**  -- to make it forcible?

16         Okay.  So then, if that's right, then all

17    violations of (a) require physical conduct and contact of

18    that kind.  Right?

19         **MS. MEDVIN:**  Yes.

20         **THE COURT:**  Because (a) is forcibly.

21         So then how can you explain the "or" clause in the

22    penalty section or why isn't every violation of (a) going to

23    be a felony or at least why isn't a lot of the language in

24    the penalty section now duplicative or superfluous?

25         Why would you have to say, where such acts involve

1    physical contact with the victim because that would be, by

2    definition, in your view, every violation of (a) or (b) --

3    sorry, (a)(1) or (a)(2) because they both contain forcibly?

4              **MS. MEDVIN:**  Oh, Judge, because of the threat

5    portion.  For the same reason that simple assault doesn't

6    require contact but it can be a threat.  That's the first

7    definition of assault under the Model Penal Code and under

8    the D.C. Circuit's definition.

9              It's the threat -- or is it the third?  I'm sorry,

10   the third definition is a threat.  Court's indulgence.  It's

11   the threat or the fear of an imminent bodily injury.

12   Because you could have -- if the defendant can present --

13             **THE COURT:**  What?

14             **MS. MEDVIN:**  I'm sorry?

15             **THE COURT:**  I thought you said that "forcibly"

16   requires physical contact.

17             **MS. MEDVIN:**  Or the threat of physical contact.

18   In all the definitions it also allows for the threat or the

19   officer's fear of imminent bodily -- or serious bodily

20   injury.  The serious bodily injury is only mentioned -- so

21   bodily injury is required -- bodily injury is lesser than

22   serious bodily injury.

23             Bodily injury is required when there is contact.

24   Serious bodily injury is only when the defendant -- I'm

25   sorry, when the officer is in fear, put in fear of that.  So

1    that goes back to the original definition of assault.

2              He's put in fear of receiving that serious bodily

3    injury.  And the defendant would have to be in a position to

4    threaten that level of force of some kind.  So the threat --

5         **THE COURT:**  Let's just use (a)(1) again.  What

6    that would mean is a person who could violate (a)(1), in

7    your view, if the person actually forcibly took one of the

8    six kinds of acts prescribed here and that would have to

9    involve physical contact of some sort or threatened to do

10   so.

11        **MS. MEDVIN:**  Threatened to do so with serious

12   bodily injury as a component but, yes.

13        **THE COURT:**  Right.

14        **MS. MEDVIN:**  A threat would be sufficient, I

15   believe, under the definitions.  I think that's clear from

16   the D.C. Circuit and the Model Penal Code.

17        **THE COURT:**  Right.  So then -- and then to then go

18   to the penalties section, you would say it's not superfluous

19   because, if it actually involved physical contact, that

20   would get you the penalty or, if it involved intent to

21   commit another felony, then that would cover the threats?

22        **MS. MEDVIN:**  Correct.  So it could get to the

23   point of felony if there was a threat.  So the threat

24   normally would not get you to felony.  But here, it creates

25   the heightened penalty if you are threatening and it's a law

1     enforcement officer and it's serious bodily injury, now it's

2     going to be a felony as opposed to a regular misdemeanor.

3              **THE COURT:**   Okay.  I think I have the argument.

4              Because we've spent so much time on this, I'd like

5     to do two things, first, to ask Ms. Boyles to respond to it.

6              I do think one of the questions is going to be,

7     This is an argument that I haven't seen made in any case and

8     certainly hasn't been presented in the briefs here whether

9     there should be supplemental briefing on this question.

10             But, Ms. Boyles, I'm happy to hear you on that as

11    well as any substantive response you're prepared to make,

12    although, obviously, it's to some extent new to you, I

13    assume.

14             **MS. BOYLES:**   Thank you, Your Honor.

15             So first in terms -- in regards to supplemental

16    briefing, I mean, I think at this point, though this

17    particular argument has not yet been made, I would say that

18    the Court can decide the existing motions on the papers that

19    exist.

20             If the Court wants additional briefing, we're

21    certainly happy to respond, and I'd like to see some of

22    these definitions that defense counsel is raising in writing

23    and sort of be able to look at the case law that she's

24    citing myself.

