UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-564 CJN |
| : | |
| MATTHEW DASILVA, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS FOR SELECTIVE PROSECUTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Response in Opposition to the defendant's Motion to Dismiss for Selective Prosecution, Doc. 48. The Motion seeks "dismissal of his charges, or, in the alternative, rigorous discovery of the government's charging decisions and discriminatory investigative policies[.]" *Id.* at 14. The United States respectfully asks this Court to deny the Motion in all respects.

I.     BACKGROUND

The background of this case has been thoroughly recited in several filings in this case. *See* Govt. Resp. to Def. Supp. Filing, Doc. 41; Govt. Resp., Doc. 35; Govt. Resp., Doc. 32. Since the government filed its Response to the defendant's Supplemental Filing on March 21, the Court ordered the parties to appear for a video hearing on May 23. *See* 5/17/23 Minute Order. At that hearing, the United States indicated that it would present the case again to the grand jury to address some legal concerns raised by the Court, without conceding any legal necessity to do so. Accordingly, the United States sought a second superseding indictment from the grand jury on May 31, 2023, and the grand jury returned a true bill on the Second Superseding Indictment that day. *See* Sec. Superseding Indictment, Doc. 54. Although the instant Motion may technically have

been rendered moot by virtue of the filing of the Second Superseding Indictment, the United States nevertheless files this response for the purpose of allowing the Court to efficiently resolve all of the outstanding motions to dismiss. *See United States v. Neely*, No. CR 21-642 (JDB), 2023 WL 1778198 at *2 (D.D.C. Feb. 6, 2023) (treating motion to dismiss filed before a superseding indictment was filed as seeking dismissal of counts in the superseding indictment).

## II.  ANALYSIS

### A.  Legal Framework

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's . . . charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted). The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465.

A claim of selective prosecution seeks to rebut this presumption by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id*. at 463, "such as

2

race, religion, or other arbitrary classification," *id*. at 464 (citation omitted). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463. "[T]he D.C. Circuit has called for a two pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); *see also United States v. Irish People, Inc.*, 684 F.2d 928, 946 (D.C. Cir. 1982) (per curiam). "This is a rigorous test; 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

Moreover, a request for discovery in support of a claim of selective prosecution often imposes a significant burden on the government, as it "requires discovery into the Government's files, an effort that will 'divert prosecutors' resources' and possibly disclose their strategy." *United States v. Judd*, 579 F. Supp. 3d 1, 4-5 (D.D.C. 2021) (quoting *Armstrong*, 517 U.S. at 468). "[A] defendant must [thus] present 'at least a colorable claim' of selective prosecution before any discovery is permitted." *Id.* at 5 (quoting *Irish People*, 684 F.2d at 932). A colorable claim requires "some evidence tending to show the existence of the essential elements" of discriminatory effect and discriminatory intent for selective prosecution. *Armstrong*, 517 U.S. at 468 (internal quotation marks and citations omitted). "This 'colorable claim' standard is a 'significant' and 'rigorous' one not easily surmounted." *Judd*, 579 F. Supp. 3d at 5.

Courts in this district have repeatedly rejected similar selective prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6th. *See, e.g.*, *United States v. McHugh*, No. CR 21-453, 2023 WL 2384444, at *13 (D.D.C. Mar. 6, 2023) (Bates, J.); *United States v. Padilla*, No. CR 21-214, 2023 WL 1964214, at *4-6 (D.D.C. Feb. 13, 2023) (Bates, J.); *United States v. Brock*, No. 21-cr-140, 2022 WL 3910549, at *11-12 (D.D.C. Aug. 31, 2022) (Bates, J.); *United States v. Rhodes*, No. 1:22-cr-15, 2022 WL 3042200, at *4-5 (D.D.C. Aug. 2, 2022) (Mehta, J.); *United States v. Judd*, 579 F. Supp. 3d 1, 5-9 (D.D.C. 2021) (McFadden, J.); *United States v. Miller*, No. 1:21-cr-119, Doc. No. 67 (D.D.C. Dec. 21, 2021) (Nichols, J.); *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. July 2, 2021) (McFadden, J.).

