# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) |
| **v.** | ) CRIMINAL CASE No: 1:21-CR-00564 |
| | ) |
| **MATTHEW DASILVA** | ) TRIAL: JULY 17, 2023 |
| | ) |
| DEFENDANTS. | ) |
| | ) |

## DEFENDANT'S TRIAL BRIEF

### A. Summary of Facts

On January 6, 2021, Matthew DaSilva, an eclectic individual wearing a Japanese-lettered red cap, a camel-colored checkered Middle Eastern scarf, and a navy camo jacket, appeared at the protest outside of the Capitol Building sometime around 2:35 PM.

According to the Government, around 2:45 PM, Mr. DaSilva was outside the Capitol Building holding a flag with other protesters against a door. There were no police officers present on either side of that door and the alleged behavior did not impact any officer.

According to the Government, DaSilva was in the crowd of protesters outside the Lower West Terrace in front of the Capitol Building when around 4:40 PM, he made his way up the steps in front of the tunnel (located at the center of the West side of the Capitol Building) and "pushed and pulled" on a shield that the Government alleges was held by one or more MPD Officers standing outside the building, in the tunnel.

Mr. DaSilva is indeed depicted on video pressing his hands on a shield. There is no evidence, however, of him pulling the shield.

Mr. DaSilva's interaction with the shield lasted for approximately one minute. Mr. DaSilva's interaction with the shield did not alter the conduct or behavior of the officers in any manner whatsoever.

After he is pushed back onto his back (it is unclear from the video evidence who pushed Mr. DaSilva onto his back), Mr. DaSilva stands in front of the officers and appears to be talking to either himself or to the officers (it is unclear whom he is speaking to as no one is conversing with him and he is standing a significant distance away to have a conversation with any particular officer). He is depicted in Defense Exhibit 4 standing near a wall and making the following statements in a calm voice:

- "How can we be inside the building when we're not inside the building?"

- "I, uh, didn't think this was how this day was going to end."

- "These are law-abiding citizens, all taxpayers. They just wanna go home every night like you."

- "All right, this is getting kind of…" — and then proceeds to leave the area.

Mr. DaSilva recedes back into the crowd in front of the Capitol Building.

The Government alleges that he is next seen in the crowd behind a woman recording a selfie video, the Government estimates this happened sometime close to 5:05 PM.

Mr. DaSilva leaves the area of the Capitol Grounds around 5:30 PM.

Mr. DaSilva never attempts to and never makes his way inside the Capitol Building, nor the East side of the Capitol Grounds. At all times material, Mr. DaSilva remains outdoors and on the West side of the Capitol Grounds.

Mr. DaSilva came alone and left alone. He was not recording any events nor using any digital devices. There is no digital or social media evidence in this case.

### B. Summary of Anticipated Evidence

The stipulated evidence will show that sometime prior to January 6, Capitol Police put up physical restrictions and signs saying "Area Closed" around the perimeter that the Government refers to as the restricted perimeter, including around the West Terrace. The Defense evidence will show that the physical barrier and signs in front of the West Terrace were removed by unknown individuals at approximately 12:58 PM on January 6, 2021.

The stipulated will show that Vice President Pence ("VP") was in the Capitol Building at all times material, entering through the East Terrace and remaining within the area of the Capitol Building at all times material. "[A]s a result of the forced entry into the U.S. Capitol Building," the VP was evacuated and the Senate chamber was locked down at 2:11 PM. Testimony from the Government's Secret Service witness will show that at no time was the VP physically present outside of the U.S. Capitol Building on the western front of the building, including the west plaza or the Lower West Terrace.

The Government's video evidence will show that Mr. DaSilva does not arrive at the Capitol Grounds until some time later— appearing in the West Terrace area around or after 2:35 PM.

At approximately 4:30 PM, body camera and CCTV video will show Mr. DaSilva making it to the tunnel area outside the Capitol Building, at the exact center of the west side of the Capitol Building, and aroun 4:33 PM, pressing his hands against a police shield held by a an MPD officer for the approximate duration of one minute. Mr. DaSilva is then seen on video conversing calmly with himself (maybe directed towards officers, it is unclear) before retreating back into the crowd.

Mr. DaSilva's last moments on Capitol Grounds are depicted on video around 5:30 PM.

## C. Stipulations

The parties conferred and agreed on stipulations which will be filed separately. The Government will provide a summary of the agreed-upon stipulations.

