## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-564 (CJN)** |
| | : | |
| **MATTHEW DASILVA,** | : | |
| **Defendant.** | : | |

### GOVERNMENT'S COMBINED RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION FOR ACQUITTAL, Doc. 88, AND
### DEFENDANT'S MOTION TO MODIFY DETENTION ORDER, Doc. 89

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response in opposition to the Defendant, Matthew DaSilva's Motion for Acquittal, Doc. 88, and in opposition to the Defendant's Motion to Modify Detention Order, Doc. 89. Both motions should be denied in all respects.

### I.      Background

The trial in this matter commenced on July 17, 2023, and concluded on July 19, 2021. *See* 7/17/23, 7/18/23, and 7/19/23 Minute Entries. On July 19, at the close of the defendant's case, the defendant moved for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. *See* 7/19/23 Minute Entry. With agreement from the parties, the Court elected to reserve ruling on the motion until after the parties' closing arguments and issuing the verdict. *See* Fed. R. Crim. P. 29(b); 7/19/23 Minute Entry.

Later that same day, the Court issued its verdict, finding the defendant guilty of Count 1 (Civil Disorder), Count 2 (Assault on a Federal Officer), Count 3 (Entering and Remaining on Restricted Grounds), Count 4 (Disorderly and Disruptive Conduct on Restricted Grounds), Count 5 (Physical Violence on Restricted Grounds), and Count 7 (Physical Violence on Capitol

Grounds). The Court acquitted the defendant of Count 6 (Disorderly and Disruptive Conduct on Capitol Grounds).

Following the Court's verdict, the government orally moved for mandatory detention of the defendant pursuant to 18 U.S.C. §§ 3143(a)(2) and 3142(f)(1)(A), based on the defendant's conviction on Count 5, for committing an Act of Physical Violence within a Restricted Grounds, in violation of 18 U.S.C. § 1752(a)(4). *See United States v. Harris*, 21-cr-189 (CJN), Doc. 75, Order for Post-Conviction Detention. Defense counsel opposed the government's oral motion but acknowledged that the defendant did not have any legal arguments in opposition to the Court's finding in *Harris* that a violation of § 1752(a)(4) is a crime of violence within the meaning of § 3142(f).[1] Absent a legal argument to the contrary, the Court ordered the defendant detained pending sentencing. *See* 7/19/23 Minute Entry. Over the government's objection, the Court delayed the execution of that detention order until July 26, 2023, at noon, in the defendant's home jurisdiction to allow the defendant to return home to Texas from the trial in Washington, D.C. *See* 7/20/23 Order, Doc. 86. The government sought electronic monitoring of the defendant in the interim period, which the Court granted. *See id.*

The defendant filed his Motion for Acquittal, Doc. 88 and his Motion to Modify Detention Order, Doc. 89 on Friday, July 21. The Court then ordered the government to respond to the Motion to Modify Detention Order by 5:00 p.m. the following business day, Monday, July 24, and to the Motion for Acquittal in one week, by Friday, July 28.

---

[1] By way of background, the government sent defense counsel this Court's *Harris* detention decision on June 27, 2023, to ensure the defendant was aware of this potential outcome well in advance of trial. The government again raised the potential for mandatory detention at the pretrial conference on July 12, 2023.

To aid in the Court's expedited consideration of the defendant's Motion to Modify Detention Order, which relies in part on the likelihood of success of the Motion for Acquittal, the government submits this combined response.[2] The government nevertheless reserves the right to file additional briefing in response to the Motion for Acquittal by the Court's expedited deadline of July 28, particularly in light of the defendant's recently filed Supplemental Argument. For all of the reasons explained herein, however, the government submits that the Court already has all of the information it needs to deny the Motion to Modify Detention Order, if not the Motion for Acquittal, as well.

## II.     Legal Standards

### A.   Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29 permits the defendant to move for judgment of acquittal at the close of the government's case in chief or at the close of all evidence on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must consider the evidence "in the light most favorable to the government" to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted). Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F.

---

[2] Hours before the Court's deadline for the government's response to the Motion to Modify Detention Order, the defendant filed a supplemental argument in support of the Motion for Acquittal. *See* Def. Supp. Arg., Doc. 90. Nothing in this most recent filing alters the ultimate result of either the Motion for Acquittal or the Motion to Modify: both should be denied in all respects, and the supplemental briefing provides no grounds for a further delay of defendant's mandated incarceration under 18 U.S.C. § 3143.

Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)).

When considering a Rule 29 motion after a verdict, the Court "must view the evidence in the light most favorable to the verdict, and must presume that the [trier of fact] has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Credibility determinations are for the factfinder. *See United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also Glasser v. United States*, 315 U.S. 60, 80 (1942) (courts should not "weigh the evidence or determine the credibility of witnesses"). "If the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the factfinder to make," and the motion must be denied. *United States v. Jabr*, No. CR 18-0105 (PLF), 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (granting Rule 29 motion as to completed § 1752(a)(1) offense, denying Rule 29 motion as to attempt to commit § 1752(a)(1), and finding the defendant guilty of same following a bench trial) (citing *United States v. Jemal*, Criminal No. 05-0359, 2007 WL 778623, at *3 (D.D.C. March 12, 2007); *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C. Cir. 1986)).

