UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL CASE NO: 1:21-CR-00564 |
| ) | |
| MATTHEW DASILVA, ) | |
| ) | |
| DEFENDANT. ) | |

**RULE 29(C) MOTION FOR JUDGMENT OF ACQUITTAL**

In response to the entry of a Guilty verdict on Counts One through Five and Count Seven, the defendant renews his motion for judgment of acquittal on each count of conviction and additionally moves for acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, arguing that the verdicts of Guilty on Counts Two, Three, Four, Five, and Seven lack legal sufficiency. The defendant, therefore, renews his prior arguments made in support of his Rule 29(a) motion in ECF No. 88, 90, and 92, and supplements the arguments under the Rule 29(c) standard with the articulation and reasoning of the Court's verdict as read on July 19, 2023.

## **Legal Standard**

The purpose of a Rule 29 motion is to safeguard the rights of the defendant to remain free from conviction based on "surmise and conjecture, without evidence." *See Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954) (reversing a trial court's conviction and entering a judgment of acquittal); *see also Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir.), cert.

denied, 331 U.S. 837, reh'g denied, 331 U.S. 869 (1947) (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained").

The standard for reviewing a post-verdict motion for judgment of acquittal is in light most favorable to the trier's verdict; the court must presume that the factfinder "has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). A verdict can be overruled only if no reasonable factfinder could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. *Id*.

The trial court has a responsibility to the criminal justice system to grant a defendant's Rule 29(c) motion when the fact-finder has no evidentiary basis for its verdict. *United States v. Campbell*, 702 F.2d 262, 267 (D.C. Cir. 1983).

**Argument**

I. **There is No Evidentiary Basis for Conviction on Counts Three, Four, and Five Because the Capitol Grounds Were Not "Otherwise Restricted" When Mr. DaSilva Entered**

Counts Three, Four, and Five require a verdict with the evidentiary basis that Defendant committed a prohibited act in an area that was "posted, cordoned off, or otherwise restricted." 18 U.S.C. § 1752(c)(1).

Through witnesses and photo exhibits, the Government proved that Capitol Police intended for the Capitol Grounds around the Capitol Building, including the western area in front of the Building, to have been restricted. Capitol Police cordoned off the area they intended to be restricted and posted signs on fencing to indicate a restriction on entry. Nonetheless, the signs

MEDVIN LAW »
PAGE 2 / 12

and physical barriers delineating the restricted perimeter around the western parts of the Capitol Grounds were removed sometime before 1 PM on January 6, 2021. See Defense Exhibits 1A, 1B.

At the time that Mr. DaSilva entered the area, sometime after 2:30 PM, he did not pass any restrictions that were posted or which cordoned off the western part of the Capitol Grounds that he entered. The Government's Capitol Police witness, Capt. Mendoza, admitted that after the posted signs and physical barriers cordoning off the area had been removed by protesters on January 6, 2021, these restrictions were not replaced. The restricted perimeter was not visibly delineated in any other way.

The use of the term "otherwise restricted" in 18 U.S.C. § 1752(c)(1) means restricted in a similar manner to the preceding restrictions. See *Begay v. United States,* 553 U.S. 137, 140-43 (2008); *United States v. Fischer*, 64 F.4th 329, 345 (D.C. Cir. 2023) (when a statute "includes a list of examples followed by 'otherwise' in a single, unbroken sentence within the same subparagraph… the position of 'otherwise' [] inherently relates the word to the list immediately before it"); *United States v. Williams*, 553 U.S. 285, 294 (2008) ("a word is given more precise content by the neighboring words with which it is associated"). The terms in 18 U.S.C. § 1752(c)(1) before the phrase "otherwise restricted" are the terms "posted" and "cordoned off" — which are ***types of visible or physical restrictions that objectively delineate or designate defined boundaries or a defined perimeter as restricted***.[1] Therefore, the statute's plain text requires

---

[1] At the time of enactment, neither term "posted" nor "cordoned" appeared in Black's Law Dictionary (4th ed. 1968). Accordingly, a standard dictionary must be used to define the terms. At the time of § 1752's enactment, "posted" meant to "forbid [property] to trespassers under penalty of legal prosecution by notices placed around the boundaries." Webster's Third New International Dictionary 1771 (1966). "Cordon" referred to "a line or circle of persons or objects around any person or place," while "cordon off" meant "to form a protective or restrictive cordon around [a designated area]." *Id*. at 506.

evidence of a similar type of visible or physical restriction. In order to sustain a conviction under 18 U.S.C. § 1752, the evidence of restriction that must be presented by the Government at trial is a posting, a cordoning off, or something inherently similar to posting or cordoning off—something that physically and objectively defines a perimeter or its boundaries as restricted.

