# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-564 (CJN)** |
| | : | |
| **MATTHEW DASILVA,** | : | |
| **Defendant.** | : | |

### GOVERNMENT'S AMENDED RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTIONS FOR ACQUITTAL AND RELATED BRIEFING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response in opposition to Defendant Matthew DaSilva's Motion for Acquittal, Doc. 88, as well as the defendant's subsequent briefing, including: the defendant's Supplemental Argument for Rule 29(a) Motion, Doc. 90; the defendant's Reply to Government's Opposition to Defendant's Motions, Doc. 92; and the defendant's Rule 29(c) Motion for Judgment of Acquittal, Doc. 93.[1] Defendant's motions should be denied in all respects.

## I.       Background

Before the opening of trial, on July 13, 2023, the Court issued its Final Legal Instructions. Doc. 76. The trial in this matter commenced on July 17, 2023, and concluded on July 19, 2021. *See* 7/17/23, 7/18/23, and 7/19/23 Minute Entries. On July 19, at the close of the defendant's case, the defendant moved for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. *See* 7/19/23 Minute Entry. With agreement from the parties, the Court reserved ruling on the

---

[1] This brief does not respond to the defendant's Motion to Modify Detention Order, Doc. 89, as that motion has been resolved. *See* Order for Post-Conviction Detention, Doc. 98.

motion until after the parties' closing arguments and issuing the verdict. *See* Fed. R. Crim. P. 29(b); 7/19/23 Minute Entry.

Later that same day, the Court issued its verdict, finding the defendant guilty of Count 1 (Civil Disorder), Count 2 (Assault on a Federal Officer), Count 3 (Entering and Remaining on Restricted Grounds), Count 4 (Disorderly and Disruptive Conduct on Restricted Grounds), Count 5 (Physical Violence on Restricted Grounds), and Count 7 (Physical Violence on Capitol Grounds). The Court acquitted the defendant of Count 6 (Disorderly and Disruptive Conduct on Capitol Grounds). At no time prior to the issuance of the Court's verdict did the defendant raise an objection to the Court's Legal Instructions for Counts Three, Four, or Five as to *mens rea*.[2]

The defendant filed his Motion for Acquittal, Doc. 88, as well as his Motion to Modify Detention Order, Doc. 89, on July 21. The Court then ordered the government to respond to the Motion to Modify Detention Order by July 24, and to the Motion for Acquittal by July 28. Shortly before the deadline for the government's response to the Motion to Modify Detention Order, the defendant filed his Supplemental Argument for Rule 29(a) Motion, Doc. 90.

The government responded to both the defendant's Motion for Acquittal, Doc. 88, and his Motion to Modify Detention Order, Doc. 89, on July 24. Doc. 91. In its response, the government

---

[2] On the Monday morning of trial, after the Court had docketed its Final Legal Instructions on the previous Friday, *see* Doc. 76, the defendant raised two continuing objections to the jury instructions: (1) an objection to the inclusion of aiding and abetting instructions with regard to Counts 1 and 2 and (2) an objection to the Court's interpretation of 18 U.S.C. § 111(a), as relevant to Count 2. *See* 7/17 A.M. Trial Tr. 8-9. The defense also noted that: "For Counts 3, 4, and 5 in the instructions, the instructions lack the specificity of the indictment language, which specifies that it has to be the Vice President of the United States at the time, Mike Pence. I don't believe the government is attempting to offer any kind of other protected Secrete Service individual, but we just wanted to note for the record that, specifically, the indictment lists Vice President Pence for Counts 3, 4, and 5." *Id.* at 8:21-9:4. The defense's attention to this point appears to have been directed at avoiding a variance between the Indictment and the verdict, not an objection to the Court's instructions.

acknowledged the supplemental briefing defendant filed at Doc. 90, but did not respond to it in substance, saying only that it would expand on its argument in a forthcoming filing. Doc. 91 at 3. The defendant filed a reply to the government's opposition, Doc. 92, and an additional Motion for Acquittal under Rule 29(c), Doc. 93, both on July 24.

Ultimately, the Court denied the defendant's Motion to Modify Detention Order. *See* Order for Post-Conviction Detention, Doc. 98. In doing so, the Court found that the defendant's Motion for Acquittal was not likely to succeed: "at this juncture, the Court cannot conclude that there is a 'substantial likelihood' of acquittal or new trial on Count Five or any other count of conviction." *Id.* at 1. Later that day, the Court ordered the defendant to file all post-trial motions by August 9, and the government to respond by August 30. *See* 7/27/2023 Minute Order. Since that order, the defendant has filed no additional briefing.

Though the government has already responded to the defendant's initial filings, the government now files this amended response to the defendant's post-trial motions in order to consolidate all of its arguments in one filing.

## II.   Legal Standards

A. <u>Pursuant to Federal Rule of Criminal Procedure 29, the Court must view the evidence in the light most favorable to the government and may only grant the defendant's motion if there is insufficient evidence to sustain a conviction.</u>

Federal Rule of Criminal Procedure 29 permits the defendant to move for judgment of acquittal at the close of the government's case in chief or at the close of all evidence on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must consider the evidence "in the light most favorable to the government" to determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted) (emphasis in

original). Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)).

