# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | CRIMINAL CASE NO: 1:21-CR-00564 |
| ) | |
| **MATTHEW DASILVA,** ) | SENTENCING: OCTOBER 25, 2023 |
| ) | |
| DEFENDANT. ) | |

## DEFENDANT'S MOTION FOR RESOLUTION OF DISPUTED SENTENCING FACTOR

Pursuant to U.S.S.G. §6A1.3, the defendant asks this Court for resolution of a disputed sentencing factor based on acquitted conduct that can increase the defendant's penalty by a factor of three — the application of U.S.S.G. § 2A2.2 (Aggravated Assault), as sought by the Government, versus U.S.S.G. § 2A2.3 (Assault) or U.S.S.G. § 2A2.4 (Impeding) (both guidelines result in the same offense level), as sought by the defense. The difference in the Guidelines sought by the Government on *acquitted conduct* is a three-times increase in the penalty recommendation under Guidelines, as well as a Guidelines preclusion on the division of the sentence between a penitentiary and home confinement.

## I) Background

In the Second Superseding Indictment, the defendant was charged with three possible ways in which he could have violated 18 U.S.C. § 111(a), each of which would have led to a

different penalty: (1) misdemeanor assault, (2) felony assault with physical contact, and (3) felony forcible conduct under § 111(a) with the intent to commit another felony.

On July 19, 2023, Mr. DaSilva was found guilty of (2) felony assault with physical contact, but _not_ of (3) felony assault with the intent to commit another felony. The Defendant, thus, argues that either U.S.S.G. § 2A2.3 (Assault) or U.S.S.G. § 2A2.4 (Impeding) is the appropriate Sentencing Guideline (*both result in the same offense level*); the Government, notwithstanding the Court's verdict, seeks an application of U.S.S.G. § 2A2.2 (Aggravated Assault) for conduct acquitted at trial.

Determining *how* a defendant was convicted under 18 U.S.C. § 111(a) is instrumental to sentencing a conviction under 18 U.S.C. § 111(a). This is because the three ways in which a defendant can violate § 111(a) each produce a very different penal result. Under the Guidelines, the base offense level for misdemeanor assault is 4; the base offense level for felony assault with physical contact is 7; and, the base offense level for an aggravated assault is 14, which is defined, in part, as an assault with the intent to commit another felony. *See* U.S.S.G. § 2A2.3, § 2A2.2 n.1. If the official victim enhancement under U.S.S.G. §3A1.2 is applied in full, the sentencing range for assault with physical contact is 12-18 months while the sentencing range for aggravated assault is 33-41 months. When computing the guidelines and referring to the sentencing table, the distinction between the Guidelines Sentence for *felony assault with physical contact* and *felony assault with the intent to commit another felony* is a jail sentence recommendation that is three times as long, and which must be served fully in a

penitentiary, as opposed to being divisible between a penitentiary and home confinement.[1]

(However, both the defense and DOJ computations are below the statutory maximum of eight

years under 18 U.S.C. § 111(a)).

If Mr. DaSilva is sentenced under U.S.S.G. § 2A2.2 for the third prong of 18 U.S.C. §

111(a), he would be sentenced on acquitted conduct and subjected to a sentencing

recommendation that is *three times as high* as what the Guidelines recommend for the second

prong of 18 U.S.C. § 111(a), the charge of his conviction. The distinction between which

Guideline, and therefore which prong of 18 U.S.C. § 111(a) is applied to his sentence, is of

constitutional significance to the defendant.


## II) Use of Acquitted Conduct at Sentencing

Historically, there appears to be little record of acquitted-conduct sentencing before the

1970s. *See* C. Murray, Hard Cases Make Good Law: The Intellectual History of Prior Acquittal

Sentencing, 84 St. John's L. Rev. 1415, 1444, 1427–1437, 1450–1455 (2010) (describing the role

of federal statutes and especially the Guidelines in the rise of acquitted-conduct sentencing);

*McClinton v. United States*, No. 21-1557, 600 U. S. ____ (2023) (statement of Sotomayor, J.

regarding denial of certiorari).

---

[1] This computation of the sentencing range is based on U.S.S.G. § 2A2.3, § 2A2.2 and §3A1.2, and the computation of the portion of the sentence that is to be served in a penitentiary is based on U.S.S.G. § 5C1.1.

The Defense has not received a final version of the PSR as of the filing of this Memo. The Draft PSR, see ECF No. 104, increased the guidelines even further past the ones discussed here based on improper grouping analysis, to which the Defense objected in ECF No. 105.

In 1984, the U.S. Sentencing Commission was created by the Sentencing Reform Act, which enacted the Sentencing Guidelines that call for the consideration of acquitted conduct at federal sentencing.

