UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Criminal Case No: 1:21-cr-00564 |
| **MATTHEW DASILVA,** | ) ) ) | |
| Defendant. | ) ) | |

**Reply to ECF No. 113,
Government's Additional Opposition to Defendant's Motions to Acquit**

The Government's brief in ECF No. 113 grossly mischaracterizes the defendant's arguments and legal position. To clarify and re-summarize the defendant's argument, the defense avers as follows:

- Section 1752 is a unique statute in that some of the elements of the offense are defined within the statute itself.

- The defense argues that all definitions, as outlined by the statute, should be applied to their respective statutory elements in whole, not just in part. The Government, conversely, argues that the definitions within the statute should be applied to their respective statutory elements in part.

- A plain reading of the statute supports the defense position that statutory definitions should be applied in whole to each statutory element.

- The Legal Instructions in this case are consistent with the Defendant's arguments and reading of the statute.

- As was articulated at the oral hearing, the Government asks for a convoluted reading of the statute — for the statutory definition to be cut down and applied only partially to the statutory element, but only when applying the mens rea element; otherwise, the Government concedes the definition should be read in full.

Defense arguments were brought under a Rule 29 motion *after* the Legal Instructions had been finalized and *after* there were convictions on the Counts arising under Section 1752. Therefore, this case presents a unique issue for the Court — to determine only whether a conviction is based on insufficient evidence, as opposed to whether the instructions should be changed or whether the definitions of the instructions should be limited, as the Government now seeks. The Defense seeks for the legal instructions to be enforced against the Government as they are written.

The defense argues that the evidence presented at trial was insufficient to establish a conviction under any Section 1752 count because there was no evidence presented at trial that Mr. DaSilva knew that VP Michael Pence was or would be in the restricted area at the time of his transgressions.

1) THE FACTS IN EVIDENCE DO NOT SUSTAIN A CONVICTION UNDER A RULE 29 MOTION.

This Court tasked this Government with first answering the question of whether the evidence in the trial record was sufficient under Rule 29 to establish that Mr. DaSilva knew that VP Michael Pence was in the restricted area at the time of his transgressions. The Government provided the following list of evidence in the record, none of which, even collectively, are on point.

The Government's evidence is sumamrized as follows:

1. After Mr. DaSilva engaged with the officers in the tunnel, the crowd started to cheer, "Hang Mike Pence."

2. Mr. DaSilva wore a hat depicting the Japanese characters "MA" and "GA."

3. Mr. DaSilva held a flag for portions of the protest that read, "Trump 2020."

4. The crowd chanted, "Stop the Steal" throughout the day.

5. Someone in the crowd held a sign that said, "Fight for Trump."

6. Someone in the crowd shouted, "They did not certify the election today."

7. Someone shouted, "We the people are not going to take it anymore. You are not going to take away our Trumpy bear. You are not going to take away our votes and our freedom that our men died for. This is 1776 and we the people will never give up."

8. Vice President Pence was in the Capitol by stipulation (and by testimony of the Secret Service witness).

While this list is a creative attempt, it does not prove the element in question— whether Mr. DaSilva knew that VP Pence was or would be in the restricted area when he entered the restricted area.

- A reasonable inference that Mr. DaSilva was a Trump supporter can surely be made — from Mr. DaSilva's presence at a pro-Trump rally while holding a Trump flag and wearing a Japanese "MA GA" cap — *but* this is political affiliation. It is not *knowledge of the whereabouts of VP Pence.*

- The sign in the crowd, "Fight for Trump" was *behind* Mr. DaSilva, and there is no evidence he ever viewed it; but even if he were to hypothetically look at it directly— so what? What does this have to do with the location of VP Mike Pence?

- The chants of the crowd at no point allude to the *location* of VP Pence.

- References to "Trumpy Bear" and 1776 in the crowd have nothing to do with the VP location either.

- Chants by the crowd of "Stop the Steal" do not give us information about VP Pence's location either. What does this even mean? There is no testimony to explain these words. Mr. DaSilva never *stated* such words. Aside from the fact that we don't have evidence to support that Mr. DaSilva even *heard* such words, even if hypothetically there was clear evidence that he did — the words do not approach establioshing the element in question.

- *One man in the crowd,* at a time period unknown, apparently said, "They did not certify the election today," — which Mr. DaSilva never acknowledged hearing. This statement does not discuss Mike Pence or his location. It is unclear from the evidence at trial how this would fit into any discussion about the whereabouts of Mike Pence.

