UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Criminal Case No: 1:21-cr-00564 |
| ) | |
| MATTHEW DASILVA,   ) | Sentencing: April 23, 2024 |
| ) | |
| Defendant.   ) | |

**Defendant's Supplemental Sentencing Memorandum**

Matthew DaSilva hereby supplements ECF No. 108, Defendant's Sentencing Memorandum, to reflect the developments in his case since the filing of his original memorandum six months ago on October 18, 2023, as well as to bring additional comparison cases to the Court's attention. Mr. DaSilva also notes his objections to the Amended PSR, ECF No. 123, in this filing.

**I. Summary of New Case Developments That Affect Sentencing**

On February 8, 2024, this Court issued an order finding Mr. DaSilva not guilty, reversing the guilty verdicts on three misdemeanor counts charged under 18 U.S.C. § 1752. *See* ECF No. 118 (finding that the "Court cannot conclude beyond a reasonable doubt that DaSilva possessed the requisite knowledge … [that] Vice President Pence would be at the Capitol" at the time that he entered the restricted area).

Mr. DaSilva's remaining Guilty verdicts are thus two felony counts, charged under 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111(a)(1)(for assault with physical contact), and a petty misdemeanor charged under 40 U.S.C. § 5104(e)(2)(F) for assault as the act of physical violence.

Mr. DaSilva recently argued in his last filing, ECF No. 122, that conviction on these offenses implicate the Fifth Amendment's protection against multiplicity, and that the sentence that he has already completed serving on 40 U.S.C. § 5104(e)(2)(F) precludes penalty on both 40 U.S.C. § 5104(e)(2)(F) and 18 U.S.C. § 111(a)(1).

Matthew DaSilva, as of his sentencing date on April 23, 2024, will have been confined for approximately 9 months.

## II. Cases to Compare and Consider

Matthew DaSilva has brought a variety of comparison cases to the Court's attention in ECF No. 108, both from this jurisdiction and from other jurisdictions. Newly discovered cases that will aid the Court in selecting a fair penalty are described *infra*.

### A) US v. Kaleb Dillard

On January 6, 2021, Kaleb Dillard "went to the front of the crowd at the Rotunda Door, where he used a metal tool to smash a window of the doors… then approached a U.S. Capitol Police Officer who was attempting to close the doors and stop rioters from entering. Dillard grabbed the officer's protective vest from behind and threw the officer backward onto the marble floor… then repeatedly shoved [a] second officer away from the doors so more rioters could enter. Unable to move the officer away from the door, Dillard continued to harass him, sticking

his fingers in the officer's face and at one point screaming…," according to the DOJ press release about his case.¹ The Government gave Mr. Dillard a favorable plea deal and then requested that he be sentenced to 18 months of incarceration. *See United States v. Dillard*, Crim. No. 1:23-cr-00049, ECF No. 35 (D.D.C. November 2, 2023).² The DOJ also decided that Mr. Dillard should be sentenced under the U.S.S.G. § 2A2.4 guideline. *Id*. at *23. (As a reminder to the Court, Mr. DaSilva was only ever offered a plea that included a U.S.S.G. § 2A2.2 guideline, and after his trial, the government requested 52 months of incarceration. *See* ECF No. 108.) In Mr. Dillard's case, his assault plea was to assaulting the first officer who he threw onto the marble floor, so the DOJ could have technically argued that he intended to commit another felony assault on the second officer at the time he committed the first, thereby triggering the application of U.S.S.G. § 2A2.2; nonetheless, the DOJ restricted its argument to U.S.S.G. § 2A2.4.

On November 16, 2023, for the offense of grabbing an officer by his back and throwing him down on the hard marble floor inside the Capitol Building on January 6, Kaleb Dillard was sentenced to 10 months in prison, 12 months of supervised release, a $5,500.00 fine, and ordered to pay $36,238.55 in restitution by U.S. District Judge Jia M. Cobb. *See United States v. Dillard*, Crim. No. 1:23-cr-00049, ECF No. 42 (D.D.C. November 30, 2023).

Matthew DaSilva's case facts are of significantly lower culpability than those of Mr. Dillard. Mr. DaSilva did not break any windows nor destroy any property. Mr. DaSilva did not enter the Capitol Building even though thousands of others had done so. Mr. DaSilva did not

---

¹ Available at: https://www.justice.gov/usao-dc/pr/alabama-man-sentenced-assaulting-law-enforcement-during-jan-6-capitol-breach

² Available at: https://medvinlaw.com/wp-content/uploads/2024/04/Dillard-Sentencing-Memo-Gov.pdf

throw any officers on the ground; instead, he engaged with the shield of an officer, his hand coming into contact with the hand of one of the officers for a brief moment lasting about a second during the ejection of a chemical spray. Mr. DaSilva's sentence must be significantly lower than that of Kaleb Dillard.