25             I think so, to Your Honor's question, I think

1    maybe the cleanest way to resolve this is to resolve the

2    existing motions based on what has already been briefed and

3    then, you know, order on Your Honor's schedule a

4    supplementary briefing schedule if Your Honor would find

5    that helpful.  And we're certainly happy to respond as

6    appropriate.

7              My initial reactions, again, not having the case

8    law or these definitions easily in front of me, is that I

9    think there is still daylight between any definition of

10   assault and the forcible resist, oppose, impede, intimidate

11   or interfere that the statute contemplates.

12             There may be overlap, but I think those are

13   distinct verbs that Congress has decided to use in this

14   circumstance.  And I don't want to go too far into the

15   argument on the initial motion that was filed unless you'd

16   like me to do that here.  But I guess my initial gut

17   reaction is, there still has to be some difference, though

18   there may be overlap, between those verbs that are being

19   used there.

20             And I think the Court's questioning about how

21   defense counsel's reading of the statute would render some

22   of those verbs superfluous as well as sections of the

23   penalty provision superfluous as well, I think goes to the

24   heart of the matter which is Congress chose these six verbs.

25   They are all, we agree, modified by "forcibly" but that

1    doesn't necessarily convert everything in the statute to an

2    assault.

3            And I would also add, you know, for the record,

4    that in this case we contend that we can prove that there

5    was an assault.  So in some ways this discussion is purely

6    academic because, at a trial and given the opportunity to

7    fully prove out the charges, there will be -- the government

8    contends that we can prove an assault.

9            **THE COURT:**  And the Indictment alleges there was

10   an assault.

11           **MS. BOYLES:**  Yes, Your Honor.

12           **THE COURT:**  So then now let's go, perhaps, back to

13   the beginning, which is about the Rule 12(b)(1) argument

14   about sufficiency of the evidence.

15           Can you walk me through, from the government's

16   perspective, why it believes it can prove or at least that a

17   jury could reasonably conclude the elements that Ms. Medvin

18   argued the government could not establish?

19           **MS. BOYLES:**  Yes, Your Honor.

20           Before I get to the particular evidence, I would

21   just like to point out, as Your Honor's earlier question got

22   to, I don't think that the government is in any way limited

23   in terms of its evidence to these six sentences that were

24   included in a background section of our response to the

25   motion.

1          We strongly dispute the assertion that there are

2    undisputed facts in this case and that there is somehow some

3    agreement as to the facts or that the total universe of

4    facts have been put forth in those six sentences.

5          That background section was included more for the

6    Court's benefit to just be able to kind of place the

7    allegations and the motion in context, not to put forth some

8    kind of -- you know, the criminal version of a summary

9    judgment argument where we're saying these are all of the

10   facts and therefore we win.

11         The fact that the defense has seized upon those

12   six sentences and has made arguments mischaracterizing them

13   actually highlights the fact that we do need a trial because

14   there are facts that the government can prove at trial that

15   a jury should be allowed to consider and weigh in on, on

16   whether or not those facts establish the crimes as charged.

17         So turning to those facts, and I'll try to walk

18   through the Indictment -- I'm sorry, I just had it in front

19   of me.  So with respect to Count 1 allegations, I do want to

20   make clear that the defense has mischaracterized what we

21   think is the timeline with respect to the 231 charge.

22         This is not a charge that was just as a result

23   of -- I think we put in the brief there is video evidence

24   that the defendant used a flagpole against the door that led

25   into the Capitol in the Lower West Terrace.  That is not the

1    whole of the government's case with respect to the 231

2    charge.

3              The government has a long timeline, including the

4    defendant and various acts that he took while part of the

5    riot on the Lower West Terrace.  And that timeline extends

6    until 5:05 p.m., which is when he was removed by

7    Metropolitan Police officers from that area.

8              So with respect to the arguments about whether the

9    231 happened before and that it was completed by the time of

10   the 111 charged in Count 2, the government's position is

11   that there is really a panoply of activity that the

12   defendant is engaged in from about 2:30, actually possibly

13   earlier than that, but we'll say 2:30 but extending all the

14   way until 5:05, which is roughly a half an hour beyond the

15   assault that is charged in Count 2.