B. **Argument**

DaSilva alleges that the government selectively targeted him for prosecution based on his political beliefs. He contends that the government failed to charge similar conduct by protesters demonstrating in response to the death of George Floyd outside of the White House at the end of May 2020. The defendant's allegations fail to establish selective prosecution and, accordingly, the motion should be denied.

1. ***DaSilva has not made a colorable showing that the United States singled him out for prosecution.***

With respect to the first prong of *Armstrong*, the defendant must first set forth evidence that the prosecution "had a discriminatory effect," *Armstrong*, 517 U.S. at 465, by showing that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Irish People*, 684 F.2d at 946 (citation omitted). A district court judge has previously explained that an individual may be similarly situated to the defendant if:

> "[He] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."

*Stone*, 394 F. Supp. 3d at 31 (Berman Jackson, J.) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008).[1] "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). The phrase "similarly situated" is "narrowly" interpreted. *Judd*, 579 F. Supp. 3d at *4 (quoting *Stone*, 394 F. Supp. 3d at 31).

Here, the defendant fails to identify any sufficiently "similarly situated" individual or group of individuals that the government afforded "different treatment." *Armstrong*, 571 U.S. at 470. The defendant's Motion relies almost entirely on an ill-suited comparison of his case to the protests stemming from the death of George Floyd outside the White House in May of 2020.[2] The

---

[1] "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced. […] A multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another. These may include, inter alia, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." (internal citations omitted).

[2] The defendant also mentions a 1954 shooting and a 1983 bombing at the Capitol building, to preemptively rebut the government's argument that the context of January 6 is unique and unprecedented. The government does not dispute that the Capitol has been attacked in the past, but that does not mean that the events of January 6 are not unprecedented. Ultimately, Defendant's discussion of the 1954 and 1983 incidents is little more than a rhetorical sleight of hand. The defendant points to these incidents to suggest that January 6 is not unique, but then immediately returns to discussing the May 2020 protests outside of the White House. Shifting the focus from May 2020, to 1954 and 1983, and then back to May 2020 does not establish similarly situated comparators. The defendant does not mention any similarly situated defendants from the 1954 or

5

defendant argues that "the most accurate comparison of January 6 is to the events at the White House in late May of 2020." *See* Def. Mot. Dismiss ("MTD"), Doc. 48 at 8. He goes on to argue that his conduct was "identical" to those protestors, none of whom, the defendant claims, were charged for pushing on federal officers' riot shields. *See id.* at 9. These proffered comparators fail the test for "similarly situated" defendants for several reasons.

To begin with, as countless written decisions, bench trial verdicts, and sentencing transcripts across this district reflect, the events of January 6, 2021 were, unquestionably, unprecedented. *See, e.g.*, *Mahoney v. United States Capitol Police Bd.*, No. CV 21-2314, 2023 WL 2770430, at *8 (D.D.C. Apr. 4, 2023) (discussing "the distinctive nature of the date January 6" and the "unprecedented security breach of the Capitol Grounds" that occurred on that date); *United States v. Garcia*, No. CR 21-0129, 2022 WL 2904352, at *13 (D.D.C. July 22, 2022) ("The events of January 6 were unprecedented and serious."). It is true that both the protests in May 2020 and on January 6, 2021 started out as relatively peaceful protests and then devolved into more violent riots when a subset of protesters escalated their conduct from peaceful demonstrations to violent attacks. But the test for identifying similarly situated comparator defendants demands more than just this general similarity.

---

1983 incidents, because the perpetrators responsible for those violent attacks were indeed prosecuted. *See Lebron v. United States*, 229 F.2d 16 (D.C. Cir. 1955) (affirming the convictions of four Puerto Rican nationals for the 1954 shooting in the Capitol Building); *Bomb Explodes in Capitol*, UNITED STATES SENATE, available at https://www.senate.gov/about/historic-buildings-spaces/capitol/bomb-explodes-1983.htm ("In 1990, a federal judge sentenced Marilyn Buck, Laura Whitehorn, and Linda Evans to lengthy prison terms for conspiracy and malicious destruction of government property. The court dropped charges against three co-defendants, already serving extended prison sentences for related crimes."); *see also, e.g.*, *United States v. Buck*, No. 84-cr-220 (CSH), 1991 WL 243426 at *1 (S.D.N.Y. 1991) (denying Buck's motion to reduce her sentence and describing Buck's several, consecutive sentences in both New York and the District of Columbia totaling more than fifty years.)