## D. Exhibits

Defendant's anticipated exhibit list is below:

## UNITED STATES DISTRICT COURT

for the _____   DISTRICT OF   Columbia _____

| United States | | | | | EXHIBIT AND WITNESS LIST |
|---|---|---|---|---|---|
| V. | | | | | |
| Matthew DaSilva | | | | Case Number: | 21-cr-564 (CJN) |

| PRESIDING JUDGE Nichols | | PLAINTIFF'S ATTORNEY Katherine E. Boyles | | DEFENDANT'S ATTORNEY Marina Medvin | |
|---|---|---|---|---|---|
| TRIAL DATE (S) 7/17/2023 | | COURT REPORTER | | COURTROOM DEPUTY | |
| PLF. NO. | Format m/d/yyyy - m/d/yyyy ADMITTED | | DESCRIPTION OF EXHIBITS* AND WITNESSES | | |
| | 1a | | Video depicting removal of restricted area signs from Capitol lawn | | |
| | Format m/d/y Yes or N Yes or No | | Metadata from 1a showing timestrap of 12:58 PM | | |
| | 2 | | Combined, synched video showing outside perspective and bodycam perspective | | |
| | 3 | | 4 Officer bodycams synched | | |
| | 4 | | Ofc. Sajumon bodycam video of Defendant's statements with subtitles | | |
| | | | | | |

## E. Witnesses

The Defense does not plan to call any witnesses. The admission of Defense exhibits has been agreed upon through stipulations.

## F. Opening Arguments

The Government is seeking an opening argument. The Defense is asking to reserve 15 minutes for a responsive opening statement.

## G. Outline of Defenses, Elements, and Definitions

### I. Counts Three, Four, and Five — Restricted Grounds

**COUNT THREE**

On or about January 6, 2021, within the District of Columbia, **MATTHEW DASILVA** did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, without lawful authority to do so.

(**Entering and Remaining in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(1))

**COUNT FOUR**

On or about January 6, 2021, within the District of Columbia, **MATTHEW DASILVA** did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

(**Disorderly and Disruptive Conduct in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(2))

**COUNT FIVE**

On or about January 6, 2021, between approximately 4:30 pm and 4:40 pm, within the District of Columbia, **MATTHEW DASILVA** did knowingly engage in any act of physical violence against any person and property in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting.

(**Engaging in Physical Violence in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(4))

## COUNT 3 — 18 U.S.C. § 1752(a)(1)

The government has the burden of proving beyond a reasonable doubt all of the following elements:

1.  That on or about January 6, 2021;

2.  Within the District of Columbia;

3.  The Government posted, cordoned off, or otherwise restricted an area within the United States Capitol or its Grounds;

4.  The Vice President was temporarily visiting this area;

5.  The defendant entered or remained in the building or grounds while it was restricted;

6.  The defendant acted knowingly when he entered this area; and,

7.  The defendant had no lawful authority to enter this area.

## COUNT 4 — 18 U.S.C. § 1752(a)(2)

The government has the burden of proving beyond a reasonable doubt all of the following elements:

1.  That on or about January 6, 2021;

2.  Within the District of Columbia;

3.  The Government posted, cordoned off, or otherwise restricted an area within the United States Capitol or its Grounds;

4.  The Vice President was or would be temporarily visiting this area;

5.  The defendant engaged in disorderly or disruptive conduct;

6.  The defendant was in, or within proximity to, this restricted building or grounds when he was acting disorderly or disruptive;

7.  The defendant acted with the specific intent to impede or disrupt the orderly conduct of Government business or official functions;

8.  The defendant acted knowingly;

9.  The conduct of the defendant in fact resulted in the impediment or disruption of the orderly conduct of Government business or official functions.


**COUNT 5 — 18 U.S.C. § 1752(a)(4)**

The government has the burden of proving beyond a reasonable doubt all of the following elements:

10.  That on or about January 6, 2021, between approximately 4:30 pm and 4:40 pm;

11.  Within the District of Columbia;

12.  The Government posted, cordoned off, or otherwise restricted an area within the United States Capitol or its Grounds;

13.  The Vice President was temporarily visiting this area;

14.  The defendant engaged in an act of physical violence;

15.  The defendant acted with the specific intent to do so;

16.  The act was directed against a person or property located within the restricted building or grounds.


Any charge under 18 U.S.C. § 1752 necessarily requires proof beyond a reasonable doubt that the area entered by the defendant was "posted, cordoned off, or otherwise restricted," and the Superseding Indictment requires the Government to prove that this is an area where the Vice President "is or will be temporarily visiting" under 18 U.S.C. § 1752(c)(1)(B).