As a theoretical matter, "the same standard guides a district court in resolving a Rule 29 motion whether in the context of a bench or jury trial." *Id.* at *4. In practice, however, "[i]n a bench trial, the judge acting as the trier of both fact and law implicitly rules on the sufficiency of the evidence by rendering a verdict of guilty." *United States v. Atkinson*, 990 F.2d 501, 503 (9th Cir. 1993) (holding that "no motion for acquittal is necessary in a bench trial in order to preserve for appeal a challenge to the sufficiency of the evidence"). Accordingly, a majority of circuits, including the D.C. Circuit, have held that "the failure to move for a judgment of acquittal does not foreclose an attack on the sufficiency of the evidence on appeal." *United States v. Whitlock*, 663

F.2d 1094, 1097 n.24 (D.C. Cir. 1980) (opinion of Robinson, J.) (collecting cases). This is so, because where the factfinder and the court are one and the same, a trial court's guilty verdict requires the court to have already concluded that there is *more than* a sufficiency of the evidence. "Rule 29 protects a defendant against an improper or irrational verdict of the jury." *United States v. Grace*, 367 F.3d 29, 34 (1st Cir. 2004) (internal quotations omitted). As such, it would be "odd to suggest that trial judges must be given the opportunity with a Rule 29 motion to protect themselves from their own capriciousness." *Id.*

B. <u>Mandatory Detention Pending Sentencing under 18 U.S.C. § 3143</u>

Under 18 U.S.C. § 3143(a)(2), "the judicial officer *shall* order that a person who has been found guilty of an offense in a case described in [§ 3142(f)(1)(A-C)] and is awaiting imposition or execution of sentence be detained unless … the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted[.]" (emphasis added). Here, the defendant is subject to mandatory detention pending sentencing, because he was convicted of a crime of violence, specifically, committing an Act of Physical Violence on Restricted Grounds. *See id.* §§ 3142(a)(2), 3142(f)(1)(A); *see also United States v. Harris*, 21-cr-189 (CJN), Doc. 75, Order for Post-Conviction Detention.

Section 3143 commands mandatory detention of defendants convicted of crimes of violence, *unless*, as relevant here, "the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted." *Id.* § 3143(a)(2)(A)(i).

III.   **Argument regarding Defendant's Motion for Acquittal**

The defendant has not met Rule 29's "demanding standard"; his motion should be denied in its entirety. *See United States v. Borda*, 768 F. Supp. 2d 289, 292 (D.D.C. 2011).

A. <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant entered, remained, and committed acts of physical violence and disorderly conduct within an established restricted perimeter.</u>

The defendant first argues that the government did not establish that the Capitol Building and Grounds were restricted within the meaning of 18 U.S.C. § 1752 on January 6, 2021. *See* Def. Mot. for Acquittal, Doc. 88, 3-5. This argument overlooks the substantial evidence of the restricted perimeter introduced at trial. Captain Mendoza of the U.S. Capitol Police testified to the many layers of signage, bike racks, snow fencing, and other barriers that were erected to establish the restricted perimeter. *See, e.g.*, 7/17 A.M. Trial Tr. 39-40. Captain Mendoza further testified that a captain of the Capitol Police drove the perimeter of the restricted area on the morning of January 6, 2021 to ensure that the perimeter had been established. *See id.* at 31:16-19. On cross-examination about some of the snow-fencing being torn down by rioters, Captain Mendoza testified that even if rioters attempted to tear down some barriers, those barriers did not simply disappear. *See id.* at 80. Accordingly, rioters entering the perimeter would have still seen the signs and barricades on the ground that alerted them to the restricted perimeter. And on redirect, Captain Mendoza maintained that although some signs were torn down by rioters, other signage remained. *See id.* at 80-81. This is sufficient evidence from which a rational trier-of-fact, taking all inferences in favor of the government, could conclude that the restricted perimeter was established.

The defendant does not address the fact that *even if* the implements of the restricted perimeter had somehow evaporated by the time the defendant entered the outermost restricted perimeter, as defined by government's Exhibit 003, other internal perimeters quite clearly still existed when the defendant passed through those internal perimeters. For example, when the defendant surged with the crowd onto the west plaza of Capitol Building at approximately 2:30 p.m., *see* Gov't Ex. 401, the crowd (including the defendant) broke through a "posted, cordoned

off, or otherwise restricted" perimeter when the crowd pushed past an established police line behind bike rack barricades. More, as the defendant engaged in his assaultive acts at approximately 4:33 p.m. in the lower west terrace tunnel, a rational jury could certainly find that at that point, the defendant was within an established restricted perimeter by virtue of the presence of the line of police officers that the defendant assaulted and tried to penetrate.