The Government failed to present any evidence that at the time that Mr. DaSilva entered and remained on the Grounds of the Capitol that there was any designation of defined boundaries or a restricted perimeter as is required for conviction under 18 U.S.C. § 1752. Indeed, none of the crowd photos presented by the Government show that any physical restrictions remained in place after 1 PM, certainly not sometime after 2:30 PM, when Defendant entered and remained on the western part of the Capitol Grounds.

The Government presented evidence that law enforcement officers deployed OC gases at certain times, in areas around the Capitol Building. But gas dissipates moments after it is expelled and has multiple meanings. Gas is used as a general crowd control tactic, as opposed to a specific delineator of perimeters as is contemplated by the statute. Mr. DaSilva was gassed three times, he stated. Nonetheless, the gas is not a type of visual, physical, objective delineator of a perimeter that is similar to a posted sign or physical barrier cordoning off an area that the statute requires for conviction.

In coming to judgment, the Court reasoned Mr. DaSilva "knew he was in an area that was 'posted, cordoned off, or otherwise restricted'" because "the evidence established that DaSilva knew officers were deploying tear gas and OC spray against protestors." However, OC spray is not sufficient for restricting an area under the requirements of Section 1752. The Court also determined that Mr. DaSilva "proceeded to physically engage officers who were blocking entry

into the Capitol building." Yet, *Mr. DaSilva never went past or through the line of officers* into the area they were restricting. 18 U.S.C. § 1752 only protects "person[s] or property *in any restricted building or grounds.*" (Emphasis added). Counts Three and Five require a finding that the area *in which* Mr. DaSilva committed any of the forbidden acts was restricted in a manner similar to posting or cordoning off. No evidence in this case, even viewed most favorably of the verdict, has suggested that any objectively visible, physical restriction was present when he acted, that Mr. DaSilva knew about its presence, and that he committed the wrongful act *within* such an area after having such knowledge. No reasonable inference of any of this can be drawn from the evidence presented in this case. The Court reasoned that Mr. DaSilva had "general awareness that he was in a restricted area." Yet, a general awareness of being in an area where one may be unwanted is insufficient for a conviction under § 1752.

The evidence available to the Court for the verdict, and the evidence on which the verdict is based, is insufficient as a matter of law to constitute an area that is "otherwise restricted" in addition to the defendant's knowledge thereof.

Mr. DaSilva could not see or know that he was in *a restricted area as defined by the statute*. A person acts knowingly *only if* he realizes what he is doing and is aware of the nature of his conduct and does not act through ignorance, mistake, or accident. The area which Mr. DaSilva entered was *unrestricted as defined under 18 U.S.C. § 1752*. The evidence in this case does not satisfy the legal requirements of a "restricted area" and Mr. DaSilva could not have knowingly entered such an area without passing by or through the requisite boundary restrictions first.

For all of these reasons, even when viewing the evidence in a light most favorable to the court's verdict, Mr. DaSilva could not have *knowingly* entered the restricted grounds as they are defined by the statute — since the area was not visibly restricted by physical perimeter delineators when he entered — nor could he have *knowingly* engaged in any of the acts specifically prohibited *within* areas restricted under the statute. The evidence is simply nonexistent to support the perimeter requirements and the mens rea requirements that Congress had intended for any conviction under Section 1752.

A judgment of acquittal, therefore, is appropriate for Counts Three, Four, and Five. *See United States v. Campbell*, 702 F.2d 262, 267 (D.C. Cir. 1983) (acquittal is appropriate when the fact-finder has no evidentiary basis for the verdict).

## II. **There Is no Evidentiary Basis for Conviction on Counts Three, Four, and Five Because There Is no Evidentiary Basis for a Finding That Defendant Knew That the Person Protected by the Secret Service Is or Will Be Temporarily Visiting That Area**

Offenses under 18 U.S.C. § 1752 require a verdict with the evidentiary basis that the defendant acted *knowingly with respect to each element of the offense*. 18 U.S.C. § 1752(c)(1) defines "restricted buildings or grounds" as "any posted, cordoned off, or otherwise restricted area" (addressed *supra*) "*of* a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." (Emphasis added).