When considering a Rule 29 motion after a verdict, the Court "must view the evidence in the light most favorable to the verdict and must presume that the [trier of fact] has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Credibility determinations are for the factfinder. *See United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also Glasser v. United States*, 315 U.S. 60, 80 (1942) (courts should not "weigh the evidence or determine the credibility of witnesses") (superseded by statute on other grounds). "If the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the factfinder to make," and the motion must be denied. *United States v. Jabr*, No. CR 18-0105 (PLF), 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (granting Rule 29 motion as to completed § 1752(a)(1) offense, denying Rule 29 motion as to attempt to commit § 1752(a)(1), and finding the defendant guilty of same following a bench trial) (citing *United States v. Jemal*, Criminal No. 05-0359, 2007 WL 778623, at *3 (D.D.C. March 12, 2007); *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C. Cir. 1986)).

As a theoretical matter, "the same standard guides a district court in resolving a Rule 29 motion whether in the context of a bench or jury trial." *Jabr*, 2019 WL 13110682, at *4. In practice, however, "[i]n a bench trial, the judge acting as the trier of both fact and law implicitly rules on the sufficiency of the evidence by rendering a verdict of guilty." *United States v. Atkinson*, 990 F.2d 501, 503 (9th Cir. 1993) (holding that "no motion for acquittal is necessary in a bench trial in

order to preserve for appeal a challenge to the sufficiency of the evidence"). Accordingly, a majority of circuits, including the D.C. Circuit, have held that "the failure to move for a judgment of acquittal does not foreclose an attack on the sufficiency of the evidence on appeal." *United States v. Whitlock*, 663 F.2d 1094, 1097 n.24 (D.C. Cir. 1980) (opinion of Robinson, J.) (collecting cases). This is so, because where the factfinder and the court are one and the same, a trial court's guilty verdict requires the court to have already concluded that there is *more than* a sufficiency of the evidence. "Rule 29 protects a defendant against an improper or irrational verdict of the jury." *United States v. Grace*, 367 F.3d 29, 34 (1st Cir. 2004) (internal quotations omitted). As such, it would be "odd to suggest that trial judges must be given the opportunity with a Rule 29 motion to protect themselves from their own capriciousness." *Id.*

    B. <u>The same standard applies to motions under Rule 29(a) and 29(c).</u>

Although the defendant brings separate motions for acquittal under Rule 29(a), *see* Doc. 88, and Rule 29(c), *see* Doc. 93, the Court's analysis is no different. The standard on a motion under Rule 29(c) after a guilty verdict is the same as on a motion under Rule 29(a) at the close of the government's case or all of the evidence. *See United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) ("This standard applies whether a timely motion is made before or after the …verdict."); *United States v. Austin*, 585 F.2d 1271, 1273 n.2 (5th Cir. 1978) ("[T]here is nothing in the language of Fed. R. Crim. P. 29, or in its legislative history that would indicate that the test should differ depending on when a motion for judgment of acquittal is made.") (citing Fed. R. Crim. P. 29; Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE §§ 465, 467 (1969)); *United States v. Curry*, No. 1:19-CR-00677-NLH, 2022 WL 445541, at *1 (D.N.J. Feb. 10, 2022) ("Courts have held that motions of judgment of acquittal brought under Rule 29(a) and Rule 29(c) are decided under the same standard.") (collecting cases).

C. The Court may only review a post-verdict challenge to an unobjected-to legal instruction for plain error.

A party must object to jury instructions "before the jury retires to deliberate." Fed. R. Crim. P. 30(d). Any challenge to the instructions brought after that time may only be reviewed for plain error. *See id.* (precluding review when a party fails to object, "except as permitted under Rule 52(b) [requiring plain error review]"); *see also United States v. Hale-Cusanelli,* 628 F.Supp.3d 320, 329 (D.D.C. 2022) (applying Fed. R. Crim. P. 30(d) and denying a defendant's post-verdict objection to a jury instruction).

### III. Argument

The defendant has not met Rule 29's "demanding standard"; his motions should be denied in their entirety. *See United States v. Borda*, 768 F. Supp. 2d 289, 292 (D.D.C. 2011).

A. The government introduced sufficient evidence for a rational factfinder to conclude that the defendant entered, remained, and committed acts of physical violence and disorderly conduct within an established restricted perimeter.

The defendant first argues that the government did not establish that the Capitol Building and Grounds were restricted within the meaning of 18 U.S.C. § 1752 on January 6, 2021. *See* Def. Mot. for Acquittal, Doc. 88, 3-5. This argument overlooks the substantial evidence of the restricted perimeter introduced at trial. Captain Mendoza of the U.S. Capitol Police testified to the many layers of signage, bike racks, snow fencing, and other barriers that were erected to establish the restricted perimeter. *See, e.g.*, 7/17 A.M. Trial Tr. 39-40. Captain Mendoza further testified that a captain of the Capitol Police drove the perimeter of the restricted area on the morning of January 6, 2021 to ensure that the perimeter had been established. *See id.* at 31:16-19. On cross-examination about some of the snow-fencing being torn down by rioters, Captain Mendoza testified that even if rioters attempted to tear down some barriers, those barriers did not simply disappear. *See id.* at 80. Accordingly, rioters entering the perimeter would have still seen the signs

and barricades on the ground that alerted them to the restricted perimeter. And on redirect, Captain Mendoza maintained that although some signs were torn down by rioters, other signage remained. *See id.* at 80-81. This is sufficient evidence from which a rational trier-of-fact, taking all inferences in favor of the government, could conclude that the restricted perimeter was established.