There are two potential uses for acquitted conduct at sentencing under the Guidelines: (1) use of acquitted conduct to determine the applicable Guideline and sentencing range under U.S.S.G. §1B1.3, and, (2) use of acquitted conduct to determine the appropriate sentence under U.S.S.G. §1B1.4, 18 U.S.C. § 3661, and 18 U.S.C. § 3553.

## A) Current State of the Law

In 2014, in one of the most important dissents in modern criminal jurisprudence, Justices Scalia, Thomas, and Ginsburg outlined a constitutional catastrophe that is the current state of sentencing in U.S. federal courts, after a writ of certiorari from the D.C. Circuit was denied to *United States v. Jones*, 744 F.3d 1362 (D.C. Cir. 2014):

> The Sixth Amendment, together with the Fifth Amendment's Due Process Clause, "requires that each element of a crime" be either admitted by the defendant, or "proved to the jury beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 104, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013). Any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime, *Apprendi v. New Jersey*, 530 U.S. 466, 483, n. 10, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and 'must be found by a jury, not a judge,' *Cunningham v. California*, 549 U.S. 270, 281, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). We have held that a substantively unreasonable penalty is illegal and must be set aside. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence —is an element that must be either admitted by the defendant or found by the jury. It may not be found by a judge.
>
> For years, however, we have refrained from saying so. In *Rita v. United States*, we dismissed the possibility of Sixth Amendment violations resulting from substantive reasonableness review as hypothetical and not presented by the facts of the case. We thus

left for another day the question whether the Sixth Amendment is violated when courts impose sentences that, but for a judge-found fact, would be reversed for substantive unreasonableness. 551 U.S., at 353, 127 S.Ct. 2456; see also id., at 366, 127 S.Ct. 2456 (Stevens, J., joined in part by Ginsburg, J., concurring) ("Such a hypothetical case should be decided if and when it arises"). Nonetheless, the Courts of Appeals have uniformly taken our continuing silence to suggest that the Constitution does permit otherwise unreasonable sentences supported by judicial factfinding, so long as they are within the statutory range…

This has gone on long enough. The present petition presents the nonhypothetical case the Court claimed to have been waiting for. And it is a particularly appealing case, because not only did no jury convict these defendants of the offense the sentencing judge thought them guilty of, but a jury acquitted them of that offense. Petitioners were convicted of distributing drugs, but acquitted of conspiring to distribute drugs. The sentencing judge found that petitioners had engaged in the conspiracy of which the jury acquitted them. The Guidelines, petitioners claim, recommend sentences of between 27 and 71 months for their distribution convictions. But in light of the conspiracy finding, the court calculated much higher Guidelines ranges, and sentenced Jones, Thurston, and Ball to 180, 194, and 225 months' imprisonment.

*Jones v. United States,* 574 U.S. 948, 949, 135 S.Ct. 8, 190 L.Ed.2d 279 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from denial of certiorari); *see also United States v. Watts*, 519 U. S. 148, 170 (1997) (Kennedy, J., dissenting). *Accord United States v. Sabillon-Umana*, 772 F. 3d 1328, 1331 (10th Cir. 2014) (Gorsuch, J.).

The following year, then-Judge Kavanaugh of the D.C. Circuit wrote in a concurrence, that "[a]llowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial." *United States v. Bell,* 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of rehearing en banc). Judge Millet then echoed this sentiment in 2018 and 2019—

… sentencing a defendant to a longer period of incarceration based on the conduct of which he was *acquitted* by a jury is a "grave constitutional wrong." *United States v. Brown*, 892 F.3d 385, 409 (D.C. Cir. 2018) (Millett, J., concurring); see also *Bell*, 808

F.3d at 928-932 (Millett, J., concurring in the denial of rehearing en banc); *United States v. Bagcho*, 923 F.3d 1131, 1141 (D.C. Cir. 2019) (Millett, J., concurring).

*United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) (Millett, J., concurring).

Judge Kavanaugh elucidated that "even in the absence of a change of course by the Supreme Court, ... federal district judges have power in individual cases to disclaim reliance on acquitted... conduct." *Bell,* 808 F.3d at 928 (Kavanaugh, J., concurring in the denial of rehearing en banc). In the recent 2022 Court of Appeals decision in *Khatallah,* Judge Millett similarly noted that "district courts have that authority [not to consider acquitted conduct if they determine that doing so would be inconsistent with their responsibility to impose a just and reasonable sentence]," *Khatallah*, 41 F.4th at 651 (Millett, J., concurring). Judge Millett then went further.