- As a reminder, the FBI agent who investigated Mr. DaSilva, Cory Ray, testified on cross-examination that he had been in crowded protests before and that it's *difficult to hear* in these environments when people are yelling, then added that it could be *very difficult* to hear in protests, and then clarified that *the louder the crowd, the more difficult it is to hear*. The January 6 crowd is incredibly loud in the videos in evidence.

MEDVIN LAW »
PAGE 4 / 15

The evidence argued by the government is nowhere near responsive to the question at hand: did Mr. DaSilva know that VP Mike Pence was in the restricted area? Everything the Government has argued is related to Trump or some political chant. It's not on point. **This is akin to the court asking the Government to bring forward a dog, and in response, the Government presents a turtle**.

The only evidence that actually mentions Mike Pence is when the crowd chanted "hang Mike Pence," which occured *after* Mr. DaSilva's interaction with the shield. At that very time, Mr. DaSilva makes statements to the officers — which do not make any mention of Mike Pence, nor violence, nor understanding of the events transpiring around him. There is no evidence that Mr. DaSilva heard the chant. The evidence presented at trial as to Mr. DaSilva's state of mind at that very time actually contradicts the argument that the chant of the crowd was heard or had any effect on him. As was read into the record by the parties, Mr. DaSilva stated, which happened immediately after that chant:

1. "What is that? — How can we be inside the building but not inside the building?"
2. "I didn't think this is how this day was going to end."
3. "These are law-abiding citizens, all taxpayers, they just want to go home every night like you."
4. "All right —this is getting kind of…"— and then stops speaking and leaves the area.

These words have nothing to do with Mike Pence or his location, and certainly do not corroborate Mr. DaSilva having heard the crowd's chant. Mr. DaSilva's words show his mind is in a different place entirely.

As a reminder, the court did not admit the evidence of the statements made by the crowd for their truth, as that would have been hearsay, and instead only admitted the crowd chants for evidence of an effect they would have had on Mr. DaSilva at the time. When Mr. DaSilva's words and actions do not corroborate the hearing of, or acceptance of, a statement made by the crowd, the statement cannot even be said to have had an effect on him. But if the Government wants to play the effect game, then **this chant, which happened *after* Mr. DaSilva's interaction with the officer,** *resulted in Mr. DaSilva leaving the area, not proceeding further towards the Capitol Building*.

The Government's brief is asking for this court to make a lot of logical leaps and assumptions based on explanations not in evidence. The Government requests this Court to stretch its evidence far and wide. But the Court is not permitted to meddle so gymnastically in the facts. *See Cooper v. United States*, 218 F. 2d 39, 41 (D.C. Cir. 1954) (a factfinder cannot "speculate guilt without evidence or to stray into pure surmise, bias or prejudice;" a factfinder cannot "speculate without evidence adequate in law" and in the "total absence of any semblance of direct proof"); *Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir.), cert. denied, 331 U.S. 837, reh'g denied, 331 U.S. 869 (1947) (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained"). In order to sustain a conviction based on the evidence the Government's brief argues in ECF No. 113, this court would be speculating and straying into pure surmise, bias, and prejudice — which this Court cannot do.

The Government cannot sustain the convictions for any Secrion 1752 counts based on the evidence in the trial record.

2) THE DEFENSE ARGUED A RULE 29 MOTION, NOT A RULE 33 MOTION

The majority of the Government's brief is devoted to a legal position that the Defense did not take and to arguments that the Defense did not make.

To reiterate— the defense is arguing a Rule 29 motion for acquittal. The defense has not claimed error at trial or requested a new trial. This was made clear in all Defense filings and at the oral hearing. The Defendant has not sought a Rule 33 motion for a new trial. There is no requirement under Rule 29 that a defendant must have *previously* made the same or similar arguments as a prerequisite to prevail on a Rule 29 motion.

The defense argument has been consistent — that (1) the bench instructions in this case for all Section 1752 Counts are consistent with the law; (2) the instructions are consistent with the argument that the Government was required to prove that the Defendant *knowingly* entered a restricted area where he *knew* that Mike Pence was or would be temporarily visiting at the time that he entered; and, (3) that the Government failed to prove at trial that the Defendant *knowingly* entered a restricted area where he *knew* that Mike Pence was or would be temporarily visiting at the time that he entered. The Government's argument that the defense motion raises a legal challenge to the bench instructions instead of challenging the Government's proof is inconsistent with the reality of Defense pleadings and arguments.