Mr. DaSilva, as of the date scheduled for his sentencing hearing, will have been incarcerated for a period of approximately 9 months. This period of incarceration is more than necessary to achieve all aims of sentencing and is slightly below that of the incarceration period ordered for Mr. Dillard. Matthew DaSilva, therefore, should be sentenced to time served, without any additional probation period or fine, in order to place his sentence into (somewhat) reasonable proportion to that of Mr. Dillard. An alternative way to compute this is to say that Mr. DaSilva can be sentenced to the original sentence requested by the defense in ECF No. 108— 3 months. The additional 6 months of jail time that Mr. DaSilva has served can be credited to satisfy the full period of supervision that this Court may have intended on ordering.

Of note— the Defense has demonstrated through the *Dillard* case, as well as in ECF No. 107 and ECF No. 108, through a variety of cases within this jurisdiction and others, that the U.S.S.G. § 2A2.2 guideline that the DOJ has requested for Mr. DaSilva is inconsistent with its request for other similar and *more seriously culpable* defendants. Judicial estoppel prevents the Government from taking an inconsistent position on law with respect to different defendants. *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). The U.S.S.G. § 2A2.2 guideline, aside from being inapplicable in this case, is also impermissible under judicial estoppel.

**B) US v. Kendrid Khalil Hamlin**

On February 9, 2023, Kendrid Khalil Hamlin assaulted Rep. Angie Craig, a female member of the House of Representatives, while she was in her apartment elevator in Washington DC, causing her injury and bruising. Mr. Hamlin then assaulted a detective and a police officer with the Metropolitan Police Department later that same day. The Government sought a 39-month prison term for Mr. Hamlin, citing his extensive criminal history, including prior assaults on law enforcement officers. See *United States v. Hamlin*, Crim. No. 1:23-cr-00105-JEB, ECF No. 39 (D.D.C. November 10, 2023).[3] Five pages of the Government's brief were devoted just to listing Mr. Hamlin's criminal history. *Id*.

Indeed, Mr. Hamlin had a serious history of prior assaultive and violent conduct, including against two officers just months prior to this attack. *See United States v. Hamlin*, Crim. No. 1:23-mj-00034-RMM, ECF No. 21-1 (DDC March 22, 2023).[4] This is why the Government fought against pretrial release of Mr. Hamlin. *See United States v. Hamlin*, Crim. No. 1:23-mj-00034-RMM, ECF No. 21 (DDC March 22, 2023).[5]

Judge Boasberg sentenced Mr. Hamlin to 27 months in prison, followed by 36 months of supervised release. *See United States v. Hamlin*, Crim. No. 1:23-cr-00105-JEB, ECF No. 46 (D.D.C. November 20, 2023).

For Mr. DaSilva — a man with no criminal history, with a solid record of military service, an otherwise outstanding and kind member of society who did not enter the Capitol

---

[3] Available at: https://medvinlaw.com/wp-content/uploads/2024/04/Government-Sentencing-Memorandum-KENDRID-KHALIL-HAMLIN.pdf

[4] Available at: https://storage.courtlistener.com/recap/gov.uscourts.dcd.252056/gov.uscourts.dcd.252056.21.1.pdf

[5] Available at: https://storage.courtlistener.com/recap/gov.uscourts.dcd.252056/gov.uscourts.dcd.252056.21.0.pdf

Building on January 6 and did not cause injury to any officer — the DOJ asked for 52 months of imprisonment. *See* ECF No. 111. There is no sensible or rational explanation for the DOJ seeking 52 months for Mr. DaSilva while seeking 39 months for Kendrid Khalil Hamlin. The DOJ did not even object to releasing Mr. DaSilva on minimal pretrial release conditions, but is now seeking a sentence more than one year higher than they sought for Mr. Hamlin, the man they also sought to hold without bond and who has devoted his life to committing criminal acts. *See United States v. Hamlin*, Crim. No. 1:23-cr-00105-JEB, ECF No. 39 at *9 (D.D.C. November 10, 2023)(Kendrid Khalil Hamlin's "lengthy criminal history makes clear that he poses a significant danger to the community. As a 27-year old, the defendant has amassed nine convictions which score criminal history points, three other convictions that do not score points, and has been arrested 28 other times."). As Mr. DaSilva has argued previously in ECF No. 46, 60, and 108, the DOJ's prosecution of Mr. DaSilva reveals significant disparity. This is evident in both the original charging decisions, the fight over the appropriate Guidelines, the inequitable plea offers, and the DOJ's sentencing recommendation.

**III. Inequity**

The Government's treatment of, and sentencing request for, Matthew DaSilva is mind-boggling. The sentence requested is inequitable. The Guideline requested is inequitable. The refusal to have offered Mr. DaSilva a reasonable plea deal is inequitable.

The DOJ has yet to explain why Mr. Matthew DaSilva was singled out in this manner, first from other political protesters, and then from other January 6 defendants.

Mr. DaSilva has never requested a walk; he requested equitable treatment. He requested a reasonable penalty consistent with his conduct, his character, and other criminal cases. The DOJ, on the other hand, has been entirely unreasonable in its approach to the prosecution of, and the sentencing requests for, Mr. DaSilva.