16             So as a timeline matter, I do think that that's

17   important.  And the 231 here is charged -- the government is

18   conceiving that charge not as one particular act but rather

19   the accumulation of several acts, any of which could have

20   been charges individual 231s but, here, we just charge as

21   one sort of background landscape 231 that the defendant is

22   engaging in.  Turning --

23             **THE COURT:**  Sorry.

24             Recognizing that Count 2 doesn't require you to be

25   in the felony component of it to prove the intent to commit

1    another felony -- because, even under the defendant's view,

2    if the Count 2 111 felony component can be satisfied by a

3    real assault --

4         **MS. BOYLES:**  Yes, Your Honor.

5         **THE COURT:**  -- recognizing that, you have alleged

6    for Count 2 purposes, that he engaged in Count 2 conduct

7    with the intent to commit another felony.

8         **MS. BOYLES:**  Yes.

9         **THE COURT:**  Is that other felony only a violation

10   of 231, which continues until roughly 5:05 or does the

11   government have some other felony in mind?

12        **MS. BOYLES:**  No, Your Honor.  It's just the 231

13   felony.  But again, it's a sort of extended timeframe for

14   that 231 not a particular act.

15        **THE COURT:**  So in a way that answers one of the

16   two arguments that the defendant has made.  So obviously,

17   when we're talking about the sufficiency of the Indictment

18   and it relates to this very specific question about the

19   intent to commit another felony with regard to Count 2, the

20   government obviously doesn't identify that felony in Count

21   2 --

22        **MS. BOYLES:**  Yes.

23        **THE COURT:**  -- which the defendant, of course,

24   says is inappropriate.  But that other felony is the Count 1

25   felony so that it is a felony charged here.  So the two

1     felonies that are the Count 1 and Count 2 felonies and then

2     the -- whatever -- I think the 111 felony component, other

3     felony, are both charged in the Indictment?

4          **MS. BOYLES:**  Yes.  I think I am understanding your

5     question and I think that's correct, yes.  There is nothing

6     outside of the Indictment that has not been charged that

7     we're contemplating for the Count 2 charge.

8          **THE COURT:**  Yes.  But just to make very clear --

9     sorry, I sort of double-negatived that or something.  But

10    for purposes of the Count 2 felony penalty, to the extent

11    that the government intends to prove that the Count 2 was

12    done or violated with the intent to commit another felony,

13    that other felony is in the Indictment and it is the

14    violation articulated in Count 1, a violation of Section

15    231?

16         **MS. BOYLES:**  Correct.

17         **THE COURT:**  Okay.

18         **MS. BOYLES:**  To be clear, I don't think that

19    that's required.  It doesn't have to be in the Indictment

20    but in this case it is.

21         **THE COURT:**  Right.  I understand the government's

22    position is that it need not be.  But for purposes of at

23    least my advocation, the government is not intending to

24    prove at trial the Count 2 violation was done with the

25    intent to commit a felony that is not in the Indictment.

1      **MS. BOYLES:**  Correct.

2            **THE COURT:**  Okay.  Thank you.

3      **MS. BOYLES:**  My pleasure.

4            So then, I guess -- have I answered Your Honor's

5      questions with respect to Count 2?

6            **THE COURT:**  With respect to the relationship

7      between Count 2 and Count 1, yes.  And then, of course, with

8      respect to the Count 1 timing, yes.  What about with respect

9      to the -- again, recognizing that this is really not a

10     summary judgment motion or anything like that, but what are

11     the acts or can you just describe to me what the government

12     would intend to prove with respect to the violation of Count

13     2 itself?

14           **MS. BOYLES:**  The Section 111?

15           **THE COURT:**  Yes.

16           **MS. BOYLES:**  Okay.

17           So, first of all, I would say that the government

18     will intend to prove one of the felony prongs of Section 111

19     but we could prove, frankly, under any of the three prongs

20     that -- as I would identify them, the possible ways of

21     violating Section 111(a)(1) would be, either the simple --

22     we'll call it the simple assault prong, the physical contact

23     prong or the intent to commit another felony.