Other decisions in this district have considered and rejected similar comparisons to protests in May 2020 arising from George Floyd's death. *See Judd*, 279 F. Supp. 3d at 5-9. In *Judd*, the Court held that the defendant was not entitled to selective-prosecution discovery, let alone dismissal of his charges, because he failed to show that his prosecution for his conduct on January 6th had a discriminatory effect. 579 F. Supp. 3d at 8. The defendant there had attempted to use protesters in Portland, Oregon who were protesting the death of George Floyd in May 2020 as comparators, but the Court found that despite some similarities between those events, the events of January 6 were distinct from the Portland riots. The Court emphasized the "unique context of January 6," in which "[m]embers of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *Id.* The Court reasoned that this context differed significantly from protests that turned violent in Portland. The defendant here attempts to distinguish *Judd* on the basis that the defendant there had put forth *Oregonian* protesters as comparators as opposed to *D.C.* protesters. *See* MTD, Doc. 48 at 13. This argument is unpersuasive and has already been rejected in this district. *See Rhodes*, 2022 WL 3042200, at *5. In *Rhodes*, the Court rejected comparisons to "those who protested outside the White House in the summer of 2020" as well as "those who interfered with recent Supreme Court confirmation hearings" for the same reasons that the *Judd* Court rejected the comparison to the Oregonian protesters. *Id.*

Though DaSilva may attempt to distinguish himself from the defendants in *Judd* and *Rhodes* because he does not face their same charges, there are still critical differences between DaSilva and the protesters outside the White House in May 2020. Unlike the May 2020 protestors,

who did not enter the White House, or even successfully breach the White House fence,[3] scores of January 6 rioters breached the temporary fencing around the Capitol, the bicycle-rack barricades that had been erected, and ultimately, the building itself. And though DaSilva is not alleged to have entered the building, this context is critical to assessing whether the May 2020 protesters are similarly situated to him. He attempted to push through the police line at the tunnel to gain access to the Capitol Building as the Joint Session of Congress was still suspended, as Members of Congress and the Vice President took shelter, and as law enforcement worked desperately to clear the building to make it safe. Just like in *Judd* and *Rhodes*, the danger and risk to civilians inside the building (not to mention Members of Congress) sets January 6 apart. Moreover, as with the Portland rioters' conduct, the D.C. May 2020 rioters' conduct "while obviously serious, did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power." *Miller*, 21-cr-119, Doc. 67 at 3.

It is also important to correct the record with respect to the defendant's factual claims about the Department of Justice's response to the May 2020 protests. Specifically, the defendant inaccurately claims that "participants in the riot outside of the White House were not investigated." MTD, Doc. 48 at 8. This is patently incorrect. Within days of the protest outside the White House on May 29, 2020 Attorney General William Barr issued a public statement condemning the violence in the strongest possible terms and announcing that "federal law enforcement actions will be directed at apprehending and charging the violent radical agitators who have hijacked peaceful

---

[3] The Defendant acknowledges as much by citing to a Secret Service statement that explains that "[n]o individuals crossed the White House Fence and no Secret Service protectees were ever in any danger." S*ecret Service Statement on Pennsylvania Avenue Demonstrations*, UNITED STATES SECRET SERVICE (May 31, 2020), *available at* https://www.secretservice.gov/newsroom/releases/2020/05/secret-service-statement-pennsylvania-avenue-demonstrations- 0.