The use of the term "otherwise restricted" in 18 U.S.C. § 1752(c)(1) means restricted in a similar manner to the preceding restrictions. See *Begay v. United States*, 553 U.S. 137, 140-43 (2008); *United States v. Fischer*, 64 F.4th 329, 345 (D.C. Cir. 2023) (when a statute "includes a list of examples followed by 'otherwise' in a single, unbroken sentence within the same subparagraph... the position of 'otherwise' [] inherently relates the word to the list immediately before it"). The terms in 18 U.S.C. § 1752(c)(1) before the phrase "otherwise restricted" are the terms "posted" and "cordoned off" — which are types of **visible or physical restrictions**. Therefore, § 1752 requires some type of visible or physical restriction to be present in order to convict a defendant for a crime under any of the subsections — under which Counts Three, Four, and Five are charged.

Altogether, the Government must prove not only that Defendant committed a prohibited act in an area that was "posted, cordoned off, or otherwise restricted" but also that area is where the Vice President "is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1).

The Defense will argue that the Government is unable to meet its burden on any of these elements under the requirements of 18 U.S.C. § 1752.

## II.) Count Four — Conduct that "in fact impedes or disrupts"

Count Four has a causational element that requires any disorderly or disruptive conduct of the defendant to "in fact impede[] or disrupt[] the orderly conduct of Government business or official functions." See 18 U.S.C. § 1752(a)(2). The Defense will argue that the Government is not able to prove that Mr. DaSilva's actions "in fact imped[ed] or disrupt[ed[ the orderly conduct of Government business or official functions" under 18 U.S.C. § 1752(a)(2).

### III.) Counts Six — Intent

> **COUNT SIX**
>
> On or about January 6, 2021, within the District of Columbia, **MATTHEW DASILVA** willfully and knowingly engaged in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress.
>
> **(Disorderly Conduct in a Capitol Building**, in violation of Title 40, United States Code, Section 5104(e)(2)(D))

## COUNT 6 — 40 U.S.C. § 5104(e)(2)(D)

The government has the burden of proving beyond a reasonable doubt all of the following elements:

1. That on or about January 6, 2021;

2. Within the District of Columbia;

3. The defendant was within the United States Capitol Grounds or any of the Capitol Buildings;

4. The defendant engaged in disorderly or disruptive conduct;

5. The defendant acted with the specific intent to impede, disrupt, or disturb the orderly conduct of a session of Congress and either House of Congress, or the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress;

6. The defendant acted willfully and knowingly.

Count Six requires the Government to prove that the defendant willfully and knowingly when he "engage[d] in disorderly or disruptive conduct, at any place in the Grounds or in any of

the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a

session of Congress or either House of Congress, or the orderly conduct in that building of a

hearing before, or any deliberations of, a committee of Congress or either House of Congress."

40 U.S.C. § 5104(e)(2)(D). The Defense will argue that the Government lacks evidence to prove

that Mr. DaSilva had the specific intent to impede, disrupt, or disturb the orderly conduct of a

session of Congress or either House of Congress, or the orderly conduct in that building of a

hearing before, or any deliberations of, a committee of Congress or either House of Congress.


## IV. Count Two — Evidence Insufficient

> ### COUNT TWO
>
> On or about January 6, 2021, between approximately 4:30 pm and 4:40 pm, within the District of Columbia, **MATTHEW DASILVA** did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, that is, Metropolitan Police Department Officers J.S., M.D., A.H., S.S., D.P., J.C., and other officers known and unknown to the Grand Jury, who were assembled inside the tunnel on the lower west terrace of the Capitol Building, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony, to wit, a violation of Title 18, United States Code, Section 231(a)(3), as charged in Count One.
>
> (**Assaulting, Resisting, or Impeding Certain Officers**, in violation of Title 18, United States Code, Section 111(a)(1))

## COUNT 2 — 18 U.S.C. § 111(a)(1)

The government has the burden of proving beyond a reasonable doubt all of the following

elements:

1.  That on or about January 6, 2021, between approximately 4:30 pm and 4:40 pm;

2.  Within the District of Columbia;

3.  The defendant used force;

4.  The defendant's behavior was a type of simple assault that can be described as either forcible assault, forcible resistance, forcible opposition, forcible impediment, forcible intimidation, or forcible interference;

5.  The defendant had the specific intent to either cause bodily injury or put the victim officer in reasonable apprehension of imminent serious bodily injury;

6.  The defendant acted willfully;

7.  The victim was an officer or employee of the United States or a member of any branch of the United States Government (including any member of the uniformed services), or any person assisting such an officer and employees, specifically: "Metropolitan Police Department Officers J.S., M.D., A.H., S.S., D.P., J.C., and other officers known and unknown to the Grand Jury, who were assembled inside the tunnel on the lower west terrace of the Capitol Building."