Accordingly, the defendant's argument that the restricted perimeter did not exist at the time of the defendant's entry and assault on officers fails as a factual matter under the Rule 29 standard. More, the defendant's argument also fails as a legal matter. As another court in this district recently found, "[r]ioters' success in knocking down barriers and doors, however, does not strip an area of its restrictions." *United States v. Ballenger*, No. CR 21-719 (JEB), 2023 WL 4581846, at *3 (D.D.C. July 18, 2023) (denying motion for judgment of acquittal following bench trial on, among other charges, charges for violating §§ 1752(a)(1) and (2)). The defendant's theory taken to its logical conclusion would hollow out Section 1752 altogether. "As evidenced by the legislative history, the goal of Section 1752 is to provide the fullest protection possible for Secret Service protectees." *United States v. Puma*, 596 F. Supp. 3d 90, 114 (D.D.C. 2022). Yet, the defendant's theory would allow one person to tear down signage before a riot and enable a flood of unauthorized persons to enter. "[R]ioters cannot simply 'annex' Capitol grounds in such a way as to un-restrict an area by forcing law enforcement's retreat." *United States v. Griffith*, No. CR 21-244-2 (CKK), 2023 WL 2043223, at *5 (D.D.C. Feb. 16, 2023); *cf. United States v. McHugh*, 583 F. Supp. 3d 1, 31-32 (D.D.C. 2022) (opining that the defendant's theory that the Secret Service, not another law enforcement agency, must set up the restricted perimeter "would contravene the statute's manifest purpose: to ensure that federal law criminalizes (and thereby deters) misconduct that may threaten a Secret Service protectee").

The defendant's related argument that he was not aware of the restricted perimeter fails for the same reasons. *See* Def. Mot. for Acquittal, Doc. 88 at 5. The testimony at trial established myriad reasons why the defendant was aware at the time of his assault that he had entered and remained in an area where he was not permitted to enter or remain. The government introduced sufficient evidence at trial for a rational factfinder to find that the defendant knowingly entered and remained within the restricted perimeter and then knowingly engaged in an act of physical violence within the restricted perimeter. *See generally*, 7/17/23 Testimony of Capt. Mendoza; 7/17/23-7/18/23 Testimony of FBI Special Agent Ray.

The defendant's recently filed Supplemental Argument, filed at Doc. 90, also fails. The defendant's argument would require the Secret Service to notify members of the public that a protectee was visiting within the restricted perimeter. This interpretation is contrary to the natural reading of the statute and Congressional intent; the Court should not countenance this interpretation. *See Puma*, 596 F. Supp. 3d at 114; *Griffith*, 2023 WL 2043223, at *5. Furthermore, contrary to the defendant's assertion in the filing, this interpretation is not captured by the Court's legal instructions. The government will expand upon this argument in a forthcoming filing.

    B.  <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant assaulted a federal officer and caused that officer to feel pain, or at least recklessly disregarded the risk that the officer would feel pain.</u>

The defendant next argues that the government introduced insufficient evidence of an assault. This argument also fails. To begin with, the motion, like the defense's closing argument, mischaracterizes the evidence and testimony introduced at trial, most notably the body worn camera footage ("BWC"). The factfinder was entitled to reject counsel's characterization of the riot shields as so "slippery" that the defendant's hands were merely "gliding" on contact with the police riot shields. *See* Def. Mot. for Acquittal, Doc. 88 at 6.

Defendant's Motion for Acquittal further asks the Court to re-weigh and re-asses the Court's own credibility determinations on Officer Sterling's testimony. *See id.* at 8-9. To reiterate, Rule 29 motions following a bench trial are subject to the same standards as in jury trials. *See Jabr*, 2019 WL 13110682, at *4. And, in the context of a Rule 29 motion, the "court must view the prosecution's evidence in the light most favorable to the government, 'drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the [factfinder] to determine credibility, weigh the evidence and draw justifiable inferences of fact.'" *See, e.g.*, *Williamson*, 81 F. Supp. 3d at 89 (quoting *United States v. Battle*, 613 F.3d 258, 264 (D.C.Cir. 2010). "Further, a court 'must presume that the [factfinder] properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *Id.* (quoting *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983)). The **uncontroverted** testimony at trial was that Officer Sterling experienced pain based on the forcible pressure applied to his riot shield by the defendant—a full-grown man, pressing his entire body weight into the shield as if he were a football lineman.[3] Drawing all inferences in the government's favor, a

---

[3] The defendant's Motion for Acquittal is dripping with innuendo to improper testimony that the Court struck on defense counsel's *own* motion. *See, e.g.*, Def. Mot. for Acquittal, Doc. 88 at 9-10. As the Court will recall, on the second day of trial, defense counsel called an undisclosed "expert" witness, retired Alexandria police officer Brady Sanderson. In a gross deviation from the Rules of Criminal Procedure, this Court's scheduling orders, and norms of professional courtesy, defense counsel provided no notice of this witness to either the Court or the government until the moment Sanderson walked into the courtroom. Defense counsel argued that this "expert" was needed, because she was "surprised" when the government elicited testimony from a victim officer that directly addressed an element of the offense that she had been advocating for months. Respectfully, Sanderson testified incredibly that based on a handful of civil disorder trainings he has led and his experience with precisely one in-real-life civil disorder that was nothing comparable to January 6, 2021, no officer could have *possibly* experienced pain through a riot shield. Defense counsel eventually moved to strike the entirety of her own "expert's" testimony, rather than accept a continuance to allow time for the "expert" to prepare a proper Rule 16 report, for the government to identify and call a rebuttal expert witness, and for the government to call additional victim officers. The defendant's current motion underscores the problem with this attempted ambush. Despite defense counsel's motion to strike the testimony, the specter of Sanderson's testimony

rational factfinder had more than sufficient evidence from which it could find that the defendant committed an assault against Officer Sterling, as well as the other officer holding the riot shield that he attacked.