Just as the mens rea of knowingly is applied to "restricted buildings or grounds" so too it must be applied to the second half of that sentence, which starts with the word "of" — showing it is not an independent or separate clause — "*of* a building or grounds where the President or other

person protected by the Secret Service is or will be temporarily visiting." The portions of Counts Three, Four, and Five of the Second Superseding Indictment about the Vice President cannot be excluded from the application of the mens rea requirement.

The Government, however, has presented no evidence that Mr. DaSilva knew that Vice President Pence was or would be temporarily visiting the area which he entered.

To be more complete— the Government presented no evidence that Mr. DaSilva had any knowledge of the whereabouts of Vice President Pence, nor that the area he was visiting was where the Vice President was or would be visiting, nor his general proximity to the Vice President— nor does any such evidence exist outside of what was presented at trial.

This Court has already found that the Government's evidence could not establish the requisite proof for Count Six — "without evidence of knowledge that such a joint session was taking place, it is very difficult, if not impossible, to conclude beyond a reasonable doubt that DaSilva intended to obstruct it," the Court determined. A similar reasoning applies to the issue of the presence of Vice President Pence. Without the existence of any evidence of Mr. DaSilva's knowledge that he was in an area of the grounds where Pence *is or will be temporarily visiting,* it is "very difficult, if not impossible" for any rational fact-finder to conclude beyond a reasonable doubt that Mr. DaSilva acted knowingly with respect to Counts Three, Four, and Five. The Court went on to say, "the evidence does not establish beyond a reasonable doubt that he was aware that a session of Congress was taking place. I therefore cannot conclude, beyond a reasonable doubt, that DaSilva was aware of the nature of his conduct; that is, that he understood what he was doing would disrupt the certification of the electoral college vote." The exact same reasoning applies to the presence of Vice President Pence as well.

A judgment of acquittal, therefore, is appropriate for the conviction on Counts Three, Four, and Five, as they lack an evidentiary basis for the knowledge requirement of the Vice President's visitation.

### III. <u>There is No Evidentiary Basis of Intent to Cause Pain or Injury for Conviction on Counts Two, Five, and Seven</u>

Counts Two, Five, and Seven require proof of an assault. An assault is defined as (a) an attempt to cause or purposely, knowingly, or recklessly cause bodily injury to another; or (b) negligently cause bodily injury to another with a deadly weapon; or (c) an attempt by physical menace to put another in fear of imminent serious bodily injury. *See United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996).

Instead of pursuing a finding within the specific route argued by the parties, the Court came to an independent conclusion on the issue of assault at the close of all the evidence. In finding him guilty of assault, the Court found that Mr. DaSilva attempted to cause bodily injury to Officer Sterling. With respect to this element, the Court concluded:

> As DaSilva approached the Tunnel, he could see the mayhem that was unfolding. Other protestors were throwing objects at the police line and violently attacking officers with dangerous weapons. Yet DaSilva continued to press forward, until he eventually reached the police line and confronted officers who were blocking an entrance into the Capitol building.
>
> Body cam footage shows DaSilva bending his knees, lowering his head and using his full body and body weight to push against and grab a riot shield. Officer Sterling struggled to hang on, given the amount of force DaSilva applied. Again, DaSilva did all of this while scores of other protestors were attacking the police line repeatedly with dangerous weapons.

Indeed, DaSilva's conduct made it harder for officers to protect themselves from flying debris and physical attack, facts of which DaSilva was undoubtedly aware. In light of this conduct, as well as the surrounding context, I conclude beyond a reasonable doubt that Mr. DaSilva attempted to cause bodily injury to Officer Sterling so that he could breach the police line.

While the evidence is certainly consistent with a defendant deliberately walking toward officers and deliberately pressing his hands on a shield, there is no evidence to support the finding that this behavior was *intended to cause bodily injury through such conduct*. Bodily injury means physical pain, illness, or any impairment of physical condition. But no evidence was presented or argued as to Mr. DaSilva's *intent to cause Officer Sterling any physical pain, illness, or any impairment of physical condition*. There was no evidence presented that Mr. DaSilva was even aware that his interaction with the shield impacted Officer Sterling, who was standing to the left of the shield. Any conclusion as to Mr. DaSilva's intentions, therefore, is purely speculatory conjecture.