The defendant does not address the fact that *even if* the implements of the restricted perimeter had somehow evaporated by the time the defendant entered the outermost restricted perimeter, as defined by government's Exhibit 003, other internal perimeters quite clearly still existed when the defendant passed through those internal perimeters. For example, when the defendant surged with the crowd onto the west plaza of Capitol Building at approximately 2:30 p.m., *see* Gov't Ex. 401, the crowd (including the defendant) broke through a "posted, cordoned off, or otherwise restricted" perimeter when the crowd pushed past an established police line behind bike rack barricades. More, as the defendant engaged in his assaultive acts at approximately 4:33 p.m. in the lower west terrace tunnel, a rational jury could certainly find that at that point, the defendant was within an established restricted perimeter by virtue of the presence of the line of police officers that the defendant assaulted and tried to penetrate.

Accordingly, the defendant's argument that the restricted perimeter did not exist at the time of the defendant's entry and assault on officers fails as a factual matter under the Rule 29 standard. More, the defendant's argument also fails as a legal matter. As another court in this district recently found, "[r]ioters' success in knocking down barriers and doors, … does not strip an area of its restrictions." *United States v. Ballenger*, No. CR 21-719 (JEB), 2023 WL 4581846, at *3 (D.D.C. July 18, 2023) (denying motion for judgment of acquittal following bench trial on, among other charges, charges for violating §§ 1752(a)(1) and (2)). The defendant's theory taken to its logical conclusion would hollow out Section 1752 altogether. "As evidenced by the legislative history,

7

the goal of Section 1752 is to provide the fullest protection possible for Secret Service protectees." *United States v. Puma*, 596 F. Supp. 3d 90, 114 (D.D.C. 2022). Yet, the defendant's theory would allow one person to tear down signage before a riot and enable a flood of unauthorized persons to enter. "[R]ioters cannot simply 'annex' Capitol grounds in such a way as to un-restrict an area by forcing law enforcement's retreat." *United States v. Griffith*, No. CR 21-244-2 (CKK), 2023 WL 2043223, at *5 (D.D.C. Feb. 16, 2023); *cf. United States v. McHugh*, 583 F. Supp. 3d 1, 31-32 (D.D.C. 2022) (opining that the defendant's theory that the Secret Service, not another law enforcement agency, must set up the restricted perimeter "would contravene the statute's manifest purpose: to ensure that federal law criminalizes (and thereby deters) misconduct that may threaten a Secret Service protectee").

The defendant's related argument that he was not aware of the restricted perimeter fails for the same reasons. *See* Def. Mot. for Acquittal, Doc. 88 at 5. The testimony at trial established myriad reasons why the defendant was aware at the time of his assault that he had entered and remained in an area where he was not permitted to enter or remain. The government introduced sufficient evidence at trial for a rational factfinder to find that the defendant knowingly entered and remained within the restricted perimeter and then knowingly engaged in an act of physical violence within the restricted perimeter. *See generally*, 7/17/23 Testimony of Capt. Mendoza; 7/17/23-7/18/23 Testimony of FBI Special Agent Ray.

B.  The government did not have to prove that the defendant knew *why* the perimeter was restricted.

The defendant's Supplemental Argument, filed at Doc. 90 and echoed in his Rule 29(c) Motion for Judgment of Acquittal, Doc. 93 at 6-8, also fails. The defendant argues for the first time in these filings that the Court's legal instructions required the government to prove "that the defendant knew this was an area where the Vice President was or would be temporarily visiting"

and that the government failed to do so. *See* Doc. 90, 1; *see also* Doc. 92, 3. The Court should reject this argument for several reasons: this proposed requirement was not requested by the defense prior to the Court's verdict; it is not consistent with the statutory text, structure, or congressional intent; and it represents an outlier view of the interpretation of 18 U.S.C. § 1752 among January 6 cases. Most critically, nothing in the statutory text requires the government to prove not just that the defendant knew that the area was restricted, but *why* it was restricted.

To begin with, although the defendant frames this argument as a Rule 29 sufficiency-of-the-evidence challenge, in substance, this argument is a belated objection to the Court's legal instructions on Counts Three, Four, and Five under § 1752.[3] The defendant derives this argument from the court's legal instructions in *United States v. Bingert*, Case No. 21-cr-91 (RCL). There, the court "adopt[ed] the instructions and definitions proposed by the government [for the § 1752 charges], with one exception. … [T]he government must prove not only that the defendants knew they were in a 'posted, cordoned off, or otherwise restricted area,' but also that they knew that it was such an area 'of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." *Id.*, Note to Counsel, Doc. 163.  Thus, for the § 1752(a)(1) charge, the *Bingert* court adopted the government's proposed instruction — identical to the instruction the Court adopted here — but added an additional requirement that the defendant *know* that the Vice President or other Secret Service protectee would be temporarily visiting the restricted area. *See id.* And though there are some differences between the government's proposed legal instructions in *Bingert* and this Court's legal instructions for the §§ 1752(a)(2) and (a)(4) charges, those differences are immaterial to the question of whether the *Bingert* court's additional

---

[3] As explained in footnote 2, *supra*, at the beginning of trial, the defense noted a potential variance between the Court's Legal Instructions and the Indictment, but the defense did not raise any objections to the Court's instructions on Counts 3, 4, and 5 as to the *mens rea* required.

requirement that the defendant know that the restricted perimeter existed to protect a visiting Secret Service protectee is appropriate here.[4]

Here, the defendant contends that this Court's legal instructions as announced, *see* Doc. 76, required proof that the defendant *knew* that the Vice President was or would be temporarily visiting that Capitol on January 6, 2021. *See* Doc. 90 at 2. But the Court's legal instructions in this case plainly did not require such proof. *See* Final Legal Instructions, Doc. 76, 10-14. The fact that the *Bingert* court specifically stated in his legal instructions that he was adopting the government's proposed instructions "*with one exception*" highlights the fact that contrary to DaSilva's argument here, this Court's instructions (which for the purposes of this argument were substantially similar to the government's proposal in *Bingert*) did *not* encompass the *Bingert* court's instructions. *Compare Bingert*, 21-cr-91, Note to Counsel, Doc. 163 and Gov't Tr. Br. Doc. 160 at 13, *with* Final Legal Instructions, Doc. 76 at 10.