> Of course, I am of the view that district courts not only can vary downward to sidestep reliance on acquitted conduct, but that they should do so based on bedrock legal principles. "[A]llowing a judge to dramatically increase a defendant's sentence based on jury-acquitted conduct is at war with the fundamental purpose of the Sixth Amendment's jury-trial guarantee[,]" and when a deprivation of liberty is made longer based on facts the jury determined were not proved beyond a reasonable doubt, then that great "liberty-protecting bulwark becomes little more than a speed bump at sentencing." *Bell*, 808 F.3d at 929 (Millett, J., concurring in the denial of rehearing en banc).

> I am not alone in that view. "Many judges and commentators have similarly argued that using acquitted conduct to increase a defendant's sentence undermines respect for the law and the jury system." *Settles*, 530 F.3d at 924.

*Id*. at 652-53.[2]

---

[2] In *Khatallah*, the majority opinion did not decide the question of whether district courts are permitted to vary downward in order to avoid sentencing defendants on the basis of acquitted conduct because "the government has conceded the point." *Khatallah* at 647. Instead, the Court of Appeals was deciding an issue of Judge Cooper's downward departure in the Benghazi case that was even farther below the acquitted-conduct reduction, which the Court of Appeals determined was done without adequate justification. *Id.* at 651 ("the district court abused its discretion by varying downward significantly further and imposing a sentence both lower than the minimum that would be appropriate in light of the jury's acquittals and far lower than could be justified on this record by reference to the Section 3553(a) factors").

Judge Bright of the Eighth Circuit characterized acquitted-conduct-sentencing as allowing "the Government to try its case not once but twice," "[t]he first time before a jury; the second before a judge." *United States v. Canania*, 532 F.3d 764, 776 (8th Cir. 2008) (Bright, J., concurring). Judge Bright expressed his "strongly held view" that this "sentencing regime" "violates the Due Process Clause of the Fifth Amendment" because it "undermines the notice requirement that is at the heart of any criminal proceeding." *Id*. at 776-77. Judge Fletcher of the Seventh Circuit described the consideration of acquitted conduct as a "direct repudiation of the jury verdict." *United States v. Mercado*, 474 F.3d 654, 658, 664 (9th Cir. 2007) (Fletcher, J., dissenting). Judge Barkett of the Eleventh Circuit wrote that "sentence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment." *United States v. Faust*, 456 F.3d 1342, 1349 (11th Cir. 2006) (Barkett, J., specially concurring).

Moreover, D.C. Circuit Judges Kavanaugh and Millet have outlined a secondary observation for acquitted conduct under the Guidelines — U.S.S.G. § 1B1.3 may sometimes require district judges to factor in acquitted or uncharged conduct when calculating the advisory Guidelines range. *See Bell*, 808 F.3d at 928 (Kavanaugh, J., concurring in the denial of rehearing en banc); *Khatallah*, 41 F.4th at 653 (Millett, J., concurring). Nonetheless, the solution to this was clear— "since those Guidelines are only advisory, there should be no question that 'district judges may then vary the sentence downward to avoid basing any part of the ultimate sentence on acquitted * * * conduct[,]' *id*., and so to ensure a sentence is fair and appropriate as required by 18 U.S.C. § 3553(a)." *Khatallah*, 41 F.4th at 653 (Millett, J., concurring).

Understanding the general unfairness and Constitutional significance of the Guidelines calling for consideration of acquitted conduct, then-Judge Kavanaugh explained in the 2015 *Bell* concurrence that "it likely will take some combination of Congress and the Sentencing Commission to systematically change federal sentencing to preclude use of acquitted or uncharged conduct," due to the Supreme Court's precedent in the opinions in *Booker* and *Alleyne*, with which Judge Kavanaugh expressed disagreement. *See Bell*, 808 F.3d at 928 (Kavanaugh, J., concurring in the denial of rehearing en banc).

In January of 2023, the United States Sentencing Commission proposed amendments to the Sentencing Guidelines that were in line with the opinions of Judges Kavanaugh and Millet, amendments that would have *prohibited* consideration of "acquitted conduct for purposes of determining the guideline range, except when such conduct was admitted by the defendant during a guilty plea colloquy or was found by the trier of fact beyond a reasonable doubt to establish, in whole or in part, the instant offense of conviction." *See* 88 Fed. Reg. 7180, 7224-7225 (Feb. 2, 2023).[3] However, the Chair of the U.S.S.C. stated that the Committee "intend[s] to resolve questions involving acquitted conduct next year." *Remarks as Prepared for Delivery by Chair Carlton W. Reeves* 23 (Apr. 5, 2023).[4] He explained:

> We received an immense amount of comment on our proposals regarding acquitted-conduct sentencing. Some asked us to preserve judges' ability to consider acquitted conduct. Some asked us to move forward with the proposal to significantly limit how judges can use such conduct. But many others wanted us to go bolder, either by banning any consideration of acquitted conduct when using the guidelines or addressing other forms of conduct judges can currently consider.