3) THE DEFENSE SEEKS TO ENFORCE THE BENCH INSTRUCTIONS IN THIS CASE

While the Government claims it is the Defense that seeks an alternate bench instruction, the reality is inverse.

While it does not say so outright, the Government's arguments amount to seeking an alternate bench instruction — and one that is inconsistent with the law. *See, e.g.,* ECF No. 113, * 7-8.

The Government's new argument that *knowingly* should apply to the opening clause of Subsection (c)(1) "but no farther," (see ECF No. 113, * 13) is moot and has already been conceded by the Government in their proposed bench instructions. *See* ECF No. 67 *12-14.

*Knowingly* applies to all portions of 18 U.S.C. § 1752 offenses in both the Government's proposed instructions and the Court's adopted instructions. *See* ECF No. 76.

The plain reading of the Section 1752 restricted grounds statute indicates that this law does not penalize a person for entering an area simply marked as restricted; instead, the statute penalizes a person who enters an area marked as restricted and which is being visited or would be visited by a secret service protectee — but only one who acts *knowingly* with respect to the area being so marked and so visited.

Because knowingly applies to all § 1752 elements, it *necessarily* applies the definitions of those elements. It is impractical and preposterous to argue that although knowingly applies to an element, it only applies to a select portion of what the element means — and a Government-friendly select portion at that!

The DOJ asks this court to edit out the "~~where a person protected by the Secret Service is or will be temporarily visiting~~" portion of the legal instructions. The Government thus seeks a limiting application of the definition — *but only* as to how the mens rea element knowingly applies to it. Yet, there is no limiting instruction of such nature in the Legal Instructions entered by this Court. *See* ECF No. 76.

The image below is a visual representation of how the Government seeks to have the Court apply the legal instruction—

>
> **Count Three: Entering and Remaining in a Restricted Building or Grounds**
> **18 U.S.C. § 1752(a)(1)**
>
> *Elements*
>
> The Government must prove beyond a reasonable doubt that, on or about January 6, 2021, within the District of Columbia:
>
> 1. The defendant entered or remained in a restricted building or grounds without lawful authority to do so.
> 2. The defendant did so knowingly.
>
> *Definitions*
>
> The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds ~~where a person protected by the Secret Service is or will be temporarily visiting~~.
>
> The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.
>
> A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.

The only way to effectuate the Government's definitional limitation is through limiting instruction within the Legal Instructions. None exists. And none was argued by the Government prior to the verdict.

The Government simply wants to make the jobs of prosecutors easier. But the interpretation sought by the Government necessarily requires additional instruction to the factfinder which is not present in the instructions in this case. The Government could have argued and clarified these issues prior to trial even if the defendant did not raise these issues prior

to trial — but the Government chose not to do so, even though at the time that the Government submitted its proposed bench instructions and made its objections on the record to the instructions in *United States v. DaSilva*, the Government was already aware of Judge Lamberth's ruling in another January 6 case.

The Government's arguments about the proper reading of the statute are entirely misplaced and unpersuasive. It compares the problem at hand to one in *United States v. Burwell*, 690 F.3d 500 (D.C. Cir. 2012), which was a case discussing a statute with an entirely different construction — § 924, one in which it was arguable whether the term "machinegun" was an element of the offense or a sentencing factor. This is completely different from the situation at hand, where the term in question is indisputably an element of the offense, and the issue being discussed is one of the definitions that is outlined within the statute itself, following the elements of the offense. The Government's comparison of this case to 18 U.S.C. § 111 cases is similarly flawed because the definitions of the terms in Section 111 are not part of the statute. And, the comparison of this case to child pornography cases is also flawed, as the Courts consistently discuss special protections for minors when interpreting that body of case law. *See* the Government's own brief, ECF No. 113, at *19.

The Government's argument is instead akin to saying that although 18 U.S.C. § 1365 has as an element of the offense and defines within the statute *bodily injury* to mean "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of the function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary," for purposes of applying the mens rea element of the statute, half of the definitions of *bodily injury* can be struck in order to alleviate the burden of proof on the

Government at trial. Under the Government's reasoning, the mens rea element only applies to half of the terms. The argument is preposterous and unnatural, and certainly inappropriate post-verdict. The Legal Instructions for 18 U.S.C. § 1365 would be written very similarly to the ones for 18 U.S.C. § 1752.