**IV. Downward Departure is Warranted**

The Defense has provided the Court with ample comparable cases that show the range of sentences for similar conduct, and sentences for more serious conduct. A commensurate, reasonable and equitable sentence for Mr. DaSilva will certainly require a downwards departure from the Guidelines sentence.

In ECF No. 108, the Defense outlined a strong argument for departing under various U.S.S.G. § 5H1 Factors, including the defendant's age, military contributions, as well as the mental and emotional conditions outlined by the PSR. The Probation Office agrees that a downward departure is appropriate. *See* ECF No. 124.

The Probation Office's proposed variance is a 3 or 4 level reduction. The 3 or 4 level reduction would be sufficient at the lower Offense Level of 11 or 13, the level computed by the Defense, but the Probation Office's Guidelines Calculations start off at the wrong level. (See Objections to PSR *infra*.) Hence, the Probation Office's proposed downward variance falls short of reaching a fair disposition in this case.

**V. Objection to PSR Calculations**

The Defendant renews his objections to the PSR calculations for Mr. DaSilva as violative of his Fifth Amendment rights and inconsistent with the findings of this court (as stated in prior objections). *See* ECF No. 105 and ECF No. 122.

Additionally:

1. The PSR applies the wrong Guidelines to Count Two, claiming U.S.S.G. § 2A2.2 applies under comment. n.1(D) because the PSR assesses Mr. DaSilva's assault as a felonious assault with the intent to commit another felony, namely Count One. *See* ECF No. 123 at *11. As argued in ECF No. 105, 107, and 108— the other felony must be a future act, not a past one or simultaneous one. Furthermore, Mr. DaSilva was acquitted at trial of possessing the intent to commit another felony at the time of the assault. Finally, as argued in ECF No. 122, the other felony cannot be a a lesser-included offense.

2. The PSR then applies the same wrong Guideline, U.S.S.G. § 2A2.2, to Count One, Civil Disorder. *See* ECF No. 123 at *11-12. The reasoning provided does not make any sense.

3. The correct Guidelines are outlined in ECF No. 108 at *10. Mr. DaSilva's Offense Level is 13 under either U.S.S.G. § 2A2.4 or U.S.S.G. § 2A2.3. This is a Zone C, 12-18 month sentence.

4. Aside from selecting the wrong Guidelines, the separate victim units are incorrectly assessed to increase Mr. DaSilva's offense level by 2 points. *See* ECF No. 123 at *14. There should be *zero* points assessed for separate victims.

5. The PSR considers Count One, charging a violation of 18 USC § 231(a)(3), as a separate offense because a group of officers, the PSR reasons, is distinct from a single officer. However, both Count One and Two of the Superseding Indictment named the same exact officers, and Officer Sterling was in the group named for Count One. The statement that "Group 1 (Count 1) and Group 2 (Count 2) cannot be grouped they involve different victims, and separate and distinct harms" is just incorrect. *See* ECF No. 123 at *12. Under U.S.S.G. § 3D1.2, counts involving substantially the same harm shall be grouped together into a single Group. Under Subsection (d), "When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior," the offenses "shall be grouped together into a single Group." U.S.S.G. § 3D1.2(d). Or, when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts, the offenses "shall be grouped together into a single Group." U.S.S.G. § 3D1.2(c). Count One and Count Two happened simultaneously in front of the same officers at the same time.

6. The PSR then considers the alternate finding of Count One mentioned by the Court, the attempt at 2:45 PM to hold a door closed, which had no officers on the other side of it. *See* ECF No. 123 at *34-35. However, there were no victims on the other side of that door — certainly none of the officers specified by the Indictment. Mr. DaSilva's Indictment specified the victims by initials. None of those victims were

part of the Court's findings for the 2:45 PM incident, mainly because the named victim officers were not present at that time or place. The alternate finding for Count One renders the verdict inconsistent with the Indictment, so much so as to implicate an amendment or variance under *Stirone v. United States*, 361 U.S. 212 (1960), *Russell v. United States*, 369 U.S. 749 (1962), and *Gaither v. United States*, 413 F.2d 1061 (D.C. Cir. 1969). Therefore, Mr. DaSilva cannot be punished for this act. And, if this route were pursued, then the PSR most definitely cannot use Count One as a predicate for the "other felony" that is required for the application of U.S.S.G. § 2A2.2 since this 2:45 PM act took place *before* the assault at 4:40 PM.

7. Although the PSR did not score Mr. DaSilva for acceptance of responsibility, this Court is not precluded from finding that he should be scored a two-level decrease for acceptance of responsibility. *See* ECF No. 108 at 10-11, 42-34. With a 2-level decrease, Mr. DaSilva would be scored at Offense Level 11, an 8-14 month range in Zone B.

8. With a 3 to 4 level downward variance, as proposed by the Probation Office, Mr. DaSilva would be at Offense Level 7 or 8, a 0-6 month range in Zone A. A sentence within this range is consistent with the sentence proposed by the Defense.

Respectfully submitted,
By Counsel:

/s/
_____
Marina Medvin, Esq.
*Counsel for Defendant*

MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

    I hereby certify that on April 19, 2024, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
_____
Marina Medvin, Esq.