24           So we think that we have evidence on all three of

25     those prongs.  So even if the two felonies were to fall

1    away, there is still a valid charge for the misdemeanor.

2    And the -- and in broad strokes -- and I do want to be

3    careful about -- you know, this isn't some --

4            I want to be careful about not proffering full

5    evidence where we are not in the context of a trial.  We

6    don't have witnesses.  This isn't a formal proffer, if Your

7    Honor sort of would indulge me on that point.

8            But with that said, the body cam footage and

9    open-source footage shows that, from approximately 2:30

10   until 5:05, the defendant is in the crowd on the Lower West

11   Terrace.  He is a part of activity sort of that's been

12   called in other cases the "heave-ho" of the push and the

13   pull back and forth between officers and the rioters.

14           We have the specific 111 that was charged where he

15   is -- and I understand that it's not necessarily the same

16   actus reus but just a part of what is going on during that

17   2:30 to 5:05 period.  He's pushing against officers.  He's

18   pulling against officers.

19           He's also very clearly both watching and engaging

20   with law enforcement officers, as well as, after he engages

21   in the Section 111, what we would classify as an assault, he

22   is -- he is also not engaged in those actions alone.  So we

23   think that there is also an argument that he is aiding and

24   abetting additional rioters that are engaged in the same

25   kind of conduct and are also committing 231s and 111s around

1    him.

2           Finally, I would also add that the video very

3    clearly shows him engaging verbally with officers and

4    attacking their position, attacking their -- what they're

5    doing, their service that day, in a sort of -- you could

6    classify it as trash talking or sort of egging on the

7    officers.

8           So we think that putting all of his conduct before

9    the jury, the time that he spent on the Lower West Terrace,

10   even though it's very clear that the officers are trying to

11   clear that area, the time he spends there, the time he

12   spends engaged on the front line right in front of officers

13   and then physically engaging with officers and verbally

14   engaging with officers, all of that conduct over a nearly

15   three-hour period is what we would be addressing to the 231.

16          And I just realized that Your Honor's question was

17   really about 111.  So the 231 is all of that conduct.  The

18   111 is focused on when he, in body cam footage that's shown

19   on -- at this point, I think we've seen it on three,

20   possibly four different officers' body cam footage.  He

21   lowers his body and holds onto, grabs onto the riot shield

22   of officers and is very clearly pushing against those

23   officers.

24          And I think there's also an argument that the jury

25   could find that he's also pulling that riot shield back.

1      Again, with the caveat that I am not the fact-finder and

2      this is just a preliminary discussion of the evidence.

3              **THE COURT:**  Right.  Right.

4              So just so I have it -- if we're talking about

5      the -- and I think the government doesn't quite agree with

6      Judge Moss either, but if we're talking about what you

7      identified as the second bucket, which is not the simple

8      assault but is the physical contact prong as you put it,

9      that, in the government's view, the body cam footage -- and,

10     again, I get this isn't a proffer.  I just want to

11     understand generally speaking.  The pushing and pulling, for

12     lack of a better word --

13             **MS. BOYLES:**  Uh-huh.

14             **THE COURT:**  -- on riot shields would constitute

15     adequate proof of physical contact sufficient to satisfy

16     that prong?

17             **MS. BOYLES:**  Yes, Your Honor.

18             **THE COURT:**  I am paraphrasing, I understand.

19             **MS. BOYLES:**  Yes, Your Honor.

20             And I would just point to sort of another example.

21     Like, if we had a defendant who threw a brick at an officer,

22     whether or not their hands touched, whether there was

23     physical contact, we would certainly say that throwing that

24     brick is assaultive conduct.

25             **THE COURT:**  If I grabbed an officer's gun and

1    didn't touch the officer, that seems very similar to

2    grabbing a shield.  It wouldn't matter that I didn't

3    actually make contact with the body.

4         **MS. BOYLES:**  Yes, Your Honor, and that's the

5    government's position on this point.

6         **THE COURT:**  Okay.  So now let's talk Counts 5 and

7    7.  I believe it's 5 and 7, yes.