8

protest and are engaged in violations of federal law."[4] The Department of Justice heeded the Attorney General's call to action, both in D.C. specifically and across the country. Reporting by the Associated Press reflects that "more than 300 federal cases [arose] from the protests" over racial injustice, and "dozens of people charged [were] convicted of serious crimes and sent to prison."[5] Thirty-three protestors were specifically charged with assaulting, impeding, or intimidating a federal employee or officer,[6] one of the same criminal offenses with which the grand jury has charged the defendant here. Indeed, several rioters or culprits during the summer of 2020 were prosecuted federally in D.C. for their respective criminal offenses. *See, e.g.*, *United States v. Jerritt Pace*, 20-cr-104-RC (Molotov cocktail lit outside of a police station); *United States v. Micah Avery*, 20-cr-109-ABJ (spray painting of the Lincoln Memorial); *United States v. Josue Rodas*, 20-cr-148-BAH (bank burglary); *United States v. Jason Charter*, 20-cr-135-DLF (attempted statue destruction); *United States v. Cody Tarner*, 20-cr-183-RCL (arson at the Supreme Court); *United States v. Dominique Maxey*, 20-cr-152-ABJ (bank robbery).

Finally, the defendant suggests in a footnote that he is perhaps the only defendant who has been prosecuted for pushing a police shield. *See* MTD, Doc. 48 at 11, n.23. First, the United States

---

[4] *Attorney General William P. Barr's Statement on Riots and Domestic Terrorism*, THE UNITED STATES DEPARTMENT OF JUSTICE (May 31, 2020), *available at* https://www.justice.gov/opa/pr/attorney-general-william-p-barrs-statement-riots-and-domestic-terrorism.

[5] Alanna Durkin Richer, Michael Kunzelman, & Jacques Billeaud, *Records rebut claims of unequal treatment of Jan. 6 rioters.* ASSOCIATED PRESS NEWS (August 30, 2021), *available at* https://apnews.com/article/records-rebut-claims-jan-6-rioters-55adf4d46aff57b91af2fdd3345dace8.

[6] Alanna Durkin Richer, Colleen Long, & Michael Balsamo, *AP finds most arrested in protests aren't leftist radicals.* ASSOCIATED PRESS NEWS (October 20, 2020), *available at* https://apnews.com/article/virus-outbreak-race-and-ethnicity-suburbs-health-racial-injustice-7edf9027af1878283f3818d96c54f748.

9

disagrees with this characterization of the defendant's behavior. Video evidence at trial will show that he attempted to use the full weight of his body to push against police riot shields for the purpose of breaching an established police line protecting an entryway into the Capitol Building. Second, DaSilva is certainly not the only defendant to face criminal liability for similar conduct. *See, e.g.*, *United States v. Salvador Sandoval, Jr.*, 1:21-cr-195-CKK (bench guilty verdict on all counts, including counts for Civil Disorder and Assault on Federal Officer; conduct included pushing/pulling on riot shields); *United States v. Patrick Hamner*, No. 1:21-cr-689-ABJ (sentenced to 30 months in prison; conduct included pushing on a bicycle rack); *United States v. Bernard Joseph Sirr*, 1:22-cr-259-TNM (sentenced to two months in prison; conduct included pushing on riot shields); *United States v. Luke Michael Lints*, 1:22-cr-259-TNM (sentenced to four months in prison; conduct included pushing on riot shields); *United States v. Ronnie Presley*, 1:21-cr-000257-RDM (sentenced to 12 months in prison; conduct included "leaning into" an officer's baton); *United States v. Donnie Duane Wren*, 1:21-cr-599-RBW (jury guilty verdict for Civil Disorder and Assault on a Federal Officer; conduct included pushing and leaning against riot shields). The United States expects that this non-exhaustive list will continue to grow as it continues to bring new January 6 cases.

Accordingly, on the first prong of *Armstrong's* test, the defendant has failed to point to "some evidence tending to show the existence of the essential element[]" of a discriminatory effect, because he fails to identify sufficiently similar comparator defendants. *Armstrong*, 517 U.S. at 468. The defendant is not entitled to discovery on his selective prosecution allegations, let alone dismissal of the charges against him.