8.  The victim was engaged in or on account of the performance of his official duties.

*An additional element for a felony conviction:*

9.  The simple assault resulted in physical contact with the victim of that assault; *or*

10. The defendant's ~~acts, which constitute a simple assault~~ *forcible assault, forcible resistance, forcible opposition, forcible impediment, forcible intimidation, or forcible interference* was accompanied by the defendant's specific intent to commit a violation of Title 18, United States Code, Section 231(a)(3), as charged in Count One.[1]

---

[1] The words "acts, which constitute a simple assault" have been struck and replaced with "*forcible assault, forcible resistance, forcible opposition, forcible impediment, forcible intimidation, or forcible interference*" because this Court has stated at a previous hearing that proof of a simple assault is not required for this element and that the Government may rely on any of the six enumerated acts. The Defense objects to this reading of the law but respects the court ruling and will argue according to the Court's ruling.



*United States v. Wolfname*, 835 F.3d 1214, 1218 (10th Cir. 2016) (finding that assault is an

essential element of every Section 111 offense); *United States v. Chapman*, 528 F.3d 1215, 1219

(9th Cir. 2008).

The Defense will argue that (1) the conduct of the defendant fails to amount to an assault

under federal law, (2) the evidence fails to show physical contact with a victim of an assault, and,

(3) the evidence fails to show that the defendant acted with the intent to commit another felony.

Accordingly, the Government is unable to establish any path to a conviction under Count Two.

18 U.S.C. § 111(a)(1) requires proof of a simple assault for a misdemeanor conviction; or,

for the conviction of a felony, this code section requires proof of a simple assault through

physical contact with the victim. The Defense will argue that the facts of Mr. DaSilva's case do

not constitute a simple assault as defined under federal law.

### 1). DEFINING SIMPLE ASSAULT

The term "simple assault," found in the penalty section of 18 U.S.C. § 111(a), is not

defined anywhere in the federal criminal code. Nor is the term one found in the common law.

The Supreme Court has stated that "the settled principle of statutory construction [is] that,

absent contrary indications, Congress intends to adopt the common law definition of statutory

terms." *United States v. Shabani*, 513 U.S. 10, 13 (1994). Based on this principle, some circuits,

without deliberation as to any *contrary indications*, adopted what they claimed was the "common

law definition" of "simple assault" — "either a willful attempt to inflict injury upon the person of

another, or by a threat to inflict injury upon the person of another which, when coupled with an

apparent present ability, causes a reasonable apprehension of immediate bodily harm." *See, e.g.,*

*United States v. Stewart*, 568 F.2d 501, 504 (6th Cir. 1978); *United States v. Estrada-Fernandez*,

150 F.3d 491, 494 n. 1 (5th Cir. 1998); *United States v. Juvenile Male*, 930 F.2d 727, 728 (9th

Cir. 1991). Yet, the exact term "simple assault" is not found anywhere in common law and every

court that defined simple assault has done through defining "common law assault."

Interestingly, "common law assault" was not limited to a single definition; instead, being

defined in various ways by various courts. *See, e.g., Edwards v. State*, 4 Ga. App. 167, 169

(1908) (discussing the varying definitions of common law assault, concluding that "an intent to

injure is the gist of the offense of assault; that it necessarily includes the idea of intended

violence towards the person assaulted"). The D.C. Circuit, for important contrast and context,

has defined common law assault as "an attempt with force or violence to do a corporal injury to

another; and may consist of any act tending to such corporal injury, accompanied with such

circumstances as denote at the time an intention, coupled with the present ability, of using actual

violence against the person." *Beausoliel v. United States*, 107 F.2d 292, 296 n.14 (D.C. Cir.

1939).

Aside from the blatant absence of "simple assault" in the common law, reliance on the

common law in the case of 18 U.S.C. § 111(a) is simply wrong — this federal assault statute is

written in language that reflects verbiage of the Model Penal Code, instead of common law.