Importantly, the Court's legal instructions imported the Model Penal Code's definition of assault. *See* Instructions, Doc. 76 at 6. The legal instructions that the defendant proposed, and the Court adopted over the government's objection, defined assault as "an attempt to cause or purposely, knowingly, or recklessly cause bodily injury to another[.]" *Id.* The Model Penal Code in turn, defines the mental state of "recklessly" as follows:

> "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element…will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."

Model Penal Code § 2.02(2)(c). Using this definition, a reasonable factfinder could have, if it so chose, disregarded Officer Sterling's testimony entirely and still determined that the defendant acted recklessly in heaving the whole of his body weight against the police officers' shields. *See id.* After watching the ongoing assaults in the tunnel, the defendant consciously disregarded a substantial and unjustifiable risk that he would harm the officers, and his disregard of that risk involved a gross deviation from the standard of conduct that a law-abiding person would observe in the defendant's situation. *See id.*

---

looms over defendant's motion. For example, the suggestion that "common sense tells us that the two men would divide between them anything felt on the officer's side of that shield" is a near-recitation of Sanderson's stricken, and groundless, testimony.

C. <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant at least *attempted* to assault a federal officer and cause bodily injury.</u>

The defendant's alternative argument, that insufficient evidence was introduced as to the defendant's attempt to cause bodily injury, also fails. Given that factfinders are rarely given the opportunity to truly occupy a defendant's mindset at the time, it is black letter law that intent or *mens rea* can be inferred from a defendant's conduct. *See, e.g.*, *United States v. Hite*, 896 F. Supp. 2d 17, 24 (D.D.C. 2012) ("[C]ourts and juries every day pass upon knowledge, belief and intent— the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.") (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008))). Based on all of the evidence introduced at trial, including the defendant's deliberate approach towards the tunnel after watching relentless and vicious assaults on that line of officers, a rational factfinder could conclude that the defendant *at least* attempted to cause bodily injury on those of officers.

D. <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant's assault on an officer involved physical contact.</u>

Finally, the defendant's argument that there was insufficient evidence of physical contact is similarly meritless. *See* Def. Mot. Acquittal, Doc. 88 at 13-14. To start, the government introduced video evidence depicting the defendant reaching out and striking the hand of a police officer as the officer attempted to deploy a can of OC spray at the defendant. While the defendant argued at trial, and argues now in his motion, that the strike was an involuntary reaction, a reasonable factfinder had more than sufficient grounds to find that the defendant voluntarily and intentionally struck the officer's hand.

The defendant also ignores the definition of "voluntary" under the Model Penal Code. *See* Model Penal Code § 2.01(2). Specifically, the Model Penal Code explains that "a bodily movement

11

that otherwise is not a product of the effort or determination of the actor" is *not* a voluntary act. *Id.* § 2.01(2)(d). In other words, if the act is based on effort or determination by the actor, it is a voluntary act. Moreover, the defendant's motion mischaracterizes the prosecutor's closing argument on this point. *See* Def. Mot. for Acquittal, Doc. 88 at 13 ("The prosecutor admitted during her rebuttal at closing argument that putting up her hand towards the irritant spray would be her reaction to the spray as well."). While it may be a natural response to attempt to deflect pepper spray, that response assumes a *determination* of the threat of the pepper spray.

The defendant's argument implicitly suggests that the factfinder could only find that the defendant made contact with a victim officer when he struck an officer's hand when that officer attempted to deploy OC spray at the defendant. But the evidence at trial showed extensive physical contact with the officer's riot shield both before and after the defendant struck the officer's hand. Indeed, the statute does not require body-to-body contact. *See United States v. Stoddard*, 407 F. App'x 231, 233 (9th Cir. 2011) ("Stoddard nonetheless argues that spitting does not rise to the level of a felony assault involving physical contact because it does not involve body-to-body touching. However, the plain statutory text does not require such contact; it merely requires 'physical contact.' 18 U.S.C. § 111(a).") (citing *United States v. Ramirez*, 233 F.3d 318, 322 (5th Cir. 2000); *see also United States v. Quinnone*s, 16 F.4th 414, 420 n.10 (3d Cir. 2021) (collecting cases from the First, Fourth, Sixth, Ninth, and Tenth circuits regarding assault-on-federal-officers committed by spitting or throwing urine or feces at federal officers); *United States v. Hightower*, 512 F.2d 60, 60-61 (5th Cir. 1975) (grabbing a federal wildlife agent's jacket is assault on a federal officer). If the Court were to adopt the defendant's standard, throwing a brick at an officer, or grabbing an officer's service weapon without actually touching the body of that officer would not

constitute assault under 18 U.S.C. § 111. A reasonable factfinder could certainly find that the defendant's extensive pushing on officer's riot shields constituted physical contact.

Finally, the defendant is wrong as a legal matter that the physical contact must have been an attempt to cause pain or physical impairment. *See* Def. Mot. for Acquittal, Doc. 88 at 13. The statute requires only that "such acts *involve* physical contact with the victim of that assault." 18 U.S.C. § 111(a) (emphasis added). This does not mean that the act that caused physical pain must also be completely coterminous with the defendant's acts that involved physical contact. Here, the defendant made body-to-body contact with an officer in the midst of other acts (including multiple instances of his pushing on riot shields and an attempt to pull a riot shield away) that a reasonable factfinder could conclude constitute assault. That is sufficient.