For a conviction of attempted assault under Count Two, the evidence must not just show that the defendant intended to commit some act, the evidence must show that the defendant *intentionally and voluntarily* attempted to cause pain or physical impairment through that act. For Count Five, the defendant had to have *knowingly* attempted to cause pain or physical impairment. For Count Seven, the defendant would have to have acted *willfully and knowingly* as he attempted to cause pain or physical impairment.

While the Court's finding was that Mr. DaSilva had the intention to "breach the police line," a finding within the right of the fact-finder and based on the circumstantial evidence

presented, the Court made no finding as to whether Mr. DaSilva intended to cause pain in doing so, or how Mr. DaSilva intended for the pain or impairment to be caused.

Moreover, for purposes of the physical contact provision of Count Two, there must be evidence that the defendant intentionally and voluntarily used force to cause pain or physical impairment through physical contact. *See* 18 U.S.C. § 111(a) ("*where such acts involve* physical contact with the victim *of that assault*") (emphasis added). The Court found:

> …DaSilva made physical contact with Officer Sterling during the assault. For the duration of the assault, DaSilva's hands were on a riot shield held by Officer Sterling and DaSilva made direct contact with Officer Sterling's hand when he tried to block his use of OC spray.

Yet no evidence was presented to show that Mr. DaSilva intended to make contact with Officer Sterling, who was standing to the left of the shield, from Mr. DaSilva's perspective. Mr. DaSilva made contact with a shield that was held in both hands by another officer. Mr. DaSilva could not have known that Officer Sterling was holding that shield with one hand from the side. The evidence presented does not support a finding that Mr. DaSilva intended to cause injury or impairment to Officer Sterling by pressing his hands on a shield held by another officer.

As for the hand contact, this contact occurred when Mr. DaSilva's hand went up to block Officer Sterling's OC spray. This was a natural reaction. Any person would have the same natural reaction if we were sprayed with an irritant. The prosecutor admitted during her rebuttal at the closing argument that putting up her hand towards the irritant spray would be her reaction to the spray as well.

Defense Exhibit 5 shows that Mr. DaSilva wasn't even looking at where his hand was going; he was just blocking the spray. He had no intent to touch the officer's hand; it was a

natural reaction to block irritant spray coming towards him, *let alone for that touch to cause pain or bodily impairment*. This is an older man with a squeaky-clean record. See Government Exhibit 702.

For Count Two, the verdict must be supported by evidence that the physical contact was intentional <u>and</u> voluntary <u>and</u> an attempt to cause pain or physical impairment. See *United States v. Feola*, 420 U.S. 671, 684 (1974) (Section 111 requires proof of an intent to assault). There is simply no evidence to support this beyond surmise and conjecture that the defendant intended to cause pain or physical impairment. Indeed, how could touching a hand cause pain or physical impairment of the hand? The moment of Mr. DaSilva's hand meeting the OC spray, observed on the video (which was not independently recalled by the witness who claimed it was his hand) does not show a contact capable of causing a bodily injury as the Model Penal Code defines it.

Even in light most favorable to the trier's verdict, the facts do not support a finding that the actions of Mr. DaSilva were an intentional attempt to cause pain or physical impairment to Officer Sterling. Acquittal under Rule 29 is therefore appropriate. *See Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954); *see also Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir.), cert. denied, 331 U.S. 837, reh'g denied, 331 U.S. 869 (1947) (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained"); *United States v. Recognition Equipment Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989) (the court should not "indulge in fanciful speculation or bizarre reconstruction of the evidence" to aid the government).

**Acquittal**

For all of the reasons stated herein, the Defense requests a judgment of acquittal on Counts Two, Three, Four, Five, and Seven.

                                        Respectfully submitted,

                                        By Counsel:

                                        _____/s/_____
                                        Marina Medvin, Esq.
                                        *Counsel for Defendant*
                                        MEDVIN LAW PLC
                                        916 Prince Street
                                        Alexandria, Virginia 22314
                                        Tel:  888.886.4127
                                        Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

      I hereby certify that on July 24, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

                                        _____/s/_____
                                        Marina Medvin, Esq.