Having failed to object to the instructions before the Court issued its verdict, the defendant may now only seek plain-error review of them. *See Hale-Cusanelli,* 628 F.Supp.3d at 329 (holding that post-verdict review of unobjected-to jury instructions must be conducted for plain error) (citing Fed. R. Crim. P. 30(d)). For all of the reasons explained below, the defendant's argument does not meet that standard – given the overwhelming number of trials in this district that have used nearly identical instructions for § 1752 offenses, any purported error was not "so obvious"

---

[4] This Court's final legal instructions on § 1752(a)(2) and the government's proposed instructions in *Bingert* included the same elements and substantially similar definitions. *Compare* Doc. 76 at 11-12 *with Bingert*, 21-cr-91, Gov't Tr. Br., Doc. 160 at 14. This Court's final legal instructions on § 1752(a)(4) and the government's proposed instructions in *Bingert* are also substantially similar; the primary difference between these instructions is this Court's inclusion of Model Penal Code definitions, which are not relevant to this particular dispute. *Compare* Doc. 76 at 13-14 *with Bingert*, 21-cr-91, Gov't Tr. Br., Doc. 160 at 14-15.

that "the court should have intervened *sua sponte*." *United States v. Weaver*, 281 F.3d 228, 232 (D.D.C. 2002).

*Even if* the defendant had timely requested an instruction requiring proof that the defendant knew why the Capitol grounds were restricted on January 6, 2021, the defendant's new interpretation of the *mens rea* requirement is plainly incorrect as a matter of statutory interpretation. When a statute such as § 1752(a) contains an express "knowingly" requirement, the Court must determine "how far down the sentence the word 'knowingly' is intended to travel[.]" *Liparota v. United States*, 471 U.S. 419, 424 n.7 (1985) (quoting W. LaFave & A. Scott, Criminal Law § 27 (1972)). Section 1752(a)(1) provides: "(a) Whoever – (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so . . . or attempts or conspires to do so, shall be punished as provided in subsection (b)." As the Supreme Court has repeatedly recognized, this statutory structure raises the question "how far into the statute the modifier [knowingly] extends." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019).

The Ninth Circuit recently gave a lengthy summary of how to answer this question in *United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021). In sum:

> In determining whether Congress intended a *mens rea* requirement in a criminal statute to apply to noncontiguous words or phrases, the Supreme Court uses ordinary tools of statutory interpretation. The Court starts "as always, with the language of the statute," *Dean v. United States*, 556 U.S. 568, 572 (2009) (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)), and considers the natural reading of the language using "ordinary English grammar," *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). . . .

> This rule is not rigid: the word "knowingly" does not necessarily apply to every word in "a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends." *Rehaif*, 139 S. Ct. at 2196[.] . . .

> The Court also considers the "surrounding text and structure." *Maracich v. Spears*, 570 U.S. 48, 76 (2013). . . .

> In addition to considering the text and structure of the statute, the Court recognizes the presumption, traceable to the common law, that "Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif*, 139 S. Ct. at 2195 (citation omitted). . . .
>
> By contrast, absent statutory language suggesting otherwise, the scienter presumption does not apply to elements that do not separate innocent from wrongful conduct. *See id.* at 2196 (holding that because "jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption in favor of scienter").

*Id.* at 1322-25.

Here, each of the factors outlined by *Collazo* weigh against carrying "knowingly" all the way through to the definition of "restricted building or grounds." First, Congress placed the definition of a restricted area in a separate subsection from the subsection defining the offense – "knowingly" appears in each of the defined offenses under § 1752(a), but the definition of a restricted building or grounds is not found until § 1752(c)(1). *See Collazo*, 984 F.3d at 1323 ("[I]t is natural to read the intent requirement of 'knowingly or intentionally' as modifying only the elements contained in the statutory phrase defining the § 841(a)(1) offense, *i.e.*, 'distribute' and 'a controlled substance.'"); *cf. Ruan v. United States*, 142 S. Ct. 2370, 2378-79 (2022) (applying knowingly to a statutory clause contained within the same clause of the same subsection of the statute).

Second, the fact that several of the subsections in § 1752(a) contain multiple *mens rea* requirements—the "intent to impede or disrupt the orderly conduct of Government business or official functions," § 1752(a)(2)-(3), and "the intent to knowingly and willfully direct or otherwise cause such unmanned aircraft system to enter or operate within or above a restricted building or grounds," § 1752(a)(5)—shows that "Congress knew how to require proof of mens rea with respect

12

to the predicate facts for [the statute], and chose not to do so[.]" *Collazo*, 984 F.3d at 1326; *see also United States v. Mahaffey*, 983 F.3d 238, 243 (6th Cir. 2020).