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202303/88FR7180_public-comment.pdf

[4] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_remarks.pdf

These comments affirmed to all Commissioners that the question of "What conduct judges can consider when using the guidelines" is, as professor Doug Berman has said, "of foundational and fundamental importance to the operation of the entire federal justice system." We all agreed that the Commission needs a little more time before coming to a final decision on such an important matter. We intend to resolve questions involving acquitted conduct next year.

*Id*.

There were at least 13 cases that had filed petitions for *writ of certiorari* before the Supreme Court in 2023 seeking redress on questions related to a trial court's consideration at sentencing of conduct that a factfinder did not find beyond a reasonable doubt. A petition has not yet been granted for any of these cases. After one of these petitions was denied, Justice Sotomayor wrote that "[s]o far as the criminal justice system is concerned, [after aquittal at trial] the defendant has been set free or judicially discharged from an accusation; released from a charge or suspicion of guilt." *McClinton v. United States*, 600 U. S. ____ (2023) (statement of Sotomayor, J.) (Internal quotations omitted). "[T]he jury has formally and finally determined that the defendant will not be held criminally culpable for the conduct at issue." *Id*. She went on to point out additional problems with acquitted-conduct sentencing: "There are also concerns about procedural fairness and accuracy when the State gets a second bite at the apple with evidence that did not convince the jury coupled with a lower standard of proof." *Id*. And, "acquitted-conduct sentencing also raises questions about the public's perception that justice is being done, a concern that is vital to the legitimacy of the criminal justice system." *Id*. Justice Sotomayor explained that the denial of *certiorari* was based on the Sentencing Commission promising that it would resolve questions around acquitted-conduct sentencing next year. "If the Commission does not act expeditiously or chooses not to act, however, this Court may need to take up the constitutional issues presented." *Id*.

**B) Law Applicable Today to Defendant's Case**

For purposes of Matthew DaSilva's case, being sentenced in October of 2023 and prior to any intervening decision by the Supreme Court or the Sentencing Commission, this Court is left without direct authority *prohibiting* the consideration of acquitted conduct in either the consideration of the appropriate Sentencing Guideline or for ordering a just sentence. As the D.C. Circuit has previously pointed out, the Supreme Court's *Booker* decision "did not expressly address the sentencing court's consideration of acquitted conduct." *United States v. Dorcely*, 454 F.3d 366, 372 (D.C. Cir. 2006).

Nonetheless, this court has the guidance of Justice Scalia, Justice Thomas, Justice Ginsburg, Justice Kavanaugh, and Judge Millet as discussed *supra*. And, this court has ***direct authority from the Supreme Court and the D.C. Circuit to depart downwards in observance of the trial verdict***. *See United States v. Booker,* 543 U.S. 220, 264-65 (2005) (district judges "maintain[] flexibility sufficient to individualize sentences where necessary"); *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) (district judges have discretion to vary downward from the Guidelines range); *see also Alleyne v. United States*, 570 U.S. 99, 104 (2013) (the Sixth Amendment, together with the Fifth Amendment's Due Process Clause, require that each element of a crime be proved beyond a reasonable doubt); *Apprendi v. New Jersey,* 530 U.S. 466, 483, n.10 (2000) (any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime).

Thus, if this Court finds that the trial verdict is inconsistent with the Sentencing Guideline applicable pursuant to U.S.S.G. §1B1.3, this Court has the authority to choose to depart to the Guideline consistent with the trial verdict, or even below that, to order a penalty

that is consistent with justice and the Constitution. *See also United States v. DiFrancesco*, 449

U.S. 117, 129 (1980) (acquittal after a trial "is accorded special weight"); *Gall v. United States*,

552 U.S. 38, 51 (2007) (a substantively unreasonable penalty is unlawful); *Apprendi*, 530 U.S. at

494 ("the relevant inquiry is one not of form, but of effect—does the required finding expose the

defendant to a greater punishment than that authorized by the jury's guilty verdict?").

Of course, all other arguments aside, neither *Booker* nor the most recent D.C. Circuit

opinion on this issue require this court to apply the sentence that is recommended by the

guidelines. *See United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) (district judges have the

discretion to vary downward from the Guidelines range as long as they observe Section 3553(a)

factors); *see also Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Gall v. United States*,

128 S. Ct. 586, 602 (2007).


**C) Review of Sentencing Guidelines and Legal Issues Potentially Applicable to Defendant**

Three potential avenues exist to determine the applicable Guideline for the defendant's

case. The Defense proposes two alternative avenues based squarely on convicted conduct,

yielding the same result. The third, the one sought by the DOJ, produces a result that yields a

sentence three times as high as the Guideline derived based on the verdict.