In footnote 3, the Government cites a portion of a transcript from *United States v. Eicher*, where Judge McFadden states that the text of Section 1752 "makes clear that Congress did not intend for the scienter requirement to apply to 1752's definitional provisions." But the text is not clear in that regard, as at least another judge sitting in the same courthouse read the statute entirely differently. Judge McFadden's reasoning was based on the fact that while the elements of the offense subsections begin with the word "knowingly," the term is not present in the definitional provision of (c)(1). But no definitional subsections in the U.S. Code contain the word knowingly, nor any reference to mens rea, for that matter. *See, e.g.*, 18 U.S.C. § 1365. And, the Government itself seems to contradict Judge McFadden's reasoning, arguing that mens rea applies to half of the definition in Subsection (c)(1). Judge McFadden's reasoning also falls short of explaining the simple problem at hand: if a defendant is required to act knowingly with respect to element X, then how can the definition of X be excluded from his having to act knowingly with respect to this element? After all, is not the term and its definition one and the same? Is not the term and the definition interchangeable?

The Government then argues that this case is akin to *United States v. Reynoso*, 38 F.4th 1083 (D.C. Cir. 2022). But in *Reynoso,* the issue was the district court's omission of an element of the offense from the jury instructions. *Id*. at 1090. Mr. DaSilva does not argue omission or

plain error of the jury instructions. To the contrary — Mr. DaSilva seeks the enforcement of the jury instructions as they are written.

A visual representation of the defendant's straightforward interpretation of the jury instruction is depicted below—

C. **18 U.S.C. § 1752 OFFENSES**

<u>ENTERING OR REMAINING IN A RESTRICTED BUILDING OR GROUNDS</u>

(18 U.S.C. § 1752(a)(1))

Count Three of the Second Superseding Indictment charges the defendant with entering or remaining in a restricted building or grounds, which is a violation of federal law.

<u>Elements</u>

To find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

<u>Definitions</u>

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" ~~includes~~ the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count One.

The instruction is clear on its face.

### 4) RULE OF LENITY REQUIRES THE INTERPRETATION SOUGHT BY THE DEFENSE

The rule of lenity requires terms within criminal laws that are ambiguous to be defined in favor of the defendants subjected to them. *United States v. Santos*, 128 S.Ct. 2020, 2025 (2008) ("From the face of the statute, there is no more reason to think that 'proceeds' means 'receipts'

than there is to think that 'proceeds' means 'profits.' Under a long line of our decisions, the tie must go to the defendant… Because the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted.")

In the *Santos* case, the Government made similar arguments to the ones made in the DaSilva case. The Government argued that the defendant's interpretation of the definition of an element of the offense was "absurd" and that effectuating the defendant's interpretation would hinder effective enforcement of the law. The Supreme Court rejected both of those arguments, stated that the Courts do not speculate as to Congressional intent, and implemented the rule of lenity. *See Santos*, 128 S.Ct. at 2026. Just as in the January 6 cases, in *Santos,* the Government argued for a definition that made it easier to prosecute. "The Government also argues for the 'receipts' interpretation because—quite frankly—it is easier to prosecute." *Santos*, 128 S.Ct. at 2028. The Supreme Court outright rejected this inappropriate attempt of the Government helping itself secure more convictions. "Essentially, the Government asks us to resolve the statutory ambiguity in light of Congress's presumptive intent to facilitate money-laundering prosecutions. That position turns the rule of lenity upside-down. We interpret ambiguous criminal statutes in favor of defendants, not prosecutors." *Id*.

Just as in *Santos*, if this court concludes that the language of the 1752 statute is ambiguous in the meaning of the term "restricted area" when the term *knowingly* applies to it, then the interpretation that favors the defendant and places a higher burden on the Government is the correct resolution.

5) CONCLUSION

In summation, the Government's brief is mostly off-point and argues a response to claims not made by the Defense.

The defense is correct in our reading of the statute, and our Rule 29 argument was made timely and is consistent with the Legal Instructions ordered in this case. The Government failed to meet its burden at trial and now asks this Court to speculate as to the evidence it presented at trial. This Court cannot do that under the law.

The motion for acquittal on all Section 1752 counts should be granted because the Government failed to present evidence of an essential element of the offense — that Mr. DaSilva knew that VP Pense *was or would be* in the restricted area during the commission of his acts that constituted the offenses of conviction.

Respectfully submitted,
By Counsel:

/s/
_____
Marina Medvin, Esq.
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

## CERTIFICATE OF SERVICE FOR CM/ECF

      I hereby certify that on November 29, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
_____

Marina Medvin, Esq.