8         **MS. BOYLES:**  Yes.

9         **THE COURT:**  Okay.

10        Count 5, again, requires physical violence; that's

11   the term.  Is your answer about why the government has --

12   why the 12(b)(1) motion should not be granted is effectively

13   the same as what you just articulated?

14        **MS. BOYLES:**  Yes, Your Honor.

15        **THE COURT:**  And ditto Count 7?

16        **MS. BOYLES:**  Correct.

17        **THE COURT:**  And that's all against the backdrop

18   from the government's perspective of saying, Look, we're not

19   required to show our hand.  We are entitled -- there's no

20   stipulated facts here.  We're entitled to go to trial and

21   maybe we would even be able to prove more than what we've

22   just articulated but that's enough at a minimum?

23        **MS. BOYLES:**  Yes, Your Honor.

24        **THE COURT:**  Now, this all is dependent, I think,

25   at least as it relates to 111, Count 2, on the view that

1    physical contact -- or it may be dependent on the view that

2    the physical contact contemplated under what you call "prong

3    two" or the simple assault, under your "prong one," is not

4    as heightened a showing as perhaps Ms. Medvin was arguing

5    earlier when you combine forcibly with the rest of the

6    statute or, perhaps, even the Model Penal Code definition of

7    simple assault?

8         **MS. BOYLES:**  Yes, I believe I'm following you,

9    yep.

10        **THE COURT:**  In other words, without putting words

11   in your mouth, I think Ms. Medvin is arguing that all

12   violations of 111 require -- and this is, again, a complete

13   paraphrase, but require a fairly substantial actual physical

14   engagement between person and law enforcement or a threat of

15   engaging in very serious physical engagement.

16        And if that's right, then, depending on the

17   evidence, then grappling with a riot shield may or may not

18   count.

19        **MS. BOYLES:**  That's my understanding of the

20   defense's position, and of course the government opposes

21   that position and would suggest that there is -- it's not --

22   the standard is not quite that high.  And I think this is a

23   conversation that we'll certainly get into in discussing

24   jury instructions and how exactly to define each of these.

25        I'm happy to provide the Court with some sample

1    jury instructions that the government has used in other

2    cases.  But I just don't think that adding all of the terms

3    up in the way that the defense counsel has, that that

4    negates what is the plain meaning and, sort of, just reading

5    the text, what the statute appears to mean, which is what

6    Judge McFadden concluded, as well as -- I did find another

7    verdict transcript in the *Egtvedt* case before Judge Cooper.

8              There are now several judges in the circuit -- or

9    excuse me in this District.  I understand there is no

10   binding case law on the interpretation of Section 111, but I

11   do think that the Seventh and the Fourth Circuit's treatment

12   of this issue and whether or not assault is necessarily part

13   of every prong of 111 is very persuasive, as well as the

14   decisions by your colleagues on the bench in the District

15   Circuit.

16             I'm happy to go into that further.  But I think I

17   would point Your Honor specifically to -- the Seventh

18   Circuit case stands alone.  I think they give a very clear

19   explanation of how the statute functions and how assault is

20   just not simply part of every prong of the statute and why

21   the Tenth Circuit's discussion really can be set aside

22   because the most recent case, *Wolfname*, was decided in

23   part -- in large part because of the existing precedent that

24   analyzed the previous version of the statute.

25             So the Seventh Circuit and the Fourth Circuit

1    really say the Tenth Circuit doesn't give us a good

2    understanding of the current version of the statute giving

3    full meaning to every word that Congress used.

4              **THE COURT:**  Thank you, Ms. Boyles.

5              Ms. Medvin, let me just say at the outset, I do

6    not feel comfortable resolving, here, the questions that

7    you've raised about the interpretation of 111, which seem to

8    me to go beyond ones that have already briefed here and

9    maybe even in front of other judges.

10             At a minimum, I don't recall Judge Moss' opinion

11   in *Cua* having really grappled with certainly the distinction

12   between Model Penal Code and common law definition and then,

13   more broadly, the question of what it means to forcibly

14   assault, resist and the like.