2.  ***DaSilva has not made a colorable showing that the government harbored an improper motive in prosecuting him.***

Even if the defendant could identify similarly situated individuals, he must also adduce clear evidence of a discriminatory purpose in the government's prosecution. This second prong requires proof "that his prosecution was based upon an unlawful or arbitrary classification." *Stone*, 394 F. Supp. 3d at 35 (citing *Branch Ministries*, 211 F.3d at 144). The defendant has failed to do so.

The defendant conclusorily alleges that the government made disparate prosecutorial decisions because it charged him, "a conservative pro-Trump protestor," for his conduct during the January 6th riots but not "progressive protestor[s]" for similar conduct during the 2020 protests outside the White House. MTD, Doc. 48 at 9. This comparison fails; the defendant relies solely on "personal conclusions based on anecdotal evidence." *Miller*, 21-cr-119, Doc. 67 at 4 (citing *Armstrong*, 517 U.S. at 470). None of the defendant's sources make any reference to the political affiliations of the 2020 protestors. The defendant's motion rests instead on self-serving conjecture in suggesting that political favoritism has guided the government's charging and plea decisions. "[A] defendant must provide something more than mere speculation" of selective prosecution, however. *Stone*, 394 F. Supp. 3d at 31. The defendant has not done so here. He admits that he is "not in possession of direct proof," MTD, Doc. 48 at 11, and merely hypothesizes about the government's prosecutorial decisions based on the commentary of others who have determined a "bias against conservatives in federal agencies, especially in the FBI." MTD, Doc. 48 at 11. Courts in this district have repeatedly rejected such arguments as "not evidence of anything." *Brock*, No. 21-cr-140, 2022 WL 3910549, at *12; *see also Padilla*, No. CR 21-214, 2023 WL 1964214, at *6. "[I]t is not enough to simply state that the prosecutor was biased. Defendant must *show* that in his

11

case, the decisionmaker acted with a discriminatory purpose." *Stone*, 394 F. Supp. 3d at 36 (citing *United States v. Mack,* 53 F. Supp. 3d 179, 188 (D.D.C. 2014)).

With respect to the defendant's sweeping allegation that there is a "growing body of evidence" that the United States is biased against "Donald Trump and his followers," *see* MTD, Doc. 48 at 9, that allegation is unfounded and provides no support for DaSilva's claim of selective prosecution. These broad and baseless claims of political bias in the Justice Department say nothing about the United States Attorney's decision to present *this* case for indictment before the grand jury. Again, the defendant "must *show* that in his case, the decisionmaker acted with a discriminatory purpose." *Stone*, 394 F. Supp. 3d at 36 (italics in original, underlining added).

Furthermore, as mentioned above, Attorney General William Barr publicly announced that "federal law enforcement actions will be directed at apprehending and charging the violent radical agitators who have hijacked peaceful protest and are engaged in violations of federal law" in the days following the May 2020 protests in D.C.[7] This statement reflects that, contrary to the defendant's claims, the Department actively enforced federal criminal law against the 2020 protestors.

Finally, the U.S. Attorney for the District of Columbia and the undersigned Assistant U.S. Attorney—as officers of this Court—further represent that DaSilva's political views played no role in the charging decisions in this case. DaSilva has been charged and prosecuted based on his conduct and intent on January 6, 2021, not based on his political views.

---

[7] *Attorney General William P. Barr's Statement on Riots and Domestic Terrorism*, THE UNITED STATES DEPARTMENT OF JUSTICE (May 31, 2020), *available at* https://www.justice.gov/opa/pr/attorney-general-william-p-barrs-statement-riots-and-domestic-terrorism.

### III.     CONCLUSION

For all of the foregoing reasons, United States respectfully requests that the Court deny the Motion to Dismiss for selective prosecution, Doc. 48, in its entirety.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Katherine E. Boyles
Katherine Boyles
Assistant United States Attorney
D. Conn. Fed. Bar No. PHV20325
Katherine.Boyles@usdoj.gov
Phone: 203-931-5088

Adam Dreher
Assistant United States Attorney
Mich. Bar No P79246
Adam.Dreher@usdoj.gov
Phone: (202) 257-8014

United States Attorney's Office
601 D Street NW
Washington, D.C. 20001