For background, the federal criminal assault code distinctly utilizes the language of the

Model Penal Code in discussing variations of assaults. Key phrases from Model Penal Code,

terms such as "bodily injury," appear in *almost all of the assault charges listed in Chapter 7 of*

*the U.S. Code*, which punishes assaults under federal law. Look at 18 U.S.C. § 111, 18 U.S.C. § 112, 18 U.S.C. § 113, 18 U.S.C. § 115, and 18 U.S.C. § 117 — each of these assault statutes references *bodily injury,* directly invoking the language of the Model Penal Code. Conspicuously missing from Chapter 7 of the U.S. Code is the term *battery*, a staple of common law assault, as well as any reference to offensive touching. *See, e.g.*, *Johnson v. United States*, 130 S. Ct. 1265, 1267 (2010) (the common-law crime of battery was satisfied by even the slightest offensive touching). The U.S. Code only discusses assaults with a minimum of *bodily injury* — directly invoking the Model Penal Code. While the common law distinguished between an assault and a battery by even the slightest offensive touching, the Model Penal Code did not utilize the battery distinction at all, nor its definition— instead grouping assault and battery into a single offense, just as we see in Section 111(a). The Model Penal Code then *grades* assaults as *simple assault* or aggravated assault. *See* MODEL PENAL CODE § 211.1 (1985). Therefore, the Model Penal Code definitions must be used to identify the elements of 18 U.S.C. § 111(a) — which specifically references *simple assaults*.

Correctly, and in contrast to other Circuits, the D.C. Circuit adopted the Model Penal Code definition for 18 U.S.C. § 111(a) instead of a common law definition. *See United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996). *See also United States v. Dworken*, 855 F.2d 12, 16 (1st Cir. 1988) (choosing to apply the Model Penal Code definitions to federal statutes "to achieve a modicum of consistency"). **The Model Penal Code, which specifically contains the term "simple assault," defines it as an (a) attempt to cause or purposely, knowingly or recklessly cause bodily injury to another; or (b) negligently cause bodily injury to another with a deadly weapon; or (c) attempt by physical menace to put another in fear of**

imminent serious bodily injury. *Duran*, 96 F.3d at 1509; MODEL PENAL CODE § 211.1 (1985).

The D.C. Circuit's reliance on the Model Penal Code definition is not inconsistent with the

Supreme Court decision in *Shabani*, which specifically carves out an exception for common law

definitions when there are "contrary indications" to reliance on common law. *See Shabani*, 513

U.S. at 13; s*ee also Johnson v. United States*, 130 S. Ct. 1265, 1270 (2010) (declining to adopt

common law meaning to the statutory analysis of the term "force" in 18 U.S.C. § 924(e)(2)(B)(i),

"where that meaning does not fit"). In a statute that specifically references phrases from the

Model Penal Code as opposed to common law, this exception is most applicable. Accordingly,

the D.C. Circuit's reliance on the Model Penal Code is correct; the other Circuits are wrong.

In drafting Section 111(a), Congress used Model Penal Code verbiage *simple assault*,

*bodily injury*, and *serious bodily injury—* as opposed to common law terms such as *assault and*

*battery.* Congress specifically relied on the Model Penal Code in drafting this assault law. The

choice of Model Penal Code terminology over common law wording is precisely that "contrary

indication" that the Supreme Court warned about in *Shabani. See Shabani*, 513 U.S. at 13; *see*

*also Johnson*, 130 S. Ct. at 1270. Accordingly, the D.C. Circuit's definition of assault is both

controlling and accurately applied.[2]

---

[2] This Court has stated agreement with at least portions of Judge Moss' Opinion in *Cua* but has not addressed the issue previously raised by the Defense of defining assault through the common law versus the Model Penal Code.

It is important to note that the opinion in *Cua* does not follow the D.C. Circuit's precedent. *See United States v. Cua*, Case 1:21-cr-00107-RDM, Dkt. 288, *10, *17 (D.D.C. February 22, 2023). Judge Moss' opinion utilizes a common law definition of assault from another Circuit instead of the Model Penal Code definition or even the D.C. Circuit's common law definition, ignoring the precedent set in *United States v. Duran*, 96 F.3d 1495 (D.C. Cir. 1996) and in *Beausoliel v. United States*, 107 F.2d 292, 296 n.14 (D.C. Cir. 1939). The *Cua* opinion does not reference *Duran* or *Beausoliel* at all.

In its brief on this issue, the Government urged this court to adopt "the common law" definition without legal justification as to why. *See* ECF No. 51. Nor does the Government explain why the D.C. Circuit's common law definition should not be used. The Government's position can be deduced as one that affords the Government more leeway in securing convictions. Favorability to the Government, however, is not the standard that the Supreme Court has outlined for District Courts to use in determining how to define legal terms of utmost consequence to the Defendant. The Government's position is inconsistent with *Johnson v. United States*, 130 S. Ct. 1265 (2010).