   E.   The government introduced sufficient evidence that the defendant resisted, opposed, impeded, intimidated, and interfered with officers with the intent to commit another felony, specifically, Civil Disorder under 18 U.S.C. § 231.

The government recognizes that the Court's verdict did not appear to rely on the "other felony" prong of § 111(a).[4] Regardless, Rule 29 asks the Court to consider whether there was sufficient evidence for *any* rational factfinder to find the defendant guilty, prior to the entry of the verdict. Considering the evidence introduced at trial, the government maintains that the evidence was sufficient to convict the defendant under *either* the physical-contact prong discussed above *or* the other-felony prong.

Based on the video evidence of the defendant attempting to keep a door shut that other rioters believed was holding back law enforcement officers at approximately 2:45 p.m. (*see* Gov't Ex. 402 and 403), the evidence showing the defendant continuing to resist leaving the lower west

_____

[4] As of the time of this filing, the government does not yet have the transcript from the Court's oral verdict.

terrace and west plaza after 5:00 p.m., and the evidence of a litany of other obstructive acts in between, a reasonable factfinder had sufficient evidence to conclude that the defendant assaulted officers in the tunnel at 4:33 p.m. with the *intent* to continue participating in a Civil Disorder under § 231. While the defendant's Motion for Acquittal does not challenge his conviction for Civil Disorder, the evidence overwhelmingly showed that between approximately 2:30 p.m. and 5:15 p.m., the defendant knowingly obstructed, impeded, and interfered with officers engaged in the performance of their official duties during a civil disorder that adversely affected both commerce and federally protected functions.

  F. <u>The government introduced sufficient evidence that the defendant aided and abetted other rioters in assaulting officers.</u>

The government also introduced sufficient evidence to allow a rational factfinder to conclude that the defendant aided and abetted other rioters in assaulting officers. Although the Court did not rely on this theory of the case in its oral verdict, a reasonable factfinder could have. At trial, the government introduced extensive evidence of the defendant's awareness of the rioters' countless assaults against the police officers stationed in the tunnel. The government also introduced specific evidence of how the defendant's assault on officers aided and abetted the other rioters assaulting officers. For example, the defendant's pushing and pulling of an officer's riot shield forced the officer into a position wherein he was more vulnerable to the incoming projectiles hurled at the officers in the tunnel. *See* Gov't Ex. 305d, 305e. Moments after the defendant is seen pushing and pulling on an officer's shield, that same officer is hit in the head with a flying desk drawer. *See id.* Seconds later, another rioter is able to fully wrest the officer's shield from his hands. *See* Govt' Ex. 301c.

Accordingly, based on all of the evidence introduced at trial, a rational factfinder could have found the defendant guilty on Count 2 based on an aiding and abetting theory.

G.  <u>Conclusion as to the Defendant's Motion for Acquittal</u>

For all of the foregoing reasons, the defendant's Motion for Acquittal should be denied as to all counts.

**IV.     Argument regarding Defendant's Motion to Modify Detention Order**

Turning to the defendant's second motion, the defendant's Motion to Modify Detention Order, Doc. 89, seeks "release [of] the defendant on his original pretrial conditions because there is a substantial likelihood that the defendant's motion for acquittal will be granted" under 18 U.S.C. § 3143(a)(2)(A)(i), or in the alternative, "modif[ication of] the order of detention to be one of detention through home confinement." Def. Mot. to Modify, Doc. 89 at 1.

A.   There is no substantial likelihood of success on the Motion for Acquittal, and the defendant's request for release should be denied.

The defendant first argues that the Court should release the defendant based on a likelihood of success of his Motion for Acquittal. This request should be denied. Here, the defendant is not likely to succeed on the merits of his Motion for Acquittal for all the reasons stated in the government's opposition to the defendant's Motion for Acquittal. *See supra* at 5-14. The defendant's request to be released based on a substantial likelihood of acquittal is particularly strained in the context of a bench trial, where, by virtue of its own verdict, the Court has already implicitly found that the evidence was sufficient for a rational factfinder to find guilt. Indeed, it seems frivolous that the defendant can even credibly assert that days after the Court issued its judgment – a thorough recitation of facts and law – that it would then immediately reverse its judgment in its entirety.

B.   The defendant's request for home detention should similarly be denied.

In the alternative, the defendant seeks to modify the Court's detention order to require only home detention. *See* Mot. to Modify, Doc. 89 at 3. This request should also be denied.

This portion of the defendant's motion cites no case law in support of this request, because there is no case law to support it.[5] In an analogous situation, another court of this district denied a convicted defendant's request for bail, or home detention, pending appeal:

> Upon conviction, "[t]he law has shifted from a presumption of release to a presumption of valid conviction." In light of this shift, a "demanding" standard must be met for a Court to find a substantial question pursuant to § 3143(b)(1); there must be "a close question or one that very well could be decided the other way."