Third, applying "knowingly" to the definitional subsection "would not separate wrongful from otherwise *innocent* conduct." *United States v. Morgan*, 45 F.4th 192, 208 (D.C. Cir. 2022) (emphasis in original). "The cases in which [the Supreme Court has] emphasized scienter's importance in separating wrongful from innocent acts are legion." *Rehaif*, 139 S. Ct. at 2196 (collecting cases); *see also e.g.*, *Bryan v. United States*, 524 U.S. 184, 194 (1998) ("The danger of convicting individuals engaged in apparently innocent activity that motivated [the Court's] decisions in the tax cases and *Ratzlaff* [*v. United States*, 510 U.S. 135 (1994)] is not present… [where the factfinder] found that [the defendant] knew that his conduct was unlawful."); *United States v. Crowder*, 656 F.3d 870, 875 (9th Cir. 2011) (holding that the word "knowingly" in the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a)—which imposes criminal penalties on any person who "knowingly fails to register or update a registration as required by [SORNA]"—does not apply to the phrase "as required by [SORNA]" because a defendant would know failing to register was "not an innocent act").

The Supreme Court's recent decision in *Ruan* is instructive. *See* 142 S. Ct. at 2378-79. There, the Court held that to convict two doctors of violating the Controlled Substances Act, 21 U.S.C. § 841(a), the government needed to introduce proof of the defendants' knowledge that their dispensing of controlled substances was *unauthorized*, because it is the *unauthorized* dispensation of controlled substances that "plays a critical role in separating a defendant's wrongful conduct from innocent conduct" for doctors, who may otherwise lawfully dispense controlled substances pursuant to valid prescriptions for legitimate medical purposes. *Id.*

Here, entering or remaining in an area knowing it is restricted while knowing that one does not have authority to be there, in violation of § 1752(a)(1), "is not an 'entirely innocent' act." *Collazo*, 984 F.3d at 1327 (quoting *Rehaif*, 139 S. Ct. at 2197).  Neither is engaging in disorderly or disruptive conduct with the intent to impede government business in violation of § 1752(a)(2); nor is engaging in acts of physical violence in violation of § 1752(a)(4).[5] Under § 1752(a)(1), the line between innocent and criminal conduct is a defendant's knowledge that he did not have lawful authority to be within the restricted area; under § 1752(a)(2), that line is a defendant's knowing engagement in disorderly or disruptive conduct that in fact impeded or disrupted the orderly conduct of Government business or official functions; and under § 1752(a)(4), that line is a defendant's knowing acts of physical violence. The bottom line for the purposes of DaSilva's Supplemental Argument is that in no case under § 1752 does the wrongfulness of a defendant's conduct under any of these three subsections turn on whether the defendant was aware that a Secret Service protectee was or would be within the restricted perimeter.

Fourth, applying "knowingly" to the definitional phrase would also undermine congressional intent. The clear goal of the statute, as evidenced by the text of the statute, is to ensure the safety of Secret Service protectees. *See United States v. Caputo*, 201 F. Supp. 3d 65, 72 (rejecting facial and as-applied First Amendment challenges to § 1752, in White-House-fence-

---

[5] Though the issue does not appear to be central to DaSilva's argument here, the government notes that while under § 1752(a)(1) the defendant must know he was without lawful authority to be within the restricted perimeter, §§ 1752(a)(2) and (a)(4) say nothing about a defendant's authority to be within the restricted perimeter; neither of these subsections require that a defendant know he lacked lawful authority to enter or remain in a restricted building or grounds. To illustrate, consider a staff member at the White House who begins yelling obscenities and gets into a fistfight with a coworker while at work at the White House. That individual could be prosecuted under §§ 1752(a)(2) and (a)(4) (perhaps among other statutes), but likely would not face criminal exposure under § 1752(a)(1) unless and until their authority to remain in the White House was revoked and they were no longer authorized personnel.

jumping case, in part because of "the Government's *profound* interest in protecting the White House complex, the President, and the functionality of the executive branch.") (emphasis added). A requirement that a defendant know or be on notice of a particular protectee's location in order to violate the statute is clearly antithetical to that goal. *See United States v. Couy Griffin*, 21-CR-92, Doc. 110, discussed *infra*; *see also Puma*, 596 F. Supp. 3d at 114; *Griffith*, 2023 WL 2043223, at *5.

Additionally, such a reading of the statute would make certain prosecutions nearly impossible. For example, the definition of "restricted buildings or grounds" includes "any posted, cordoned off, or otherwise restricted area—(C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance[.]" § 1752(c)(1)(C). Thus, the defendant's newly requested interpretation of the statute's "knowingly" requirement would require the government to prove beyond a reasonable doubt that a defendant knew that an area was restricted "in conjunction with an event designated as a special event of national significance" in order to obtain a conviction under this subsection – an almost impossible bar. *See, e.g.*, *United States v. Cox*, 577 F.3d 833, 837 (7th Cir. 2009) (holding that "knowingly" does not apply to a minor's age because "[i]t seems implausible that Congress would want it to be harder to prove a violation of § 2423(a) than of § 2421, when the purpose of the former provision is to provide heightened protection for minors against sexual exploitation").

Consistent with the foregoing, in another January 6 prosecution, Judge McFadden explicitly declined to apply Section 1752(a)'s "knowingly" requirement to the definition of "restricted buildings or grounds" in Section 1752(c). Judge McFadden explained:

> The defense's second argument is that Mr. Griffin cannot be convicted under 1752(a) unless the government shows he knew a Secret Service protectee was or would be temporarily visiting in the restricted building or grounds at issue.