Mr. DaSilva was found guilty of two felony offenses, 18 U.S.C. § 231(a)(3) and 18

U.S.C. §111(a) — *under the physical contact prong*. He was not found guilty of possessing the

intent to commit another felony.

U.S.S.G. § 2A2.4 guides sentencing for a conviction under 18 U.S.C. § 231(a)(3). The base offense level under § 2A2.4 is 10, and if the offense involves physical contact, there is a 3-point increase. Thus, the defendant's Guideline under § 2A2.4 is 13.

U.S.S.G. § 2A2.3 guides sentencing for a conviction under 18 U.S.C. §111(a). The base offense level is 7 when the conduct includes physical contact. If the victim was a government officer, the *offense of conviction* was motivated by such status, and the offense was against a person, there is a 6-point increase under U.S.S.G. § 3A1.2— bringing the defendant's Guideline under § 2A2.3 to 13.

Both of the defendant's felony counts of conviction yield an identical Offense Level through different computations under the Guidelines — Offense Level 13.

The Government, however, is seeking the application of U.S.S.G. § 2A2.2 for aggravated assault conduct which was acquitted at trial, which yields a base level of 14, as well as an additional 6-level increase through U.S.S.G. § 3A1.2 for the same. The Government's computation yields an Offense Level of 20.

While an Offense Level of 13 recommends a sentencing range of 12-18 months, an Offense Level of 20 recommends a sentencing range of 33-41 months — a sentence that is *three times as high* as a sentence consistent with the trial verdict.

The Government's Guidelines Calculations are wrong in two ways: 1) seeking a Guideline for conduct that was acquitted, and 2) applying an additional enhancement under a Guideline that is only applicable to an offense of conviction.

The language of U.S.S.G. § 3A1.2 appears to *only* apply to the *offense of conviction*, as opposed to all relevant conduct. Therefore, while U.S.S.G. § 3A1.2 would be applicable to

U.S.S.G. § 2A2.3 as the offense of conviction, it would not be applicable to U.S.S.G. § 2A2.2 because the defendant was not convicted of an assault with the intent to commit another felony. Accordingly, if U.S.S.G. § 2A2.2 is applied under a U.S.S.G. § 1B1.3 theory, there cannot be an additional increase under U.S.S.G. § 3A1.2. If U.S.S.G. § 2A2.2 is applied, then the maximum Guideline Applicable to the offense should be 14.

### D) Argument of Guidelines' Applicability to Defendant's Case

According to U.S.S.G. § 1B1.3, the factors for determining the applicable sentencing range include relevant conduct, not just the offense of conviction. Outside of extraordinary circumstances, the District of Columbia uses a preponderance of the evidence standard in determining what type of evidence can be included in this consideration. *See United States v. Dorcely*, 454 F.3d 366, 373 (D.C. Cir. 2006); *United States v. Long*, 328 F.3d 655, 671 (D.C. Cir. 2003) (following the Third Circuit's extraordinary circumstances test for deciding when a higher standard than a preponderance of the evidence should be applied to relevant conduct, and holding that an 8-level increase, unlike a 22-level increase, is not an extraordinary circumstance that changes the standard of proof). The D.C. Circuit, however, has not reviewed the distinction between relevant conduct that was acquitted at trial and relevant conduct that was not indicted. Trial judges are left to make their own decisions on what evidence to consider and how.

The main factual issue before the court is whether the Government can prove by a preponderance of the evidence that Mr. DaSilva possessed "an intent to commit another felony" under the definition of U.S.S.G. § 2A2.2. What does "an intent to commit another felony" mean under the guidelines?

Unlike their plain meaning in a statute, terms used by the Sentencing Guidelines take on entirely different and unique meanings. For example, the phrase "bodily injury" in the statute means "physical pain, illness, or any impairment of physical condition." Model Penal Code § 210.0(1); ECF No. 76, *7. "Bodily injury" in a portion of the U.S. Code is defined as "(a) a cut, abrasion, bruise, burn, or disfigurement, (b) physical pain, (c) illness, (d) impairment of the function of a bodily member, organ, or mental faculty; or (e) any other injury to the body, no matter how temporary." 18 U.S.C. § 1365. But "bodily injury" in the Sentencing Guidelines requires a higher threshold, and means "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1.

Thus the meaning of "another felony" could be different under the Guidelines than what it may mean in the code. But the problem for the parties and the Court is that "another felony" is not defined in the Guidelines, or in the code. The parties must refer to the dictionary.