15             So at least on the interpretive question of what

16   111 requires and the arguments you've presented today, I am

17   going to want some extra briefing.

18             But do you agree, Ms. Medvin, that I should

19   resolve at least those pending motions that aren't dependent

20   on that question?

21             **MS. MEDVIN:**  I actually think the resolution and

22   the arguments defining all these terms and understanding

23   probably affect all of the questions presented because --

24             **THE COURT:**  Even Counts 5 and 7?  Is that because

25   (inaudible) -- in your view is a term that will be --

1      **MS. MEDVIN:**  So those are interesting because

2   they're independently defined.  I think Counts 5 and 7

3   probably -- Court's indulgence -- can be independently

4   assessed because of the definition used.  And an act of

5   physical violence, the way that it is defined, is specific

6   to property damage or bodily injury.

7        Bodily injury is a person.  There's no -- the

8   government hasn't argued that bodily injury includes

9   shields.  They were arguing a general definition of assault

10   which, by the way, is incorrect.  I will get into that in a

11   second.

12        But the way that it's phrased, specifically, the

13   terms bodily injury, there is no bodily injury and there is

14   no property damage.  Because those two issues are not

15   disputed by the government, they haven't even addressed

16   them, I think the Court can resolve those two issues, the

17   Counts 5 and 7.

18        As far as the government's argument on -- as we

19   call the second prong where such acts involve physical

20   contact with the victim of that assault and that they're

21   applying what I'm seeing as a common law battery definition

22   of, the classic example in law school.  A woman is holding a

23   purse and someone pulls it from her that that constitutes a

24   battery on the woman.

25        That's not what we're looking at here.  We're

1    looking at a statutory penalty enhancement.  We're looking

2    at very specific language.  The prong that they're talking

3    about is a felony enhancement for the following verbiage:

4    Where such acts involve physical contact with the victim of

5    that assault.

6              It's a very, very specific language.  And they're

7    talking about physical contact with a victim.  They're not

8    talking about physical contact with property or anything

9    broader than that.  They actually are very specific in the

10   words chosen.

11             Interestingly, I think the reason it's chosen is

12   for this idea that, unless a person is physically -- unless

13   you come into contact with an actual victim, there is no

14   penalty enhancement.  We go back to the simple assault

15   penalty.  This is a penalty enhancement.  That's what we're

16   looking at here.

17             And the penalty enhancement requires a finding

18   that there was physical contact and that there was a victim

19   of that assault that had the physical contact.  You can't

20   dismiss the victim of that assault language.  And the

21   government entirely dismisses this language, this verbiage

22   that there was physical contact made with a victim.

23             **THE COURT:**  Okay.  Thank you.

24             I want to take a brief recess.  I want to think a

25   little bit about how I want to proceed here.  Obviously, we

1    have four and a half months until trial, but I don't want

2    these motions to linger on too long.

3              I do think I'm going to require supplemental

4    briefing on, at a minimum, the 111 questions.  And I just

5    want to think about whether that -- whether that merits my,

6    essentially, holding in abeyance my decision on the motions

7    generally until we get that.

8              So what I'm going to do is what I often do in the

9    video context, which is I'm going to mute you.  I'm going to

10   turn off the video.  I will let Ms. Moore know when I'm a

11   minute or 30 seconds from rejoining.

12             So we'll go into recess now.  I would just caution

13   everyone that, while you can't see or hear me, if you're not

14   muted or if your video is on, I can see or hear you.  Okay?

15             We will be back.

16          (Brief recess.)

17             **DEPUTY CLERK:**  Your Honor, we are now back on the

18   record.

19             **THE COURT:**  Thank you, Ms. Moore.

20             So here's what I'd like to do.  I had been

21   thinking that I might resolve the motions orally today, but

22   I think I'm intrigued at least by some of the arguments that

23   Ms. Medvin made that I've heard today for the first time,

24   such that I'd like to have supplemental briefing on them.

25             So, Ms. Medvin, by when can you file a brief that

42

1    articulates, obviously in writing, the positions that you've

2    articulated orally today?