### 2) Additional Definitions for Section 111(a)

*Serious bodily injury* is defined in the federal code as a bodily injury that involves (a) a substantial risk of death, (b) extreme physical pain, (c) protracted and obvious disfigurement, or, (d) protracted loss or impairment of the function of a bodily member, organ, or mental faculty. *See* 18 U.S.C. § 1365. Under the Model Penal Code, *serious bodily injury* is congruently defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Model Penal Code § 210.0 (1985).

*Bodily injury* is defined as (a) a cut, abrasion, bruise, burn, or disfigurement, (b) physical pain, (c) illness, (d) impairment of the function of a bodily member, organ, or mental faculty; or (e) any other injury to the body, no matter how temporary. *See* 18 U.S.C. § 1365. Under the Model Penal Code, *bodily injury* is defined similarly but more summarily, as "physical pain, illness or any impairment of physical condition." Model Penal Code § 210.0 (1985).

Applying the available U.S. Code and supplemental Model Penal Code definitions to 18 U.S.C. § 111(a), there can be no conviction for "simple assault" without an *actus reas* that involves either the causation of a *bodily injury* or induction of fear of an imminent *serious bodily injury*.

The Defense will argue that the actions of Mr. DaSilva do not amount to an assault as defined further by the definitions herein.

### 3) Insufficient Evidence of Intent

In ECF No. 51, p.7, the Government concedes that § 111(a) is a specific intent crime requiring proof of "willful" intent. Accordingly, for a conviction under Count Two, the assault must have been done with the *specific intent* to cause *bodily injury* or put the officer in reasonable fear that the defendant was capable of imminently causing *serious bodily injury*. The Defense will argue that the Government, in Mr. DaSilva's case, lacks proof of specific intent to commit an assault against the officers.

18 U.S.C. § 111(a)(1)'s "another felony" clause requires the Government to prove that at the time that Mr. DaSilva was committing the act in violation of 18 U.S.C. § 111(a)(1), that he contemporaneously possessed an intent to commit another felony offense. The Indictment contends that Mr. DaSilva, at the time he was committing Count Two, was intending to commit Count One. The Defense will argue that this is impossible because the intent and the conduct for Count One, the Government simultaneously contends, started at 2 PM; yet the intent and conduct for Count Two started at 4:30 PM and requires a future intent, as opposed to a past intent, to commit another felony. The Government's theory does not make sense. The Defense will argue that Government is unable to establish beyond a reasonable doubt that at the time he interacted with the police shield, or at the time between 4:30 and 4:40 PM, the defendant possessed the intent to commit *another* felony offense.

## V.) Counts Five and Seven — Physical Violence Against Person or Property



**COUNT FIVE**

On or about January 6, 2021, between approximately 4:30 and 4:40 pm, within the District of Columbia, **MATTHEW DASILVA** did knowingly engage in any act of physical violence against any person and property in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting.

**(Engaging in Physical Violence in a Restricted Building or Grounds**, in violation of Title 18, United States Code, Section 1752(a)(4))

**COUNT SEVEN**

On or about January 6, 2021, between approximately 4:30 and 4:40 pm, within the District of Columbia, **MATTHEW DASILVA** willfully and knowingly engaged in an act of physical violence within the United States Capitol Grounds and any of the Capitol Buildings.

**(Act of Physical Violence in the Capitol Grounds or Buildings**, in violation of Title 40, United States Code, Section 5104(e)(2)(F))

## COUNT 5 — 18 U.S.C. § 1752(a)(4)

The government has the burden of proving beyond a reasonable doubt all of the following elements:

11. That on or about January 6, 2021, between approximately 4:30 pm and 4:40 pm;

12. Within the District of Columbia;

13. The Government posted, cordoned off, or otherwise restricted an area within the United States Capitol or its Grounds;

14. The Vice President was temporarily visiting this area;

15. The defendant engaged in an act of physical violence;

16. The defendant acted with the specific intent to do so;

17. The act was directed against a person or property located within the restricted building or grounds.

## COUNT 7 — 40 U.S.C. § 5104(e)(2)(F)

The government has the burden of proving beyond a reasonable doubt all of the following elements:

1.  That on or about January 6, 2021, between approximately 4:30 pm and 4:40 pm;

2.  Within the District of Columbia;

3.  The defendant was within the United States Capitol Grounds or any of the Capitol Buildings;

4.  The defendant engaged in an act of physical violence;

5.  The defendant acted willfully and knowingly.


Count Five, under 18 U.S.C. § 1752(a)(4), requires that the government prove the defendant's specific intent to commit "an act of physical violence." Count Seven, under 40 U.S.C. § 5104(e)(2)(F), requires the government to prove that the defendant acted willfully and knowingly. Both Counts Five and Seven also require proof of an "act of physical violence."