*United States v. Baylor*, No. CR 16-0180 (ESH), 2019 WL 6312237, at *1 (D.D.C. Nov. 25, 2019) (quoting *United States v. Perholtz*, 836 F.2d 554, 555-56 (D.C. Cir. 1988) (per curiam)) (denying motion for bail *or home detention* pending appeal, despite the court's finding that the defendant did not pose a flight risk or a danger to the community); *see also United States v. Wiggins*, 613 F. Supp. 3d 348, 353 (D.D.C. 2020) (Jackson, J.) ("Once a defendant is convicted of an offense, a different detention statute, with different presumptions [as compared to pre-trial detention], applies—namely, 18 U.S.C. § 3143. In this circumstance, far from promoting liberty, a court is generally required to detain the defendant as the background rule[.]"); *United States v. Childs*, No. 18-cr-69, 2020 WL 2794456 at *1 (E.D. Wisc. May 29, 2020) (denying post-guilty plea motion for home detention pending sentencing during COVID-19 pandemic; "[t]he defendant has been found guilty of a violation of section 1591. There is no likelihood that a motion for acquittal or new trial will be granted. The government is recommending a prison sentence. Under § 3143, the court must detain the defendant, regardless of risk of flight or dangerousness"); *United States v. Barrientos*, No. 2:16-cr-00046 (TLN), 2020 WL 1866111 at *3 (E.D. Cal., April 14, 2020)

---

[5] On Westlaw, the government searched for any cases citing 18 U.S.C. § 3143(b) and the phrase "home detention" and found no cases from the D.C. Circuit and just five cases from this district, a relevant subset of which will be discussed *infra*.

(denying motion for bail or home detention pending appeal). Moreover, home detention is simply not equivalent to detention in a Bureau of Prisons facility:

> While a defendant's movement may be severely curtailed by the conditions of his home confinement, *it cannot seriously be doubted that confinement to the comfort of one's own home is not the functional equivalent of incarceration in either a practical or a psychological sense.* In the circumstances of this case-where the defendant affirmatively sought the right to self-surrender, and then, bent on deferring the start of his prison term, offered to subject himself to home confinement-allowing the defendant credit for time spent confined to his residence prior to self-surrender would, in essence, allow the defendant to choose the place and manner of his confinement. Such a ruling would not only be inconsistent with statutory law and the clear weight of authority, but would fly in the teeth of common sense.

*United States v. Zackular*, 945 F.2d 423, 425 (1st Cir. 1991) (emphasis added).[6]

Here, the defendant stands convicted of two felonies -- 18 U.S.C. § 111(a), which carries a maximum term of imprisonment of eight years, and § 231(c), which carries a maximum term of

---

[6] Although the defendant does not address the issue in his motion, any time spent in home detention prior to the imposition of the Court's ultimate sentence will not be credited towards his sentence. *See Reno v. Koray*, 515 U.S. 50, 65 (1995) (pre-trial, Court-ordered detention at a community treatment center is not "official detention" for the purposes of 18 U.S.C. § 3585(b)). Unless and until the Court commits the defendant to the custody of the Attorney General for confinement, the defendant's term of "official detention" has not commenced. *See id.* at 56-57 ("[U]nder the language of the Bail Reform Act of 1984, a defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions, as respondent was, is 'released.'"). Once the defendant is committed to the custody of the Attorney General, only the Bureau of Prisons has the authority to determine the appropriate facility for his confinement. *See id.* at 59, 63; *United States v. Wilson*, 503 U.S. 329, 334-35 (1992) (holding that the Attorney General, rather than district courts, computes "credit" for federal sentences). *See also United States v. Stanley*, No. 22-1500, 2022 WL 17881554 at *1 (6th Cir. Dec. 20, 2022) ("The Supreme Court has held that 'a district court does not have jurisdiction to apply credit against a sentence under section 3585(b).'") (quoting *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992); citing *United States v. Wilson*, 503 U.S. 329, 333 (1992))); *Federal Bureau of Prisons v. Moreno*, 145 F. App'x 223, 225 (9th Cir. 2005) (holding on habeas review that the district court did not violate the defendant's due process rights when it failed to advise the defendant that post-conviction, pre-sentence home detention would not be credited against his sentence by the Bureau of Prisons, because he was not in "official detention" under 18 U.S.C. § 3585(b)).

imprisonment of three years. These are serious crimes, and under the U.S. Sentencing Guidelines, he is facing a substantial sentence of years in prison and is not eligible for home confinement.

The government anticipates that the defendant's base offense level will be fourteen pursuant to U.S.S.G. § 2A2.2. In addition, the defendant will be subject to a six-level adjustment pursuant to U.S.S.G. § 3A1.2(a) and (b), because the applicable guideline is from Chapter Two, Part A, the victim was a government officer or employee, and the offense of conviction was motivated by that status. Accordingly, the government anticipates that the defendant will be sentenced pursuant to a Guidelines offense level of twenty. Offense level twenty, with Criminal History Category I, results in a Guidelines-recommended sentence of 33-41 months of imprisonment. Importantly, offense level twenty, with Criminal History Category I, falls within Zone D of the Sentencing Table. "If the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment." *Id.* § 5C1.1(f).  The Guidelines authorize probationary or split sentences with home confinement only when the applicable guideline range falls within Zones A, B, or C. *See* U.S.S.G. § 5C1.1 (b), (c), and (d). But given the severity of his crimes, the defendant is not eligible for such a less restrictive sentence.