I disagree. The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute. That's according to *Liparota v. United States*, 471 U.S. 419, page 424, from 1985. So determining the mental state required for commission of a federal crime requires "construction of the statute and inference of the intent of Congress." From *Staples v. United States*, 511 U.S. 600, page 605, from 1994.

Here, the text of 1752, which is the best evidence of Congress's intent regarding the mens rea, forecloses the defendant's argument. I find that Congress specifically included a mens rea requirement in those portions of the statute laying out the elements of the offense, while excluding that mens rea requirement in the definitional provision. A defendant must act knowingly in committing the offense conduct identified in Subsections (a)(1) through (a)(5). Each of those subsections begins with the word "knowingly." By contrast, that limitation appears nowhere in the definitional provision of (c)(1).

[. . .]

In sum, the text of the statute makes clear that Congress did not intend for the scienter requirement to apply to 1752's definitional provisions.

And I should also say, it doesn't make a lot of sense to me that the government would have to prove somebody knew that a specific dignitary was there. I can't imagine that a provision that is looking to protect Secret Service protectees would require the Secret Service to somehow be telling people and proving that people knew which protectee was in the restricted area at what time.

*United States v. Couy Griffin*, 21-CR-92 (TNM), Tr. of Bench Trial, Doc. 106, 330-32.

For all of these reasons, courts across this district have issued legal instructions consistent with the Court's instructions here in dozens of January 6-related cases involving charges under § 1752. *See, e.g.*, *United States v. Reffitt*, 21-CR-32 (DLF) and *United States v. Sheppard*, 21-CR-203 (JDB). In both *Reffitt* and *Sheppard*, the court instructed the jury that, to prove a violation of § 1752(a)(1), the government must show "that the defendant knew that the building or grounds was restricted and he knew that he lacked the lawful authority to enter or remain there[.]"*Reffitt*, 21-CR-32 (DLF), Doc. 119 at 30; *Sheppard*, 21-CR-203 (JDB) Jury Trial Tr. at 77:15 (same).

The *Bingert* instruction does not just represent a minority view of the proper interpretation of § 1752, *Bingert* is the *only* January 6 case that the government is aware of that has applied the

defendant's new interpretation of § 1752. *See e.g.*, *United States v. David Charles Rhine*, 21-CR-687 (RC), Doc. 105 at 15 (including government's proposed instructions on violations of Sections 1752(a)); *United States v. Donnie Wren et al.*, No. 21-CR-599 (RBW), Doc. 121 at 39 (same); *United States v. Sara Carpenter*, 21-CR-305 (JEB), Doc. 97 at 12 (same); *United States v. Vitali GossJankowski*, 21-CR-123 (PLF), Doc. 166 at 31 (same); *but see United States v. Bingert*, 21-CR-91 (RCL), Doc. 163. Notably, the same court that adopted the *Bingert* instruction had not applied the law in this way in any of its previous cases on the same charge. *See United States v. Leo Kelly*, 21-CR-708 (RCL), Doc. 101; *United States v. Christopher Worrell*, 21-CR-292 (RCL), Doc. 245.

In sum, the statute does not require the government to prove that the defendant knew why the Capitol building and grounds were restricted on January 6, the Court's legal instructions did not announce such a requirement, and the government had no obligation to make such a showing at trial. The defendant's "Supplemental Argument" should be rejected.

C. <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant assaulted a federal officer and caused that officer to feel pain, or at least recklessly disregarded the risk that the officer would feel pain.</u>

The defendant next argues that the government introduced insufficient evidence of an assault. This argument also fails. To begin with, the motion, like the defense's closing argument, mischaracterizes the evidence and testimony introduced at trial, most notably the body worn camera footage ("BWC"). The factfinder was entitled to reject counsel's characterization of the riot shields as so "slippery" that the defendant's hands were merely "gliding" on contact with the police riot shields. *See* Def. Mot. for Acquittal, Doc. 88 at 6.

Defendant's Motion for Acquittal further asks the Court to re-weigh and re-asses the Court's own credibility determinations on Officer Sterling's testimony. *See id.* at 8-9. To reiterate,

Rule 29 motions following a bench trial are subject to the same standards as in jury trials. *See Jabr*, 2019 WL 13110682, at \*4. And, in the context of a Rule 29 motion, the "court must view the prosecution's evidence in the light most favorable to the government, 'drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the [factfinder] to determine credibility, weigh the evidence and draw justifiable inferences of fact.'" *See, e.g.*, *Williamson*, 81 F. Supp. 3d at 89 (quoting *United States v. Battle*, 613 F.3d 258, 264 (D.C. Cir. 2010). "Further, a court 'must presume that the [factfinder] properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *Id.* (quoting *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983)). The **uncontroverted** testimony at trial was that Officer Sterling experienced pain based on the forcible pressure applied to his riot shield by the defendant—a full-grown man, pressing his entire body weight into the shield as if he were a football lineman.[6] *See* 7/17 A.M. Trial Tr. 137. Drawing all inferences in the