The word "another" is defined as "different or distinct from the one first considered," "some other," or "being one more in addition to one or more of the same kind." *Another*, Merriam-Webster (2023). The first and second definition of the word "another" is the opposite of the third; *different or distinct from the one first considered* is the opposite of *one or more of the same kind*. Meaning that without a specific definition guiding the court on how to define the term as it applies to the concept of "another felony," the Court is left to apply the definition most consistent with lenity — defining another as different or distinct from the one first considered. Moreover, the case law from the circuits on which the Government relies to expand the definition of the term "another" is consistent with the first dictionary definition of the word, not

the third. "[T]he cases the government relies upon all involve something of a different nature, an assault on an officer when you're committing a robbery, when you're trying to get away from a drug offense or some other offense." *United States v. Hamner*, No. 21-cr-689-ABJ (D.D.C. September 23, 2022).[5]

Furthermore, §111(a) and U.S.S.G. § 2A2.2 both require a future intent, not a past or present one. The "intent to commit" language is necessarily referencing an act that has not yet been done, but that is expected to be done in some future period. We can tell from the choice of the language used — "intent to commit," (future expectation) as opposed to "committed" (past tense) or "committing" (present tense). The language "intent to commit" is thus necessarily evocative of a future or subsequent intent. This requires the Government to prove that the defendant intended a future or subsequent act after the commission of the act subjecting him to the application of U.S.S.G. § 2A2.2. There is no such proof in this case.

In Mr. DaSilva's case, the Government attempts to prove that he committed an offense of the same nature and at the same time, or even prior to, the commission of the felony assault, a Count of interfering or impeding law enforcement officers. The nature of the offense for 18 U.S.C. § 231(a)(3) and 18 U.S.C. §111(a) is so similar that they use very similar verbs, are penalized in the same chapter of the Sentencing Guidelines, return identical Offense Level ranges, and in this case include the same set of facts. In no way are these offenses different or

---

[5] In *United States v. Hamner,* Judge Amy Berman Jackson rejected the Government's attempted use of Civil Disorder as the other felony for a count of 111(a), saying, "I don't see how the interference with officers during a civil disorder can be the other felony that's the necessary element to charge a felony violation of § 111, while at the same time § 111 is the other felony that makes the interference with the officers an aggravated assault." Judge Jackson went on to define "another felony" to mean "something other" and "a second, different crime." Judge Jackson expressed concern with the disparity in sentencing calculations under U.S.S.G. § 2A2.2 — "a difference of ten levels on the guidelines chart for the exact same set of facts" and which would have exceeded the statutory maximum in Mr. Hamner's case.

distinct from one another in the meaning of the word "another." And, this other offense is one that this court has determined as taking place either simultaneously while committing) or at a prior time. The Court stated at the reading of the verdict:

> I find beyond a reasonable doubt that DaSilva knowingly committed an act with the intended purpose of obstructing, impeding or interfering with law enforcement officers stationed in the Tunnel. Specifically, I refer to DaSilva's act of forcibly pushing against and grabbing at the riot shield in the so-called Tunnel at approximately 4:33 p.m. on January 6th, as well as his act of swatting Officer Sterling's hand that was holding a canister of OC spray…

> Alternatively, I find beyond a reasonable doubt that DaSilva attempted to commit an act with the intended purpose of obstructing, impeding or interfering with law enforcement officers, when he joined other protestors in barricading a door, at approximately 2:45 p.m. on the west plaza.

As adjudicated by the court, the acts took place simultaneous to the assault (half were even acts that also constituted the assault); or, as an alternative finding, the acts took place prior to the assault; none were *after* the fact. Therefore, even if a preponderance standard is applied to the facts of Mr. DaSilva's case, there is no evidence to support the conclusion that Mr. DaSilva intended to commit "another felony" for purposes of applying U.S.S.G. § 2A2.2.

Accordingly, the correct Guideline for this case is either for assault under U.S.S.G. § 2A2.3 or for impeding officers under U.S.S.G. § 2A2.4, either one of which produces an Offense Level of 13 in this case, as discussed *supra*.

### E. Disparity in DOJ Guideline Applications

The DOJ's proposed Guidelines application to Mr. DaSilva is inconsistent with its Guidelines determination in other comparable cases. *See United States v. Presley*, 1:21-cr-000257-RDM, ECF No. 40 (D.D.C. Jul. 28, 2022) (applying U.S.S.G. § 2A2.4 to a case



involving the grabbing an officer's shield and pulling it as the officer guarded the entry doors to the Capitol); *United States v. Sirr*, 1:22-cr-259-TNM, ECF No. 37 (D.D.C. Jan. 27, 2023) (applying U.S.S.G. § 2A2.4 to a case involving presence deep inside the Capitol tunnel for an extended period of time and pushing on riot shields); *United States v. Lints*, 1:22-cr-259-TNM, ECF No. 40 (D.D.C. Feb. 24, 2023) (applying U.S.S.G. § 2A2.4 to a case involving the use of a found police riot shield to push back against an officer holding a shield, then use of the found shield to prevent an officer from closing a door to create a barrier between the rioters and police). Only for Mr. DaSilva, whose conduct is lesser than the referenced January 6 cases, does the DOJ seek the application of U.S.S.G. § 2A2.2.