3              **MS. MEDVIN:**  I have everything written.  I just

4    have to add a few more cases.  Let's say Friday.  I probably

5    could file by Friday relatively fast.

6              **THE COURT:**  Okay.  I don't mean to squeeze you at

7    all.  I think I'm also going to give the government a

8    reasonable amount of time to respond, in part, because we do

9    have some runway between now and the trial date here.

10             Ms. Boyles, why don't I ask you this question,

11   which is how long do you think the government would want to

12   respond to that supplemental brief?

13             **MS. BOYLES:**  Your Honor, we'd ask for two weeks or

14   even 10 days, if the Court would be so kind.

15             **THE COURT:**  Yeah.  In light of my schedule, that

16   works fine just because I have some complicated things that

17   will potentially prevent me from resolving this, like, you

18   know -- if, for example, you were to, Ms. Medvin, file on

19   the 3rd and the government even were to respond on the 15th

20   or 16th, it would be very complicated for me to resolve them

21   right away.

22             So for that reason, Ms. Medvin, if you'd like a

23   little bit of extra time, that's fine with me.  I could then

24   give the government two weeks, and then I would be

25   contemplating trying to resolve all of these motions

1    together with the supplemental issues the week of the 27th

2    at a TBD whether I write something or do it in another

3    hearing.

4              So, Ms. Medvin, would you like until, say, the

5    7th?

6              **MS. MEDVIN:**  Sure.

7              **THE COURT:**  Okay.

8              **MS. MEDVIN:**  That's fine.

9              **THE COURT:**  Okay.  All right.

10             So, Mr. DaSilva, through Ms. Medvin, your

11   supplemental brief on these questions is due March 7th.

12             Ms. Boyles, your brief responding to that

13   supplemental brief is due March 21st.

14             **MS. BOYLES:**  Thank you, Your Honor.

15             **THE COURT:**  When I have them, I will review them,

16   and then I will decide whether I will just write an opinion

17   or will do something orally.  To the extent that it's going

18   to be an oral hearing, we will communicate that through Ms.

19   Moore and we'll schedule a time that's convenient for

20   everyone.  Okay?

21             So in light of that, the motions remain under

22   advisement with me.  Can the parties remind me whether we

23   have -- because we have a trial date, have we excluded

24   Speedy Trial Act time through the trial date?

25             Ms. Boyles, do you recall, or Ms. Medvin?

1    **MS. MEDVIN:**  Yes, Judge.  We did.  Ms. Boyles

2    wasn't present.  There's actually a different prosecutor

3    handling this case.  She's just filling in for this hearing.

4    I believe we did, Judge.

5         **THE COURT:**  All right.  Okay.

6         Is there anything else, Ms. Medvin, from your

7    perspective we should discuss today?

8         **MS. MEDVIN:**  No, we'll address what we need to in

9    the briefs, Judge.

10        **THE COURT:**  Okay.  Thank you so much.

11        Ms. Boyles, anything from your perspective?

12        **MS. BOYLES:**  No, nothing else.  Just for the

13   record, I am going to be the prosecutor going forward on

14   this case.  Mr. Juman has taken a slightly different role

15   within the department.  So you'll be seeing more of me.

16        **THE COURT:**  Okay.  Thank you.  Welcome to the

17   case.

18        **MS. BOYLES:**  Thank you very much.

19        **THE COURT:**  Thank you, all.  We look forward to

20   those briefs.  And then, as I said, if we're going to have

21   another hearing of whatever sort, we will communicate with

22   the parties and set that up.  We won't just drop a hearing

23   on you.  Okay?

24        **MS. BOYLES:**  Thank you.  We appreciate it.

25        **MS. MEDVIN:**  Thank you.

1          (Proceedings concluded at 12:08 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4   certify that the foregoing is a true and correct transcript

5   of the record of proceedings in the above-entitled matter.

6

7          **Please Note:**  This hearing occurred during the

8   COVID-19 pandemic and is therefore subject to the

9   technological limitations of court reporting remotely.

10

11

12

13   _____April 21, 2023_____     _/s/_____
              **DATE**                  **Lorraine T. Herman**
14

15

16

17

18

19

20

21

22

23

24

25