In 40 U.S.C. § 5104(a)(1), an "act of physical violence" is defined as any act involving— (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property.

An assault under federal law is defined as an (a) attempt to cause or purposely, knowingly or recklessly cause bodily injury to another; or (b) negligently cause bodily injury to another with a deadly weapon; or (c) attempt by physical menace to put another in fear of imminent serious bodily injury. *See United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996). Bodily injury is defined as (a) a cut, abrasion, bruise, burn, or disfigurement, (b) physical pain, (c) illness, (d) impairment of the function of a bodily member, organ, or mental faculty; or (e) any other injury to the body, no matter how temporary. *See* 18 U.S.C. § 1365. Serious bodily injury is defined as a bodily injury that involves (a) a substantial risk of death, (b) extreme physical pain,

(c) protracted and obvious disfigurement, or, (d) protracted loss or impairment of the function of a bodily member, organ, or mental faculty. *See* 18 U.S.C. § 1365.

The Government's contention that an object held by a person, under common law, merges with the person for purposes of common law assault and battery is irrelevant to this statutory definition. The prohibition under 18 U.S.C. § 1752(a)(4) is not that of common law assault and battery, but that of a statutorily defined "act of physical violence," which is defined as any act involving— (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property in 40 U.S.C. § 5104(a) (1). This is a definition that varies from that of common law assault and battery. Nonetheless, under the D.C. Circuit's definition of common law assault, which is "an attempt with force or violence to do a corporal injury to another; and may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person," the act of pushing hands on a police shield would not suffice. *See Beausoliel v. United States*, 107 F.2d 292, 296 n.14 (D.C. Cir. 1939). The D.C. Circuit's definition of common law assault is very similar to the Model Penal Code definition of assault.

The Defense will argue that the Government is unable to meet its burden of proof for an "act of physical violence," nor that the defendant had such specific intent, nor that he acted willfully.

## VI. Count One — Evidence Insufficient

**COUNT ONE**

On or about January 6, 2021, between approximately 2:00 pm and 5:30 pm, within the District of Columbia, **MATTHEW DASILVA** committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder

which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

(**Civil Disorder**, in violation of Title 18, United States Code, Section 231(a)(3))

## COUNT 1— 18 U.S.C. § 231(a)(3)

The government has the burden of proving beyond a reasonable doubt all of the following elements:

1. That on or about January 6, 2021, between approximately 2:00 pm and 5:30 pm;

2. Within the District of Columbia;

3. A civil disorder existed;

4. This civil disorder obstructed, delayed, and adversely affected either (a) commerce or the movement of any article and commodity in commerce, or (b) the conduct and performance of any federally protected function;

5. During this time, a law enforcement officer was lawfully engaged in the lawful performance of his *official duties incident to and during* the commission of this civil disorder;

6. The Defendant attempted to or committed an act *in a violent manner* directed at this officer; (alternative: the Defendant attempted to or committed *an act* directed at this officer;)

7. The defendant had the specific intent of obstructing, impeding, or interfering with this law enforcement officer;

8. The defendant acted willfully and knowingly.

*United States v. Casper*, 541 F.2d 1275, 1276  (8th Cir. 1976); *Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969); *United States v. McArthur*, 419 F.Supp. 186 (D.N.D.1975).

The Defense will argue that the Government fails to reach the elements of this statute in three different ways.

a) <u>Civil Disorder</u>

A civil disorder on January 6, 2021 undoubtedly existed. The Defense will argue that the Government's evidence is nonetheless insufficient to prove that this civil disorder *obstructed, delayed, or adversely affected* (a) commerce or the movement of any article or commodity in commerce, or (b) the conduct or performance of any federally protected function, as is required to sustain a conviction for Count One under 18 U.S.C. § 231(a)(3).

b) <u>Specific Intent</u>

While an intent element is not expressly spelled out in 18 U.S.C. § 231(a)(3), an intent element is nonetheless implied by the courts. "It is true that Section 231 (a) (3) does not specifically refer to intent, but it only applies to a person who `commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers. Under such

phraseology, it will not be presumed that Congress intended strict liability for inadvertent or

accidental occurrences where, as here, the crime is grounded on the common law." *Viet Nam v.*

*Foran*, 411 F.2d 934, 937 (7th Cir. 1969); *United States v. Mechanic*, 454 F.2d 849, 854 (8th Cir.