Under these circumstances, the defendant's motion, which argues that "there is no evidence to indicate that home confinement would be an inappropriate method of detention" has it completely backwards. Taken together, the defendant's conviction for multiple felonies, his conviction for a crime of violence, the mandatory detention statute, and the defendant's likely applicable sentencing range, all indicate that detention under the custody of the Attorney General is the only appropriate outcome here, and the defendant's motion has not overcome these standards. Though the defendant walked into court last week as an innocent man entitled to his

liberty until proven guilty, that presumption is now reversed. *See Wiggins*, 613 F. Supp. 3d at 353.

Home detention in inappropriate and does not serve the purposes of 18 U.S.C. § 3143(2).

      C.  <u>This case presents no "exceptional reasons" that would merit release under Section 3145(c).</u>

      Though the defendant's motion does not raise the issue, for completeness, the government

recognizes that other courts in this district have found that "there appears to be one additional

escape hatch for a defendant who is subject to mandatory detention pending sentencing under

section 3143(a)(2): the statutory provision that is codified at 18 U.S.C. § 3145(c)." *Wiggins*, 613

F. Supp. 3d at 354 (denying motion for release to home confinement pending sentencing during

the height of the COVID-19 pandemic in April 2020).[7]

> Thus, section 3145(c) permits the court to release "under appropriate conditions"
> detainees who satisfy three criteria. First, the detainee must be a person who is, or
> was, "subject to detention pursuant to section 3143(a)(2)"; second, the detained
> must "meet[ ] the conditions of release set forth in section 3143(a)(1)"; and third,
> the detainee must "clearly show[ ] that there are exceptional reasons why [his]
> detention would not be appropriate." *Id.*
> …
> Congress did not define the term "exceptional reasons" in the statute, nor did it
> provide examples, so, naturally, courts have laid out their own standards. *See, e.g.*,
> *United States v. Garcia*, 340 F.3d 1013, 1018 (explaining that, when evaluating a
> release motion under section 3145(c), a "court should examine the totality of the
> circumstances and, on the basis of that examination, determine whether, due to any

---

[7] Federal courts are divided over whether § 3145(c) gives authority to trial courts (as opposed to courts of appeals) to release post-verdict, pre-sentence defendants. *See, e.g.*, *United States v. Harris*, 451 F. Supp. 3d 64, 69-70 (D.D.C. 2020) (Moss, J.) (discussing the majority and minority views); *United States v. Smith*, 34 F. Supp. 3d 541, 546 (W.D. Pa. 2014) (discussing the split); *see also United States v. Cochran*, 640 F. Supp. 2d 934, 936 (N.D. Ohio 2009) (same). "Although the D.C. Circuit has yet to weigh in, every court of appeals that has addressed the question has held that a district court judge may order a person released pursuant to 18 U.S.C. § 3145(c)." *Harris*, 451 F. Supp. 3d at 69 (collecting cases and noting that the "overwhelming majority of the judicial decisions interpreting § 3145(c) have found that district courts have the authority under § 3145(c) to release defendants from mandatory detention). Accordingly, for the purposes of this response, and in light of now-Justice Jackson's decision in *Wiggins* (*supra*) and Judge Kollar-Kotelly's decision in *Hite* (*infra*), the government assumes that this Court has the *authority* to release the defendant under § 3145(c) but maintains that the defendant does not meet the criteria for such relief.

> truly unusual factors or combination of factors ... it would be unreasonable to incarcerate the defendant" pending sentencing); *United States v. Larue*, 478 F.3d 924, 925 (8th Cir. 2007) (defining "exceptional" under § 3145(c) as "clearly out of the ordinary, uncommon, or rare.").

*Id.* at 356; *see also United States v. Hite*, 72 F. Supp. 3d 29, 33 (D.D.C. 2014) ("Section 3145(c) does not define the term 'exceptional reasons,' though courts have generally read the phrase to mean circumstances that are 'clearly out of the ordinary, uncommon, or rare.'") (quoting *United States v. Briggs*, 577 F.Supp.2d 435, 437 (D.D.C. 2008); *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993))); *Briggs*, 577 F. Supp. 2d at 437 (same) (collecting cases).

Thus, the standard for "exceptional circumstances" is a high one. Federal courts have found exceptional circumstances in cases where the defendant has demonstrated "successful and remarkable rehabilitation related to the underlying offense" or "extraordinary assistance provided to the government." *United States v. Sharp*, 517 F. Supp. 2d 462, 464 (D.D.C. 2007). Courts have also considered "whether detention imposes an unusually harsh effect of a personal nature not ordinarily experienced by an individual facing incarceration," and "whether additional incarceration would result in an unjust extended period of detention because the defendant's uniquely low culpability is likely to reduce the sentence or a novel legal question for appeal exists." *United States v. Green*, 250 F. Supp. 2d 1145, 1150 (E.D. Mo. 2003) (summarizing categories of "exceptional circumstances" after review of case law). More recently, courts in this district have also found that the arrival of the COVID-19 pandemic in the spring of 2020 was an exceptional circumstance. *See Harris*, 451 F. Supp. 3d at 70-71; *but see United States v. Myhre*, 514 F. Supp. 32 1090, 1093 (D. Minn. 2021) ("But if the mere existence of a pandemic were sufficient to meet the exceptional-reasons standard, the Mandatory Detention Act would be categorically inapplicable during a pandemic—a conclusion for which Myhre has not established a legal basis.").