---

[6] The defendant's Motion for Acquittal is dripping with innuendo to improper testimony that the Court struck on defense counsel's *own* motion. *See, e.g.*, Def. Mot. for Acquittal, Doc. 88 at 9-10. As the Court will recall, on the second day of trial, defense counsel called an undisclosed "expert" witness, retired Alexandria police officer Brady Sanderson. 7/18 A.M. Trial Tr. 382. In a gross deviation from the Rules of Criminal Procedure, this Court's scheduling orders, and norms of professional courtesy, defense counsel provided no notice of this witness to either the Court or the government until the moment Sanderson walked into the courtroom. Defense counsel argued that this "expert" was needed, because she was "surprised" when the government elicited testimony from a victim officer that directly addressed an element of the offense that she had been advocating for months. 7/18 A.M. Trial Tr. 452. Respectfully, Sanderson testified incredibly that, based on a handful of civil disorder trainings he has led and his experience with precisely one in-real-life civil disorder that was nothing comparable to January 6, 2021, no officer could have *possibly* experienced pain through a riot shield. *See* 7/18 A.M. Trial Tr. 413. Defense counsel eventually moved to strike the entirety of her own "expert's" testimony, rather than accept a continuance to allow time for the "expert" to prepare a proper Rule 16 report, for the government to identify and call a rebuttal expert witness, and for the government to call additional victim officers. 7/18 P.M. Trial Tr. 479. The defendant's post-trial briefing underscores the problem with this attempted ambush. Despite defense counsel's motion to strike the testimony, the specter of Sanderson's testimony looms over defendant's motion. For example, the suggestion that "common sense tells us that the two men would divide between them anything felt on the officer's side of that shield" is a near-recitation of Sanderson's stricken, and groundless, testimony.

government's favor, a rational factfinder had more than sufficient evidence from which it could find that the defendant committed an assault against Officer Sterling, as well as the other officer holding the riot shield that he attacked.

Importantly, the Court's legal instructions imported the Model Penal Code's definition of assault. *See* Instructions, Doc. 76 at 6. The legal instructions that the defendant proposed, and the Court adopted over the government's objection, defined assault as "an attempt to cause or purposely, knowingly, or recklessly cause bodily injury to another[.]" *Id.* The Model Penal Code in turn, defines the mental state of "recklessly" as follows:

> "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element…will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."

Model Penal Code § 2.02(2)(c). Using this definition, a reasonable factfinder could have, if it so chose, disregarded Officer Sterling's testimony entirely and still determined that the defendant acted recklessly in heaving the whole of his body weight against the police officers' shields. *See id.* After watching the ongoing assaults in the tunnel, the defendant consciously disregarded a substantial and unjustifiable risk that he would harm the officers, and his disregard of that risk involved a gross deviation from the standard of conduct that a law-abiding person would observe in the defendant's situation. *See id.*

> D. <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant at least *attempted* to assault a federal officer and cause bodily injury.</u>

The defendant's alternative argument, that insufficient evidence was introduced as to the defendant's attempt to cause bodily injury, also fails. Given that factfinders are rarely given the

opportunity to truly occupy a defendant's mindset at the time, it is black letter law that intent or *mens rea* can be inferred from a defendant's conduct. *See, e.g.*, *United States v. Hite*, 896 F. Supp. 2d 17, 24 (D.D.C. 2012) ("[C]ourts and juries every day pass upon knowledge, belief and intent— the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.") (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008))). Based on all of the evidence introduced at trial, including the defendant's deliberate approach towards the tunnel after watching relentless and vicious assaults on that line of officers, a rational factfinder could conclude that the defendant *at least* attempted to cause bodily injury on those of officers.

E. <u>The government introduced sufficient evidence for a rational factfinder to conclude that the defendant's assault on an officer involved physical contact.</u>

Finally, the defendant's argument that there was insufficient evidence of physical contact is similarly meritless. *See* Def. Mot. Acquittal, Doc. 88 at 13-14. To start, the government introduced video evidence depicting the defendant reaching out and striking the hand of a police officer as the officer attempted to deploy a can of OC spray at the defendant. 7/17 P.M. Trial Tr. 184-86. While the defendant argued at trial, and argues now in his motion, that the strike was an involuntary reaction, a reasonable factfinder had more than sufficient grounds to find that the defendant voluntarily and intentionally struck the officer's hand.

The defendant also ignores the definition of "voluntary" under the Model Penal Code. *See* Model Penal Code § 2.01(2). Specifically, the Model Penal Code explains that "a bodily movement that otherwise is not a product of the effort or determination of the actor" is *not* a voluntary act. *Id.* § 2.01(2)(d). In other words, if the act is based on effort or determination by the actor, it is a voluntary act. Moreover, the defendant's motion mischaracterizes the prosecutor's closing argument on this point. *See* Def. Mot. for Acquittal, Doc. 88 at 13 ("The prosecutor admitted

during her rebuttal at closing argument that putting up her hand towards the irritant spray would be her reaction to the spray as well."). While it may be a natural response to attempt to deflect pepper spray, that response assumes a *determination* of the threat of the pepper spray.

The defendant's argument implicitly suggests that the factfinder could only find that the defendant made contact with a victim officer when he struck an officer's hand when that officer attempted to deploy OC spray at the defendant. But the evidence at trial showed extensive physical contact with the officer's riot shield both before and after the defendant struck the officer's hand. Indeed, the statute does not require body-to-body contact. *See United States v. Stoddard*, 407 F. App'x 231, 233 (9th Cir. 2011) ("Stoddard nonetheless argues that spitting does not rise to the level of a felony assault involving physical contact because it does not involve body-to-body touching. However, the plain statutory text does not require such contact; it merely requires 'physical contact.' 18 U.S.C. § 111(a).") (citing *United States v. Ramirez*, 233 F.3d 318, 322 (5th Cir. 2000); *see also United States v. Quinnone*s, 16 F.4th 414, 420 n.10 (3d Cir. 2021) (collecting cases from the First, Fourth, Sixth, Ninth, and Tenth circuits regarding assault-on-federal-officers committed by spitting or throwing urine or feces at federal officers); *United States v. Hightower*, 512 F.2d 60, 60-61 (5th Cir. 1975) (grabbing a federal wildlife agent's jacket is assault on a federal officer). If the Court were to adopt the defendant's standard, throwing a brick at an officer, or grabbing an officer's service weapon without actually touching the body of that officer would not constitute assault under 18 U.S.C. § 111. A reasonable factfinder could certainly find that the defendant's extensive pushing on officer's riot shields constituted physical contact.