Mr. DaSilva's conduct is in no way more egregious or more assaultive in nature than that of the three January 6 defendants described above. Yet, Mr. DaSilva was charged with § 111(a), assault, while the others were not. Yet, all of these cases could have been charged in the same way as that of Mr. DaSilva. The actions of the defendants did not present disparity warranting for Mr. DaSilva to face higher charges. The original charging decisions and the disparity in the charges for this group of defendants are inexplicable. There is no reason why Mr. DaSilva was charged with assault while the others were not. And, as far as aggravated assault with the intent to commit another felony, at least one of the others was charged with an additional felony, (although the other felony need not be charged in the Indictment specifically). Mr. Presley was indicted on 18 U.S.C. § 1512(c)(2) prior to being offered a plea.

It is important for this Court to be notified that the plea offer extended to defendants Sirr, Lints, and Presely, was not offered to Mr. DaSilva. Although Mr. DaSilva requested reasonable plea offers, the only offers that the "supervisors" would approve for Mr. DaSilva were ones

forcing agreement to U.S.S.G. § 2A2.2, for an aggravated assault guideline that required admission to having the intent to commit another felony. The DOJ specifically declined defense counsel's offers for Mr. DaSilva to plead guilty to an offense with an agreed-upon Guideline of U.S.S.G. § 2A2.4, which would have resulted in the completion of this case in the year 2022. The Government also rejected undersigned counsel's offers to plead guilty without an agreement on Guidelines and rejected defense counsel's offer for a stipulated trial instead of a plea, where applicable Guidelines would be determined by the Court. Mr. DaSilva, through his counsel, engaged in extensive attempts to negotiate a fair plea but the DOJ remained impenetrable on the issue of U.S.S.G. § 2A2.2. A trial was all that Mr. DaSilva had as an option to fairly resolve his case.



**F. D.D.C. Judge Walton Applied U.S.S.G. § 2A2.4 to Similar Conduct**

In the only riot shield pushing case of which the Defense is aware, in which there was an argument on Guidelines application after a conviction under both § 111(a) and § 231, a judge for the United States District Court for the District of Columbia found that U.S.S.G. § 2A2.4 is the correct Guideline applicable to the conduct of pushing on a riot shield.

On October 16, 2023, in the sentencing of Donnie Duane Wren, Judge Walton applied U.S.S.G. § 2A2.4 instead of § 2A2.2 to a defendant convicted at trial of both § 111(a) and § 231, as well as one misdemeanor offense. *See United States v. Wren,* 1:21-cr-00599-RBW (D.D.C. docket entry not yet available). On January 6, 2021, Mr. Wren pushed back against the police line by placing his hands on an officer's shield and leaning all his weight into the riot shield, preventing the police officer from advancing forward. Mr. Wren's actions then instigated a fight between rioters and police attempting to clear the area, according to the Government.[6] Based on this articulation, the conduct of Mr. Wren was more serious than that of Mr. DaSilva. However, the Guideline applied to Mr. Wren is the same one that should apply to Mr. DaSilva.

**G. Constitutional Bar to Application of U.S.S.G. § 2A2.2 for Acquitted Conduct**

In Mr. DaSilva's case, the Guideline in dispute is one that applies to a crime of which the defendant was acquitted at trial.

U.S.S.G. § 2A2.2 only applies to 18 U.S.C. §111(a) charges when the offense conduct was an aggravated assault— when the defendant commits an assault under 18 U.S.C. §111(a)

---

[6] Press Release, *Two Men from Mississippi and Alabama Sentenced for Actions During Jan. 6 Capitol Breachtions*, DOJ (Oct. 16, 2023), https://www.justice.gov/usao-dc/pr/two-men-mississippi-and-alabama-sentenced-actions-during-jan-6-capitol-breach.

with the intent to commit another felony. In this case, however, although the defendant was indeed found to have committed an assault, he was not found at trial to have possessed the intent to commit another felony. The element on which the Government seeks to triple the defendant's sentence is acquitted conduct.