1971) (§ 231(a) (3) must be construed to require intent). The government must prove "specific

intent." *United States v. Casper*, 541 F.2d 1275, 1276  (8th Cir. 1976). The level of intent applied

has been "willfully and knowingly." *United States v. McArthur*, 419 F.Supp. 186 (D.N.D. 1975).

Judge Bates of the United States District Court for the District of Columbia agrees that §

231(a)(3) is not a strict liability offense but is instead a specific intent statute. "§ 231(a)(3) is a

specific intent statute, criminalizing only acts performed with the intent to obstruct, impede, or

interfere with a law enforcement officer." *United States v. McHugh*, 583 F. Supp. 3d 1, 25 (D.C.

2022). As does the Government, which stated in its brief in *McHugh* — "[t]he civil disorder

statute punishes only concrete, intentional acts that are performed with the specific purpose to

obstruct, impede, or interfere with firefighters or law enforcement." *Id.*

> The text of § 231 itself points to a requirement of obstructive intent. The provision
> prohibits only "act[s] to obstruct, impede, or interfere"—the best and most natural
> interpretation of the word "to" in that phrase is as an indication of purpose: "acts
> [performed in order] to obstruct." Although it is conceivable that "to" could refer not to
> the actor's purpose but to the ultimate result of the conduct (e.g., "commit an act
> accomplishing obstruction"), such a reading would be unnatural at best. Furthermore, if
> Congress wished only to specify the result of the act, it had many better options for doing
> so, including by omitting "to" altogether: it simply could have said "whoever obstructs,
> impedes or interferes." Courts must strive to give effect to every word in a statute no
> matter how short—in § 231(a)(3), that effort results in the conclusion that the statute
> includes a scienter requirement.

*Id.* See also *United States v. Fischer*, Criminal Action No. 1: 21-cr-00234 (CJN) (D.C. Mar. 15,

2022)(citing *McHugh).*

The Defense will argue that although Count One requires proof of a specific intent to obstruct, impede, or interfere with a law enforcement officer, the Government fails to prove the defendant's specific intent to do so.

c) *Evidence of an Actus Reus*

§231(a)(3) requires the Government to prove that the conduct of the defendant served as an actual hindrance or impediment to an officer performing his duties incident to the January 6 civil disorder.

The verbs "obstruct" and "impede" mean to "hinder a particular person or thing." *See Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018). To "interfere," in this context, means "to interpose in a way that hinders or impedes," or "to come into collision or be in opposition." *Mirriam-Webster Dictionary* (1 Jul 2023) (available at https://www.merriam-webster.com/ dictionary/interfere). The Government must show that the conduct of the defendant hindered or impeded an officer performing his duties incident to the January 6 civil disorder.

Count Two, as charged, complicates matters further for the Government, by forcing the Government to prove that the defendant had the intent to commit Count One *after* Count Two. (*See Section IV supra for a full discussion of Count Two*.)

Additionally, some courts have interpreted § 231(a)(3) as requiring more than an act — requiring the Government to prove a *violent physical* act. The Eighth Circuit has ruled that § 231(a)(3) "applies only to violent physical acts." *United States v. Mechanic*, 454 F.2d 849, 852 (8th Cir. 1971); *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976); *United States v. Banks*, 368 F. Supp. 1245 (D.S.D. 1973); *United States v. Rupert*, No. 20-CR-104 (D. Minn. Mar. 12, 2021). Some District Court judges have disagreed. *See United States v. Mostofsky*, 579 F.

Supp. 3d 9, 24 (D.C. 2021); *United States v. McHugh*, 583 F. Supp. 3d 1, 29 (D.C. 2022)

(accord); *United States v. Wood*, Criminal Action No. 20-56 MN (D. Del. July 20, 2021).

Regardless of whether the "violent physical acts" or just "an act" standard is applied, the

Government is unable to meet its burden. The Defense will argue that the Government simply

lacks the essential evidence to constitute an *actus reus* for Count One.

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on July 7, 2023, I will electronically file the foregoing with the Clerk
of the Court for the United States District Court for the District of Columbia by using the CM/
ECF system. I certify that all participants in the case are registered CM/ECF users, and that
service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.