Characteristics or circumstances that are relatively common among criminal defendants are not exceptional circumstances justifying release under § 3145(c). Accordingly, a defendant's lack of criminal history or pre-trial compliance are not exceptional reasons for § 3145(c) purposes. *See United States v. Lea*, 360 F.3d 401, 403-04 (2d Cir. 2004) (finding district court's decision to release defendant found guilty of a crime of violence – witness retaliation in violation of 18 U.S.C. § 1513(b) – pre-sentencing was clearly erroneous, because there was nothing "exceptional" about the defendant's enrollment in school, continuous employment, or status as a first-time offender).

Even health-related hardships and family burdens are typically insufficient to establish exceptional reasons under the Mandatory Detention Act except in the most unusual of circumstances. *See, e.g.*, *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (observing that "it is a rare case in which health conditions present an 'exceptional reason'" that warrants release) (collecting cases); *United States v. Lippold*, 175 F.Supp.2d 537, 540 (S.D.N.Y. 2001) (stating that "purely personal" reasons, such as caring for young children with "unusual" health problems, "do not typically rise to the level of 'exceptional reasons'"). As the *Lippold* court observed:

> Although the need to follow Congress's mandate regrettably results in separating [the defendant] from his family and work, such is the case with every defendant facing a custodial sentence. As the *Burnett* court noted, if such hardships were determined to be "exceptional," then inevitably defendants committing the same offenses would be treated disparately for reasons unrelated to their crimes or personal character. A drug trafficker with no family would immediately go to jail while a drug trafficker convicted of the same offense with a family would remain on bail. Such an inequitable result surely does not advance either Congress's goals as evidenced by the statutory language of § 3145(c), or the more fundamental ends of our criminal justice system.

*Id.* (quoting *United States v. Burnett*, 76 F.Supp.2d 846, 849-50 (E.D. Tenn. 1999)).

More, even the potential for a new trial after a defendant's conviction *has been overturned* by the Court of Appeals is not an exceptional circumstance justifying release. *See Hite*, 72 F. Supp.

3d at 33 (denying motion for release pending re-trial following successful appeal of initial conviction for attempted enticement of a minor, because "the mere prospect of a new trial is not enough, by itself, to constitute an 'exceptional reason'" justifying release) (quoting *United States v. Wright*, 09-cr-129 (ESH), 2013 WL 6407031 at *2 (D.D.C. 2013)); *Jones*, 800 F. Supp. 2d 90, 93-94 (D.D.C. 2011) (denying motion for release pending Supreme Court's cert grant of the defendant's appeal).

Here, there are no exceptional reasons why the defendant's mandatory detention is not appropriate. His case is not rare or unusual – the government has now charged more than one thousand January 6-related cases and taken more than 130 of those cases to trial. It is a deeply unsettling and profoundly unfortunate fact that on January 6, the defendant's assaultive conduct was in fact *un*-exceptional over the course of the many hours during which officers sustained ongoing attacks by rioters. The defendant has not shown any remorse or rehabilitation for his crimes, and he is not cooperating with the government.

Contrary to defense counsel's characterizations, at 51, the defendant's age can hardly be an exceptional circumstance; there is no claim that he is seriously ill; and there is no claim that he has extraordinary familial responsibilities.

Similarly, the defendant's lack of criminal history or pretrial violations cannot be enough to meet the "exceptional" requirement of the statute. *See Lea*, 360 F.3d at 403–04 (lack of criminal record is not exceptional)*; United States v. Devinna*, 5 F.Supp.2d 872, 873 (E.D. Cal. 1998) (holding that a defendant must show something more than a low likelihood of flight or danger to others). For the same reasons, preparation for his sentencing hearing is not an exceptional reason justifying release, because every defendant awaiting sentencing is in the same position.

Thus, the defendant's motion provides no basis for the Court to conclude that this case presents an "exceptional" circumstance. Under these circumstances, a finding that the defendant is in an "exceptional" circumstance would render Congress' judgment regarding the detention of defendants who have committed a crime of violence utterly meaningless. The Court should reject any such request.

## V.     Conclusion

For all the foregoing reasons, the government respectfully requests that the Court deny both of the defendant's motions.

The defendant has not, and cannot, meet the demanding standard of a Rule 29 motion for acquittal. The government introduced sufficient evidence for a reasonable factfinder to conclude that he is guilty of Counts One, Two, Three, Four, Five, and Seven, because he is in fact guilty. The government respectfully asks the Court to deny the Motion for Acquittal in its entirety.

For the same reasons, the defendant has not shown that there is a substantial likelihood of success on the Defendant's Motion for Acquittal, and the defendant, as a convicted felon who has been found guilty of a crime of violence by this Court, is therefore subject to mandatory detention pending his sentencing. Further, there are no exceptional reasons justifying his release pending sentencing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     /s/ *Katherine E. Boyles*
Katherine E. Boyles
Assistant U.S. Attorney
D. Conn. Fed. Bar No. PHV20325
United States Attorney's Office

601 D Street NW
Washington, D.C. 20001
Phone: 203-931-5088
Email: Katherine.Boyles@usdoj.gov

/s/ *Eric W. Boylan*
Eric W. Boylan
Assistant U.S. Attorney
Texas Bar No. 24105519
United States Attorney's Office
601 D Street NW
Washington, D.C. 20001
Phone: 202-815-8608
Email: Eric.Boylan@usdoj.gov