Finally, the defendant is wrong as a legal matter that the physical contact must have been an attempt to cause pain or physical impairment. *See* Def. Mot. for Acquittal, Doc. 88 at 13. The statute requires only that "such acts *involve* physical contact with the victim of that assault." 18

U.S.C. § 111(a) (emphasis added). This does not mean that the act that caused physical pain must also be completely coterminous with the defendant's acts that involved physical contact. Here, the defendant made body-to-body contact with an officer in the midst of other acts (including multiple instances of his pushing on riot shields and an attempt to pull a riot shield away) that a reasonable factfinder could conclude constitute assault. That is sufficient.

F.   The government introduced sufficient evidence that the defendant resisted, opposed, impeded, intimidated, and interfered with officers with the intent to commit another felony, specifically, Civil Disorder under 18 U.S.C. § 231.

The government recognizes that the Court's verdict did not appear to rely on the "other felony" prong of § 111(a). *See generally* 7/19 Trial Tr. Regardless, Rule 29 asks the Court to consider whether there was sufficient evidence for *any* rational factfinder to find the defendant guilty, prior to the entry of the verdict. Considering the evidence introduced at trial, the government maintains that the evidence was sufficient to convict the defendant under *either* the physical-contact prong discussed above *or* the other-felony prong.

Based on the video evidence of the defendant attempting to keep a door shut that other rioters believed was holding back law enforcement officers at approximately 2:45 p.m. (*see* Gov't Ex. 402 and 403; 7/18 P.M. Trial Tr. 264-70), the evidence showing the defendant continuing to resist leaving the lower west terrace and west plaza after 5:00 p.m. (7/18 A.M. Trial Tr. 19), and the evidence of a litany of other obstructive acts in between, a reasonable factfinder had sufficient evidence to conclude that the defendant assaulted officers in the tunnel at 4:33 p.m. with the *intent* to continue participating in a Civil Disorder under § 231. While the defendant's Motion for Acquittal does not challenge his conviction for Civil Disorder, the evidence overwhelmingly showed that between approximately 2:30 p.m. and 5:15 p.m., the defendant knowingly obstructed,

impeded, and interfered with officers engaged in the performance of their official duties during a civil disorder that adversely affected both commerce and federally protected functions.

G. <u>The government introduced sufficient evidence that the defendant aided and abetted other rioters in assaulting officers.</u>

The government also introduced sufficient evidence to allow a rational factfinder to conclude that the defendant aided and abetted other rioters in assaulting officers. Although the Court did not rely on this theory of the case in its oral verdict, a reasonable factfinder could have. At trial, the government introduced extensive evidence of the defendant's awareness of the rioters' countless assaults against the police officers stationed in the tunnel. *See, e.g.*, 7/17 P.M. Trial Tr. 382. 285-87. The government also introduced specific evidence of how the defendant's assault on officers aided and abetted the other rioters assaulting officers. For example, the defendant's pushing and pulling of an officer's riot shield forced the officer into a position wherein he was more vulnerable to the incoming projectiles hurled at the officers in the tunnel. *See* Gov't Ex. 305d, 305e; 7/17 P.M. Trial Tr. 197-98. Moments after the defendant is seen pushing and pulling on an officer's shield, that same officer is hit in the head with a flying desk drawer. *See id.* Seconds later, another rioter is able to fully wrest the officer's shield from his hands. *See* Govt' Ex. 301c; 7/17 P.M. Trial Tr. 187. Accordingly, based on all of the evidence introduced at trial, a rational factfinder could have found the defendant guilty on Count 2 based on an aiding and abetting theory.

## IV.   Conclusion

For all the foregoing reasons, the government respectfully requests that the Court deny the defendant's Motions for Acquittal in all respects.

The defendant has not, and cannot, meet the demanding standard of a Rule 29 motion for acquittal, whether brought pursuant to Rule 29(a) or 29(c). The government introduced sufficient evidence for a reasonable factfinder to conclude that he is guilty of Counts One, Two, Three, Four,

Five, and Seven, because he is in fact guilty. The government respectfully asks the Court to deny the defendant's Motions for Acquittal in their entirety.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     /s/ *Katherine E. Boyles*
        Katherine E. Boyles
        Assistant U.S. Attorney
        D. Conn. Fed. Bar No. PHV20325
        United States Attorney's Office
        601 D Street NW
        Washington, D.C. 20001
        Phone: 203-931-5088
        Email: Katherine.Boyles@usdoj.gov

        /s/ *Eric W. Boylan*
        Eric W. Boylan
        Assistant U.S. Attorney
        Texas Bar No. 24105519
        United States Attorney's Office
        601 D Street NW
        Washington, D.C. 20001
        Phone: 202-815-8608
        Email: Eric.Boylan@usdoj.gov