The language of 18 U.S.C. § 111, in relevant part, reads: "Whoever — forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [law enforcement officers]… and where such acts involve … the **intent to commit another felony**, be fined under this title or imprisoned not more than 8 years, or both." Utilizing the same language, U.S.S.G. § 2A2.2 states "'Aggravated assault' means a felonious assault that involved … an **intent to commit another felony**." U.S.S.G. § 2A2.2, n.1. The Guideline clearly evokes a particular element of proof of an offense — which is the same element of proof of which Mr. DaSilva was acquitted at trial.

Unlike a scenario of uncharged conduct being considered at sentencing, Mr. DaSilva's case presents a situation in which an acquitted element of an offense is being brought to the Court for penalty magnification. This exact situation is the one that Justices Scalia, Thomas, and Ginsburg warned about in the *Jones* dissent and the same situation that was addressed by the D.C. Circuit in *Khatallah*. *See Jones v. United States,* 574 U.S. 948 (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from denial of certiorari); *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022). This situation is the one in which a defendant's Fifth and Sixth Amendment rights are on the line.

Increasing the sentence for Mr. DaSilva on *an element of an offense* not proven beyond a reasonable doubt at trial is a violation of his Sixth Amendment and Fifth Amendment rights. *See Alleyne v. United States*, 570 U.S. 99, 104 (2013); *Apprendi v. New Jersey,* 530 U.S. 466, 483,

n.10 (2000) (any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime); *Blakely v. Washington*, 542 U.S. 296 (2004) (jury must find all facts essential to sentence beyond a reasonable doubt); *Cunningham v. California*, 549 U.S. 270 (2007) (jury must find facts exposing defendant to longer sentence); *S. Union Co. v. United States*, 567 U.S. 343 (2012) (jury must find facts permitting imposition of criminal fine); *see also Jones v. United States,* 574 U.S. 948, 949, 135 S.Ct. 8, 190 L.Ed.2d 279 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from denial of certiorari). As the Supreme Court explained in *Booker*, the cursory *Watts* decision does not preclude such analysis. *United States v. Booker,* 543 U.S. 220, 240 n.4. (2005); *see also Connecticut v. Doehr*, 501 U.S. 1, 12 n.4 (1991) ("A summary disposition does not enjoy the full precedential value of a case argued on the merits…").

   While these cases emphasize the role of a jury, and Mr. DaSilva elected to have a bench trial, the standard of proof beyond a reasonable doubt still applied at his trial, as well as every promise of the Fifth and Sixth Amendments. Mr. DaSilva never relinquished his Fifth Amendment right, nor his full Sixth Amendment right. A bench trial is only a yield of the right to be tried by a jury, not the right to a trial as a whole. The Sixth Amendment reads in full:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial *jury* of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

U.S. Const. Amend. VI. The only word that Mr. DaSilva crossed out from this right was the word *jury* when he signed the waiver to have a bench trial; everything else remained. And, in relevant part, Mr. DaSilva's Fifth Amendment rights were at trial, and remain at sentencing, as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury… nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law…

U.S. Const. Amend. V.

Just as it is unconstitutional to sentence a defendant to elements of an offense acquitted at a jury trial it too is unconstitutional to sentence a defendant on elements of an offense acquitted at a bench trial. The trial itself, the standard of proof beyond a reasonable doubt, and the aquittal on an element of an offense — considered jointly — yielded a lower penalty recommendation than the one being sought by the Government — this is the key to the constitutional analysis in this case.

The fair trial described by the Sixth Amendment, which works in conjunction with the Fifth Amendment, is what should be required before an element of an offense could subject a defendant to a specific penalty at sentencing. *In re Winship*, 397 U.S. 358, 364 (1970) (due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). This is why acquittal after a trial "is accorded special weight." *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980).

On constitutional grounds, therefore, the acquitted conduct should not be considered.

## III. Conclusion

Regardless of whether this Court reaches the conclusion based on a factual evaluation, or whether the Court reaches it through a constitutional analysis in line with the opinions of Justice Scalia, Justice Thomas, Justice Ginsburg, Justice Kavanaugh, and Judge Millet, the outcome is the same — a recommended Guidelines sentencing range of 12 to 18 months. The Defense, therefore, seeks this court's rejection of the Government's request to apply U.S.S.G. § 2A2.2 to the Defendant's case.

The Defendant will be arguing for a downward departure from this 12 to 18 month recommended Guidelines range pursuant to Section 3553(a) factors, *Booker*, and *Khatallah*, in the Defendant's Sentencing Memorandum, as well as pursuant to U.S.S.G. § 3E1.1 and *United States v. Harrington*, 947 F.2d 956 (D.C. Cir. 1991).

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

## CERTIFICATE OF SERVICE FOR CM/ECF

I hereby certify that on October 18, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the

CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.