**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA                    Criminal Action
      Plaintiff,                        No. 1:21-564

     vs.                                  Washington, DC
                                            April 23, 2024

MATTHEW DaSILVA,

      Defendant.                        10:07 a.m.
_____/


TRANSCRIPT OF SENTENCING
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiff:**     **Eric Boylan**
                           DOJ-USAO-DC
                           601 D Street NW
                           Washington DC, DC 20001
                           Email: eric.boylan@usdoj.gov

                           **Katherine Elizabeth Boyles**
                           USAO - Criminal Division
                           157 Church Street, 25th Fl
                           New Haven, CT 06510
                           Email: katherine.boyles@usdoj.gov

**For the Defendant:**     **Marina Medvin**
                           MEDVIN LAW PLC
                           916 Prince St, Suite 109
                           Alexandria, VA 22314
                           Email: marina@medvinlaw.com

**Reported By:**           **LORRAINE T. HERMAN, RPR, CRC**
                           Official Court Reporter
                           U.S. District & Bankruptcy Courts
                           333 Constitution Avenue NW
                           Washington, DC 20001


*** Proceedings recorded by stenotype shorthand.
*** Transcript produced by computer-aided transcription.

# P R O C E E D I N G S

1

2       **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3   criminal case 21-564, *United States of America versus*

4   *Matthew DaSilva.*

5           Probation officer is Sherry Baker.

6           Counsel, please come forward and introduce

7   yourselves for the record, beginning with the government.

8       **MR. BOYLAN:**  Good morning, Your Honor.  Eric

9   Boylan on behalf of the United States.  I am joined by my

10  co-counsel Katherine Boyles.

11      **THE COURT:**  Welcome.  Good morning.

12          Ms. Medvin, good morning.

13      **MS. MEDVIN:**  Good morning, Judge Nichols.  Marina

14  Medvin on behalf of Mr. DaSilva.

15      **THE COURT:**  Good morning.

16          We are here to sentence the defendant,

17  Mr. DaSilva, on the three counts, as to which I have still

18  found him guilty, Counts 1, 2 and 7.  Are both parties ready

19  to proceed?

20      **MS. BOYLES:**  The government is, Your Honor.

21      **THE COURT:**  Ms. Medvin?

22      **MS. MEDVIN:**  We are, Judge.

23      **THE COURT:**  Just by way of background, for

24  purposes of understanding my preparation, obviously I

25  presided over the trial in this case, the verdict, my

1    reconsideration of that verdict, and more recently I have

2    reviewed probation's presentence investigation report

3    recommendation, the various sentencing briefs, both the

4    original briefs and the supplemental briefs, the letters in

5    support of the defendant, together with the other exhibits

6    attached to the defendant's initial sentencing brief, and

7    the defendant's outstanding motions.

8            Before we begin, does anyone have anything to add

9    to those materials that are, really, in a sense, post-trial

10   materials?  Of course, I'm taking into account, for purposes

11   of the sentencing today, both the trial record and all of my

12   decisions with respect to it.  But any other documents I

13   should be aware of from the government's perspective?

14           **MR. BOYLAN:**  No other documents, Your Honor.

15           The only thing I'd like to bring to the Court's

16   attention is that Officer Sterling is here, and he'd like to

17   make a statement to the Court when that is appropriate.

18           **THE COURT:**  Yes.  I was going to ask whether there

19   were any witnesses, victims or family members or other

20   people who would speak.  It sounds like Officer Sterling

21   would like to.

22           **MR. BOYLAN:**  Yes, Your Honor.

23           **THE COURT:**  He will be permitted to do so.

24           Ms. Medvin, first with the question of documents,

25   anything I should be aware of that I haven't mentioned?

1      **MS. MEDVIN:**  Nothing further regarding documents.

2      **THE COURT:**  Okay.

3      **MS. MEDVIN:**  We have a witness, as well, who might

4  speak, which is Mr. DaSilva's wife.

5      **THE COURT:**  Okay.  Very well.  I am happy to hear

6  from her, if she decides she would like to speak.

7      **MS. MEDVIN:**  Thank you, Judge.

8      **THE COURT:**  So here is how I'd like to proceed

9  today.  I am going to begin by considering objections to the

10 PSR and make my factual findings with respect to it.

11     I'm then going to hear from the parties on, I

12 guess, two sets of issues.  The most important from my

13 perspective are just a couple of issues around the

14 guidelines analysis, but also I'd like to hear a little bit

15 on the ECF No. 122, which is the lesser-included offense

16 motion.

17     After I hear from the parties on those questions,

18 I'm going to go through and decide that motion and make my

19 guidelines' determination.  Once I've done that, I will then

20 proceed to hear from the parties on what they believe an

21 appropriate sentence in this case should be.

22     At that point, I'll hear from Officer,

23 Mr. DaSilva's wife, Mr. DaSilva, if you would like to speak.

24 I'll then take into account what I've heard and pronounce

25 the sentence, perhaps with or without a short recess.

1          Turning to the PSR, in particular.  There are, I

2     think, a few outstanding objections.  And I'm just going

3     to -- I think there they are noted for the record, but I

4     want to make sure that I have them all.

5          One relates to Paragraph 22.  And these are,

6     really, factual objections to the PSR.  I'm going to decline

7     to adopt the portion of the paragraph that states, "tear gas

8     filled the air."  Although, I've, of course, made relevant

9     statements regarding the circumstances of the offenses in my

10    verdict and will take those into account.

11         Regarding the language in Paragraph 26, about the

12    defendant's use of his full body and body weight, in my

13    view, the PSR language comports with the record evidence at

14    trial, as well as the language used in my verdict.  So I

15    will adopt that language and overrule any objection with

16    respect to it.

17         And then regarding the language in Paragraphs 26

18    and 29 about pain caused by Mr. DaSilva, I'm also going to

19    reject any objection there and adopt the PSR's language,

20    because Officer Sterling's testimony at trial was that

21    Mr. DaSilva's actions with his shield specifically was

22    something he could feel, similar to the experience of

23    holding onto an aluminum bat, slamming it on the ground.

24    And when asked if the feeling was painful, Officer Sterling

25    answered, "Yes.  I mean, it's not crippling.  But, yes, it's

1    definitely painful."

2              Are there other factual objections to the

3    circumstances of the offense contained in the PSR that are

4    other than what I've just mentioned?  That is to say, other

5    than as to Paragraphs 22, 26 and 29?

6              Ms. Medvin?

7              **MS. MEDVIN:**  Nothing additional, Judge.

8              **THE COURT:**  Okay.  Thank you.

9              Does the government have any objections to the

10   factual circumstances of the offense?

11             **MR. BOYLAN:**  No, Your Honor.

12             **THE COURT:**  All right.

13             Mr. DaSilva, we've been discussing the document

14   entitled "Presentence Investigation Report."  Have you had a

15   chance to review it and to discuss it with Ms. Medvin?

16             **THE DEFENDANT:**  Yes, I have, Your Honor.

17             **THE COURT:**  Did you have enough time to talk to

18   her about that report and the briefs that have been filed in

19   this case regarding sentencing?

20             **THE DEFENDANT:**  We discussed briefly, Your Honor.

21             **THE COURT:**  Are you satisfied with Ms. Medvin's

22   services?

23             **THE DEFENDANT:**  Yes, Your Honor, I am.

24             **THE COURT:**  Thank you.

25             Pursuant to Rule 32, I accept the factual findings

1     in the PSR regarding the circumstance of the offense, with

2     the modifications I've mentioned, and I adopt those facts

3     for the purposes of imposing a sentence.

4          Turning to the guidelines' questions and the

5     lesser-included offense motion.  Why don't we start with the

6     government.

7          **MR. BOYLAN:**  Yes, Your Honor.

8          **THE COURT:**  Mr. Boylan, I have two guidelines'

9     questions for the government, really.  One is, for the civil

10    disorder count to use guideline 2A2.2, it has to involve an

11    assault with the intent to commit another felony.

12         **MR. BOYLAN:**  I think that that's correct,

13    Your Honor.

14         **THE COURT:**  So what's anomalous here is that that

15    other felony would be the civil disorder felony.  And it

16    seems odd to refer to the other felony as the very felony we

17    are trying to find the relevant guideline for.

18         **MR. BOYLAN:**  The --

19         **THE COURT:**  In other words, it says civil

20    disorder, travel to 2A2.2A2.2.

21         **MR. BOYLAN:**  Right.

22         **THE COURT:**  Is it an assault with an intent to

23    commit another felony?

24         **MR. BOYLAN:**  Yes, Your Honor.

25         **THE COURT:**  And the government and the PSR say,

1    Well, yes, it was an intent to commit another felony; that

2    is to say, civil disorder.  But that is the felony we are

3    talking about for the purposes of the offense-level

4    calculation.

5              **MR. BOYLAN:**  You said the intent to commit another

6    felony would be the civil disorder.  But I think it's the

7    assault, Your Honor.  So the 231 is committed with the

8    intent to commit the assault against the officer, which is

9    Count 2.

10             **THE COURT:**  No.  The reason we go to 2A2.2 under

11   civil disorder, possibly, is if aggravated assault, under

12   2A2.2 is the right analog.

13             **MR. BOYLAN:**  Correct.  Yes, Your Honor.

14             **THE COURT:**  The only way that makes sense here, I

15   believe, is if it was an assault with intent, an assault

16   with intent to commit another felony.

17             **MR. BOYLAN:**  I think that's right.  Yes,

18   Your Honor.

19             **THE COURT:**  How can that other felony be the civil

20   disorder?

21             **MR. BOYLAN:**  I don't think it is the civil

22   disorder, Your Honor.  I think it's the 111 assault.

23             So, I think the way to get to the 2A2.2 for Count

24   1, the 231 count, is go to 2X, whatever it says.  There's no

25   guidelines in the appendix.

1          **THE COURT:**  Go find the one you can best

2     analogize.

3          **MR. BOYLAN:**  Use the one you best analogize to,

4     which takes you to 2A2.4.  2A2.4 says, use this, unless it's

5     aggravated assault.  Aggravated assault, if committed with

6     the intent to commit another felony.  That other felony,

7     where I think I'm disagreeing with you, Your Honor,

8     respectfully --

9          **THE COURT:**  Yes.

10          **MR. BOYLAN:**  -- is it's not committing itself.

11     It's committing the 111, which is the Count 2, the 111.  So

12     our position is the defendant --

13          **THE COURT:**  Okay.  So let's assume that's all

14     right.  Then why wouldn't I group Counts 1 and 2?

15          **MR. BOYLAN:**  For the same reason that we have --

16          **THE COURT:**  But now we first said, Well, it's

17     civil disorder for purposes of the guidelines; gets into

18     2A2.2 world, because it's civil disorder with intent to

19     commit the 111 assault.

20          **MR. BOYLAN:**  Correct.

21          **THE COURT:**  That's the other count that's relevant

22     here.

23          **MR. BOYLAN:**  Correct.

24          **THE COURT:**  So now we've really linked them.  I

25     mean, you've basically said the reason there was an intent

1   to commit another assault --

2           **MR. BOYLAN:**  Sure.

3           **THE COURT:**  -- was because of the 111 count.

4           **MR. BOYLAN:**  Sure.

5           **THE COURT:**  Why doesn't that mean they should be

6   grouped?

7           **MR. BOYLAN:**  I don't think that the linking

8   changes who the victims of those crimes are.

9           **THE COURT:**  Didn't I find in my verdict,

10  principally, that the victim of both the civil disorder and

11  the assault was, perhaps others, but Officer Sterling was

12  prominent in my verdict as to both?

13          **MR. BOYLAN:**  Well, you know your verdict better

14  than I do, Your Honor.  But to be fair, our reading of it

15  has not been that.  Our reading of it was that the victim of

16  the 111 is Officer Sterling and the victim of the 231 is the

17  complete group of officers in that tunnel.

18          **THE COURT:**  Right.  To include Officer Sterling.

19          **MR. BOYLAN:**  To include Officer Sterling, yes,

20  Your Honor.  But the civil disorder -- the defendant

21  interfered with all of the officers on that line.  And I

22  think your verdict reflects that.  It says that the

23  defendant pulled the shield down; he created a chink in the

24  armor, which created a difficulty for all of those officers,

25  not just Officer Sterling.

1          Contra the 111, which I think your verdict is

2    clear, that he was convicted of only assaulting

3    Officer Sterling.

4          **THE COURT:**  Yeah.

5          **MR. BOYLAN:**  I don't think that he was convicted

6    of assaulting any of those other officers.

7          **THE COURT:**  Correct.

8          **MR. BOYLAN:**  The other thing I'd point to,

9    Your Honor, is that the 231, in your verdict, was also based

10   on the door push that happened separately.

11         **THE COURT:**  Absolutely.

12         **MR. BOYLAN:**  So there's a dislinking of those two

13   crimes.

14         **THE COURT:**  Okay.

15         So, turning now to the lesser-included offense

16   motion, ECF No. 122, assuming that that motion was not

17   untimely.

18         **MR. BOYLAN:**  Big assumption.  But, yes,

19   Your Honor.  Go ahead.

20         **THE COURT:**  I mean, the timing is easy.  It was

21   filed on a particular date.  I understand that question.

22   What is the government's view on the merits of that motion?

23         **MR. BOYLAN:**  Well, maybe I could engage with the

24   first point, first, Your Honor.  I will certainly get to the

25   second point.

1          **THE COURT:**  Sure.  I'm not assuming it was timely.

2     I was just trying to -- you can hum a few bars on the

3     question, that's fine.

4          **MR. BOYLAN:**  Sure.

5          **THE COURT:**  I really want to have a substantive

6     discussion --

7          **MR. BOYLAN:**  Well, I won't belabor the point, Your

8     Honor.  You've obviously read our materials.  The rules

9     foreclosed this motion from ever being filed or being

10    considered by the Court; that should be dispositive from our

11    position.

12          On the merits, Your Honor, I will say a couple

13    things to address the merits.  I am wary of going too far

14    down that path, Your Honor, because I think that some of the

15    answers to this question will impact motions that we have in

16    other cases.  And I am not prepared to speak fulsomely on

17    those issues, especially when it comes to what's

18    jurisdictional and what's not.

19          **THE COURT:**  Okay.

20          **MR. BOYLAN:**  So to answer the Court's question

21    directly.  Number one, we would say that the *Gibson* case

22    that defense cites is not dispositive.  In fact, it

23    shouldn't decide this case at all.  It's an old case from

24    the 1980s, which the Fifth Circuit itself has cast down on

25    and other circuits have similarly doubted.  Ninth Circuit

1  expressly said they are not adopting that position, and for

2  good reason.  Fourth Circuit also has not adopted that

3  position.  I don't think that the D.C. Circuit or the

4  Supreme Court has addressed the issue.

5          So for those reasons, we would say, first of all,

6  the Court shouldn't go down that route.  If we're right on

7  that, Your Honor, and *Gibson* is not dispositive, then I

8  think it's really clear.  I mean, these three charges, I

9  mean, there are pretty obviously elements that are -- that

10  don't pass the Blockburger test or do pass the Blockburger

11  test.

12          We've got different elements.  111 requires to be

13  done forcibly.  231 requires civil disorder.  5104 requires

14  presence in the Capitol.  Those things are really, really

15  different and pretty obviously would pass a Blockburger

16  test.

17          If we're wrong on that and we have to parse what's

18  jurisdictional and what's not, I think that's an area I

19  really don't feel comfortable speaking about today,

20  Your Honor, and we'd ask for more time if that's where the

21  Court would like to go.

22          **THE COURT:**  Okay.  Fair enough.

23          Ms. Medvin; on these three topics.

24          So why don't we start with where we just ended,

25  which is the motion.

1          **MS. MEDVIN:**  Yes, sir.

2          So for ECF-122, I'll start with timeliness.  I

3   think the motion was exactly timely.  That motion could not

4   have been raised before the trial.  It is not a Rule 12

5   motion, as the government claimed.  It's not a pretrial

6   motion because the government, as the Supreme Court has

7   stated multiple times, is allowed to proceed on a greater

8   and lesser offense simultaneously in the same trial, which

9   is what they did here and which is what we're claiming, that

10   these are lesser included offenses.

11          So the motion has to be raised after a trial.  As

12   far as being raised for sentencing, it should be raised

13   before or around sentencing.  But even if we were to raise

14   this after sentencing within the Court's jurisdiction, the

15   Court still has the duty under the Fifth Amendment to review

16   this.

17          The rules cited by the government, one was Rule 33

18   for a new trial.  Another one was a Rule 29 motion.  This

19   isn't it under either of those.

20          Rule 29 looks at the sufficient efficiency of the

21   facts.  This issue has nothing to do with the sufficiency of

22   the facts.  This has to do with a Fifth Amendment double

23   jeopardy claim.

24          **THE COURT:**  If Rule 29 even applies here.

25          **MS. MEDVIN:**  I'm sorry?

1          **THE COURT:**  I said, If Rule 29 even applies in

2     this case.

3          **MS. MEDVIN:**  In this case the Court has ruled

4     already in a prior --

5          **THE COURT:**  I was making an inside joke.  I

6     understand your argument.

7          **MS. MEDVIN:**  But for Rule 29 purposes, we actually

8     did reserve each and every single count under Rule 29, but

9     that's not what that motion is.  But we did technically

10    reserve it after the trial.

11         All of the timeliness arguments the government

12    raised, this issue doesn't fall under any one of those.

13    This is a Fifth Amendment double jeopardy issue.  As we

14    cited on the last two pages of our motion -- so that's

15    Page 11 and Page 12 of ECF-122, we go into a plethora of

16    Supreme Court and D.C. Circuit cases, where the Court said

17    that there is a duty to acquit on any multiplicitous

18    charges, and that's what this issue is.

19         But the issue is a novel one.  I will tell the

20    Court it's something that is unique that developed.  This is

21    the first time and first case I filed this.  I looked at

22    other January 6th cases.  I have not seen this argument

23    raised anywhere.  I believe the government is not aware of

24    it either, which is why we don't have a response.  I also

25    filed this in front of Judge Friedman.  Judge Friedman won't

1    be reaching this issue for a while because our pleadings

2    aren't due until May.

3              So currently, I have this in front of two courts

4    or two judges and no resolution.  I was not able to find

5    anything where this is raised or any opinion on the matter.

6              I do think the *Gibson* case is correct.  And I

7    cited a military case, which relies on this issue and goes

8    through the various Supreme Court cases; and that's *United*

9    *States v. Rice,* 80 M.J. 36, C.A.A.F. 2020.  That's the case

10   that adopted *Gibson* most recently and went into how the

11   Supreme Court decisions, of recent, support the *Gibson*

12   finding.  I cited these Supreme Court cases and discussed

13   them as well.

14             But the Supreme Court cases are more recent than

15   *Gibson*.  While none of them mention *Gibson*, the discussion

16   appears to match the reasoning.  They're not explicitly

17   mentioned, but the way that the conclusions are reached, it

18   appears to be under a very similar reasoning.

19             Why is it that in a state case versus a federal

20   case we should disregard the jurisdictional elements, but

21   why should we not do that for two federal types of cases?

22   They are different types of federal jurisdictions, which is

23   what these are.  I'm not sure the Supreme Court made any

24   kind of distinguishing decision in any of those Supreme

25   Court cases saying that this only applies to state versus

1      federal.  They never excluded federal cases from that

2      analysis.

3                So I think the *Torres v. Lynch* decision, 2016,

4      very recent, I think that decision would guide this

5      decision-making.  And I think it supports the Fifth Circuit

6      *Gibson* case and I think it supports *United States v. Rice*.

7      *Rice* was decided after *Lynch* but I think it comports with

8      that decision.

9                **THE COURT:**  Okay.  What about on the guidelines

10     question?  It seems to me that the getting to offense level

11     22, to start with -- I mean, before we think about whether

12     there's acceptance of responsibility requires both that the

13     civil disorder count apply the 2A2.2 aggravated assault

14     guideline provision.  You heard me ask government counsel

15     about that question.

16                And then even if it does, it then can't be grouped

17     with the assault count, because if it's grouped then the

18     highest offense level would be 20 and that would be the

19     offense level.

20                So what is your view on those two questions?

21                **MS. MEDVIN:**  Well, as we stated in our objections,

22     that didn't make any sense when I read that.  I don't see

23     how they're using -- civil disorder 2A2 applies and using

24     assault as a civil disorder, other felony, for itself and

25     vice versa.

1        The two are being joined together to enhance its

2    penalties in multiple ways, like tacking on to each other.

3    So --

4        **THE COURT:**  Well, do you agree that if,

5    hypothetically, a defendant -- if I had concluded that a

6    defendant had committed a civil disorder by, among other

7    things, assaulting Officer A, and then two hours later had

8    committed an assault on Officer B -- so you have an

9    assault -- a 111 assault as to Officer B and a civil

10   disorder violation two hours earlier that involved an

11   assault on an officer, Officer A.  Do you agree that I would

12   not group those two counts for purposes of the guidelines

13   analysis?

14       **MS. MEDVIN:**  I think it would depend on the facts

15   for grouping purposes.  When you're grouping you're looking

16   at the elements of who is the victim, whether the victims

17   are similar and the conduct is similar.  So the language --

18       **THE COURT:**  Right.  I'm giving you a hypothetical

19   where I've said there's a victim over here.  It's two hours

20   later.  That's Victim B or A.

21       **MS. MEDVIN:**  Different victim.

22       **THE COURT:**  Different victim.  And over here,

23   civil disorder, two hours earlier, different victim.

24       **MS. MEDVIN:**  So Victim A versus Victim B;

25   separate.  And there was also a finding in addition.  The

1    finding is that when Victim A was assaulted, there was an

2    intent to also later assault Victim B.  If that finding is

3    there, that's the only way we can apply 2A2, because that

4    finding is required as a prerequisite to get that aggravated

5    assault.

6         **THE COURT:**  Right.  That goes back to my first

7    question, which is, for purposes of the civil disorder --

8         **MS. MEDVIN:**  We wouldn't have that in a civil

9    disorder because the civil disorder doesn't require such a

10   finding.  So I don't think it could ever exist.  Civil

11   disorder never requires the fact finder to find an intent to

12   commit another felony.

13        **THE COURT:**  No.  I understand that.

14        But when you do the guidelines analysis, you ask

15   yourself what the most analogous guideline is.  And you say,

16   Well, it could be the aggravated assault guideline.  It

17   could be 2A2.2.  What was it?  Well, there was an assault.

18   Was it with the intent to commit another felony?

19        The government's argument is, Well, that intent to

20   commit another felony is the intent to commit the civil

21   disorder.  I know you may disagree with that proposition,

22   but I'm not asking about that question.  I'm not asking you

23   for the offense level.  I'm asking about grouping.

24        'Cause in that context, in your view, the civil

25   disorder count would have a lower offense level.  It

1      wouldn't be aggravated assault.  It might be assault under

2      2A2.4, 'cause maybe it didn't have intent to commit another

3      felony.  It would be a 2A2.4 assault and would have an

4      offense level for it.

5                **MS. MEDVIN:**  Okay.

6                **THE COURT:**  Then we have to ask whether it groups

7      with the other counts.

8                **MS. MEDVIN:**  If there are separate victims.

9                **THE COURT:**  Yes.

10               **MS. MEDVIN:**  If there is a finding of separate

11     victim's.  Let's see the language.  "When the offense level

12     is determined largely on the basis of the total amount of

13     harm or loss...natural aggregate."

14               I think we have to look at the language of 3D1.2

15     to answer that.  We have to look at that carefully.  But

16     it's looking at when the offense level is determined largely

17     on the basis of the total amount of harm or loss.  So if

18     it's looking at the totality of the harm or loss, I'm not

19     sure if the totality is considered when we're making that

20     judgment call.

21               **THE COURT:**  Okay.  Fair enough.  I mean -- right.

22     It can depend.

23               **MS. MEDVIN:**  I think the question is, How was that

24     initial determination made as to the applicable guideline?

25     So I think it is more complicated than that.  I think the

1    guidelines didn't intend for the grouping to be used to

2    create separate victims and additional penalties so easily.

3            I think the language is pretty restrictive on the

4    courts for a reason.  It probably wasn't intended that way

5    because it is a complex language in the way it's put

6    together.

7            **THE COURT:**  Okay.  Thank you, Ms. Medvin.

8        (Brief pause.)

9            Okay.  So as to these issues.  First, starting

10   with the lesser-included offense motion, I agree with the

11   government that Mr. DaSilva's argument raised for the first

12   time in a supplemental sentencing brief earlier this month

13   came too late.  It's functionally an argument that the

14   indictment violated the double jeopardy clause, and that

15   argument should have been raised earlier.  But I'm not

16   relying solely on the timing.  I have engaged with the

17   substance.

18           In my view, the argument is incorrect.  For

19   Count 2, Section 111(a)(1) requires forcible conduct.  While

20   the conduct required under Count 1 need not be forcible.

21   And Count 1 requires that the officers were engaged in

22   duties incident to a civil disorder, while neither Count 2

23   nor Count 7 requires such proof.

24           As for comparing Counts 2 and 7, Mr. DaSilva

25   relies on the notion that jurisdictional elements do not

1        count when applying the Blockburger test.  Which, according

2        to Mr. DaSilva, would mean I cannot take into account the

3        fact that Count 2, unlike Count 7, requires proof of action

4        against certain officers or government employees.  And

5        Count 7, unlike Count 2, requires proof that the act of

6        physical violence took place within the Capitol building or

7        grounds

8               The primary case Mr. DaSilva relies on is the

9        Fifth Circuit decision in *United States versus Gibson*.  We

10       discussed that earlier today, of course; that decision's

11       reasoning, in my view, is suspect.

12              Logically, Congress had good and significant

13       reasons beyond jurisdictional concerns for targeting crimes

14       at the Capitol and crimes against certain government

15       officers, employees.  Indeed, other Courts of Appeals have

16       disagreed with *Gibson*'s proposition that different

17       jurisdictional elements cannot be the basis for satisfying

18       *Blockburger*.

19              The Sixth Circuit has questioned *Gibson* in an

20       unpublished opinion.  The Ninth Circuit and Eighth Circuit

21       have disagreed with that proposition, as I said before.  And

22       the Fifth Circuit itself has expressed concern with the

23       reasoning of *Gibson* and continued to apply it only because

24       it must follow it as binding precedent.  So I'm going to

25       deny that motion.

1          Turning to the guidelines.  Of course they are not

2   mandatory.  They are advisory.  But I must still calculate

3   and consider them.

4          I'll begin with Count 2, the 111(a)(1) count.  The

5   government and the PSR contend that the relevant guidelines

6   provision is 2A2.2, because Mr. DaSilva committed his

7   assault with intent to commit another felony, the civil

8   disorder felony.

9          Mr. DaSilva argues at ECF-107, that I acquitted

10  him of assault with intent to commit another felony, and

11  that 2A2.3 or 2A2.4 should apply.  I agree with the

12  government and the PSR and will deny that motion.

13         While the reasoning in my verdict did focus on the

14  physical contact route, as I stated at the October 25th,

15  2023 motions hearing, there was also "enough evidence to

16  conclude that Mr. DaSilva committed the assault with the

17  intent to commit another felony."  And I now conclude and

18  make clear that in my view that is true by a preponderance

19  of the evidence based on the entire record in this case and

20  the evidence I heard at trial.

21         Mr. DaSilva committed the assault with intent to

22  impede, obstruct or interfere with a law enforcement who was

23  acting incident to a civil disorder.  As a result, the

24  relevant guideline provision is 2A2.2.  The base offense

25  level is 14.  There's a six-level victim-related adjustment

1    under 3A1.2 because the offense was motivated by the

2    victim's status as a law enforcement officer.  That makes

3    the offense level for Count 2, 20.

4           As for Count 1, as we discussed earlier, there's a

5    dispute here as well regarding what guideline applies.  As

6    my question to the government earlier indicated, it's a

7    little strange, in my view, that the PSR and the government

8    seem to contend that Count 1 qualifies as an aggravated

9    assault under 2A2.2 because it involved an assault with

10   intent to commit another felony and the other felony is

11   Count 1 itself.

12          I think government counsel, obviously, took a

13   different position today.  I'm not suggesting different from

14   previously articulated.  I think different from, perhaps,

15   what I thought the position was; and that was to say that

16   the civil disorder is an aggravated assault because it was

17   committed with the intent to commit another assault.  But

18   that seems to me to have the same circularity problem,

19   though.  Perhaps a different circularity problem than the

20   one I identified already.

21          It seems to me there's a pretty good argument that

22   the relevant guideline is 2A2.4.  But I don't have to

23   resolve that dispute because, in my view, Counts 1 and 2

24   should be grouped together, and there's no argument that

25   Count 1 would have a higher offense level, under any

1     circumstances, than Count 2.

2                 The reasons these counts should be grouped

3     together, in my view, is that the two counts share a victim,

4     Officer Sterling; involve the same transaction or, at the

5     very least, share a victim, Officer Sterling; and are

6     connected by a common scheme under 3D1.2(a) and (b).

7                 Indeed, the very reason why the government and the

8     PSR argue that Count 1, civil disorder, should be treated as

9     aggravated assault under the guidelines is because the

10    assault on Officer Sterling, which is captured by Count 1,

11    comprised at least a significant portion of the illegal

12    conduct under Count 2.

13                To the extent there's any doubt in this, I went

14    back and reviewed my verdict -- I mean, government counsel

15    recognized this.  My verdict as to the assault count was

16    focused entirely on Mr. DaSilva's conduct vis-a-vis

17    Officer Sterling.  But as to the civil disorder count, a

18    significant portion of my finding on civil disorder also

19    focused on Mr. DaSilva's conduct vis-a-vis Officer Sterling.

20    For those reasons, in my view, that substantial overlap

21    means it's appropriate to group Counts 1 and 2.

22                Turning to Count 7, the guidelines don't apply.

23    So we have one group, Counts 1 and 2, offense level 20.  And

24    under 3D1.4, there's no increase in the offense level;

25    that's sort of the starting pointing.

1          We then turn to Section 3E1.1, acceptance of

2     responsibility.  Probation and the government argue that no

3     acceptance of responsibility reduction is warranted here.

4     Mr. DaSilva does argue for a reduction.

5          I agree here with probation and the government.

6     Mr. DaSilva has not provided the requisite sort of evidence

7     of acceptance of responsibility in light of his decision to

8     not plead guilty, notwithstanding his complaints that the

9     offered plea deals were harsh, his arguments against factual

10    guilt, and his continued insistence that he did not cause

11    Officer Sterling pain.

12         His statement regarding his conduct, reproduced in

13    PSR Paragraph 33, is certainly appreciated but in my view is

14    not sufficient.  And his statements and calls from jail,

15    that the government has pointed me to, certainly do not help

16    his case here.  In my view, he does not satisfy the

17    acceptance of responsibility requirements and no reduction

18    is appropriate.  The final offense level is, therefore, 20.

19         Mr. DaSilva is estimated to have zero criminal

20    history points, and, therefore, falls within Criminal

21    History Category I.  The guidelines range is therefore 33 to

22    41 months of incarceration, with an applicable fine range of

23    15,000 to $150,000.  There are maximum terms of imprisonment

24    on Count 1 of five years, Count 2 of eight years, and

25    Count 7, six months.  And the guidelines range for

1    supervised release is one to three years for Counts 1 and 2.

2    There's also an applicable mandatory special assessment in

3    this case of $210.

4         Recognizing that the parties have taken various

5    positions on sentencing, and the guidelines in particular

6    that I have not agreed with entirely, and those positions

7    are well stated for the record, are there any objections

8    either party would like to further note at this time?  Would

9    the government like to state any objections for the record?

10        **MR. BOYLAN:**  No, Your Honor.

11        **THE COURT:**  Thank you.

12        Ms. Medvin?

13        **MS. MEDVIN:**  Court's indulgence, Judge.

14        **THE COURT:**  Please.

15    (Discussion off the record between Ms. Medvin and

16   Mr. DaSilva.)

17        **MS. MEDVIN:**  Judge, just renewing the same

18   objections we had for the record.

19        **THE COURT:**  Thank you.  Yes.  They are noted and

20   their renewal is noted.

21        Now I would like to hear from the parties about

22   what they believe an appropriate sentence is.  Why don't we

23   start with the government.  Mr. Boylan.

24        **MR. BOYLAN:**  Your Honor, are you asking just for

25   the answer to that limited question or can I give you my

1    allocution in the full?

2           **THE COURT:**  The whole thing.  Sorry.  I didn't

3    mean to suggest you have to only give me your bottom line.

4    No.  This is your full allocution.

5           **MR. BOYLAN:**  Maybe I'll start with the bottom

6    line, Your Honor.

7           The government stands by its prior recommendation,

8    and suggests a reasonable sentence, in light of the 3553(a)

9    factors.  However, in light of Your Honor's recalculation of

10   the guidelines, we would recommend a sentence of 41 months,

11   which is the high end of the guidelines in this case.

12          Your Honor, the sentence that the government

13   recommends in this case is merited for three primary

14   reasons.  Number one, the defendant's actions on

15   January 6th, which were violent and stand out among other

16   rioters who were there.  Number two, the lack of respect for

17   the rule of law that the defendant exhibited on January 6th

18   and has since then.  And, third, for his lack of remorse

19   that he has exhibited since his trial, through his

20   pleadings, through his statements up to today.

21          I'll start, Your Honor, with the defendant's

22   actions on January 6th.  They were violent and they were

23   actions of a man who knew what he was doing the entire time.

24          The defendant came to the Capitol and he stayed

25   there for two and a half hours.  It's a very long time.  He

1    witnessed violence, violent actions against police officers,

2    repeatedly, over and over.  He knew what was happening.  He

3    saw what was happening, and he knew what he was doing when

4    he chose to go into the tunnel.

5            At trial, Your Honor, you heard from

6    Officer Sterling.  Officer Sterling talked about the

7    conditions inside that tunnel.  They were loud.  They were

8    chaotic.  There was OC spray and water all across the floor.

9            Officer Sterling and about five other officers

10   abreast and a group behind them were trying to keep a sea of

11   thousands of rioters out of the Capitol building; that's the

12   context, Your Honor, for the defendant's actions.  In this

13   case, context matters a lot.  The defendant took the actions

14   that he did in the middle of a riot.

15           Contra to the defense sentencing memorandum, when

16   the defendant went into the tunnel, when he pushed on that

17   shield, this wasn't a love tap.  The defendant says he

18   regrets putting his hands on the shield.  That's not what

19   happened, Your Honor.  He put his full body weight, pushed

20   like an offensive lineman against that shield.  He struck an

21   officer's hand.  He pulled the shield down.  And he did this

22   all in the context of the violent riot that happened on

23   January 6th.

24           When he pulled that shield away, he exposed a line

25   of officers to flying objects, a desk drawer and others.  He

1   made those officers' jobs more difficult.  He endangered

2   those officers.

3          Your Honor, in the *Joshua Doolin* case, in your

4   sentence in there, you said that "every participant in the

5   riots made an impact, as one of the primary strengths of the

6   rioters on that day was their sheer number, leading to many

7   circumstances in which law enforcement was overwhelmed."

8          That's an apt description of what happened here.

9   But the defendant wasn't just a contributor.  He was violent

10  and he was more contributory than other defendants and he

11  knew what he was doing.

12         After he attacked those officers, he stood outside

13  the mouth of the tunnel and he taunted the officers inside.

14  He was conscious of what had happened, of what was going on

15  and of what he did.

16         There's no dispute, Your Honor, the defendant is

17  an intelligent man.  He's very smart.  He's highly educated.

18  He's smart enough to know what he did and to have an

19  appreciation for it.

20         In the statement from his psychologist he talks

21  about how the defendant had firmly held beliefs and made

22  logical arguments.  This exhibits a man who knows what's

23  going on.  Exhibits a man who should know better.  He didn't

24  get caught up.  He made deliberate choices.

25         One of those choices on January 6th, and since,

has been to have a lack of respect for the rule of law, as exhibited when he first arrived on the Capitol's plaza.  The acts that were the basis for the 231 against the door.  He thought he obstructed the officers inside that door.  He stood in the way of law enforcement.

He continued that when he assaulted the officers inside the tunnel.  He endangered those police officers and taunted them afterwards with a total disregard for the rule of law in that context.

That disregard is continued since trial up to today.  We can see that in the post-trial statements that the defendant has made.  He accuses other judges on this court of bias.  And he said that he didn't get a fair trial in this courtroom, Your Honor.  That lack of respect for the rule of law is continuous and it's a significant factor in this case.

Maybe the most significant factor, Your Honor, though, is the defendant's lack of remorse.  Again, contra the defense memo, this isn't a man who feels remorse for what he did, and that's evident even from his own statement of remorse.  He calls what he did interacting with an officer.

Would Officer Sterling call it an interaction?  No.  He would call it an assault.  He would call it an attack.  That's what happened.  The defendant has

1  continually refused to engage with that.  In his Freedom

2  Corner calls, he says that he's the victim, not

3  Officer Sterling, not the other officers that were there on

4  January 6th.

5          He blames the crowd.  He blames noises and chaos.

6  He blames what he calls "stimuli."  He blames the DOJ for

7  the way that we've handled this case.  He blames the Court

8  for convicting him of acts that he says are "uncriminal."

9  But he refuses to accept responsibility for his actions.

10         The defendant hasn't ever seen this case from

11  anyone's perspective but his own.  Not from

12  Officer Sterling's, not from the perspective of the people

13  who were inside the Capitol on January 6th and not from the

14  perspective of the American public who watched those events

15  happen on television.

16         Your Honor, those are the three primary reasons we

17  recommend the sentence that we do:  The defendant's violent

18  conduct, his lack of respect for the rule of law and his

19  lack of remorse.

20         I want to talk briefly, Your Honor, about

21  comparator cases.  This isn't a selective prosecution.

22  Defense seems to want to litigate a motion that was denied

23  months ago.  To my mind, Your Honor, that only shows a

24  continued refusal to take accountability for what happened

25  on January 6th.  Comparison to any case outside of what

1    happened on January 6th is inapposite.  January 6th is sui

2    generis.  It's unprecedented, unlike any event that's ever

3    happened before.  It's a riot that happened inside the House

4    of Congress.

5            The defendant on that day tried to get past police

6    officers, into the Capitol.  He put at risk lives of the

7    civilians there and the officers, especially those in the

8    tunnel.  He contributed to stopping the peaceful transfer of

9    power.

10           It just isn't akin to pushing someone on a street

11   corner.  Your Honor, there's a difference between someone

12   who pushes someone on a street corner and someone who

13   pushes, for example, someone in a Metro station in front of

14   a moving train.  The action might be exactly the same but

15   the context and what's going on around makes those crimes

16   very different.  That's what happened here.  The defendant

17   didn't just push on a shield.  He pushed on a shield in the

18   middle of a riot; and that matters.

19           For those reasons the proper comparator cases, the

20   ones that we submitted Your Honor, the *Thompson* case in

21   front of Judge Lamberth, it happened in the same context,

22   inside the tunnel.  The acts in that case were similar.  The

23   defendant, I believe, pushed on an officer.  He also threw

24   some things.  The defendant in that case received 46 months.

25           Your Honor, in conclusion, I'd like to zoom out

1    and think about the bigger context.  Like other January 6th

2    defendants, Your Honor, the defendant participated in an

3    attack on an American institution.  He participated in an

4    attack on a democratic process and on the peaceful transfer

5    of power.  Many rioters on January 6th did that but the

6    defendant did so violently.  To this day, he does not

7    recognize that what he did was wrong.  He has refused to

8    accept responsibility for it.

9              For those reasons, Your Honor, the government

10   recommends a sentence of 41 months.  Thank you.

11             **THE COURT:**  Thank you.

12             I think now would be an appropriate time to hear

13   from Officer Sterling.

14             **MR. BOYLAN:**  Yes, Your Honor.

15             **THE COURT:**  If he would like to speak.

16             Good afternoon, Officer -- I'm sorry.  Good

17   morning, Officer.

18             **OFFICER STERLING:**  Good morning, sir.

19             **THE COURT:**  Please.

20             **OFFICER STERLING:**  So my name is Jason Sterling.

21   I am an officer of the Metropolitan Police Department.  I'm

22   simply a man that is expected to protect life and come to

23   the aid of others.

24             On January 6th, I arrived to work to do just that.

25   What was different is that I faced the endless sea of people

1   with no respect for the very government that protects them.

2           On this day, I encountered fire extinguisher

3   discharges, various chemicals and various assaults.  I

4   endured hard impacts on my head, to include explosions of

5   some sort.  Thank God for my helmet.  But at one point it

6   was yanked off.  It was essentially pulled off my head,

7   along with my gas mask.

8           I encountered random attacks by various people

9   using their bodies.  The mere impact of the shield created a

10  pain that almost instantly made me let go.  The shield was

11  upholding its end of the job, but members of the crowd also

12  pulled this resource away.

13          While standing on all sorts of large and small wet

14  debris, balancing the support of my team to make sure I

15  don't fall backwards, and standing my ground against the

16  crowd, my leg was captured.  At this moment, I was fighting

17  for my life with my left leg being pulled into the crowd, my

18  right foot planted and my team holding on to me by my weapon

19  arm, which is my right arm.

20          I was -- at this point where I felt helpless and I

21  was now -- it was now that I needed help.  It soon ended

22  with me getting pulled back into the tunnel.  On what should

23  have been a "normal" day at work, protecting our sacred

24  government institutions, I ended up facing an angry mob that

25  showed no regards for law or authority.

1    Despite being pelted with objects, stripped of my

2    protective gear and physically accosted, I remained

3    steadfast in my duty, relying on my training and fellow

4    officers to withstand the onslaught.  Though shaken, I

5    emerged with my life and I know that I upheld my oath that

6    day against tremendous odds.

7    As we live in a time where accountability is of

8    the most importance, it is imperative that all individuals

9    who participate in the assaults against any officers are

10   held accountable for their actions.

11   Despite the difficulties I face, I returned to the

12   team to fulfill my responsibilities in a fair and a just

13   matter.  I understand the importance of remaining unbiased

14   and upholding the rule of law, even in face of adversity.

15   In addition to my professional obligations, I also

16   have a personal duty to my family.  Being a father and a

17   husband, I must strive to provide a safe and stable

18   environment for my loved ones, even in uncertain times.

19   I wanted to share a few of my thoughts while also

20   express my commitment to upholding my duties and

21   responsibilities, both personally and professionally.  The

22   severity of the events that occurred on January 6th cannot

23   be understated, and it is crucial that those responsible are

24   brought to justice.  The rule of law must be upheld and

25   those individuals in the attack must face the consequences

1    of their actions.

2              I appreciate the hard work that has gotten us to

3    this point of accountability.

4              **THE COURT:**  Thank you.  Thank you for being here

5    today, Officer.  Thank you for what you just said.

6              As I said at trial, I want to thank you for your

7    service, both generally and on January 6th.  It's greatly

8    appreciated by me, at least.

9              **OFFICER STERLING:**  Thank you, Your Honor.

10             **THE COURT:**  Thank you.

11             **OFFICER STERLING:**  Thank you, guys.

12             **THE COURT:**  Ms. Medvin.

13             **MS. MEDVIN:**  Thank you, Judge Nichols.

14             I'll start out by saying that we poured our heart

15   out into that memorandum to let the Court know who

16   Mr. DaSilva is, to introduce Mr. DaSilva as a person in

17   advance of this hearing.  And everything that we wrote about

18   Mr. DaSilva is absolutely true.  And his feelings of

19   remorse, which was the crux of the government's argument,

20   his feelings of remorse, were true as well.

21             Mr. DaSilva regretted his actions right away, as

22   was shown in the letter from his wife and in a memorandum.

23   He fell into his wife's arms and told her how much he

24   regretted participating in that crowd and how much he

25   regretted putting his hands on that shield.  He told her

1     that even before this trial.

2           Mr. DaSilva didn't take a plea, and so he didn't

3     have to make this statement.  He had a trial.  But he did.

4     He wanted the Court to know that that is how he felt.  He

5     felt regret and remorse for that.  And he has felt remorse

6     for those actions continuously.

7           The recordings that the government cites to, none

8     of them are actually recordings discussing this case.

9     Mr. DaSilva doesn't even know those individuals.  They were

10     called to someone else at the jail.

11           For a little bit of added context, the January 6th

12     defendants are held together.  There are phones in public

13     areas; phone calls are made.  This is apparently a woman who

14     was the wife of another prisoner, and the woman was making

15     recordings speaking to these defendants.  Mr. DaSilva was

16     one of the individuals who made a statement.

17           The statements he made were in October.  And he

18     doesn't explain what exactly he's talking about.  He's

19     speaking in generalities.  And he's talking about some crime

20     that he believes he and others were convicted of that they

21     didn't actually commit.

22           And in February, this Court acquitted Mr. DaSilva

23     of a crime, including others also who were acquitted of this

24     similar crime that they did not commit, which was the 1752

25     counts.  So as far as the statements, he doesn't

specifically state what he is talking about, but we know in February this Court indeed acquitted him.  And in October, for context, we were before this Court arguing that issue. We were, indeed, here arguing these 1752 counts.

As far as the other statements he made, which were something about Judge Kelly, my client doesn't know who Judge Kelly is.  He's repeating things he heard at the jail. He has no idea who any of these people --

**THE COURT:**  Do you disagree that the statements he made generally suggest that many, if not all, of the January 6th prosecutions are unfounded or inappropriate? Whether he's saying about his case specifically, but do you agree that is the general tenor of his statements?

**MS. MEDVIN:**  I'm not sure what he's conveying other than -- conveying this general feeling the defendants have of certain inequities, and he was conveying that.  And we do that in our pleadings.  Right?  Any time defense counsel files a pleading, it has to do with various inequities that are sensed in any kind of criminal case.

And it's not something that should be judged as a sense of not taking responsibility for personal actions.  He never mentions the shield incident.  He never mentions what he did that day.  He doesn't talk about his January 6th experience.  He talks about generalities and general inequities which, again, we have voiced in various memos

1    filed before this Court, as have many other January 6th

2    defendants.

3              But as far as taking responsibility, both he and

4    his wife have said that they -- he took full responsibility

5    for his individual actions.  Those actions he has only

6    spoken to in this brief to the probation officer, and will

7    do so today to this Court, but that's the only time he's

8    actually spoken about his individual actions.  He did not do

9    that in those conversations.

10             **THE COURT:**  Right.  That's why I asked about the

11   general tenor.

12        **MS. MEDVIN:**  My reading of it is it's talking

13   about this general sense that the January 6th defendants

14   have at the jail.  In a sense, this is all they talk

15   about --

16        **THE COURT:**  They generally think that the

17   prosecutions are generally unfounded; and that is the

18   general tenor of what he said generally?

19             **MS. MEDVIN:**  It can be interpreted that way.

20             **THE COURT:**  You disagree with that?

21             **MS. MEDVIN:**  I think it can be interpreted that

22   way.  I don't know that that's what he intended.

23             **THE COURT:**  He's your client.  What did he intend?

24             **MS. MEDVIN:**  My client will make a statement to

25   the Court and will explain.

1          **THE COURT:**  Okay.

2          **MS. MEDVIN:**  But I think it's important to note

3    that, again, he never mentions his actions on January 6th,

4    the actions that this Court has tried.  And he never

5    mentions this Court or this judge.  And, again, he does not

6    know Judge Kelly.  He has no idea who that is.

7          As far as factual assessment -- before I get into

8    what I was going to say about Mr. DaSilva, I'm going to

9    answer the government's statement.  The government said that

10   he pulled the riot shield away from Officer Sterling.

11   That's not what happened in this case.  There's a video

12   showing another rioter coming to the officer's shield.  He

13   takes what looks like a baseball bat and he pries that

14   shield, using that stick or baseball bat, away from the

15   officer.

16         At this point, Mr. DaSilva's legs in the videos

17   are seen walking backwards.  His jeans are seen walking

18   backwards.  Mr. DaSilva does not pull that shield.  His

19   hands aren't even on that shield when that shield is pulled

20   off.  He does not pull the shield away in this case.  So

21   that is factually inaccurate.

22         Mr. DaSilva has dedicated his life to this

23   country.  He has done a phenomenal job in the Navy.  He is a

24   good man.  He has a clean record.  He is 52 years old now.

25   He was 51 in the brief; he has now since turned 52.  An

1    incredible Navy veteran.

2            I put in a letter, which touched me.  In this

3    letter it talks about how he took a shirt off his back in

4    order to render first aid to a child; that's the kind of

5    person he is.  That's the saying; he's the kind of man that

6    will take the shirt off his back for you.  That's what

7    Mr. DaSilva has done in his life.  That's the kind of person

8    that he is.

9            So this day on January 6th, he made mistakes being

10   in the crowd, which he regrets.  He regrets two main things,

11   Judge.  You will hear that from him as well.  Number one,

12   being in that crowd and, number two, interacting with those

13   officers; those are his regrets.

14           But that day, even though we're here to sentence

15   him for it, is not who he is as a person.  He's never acted

16   like that in his life.  And he will contextualize that day

17   for the Court so the Court can understand.

18           But Mr. DaSilva is a guy who has volunteered.  He

19   volunteers with the Knights of Columbus.  He has done

20   incredible work in his community for helping his neighbors.

21   Again, the letters that we have submitted showing his

22   character outside of January 6th and his particular regrets.

23           We talked about the political nature and his

24   thinking.  I mean, Mr. DaSilva's primary political point is

25   pro life; that is what he is.  He is simply pro life.  I

1    mean, he has supported politicians from various political

2    parties throughout his life.  He's not conservative or

3    Republican specifically.  He's supported all kinds of

4    parties, figuring out which one is most peaceful, which one

5    is the most pro life; that's the kind of person he is.

6    Those are his considerations.

7            He is a good man.  He is a wonderful husband who

8    takes care of his wife.  The two are incredible teammates.

9    Christine DaSilva is one of the kindest people I've ever met

10   or spoken to.  He's made wonderful choices in his life as

11   far as spouses.  Unfortunately, they were not blessed with a

12   child.  You know, that was a tragic incident for them.

13           Mr. DaSilva also had, which we didn't address in

14   the memo but which were in the PSR -- he had significant

15   difficulties in his childhood.  We wanted to keep those

16   confidential, so we're not going to note the specific issues

17   that he experienced.

18           **THE COURT:**  I recall them.

19           **MS. MEDVIN:**  But that played a role in shaping his

20   character and making him want to be a good person, and

21   that's what he has dedicated his life to.  He's dedicated

22   his life to his country.  He has dedicated his life to being

23   a good person.  He didn't want to be like what he

24   experienced as a youth.

25           And 18 U.S.C. 3553.  We spent quite a bit of time

1      talking about conduct.  The reason why is because

2      18 U.S.C. 3553, which talks about the proper proposition of

3      sentence and what we are supposed to consider, it's not

4      looking at the Code section under which we're charged.  It's

5      looking at the conduct.  It's looking at defendants found

6      guilty of similar conduct.

7            Conduct is different from charges because, as we

8      have demonstrated, Mr. DaSilva's conduct was similar to

9      other individuals' pre-January 6th.  It was also similar to

10     some defendants from January 6th.  But his charges were

11     different.  They were more severe.  So the charges versus

12     actual conduct.

13           So we have brought to this Court's attention a

14     variety of cases where there was more serious conduct, and

15     the government not only requested a lesser sentence but the

16     sentence imposed was significantly lower than what the

17     government is seeking here.

18           And the same thing with the guidelines.  I do

19     believe the guidelines, as calculated because of the higher

20     offense, the charge itself, it creates an inequity as far as

21     the underlying conduct.  That's why the variance makes sense

22     in this case, as the PSR recommended, and I think it's

23     warranted based on comparing Mr. DaSilva's conduct to

24     conduct in other cases.

25           And so, as we look at all of those factors, it is

1    important to contextualize this in the course of January 6th

2    cases but also cases that were brought that are outside of

3    January 6th, like the recent November case where an

4    individual was assaulting multiple law enforcement officers,

5    has a career of assaulting law enforcement officers.  In

6    that case, he gets sentenced to 29 months.  And the

7    government even requested a lower sentence than here.

8    Mr. DaSilva's guidelines come out to a higher range than

9    that.

10             So, departure, variance, however we want to call

11   it, however we want to calculate it, it's absolutely

12   appropriate in this case in order to give him a sentence

13   that is commensurate with other criminal cases and with

14   other January 6th cases specifically.

15             The government says you can't compare January 6th

16   to any other dates.  Well, regardless of how you look at it,

17   whether you're looking at January 6th or other crimes,

18   Mr. DaSilva's guidelines bring this Court into a range that

19   is much higher than what is appropriate, no matter how we

20   look at it.

21             And as the defense has clearly pointed out, it

22   should be all cases considered, not just January 6th.  The

23   government wants it to be specific to January 6th but we

24   have to look at all criminal cases as a whole.  All the

25   cases we brought to this Court's attention should all be

1    considered.

2          We talked about the specific deterrence and saying

3    in this case the -- well, Mr. DaSilva's been already

4    incarcerated for nine months.  We already know, he was sorry

5    even before charges were brought.  He was sorry when he went

6    to his wife.  That's before he was arrested, before charges

7    were brought.

8          This is not a man who needs to be deterred again.

9    This is a man who said he's not even going to other protests

10   because of the effect that this had.  Even though in the

11   past he has been to multiple pro-life protests, he has

12   attended a variety of pro-life protests.  They've never

13   gotten out of hand.  And he's never gotten out of hand.  But

14   this is the first time it happened and the last for him.

15         Even when it happened, the incident in and of

16   itself was sufficient, but now he has spent nine months

17   being incarcerated.  And so in terms of specific deterrence,

18   he's more than deterred.  There's no additional specific

19   deterrence that's necessary.

20         I do think he was rehabilitated.  Actually, he

21   engaged in self-rehabilitation because, as we presented to

22   the Court, he was engaging in cognitive behavioral therapy

23   and person-centered therapy after this and before the trial.

24   So he was, for the course of a year, dealing with his

25   behavioral issues and making sure that he's in full control

1    in the future.  If anything were to ever happen again, that

2    he's in control.  And so as far as rehabilitation, that

3    issue is unnecessary.

4            The incapacitation, again, as we've mentioned, the

5    nine months is more than sufficient for this defendant.  And

6    the restitution in this case -- I'll say this, the

7    restitution issue:  Mr. DaSilva attempted to prepay $500 in

8    restitution, as that is -- the standard is for misdemeanor

9    cases, what the government requests for people who entered

10   the Capitol.  Mr. DaSilva never entered the Capitol.

11           But in this case there is some cleanup effort in

12   response to Mr. DaSilva's conduct.  There is pepper spray

13   that was deployed.  And so we would say there's restitution.

14   That would seem fair as far as cleanup but that's about it.

15   We don't know that Mr. DaSilva's actions warrant a

16   restitution award past that.  Certainly not the $2,000 the

17   government is requesting.

18           As far as general deterrence, as we have argued,

19   that has been met in the January 6th prosecutions overall.

20   I think the public is sufficiently deterred.  The

21   retribution issues as well, we believe retribution has been

22   accomplished as well ahead of sentencing.  So in this case

23   all of the -- you know, all of the necessities of sentencing

24   have been accomplished pre-sentence.

25           We've brought to this Court's attention cases from

1    other jurisdictions, from Portland, from Seattle, from

2    Minneapolis, from Washington D.C. and from January 6th, and

3    not a single one of those cases shows conduct that is less

4    severe than Mr. DaSilva's but matches what the government

5    was asking as far as penalty.  I think the appropriate

6    penalty in this case is the one proposed in the original

7    memorandum, which is three months.  He has served

8    nine months of incarceration.

9            For nine months of incarceration, I think the way

10   to fairly penalize him while giving him credit for that is

11   for any time that the Court would have given as release

12   time, so for the one- to three-years supervised release,

13   this Court could credit him for the additional time.  So if

14   he served six additional months past the three that we're

15   requesting, those six months of service can be credited

16   towards the full service of the supervised release that

17   would have been ordered.  So we think that the penalty he

18   has served today should be the final penalty.

19           **THE COURT:**  Thank you, Ms. Medvin.

20           **MR. BOYLAN:**  Your Honor, if I may briefly.  I know

21   I've had my turn to talk.  I forgot to mention, the Court

22   asked for other cases --

23           **THE COURT:**  I did.

24           **MR. BOYLAN:**  -- and I think Ms. Boyles can talk to

25   a few of those.

1           **THE COURT:**  Sure.

2           **MS. BOYLES:**  We haven't been able to have, you

3    know, a fulsome spreadsheet --

4           **THE COURT:**  Yes, I realized I asked pretty late in

5    the day.  Why don't we do this.  Why don't we hear from you

6    briefly on that.  Then Ms. Medvin, I'm happy to hear from

7    Mr. DaSilva's wife and/or Mr. DaSilva at that point.  All

8    right?

9           **MS. MEDVIN:**  Thank you, Judge.

10          **MS. BOYLES:**  Thank you, Your Honor.

11          **THE COURT:**  Ms. Boyles.

12          **MS. BOYLES:**  Thank you, Your Honor.

13          As my co-counsel indicated, with about an hour

14   before we had to head to the courthouse we couldn't put

15   together the chart that we might have liked to for the

16   Court.  And just to be clear, I wish we had the kind of

17   spreadsheet that Your Honor might imagine that we do, where

18   we just say, Oh, you know, this criminal history category

19   and this base offense level and these statutes.  But

20   unfortunately, we don't quite have that kind of easy handle

21   on the data.

22          **THE COURT:**  Considering this is the second time

23   I've asked the U.S. Attorney's Office for this, it might be

24   good for the Office to develop the spreadsheet.

25          **MS. BOYLES:**  Your Honor, we are in the process of

working on that.  With about 900 cases that have come to
finality, going back to review nearly three years of data
and put it into the sort of format that Your Honor might be
looking for is a time-intensive process.  But that point is
well taken.

          So a couple of cases -- and I will confess,
Your Honor, I haven't looked into all of the facts of each
of these cases, but I think a couple may be helpful and may
be responsive to Your Honor's questions.  I was looking for
cases that had an offense level of 20, 21 or 22.

          First of all, just sort of framing this question,
this is a unique case because, from the government's
perspective where we were coming from on the guidelines,
there aren't that many cases where we have two felony
convictions coming out of a trial without a 1512 or multiple
111s.  So from the government's perspective coming into
sentencing today --

          **THE COURT:**  Right.  This is pretty unique.
Sometimes you have that offense level post-plea.  Sometimes
you have --

          **MS. BOYLES:**  Correct, Your Honor.

          **THE COURT:**  -- some other charges involved.  I
understand this.

          **MS. BOYLES:**  Without acceptance of responsibility,
where there is also often a lot of the comparators that we

1    might ordinarily point to in terms of conduct, pled out.

2                **THE COURT:**  Yep.

3                **MS. BOYLES:**  So they were only subject to and only

4    asked to plead guilty to one felony conviction, and they

5    also received the benefit of acceptance of responsibility.

6                **THE COURT:**  Right.

7                **MS. BOYLES:**  So from the government's initial

8    calculations that's a five-offense level difference, which

9    is substantial.

10               **THE COURT:**  Understood.

11               **MS. BOYLES:**  So among bench trials, Robert Wayne

12   Dennis -- excuse me.  These three-first-name cases sometimes

13   confuse me based on my notes.  So I apologize.  But that

14   case is 21-CR-679.  So Mr. Dennis was convicted at a bench

15   trial of Section 111 violation, 231, as well as

16   misdemeanors.  The offense level was 22.  So two points

17   above where the Court is today.  And the Court imposed a

18   sentence of 36 months of incarceration.

19               Similarly, in 21-CR-455, Reed Knox Christensen,

20   the offense level was 20 and the Court imposed a sentence of

21   46 months of incarceration.  It is clear from the data that

22   I have that there were aggravating circumstances in that

23   case because the government's recommendation was 60 months

24   of incarceration.

25               The case of Jonathan Munafo, 21-CR-330, the Court

1    came out with offense level 20.  That case is slightly

2    different because there was a Criminal History Category of

3    III, resulting in a guidelines range of 30 to 37 months, and

4    the Court sentenced in the middle of that range at

5    33 months.  As I'm saying that, that doesn't quite sound

6    right based on what I know offense level 20 dictates.

7              **THE COURT:**  Yes.  That seems inconsistent with the

8    table in the back of the guidelines book.

9              **MS. BOYLES:**  Which is why our -- you know, again,

10   all of the caveats before.  These are my very rough notes

11   from this morning.

12             **THE COURT:**  I understand.

13             **MS. BOYLES:**  But that was a case where the

14   defendant pled guilty to a 231 and to a 111 count, and the

15   Court came out at 33 months.

16             I can also speak from a case that I personally

17   handled, where the defendant pled, again, to 231 and a 111.

18   And the offense level there was 17 because of the acceptance

19   of responsibility, and the Court, that was Judge Walton,

20   sentenced the defendant to the low end of the guidelines,

21   which was 24 months.

22             A couple of other cases where it looks like the

23   defendant had similar conduct but pled guilty, they're going

24   to be at the offense level 17.  Michael Eckerman, case is

25   21-CR-623, defendant was sentenced to a 20-month sentence.

1      That was a slight variance from the recommended guidelines

2   range.

3              Jason Owens, 21-MJ-376, again, offense level 17

4   because of acceptance of responsibility for pleading guilty.

5   He received a 24-month sentence.

6              Kevin Galetto -- I apologize.  I didn't write down

7   the case number in this one, but it's another offense level

8   17 where the defendant was sentenced to 27 months of

9   incarceration.

10             I also found a number of cases that I do think are

11  helpful just in sort of orienting the Court to where in the

12  great spectrum of January 6th cases this case falls.  And

13  these are cases where the defendant pled guilty to either

14  111 or 111(b) but where that plus-four enhancement for a

15  deadly or dangerous weapon came into play.

16             They are sort of helpful, just in framing where

17  the guidelines are, because recognizing there the conduct is

18  more serious with the plus-four for the deadly or dangerous

19  weapon.  However, that is somewhat canceled out by the fact

20  that there is acceptance of responsibility.  So we end up,

21  again, in that either offense level 21, offense level 22

22  range.

23             So Logan Barnhart was at an offense level 22.  He

24  was sentenced to 36 months of incarceration.  Landon

25  Copeland, also offense level 21, having pled guilty,

1    sentenced to 36 months of incarceration.  And I apologize, I

2    didn't write down the case numbers for those but can provide

3    those to the Court if you would like.

4            James Elliott, 21-CR-735, offense level 21,

5    37 months of incarceration.  Grady Owens, 21-CR-286, offense

6    level 21, 37 months of incarceration.  Matthew Beddingfield,

7    offense level 21, 38 months of incarceration, and that was

8    one of Your Honor's cases, 21-CR-66.

9            **THE COURT:**  Yes, it was.

10           **MS. BOYLES:**  So what I would ask the Court to

11   consider with regard to these cases -- and, again, they're

12   not perfect and it's not comprehensive.  But I think the

13   pattern here, particularly among the cases where there was a

14   guilty plea and clear acceptance of responsibility, the

15   Courts in this district are routinely sentencing defendants

16   that have been convicted of a Section 111 or 231 offense, to

17   a bottom of the guidelines or a small departure from the

18   bottom of the guidelines sentence.

19           And here we're arguing for a high end of the

20   guideline sentence.  I realize that that may be unusual but

21   this case, I think, is quite unusual in the lack of remorse.

22           The discussion today about the fact that he is

23   sorry, I have not actually heard remorse for what happened

24   to the officers.  And I realize, you know, this is a point

25   of contention.

1          But, you know, I've listened to those calls to

2     Freedom Corner.  There's a lot of them.  It's not just one.

3     And it's very clear what the defendant's views are and the

4     fact that the defendant still believes that what he did on

5     January 6th was "uncriminal."  That wasn't just discussing a

6     1752 issue.  That was conduct in general was "uncriminal".

7          We think, for all of the reasons that my

8     co-counsel already explained, more than justifies an upper

9     end of the guidelines sentence here.

10         **THE COURT:**  Thank you, Counsel.  And thank you for

11    pulling that information together on very short notice.

12         Ms. Medvin, you may respond to that.

13         **MS. MEDVIN:**  Judge, I'm not sure that we should be

14    looking at -- I think this is helpful overall but I'm not

15    sure we should be looking at these cases in this way.  The

16    cases that we presented to the Court had to do with similar

17    conduct, which is what the Code section is asking us to look

18    for, similar conduct.

19         These cases aren't showing similar conduct.  They

20    are showing significantly more severe or different conduct,

21    difficult types of assaults.  So the sentences here, they

22    can contextualize, you know, may be the high end of the

23    sentence.  It shouldn't exceed these sentences.  But in

24    terms of giving us guidance, that's about all we can use

25    this for, because it doesn't give us the right perspective

1    on evaluating his conduct, other than showing that it's too

2    much.

3              But I also -- there's a lot of cases that were

4    named.  I'm not familiar with any of these cases.  I would

5    have to look into each one of them and look at the conduct

6    to be able to differentiate it and argue it on behalf of my

7    client, which I can't do currently --

8              **THE COURT:**  I agree.  I'm not just going to apply

9    some average or something like that.  Every case is

10   different.  Every piece of conduct is different.  Every

11   defendant is different.  Every application of the 3535(a)

12   factors is different.

13             But one factor I do have to consider is whether a

14   particular sentence would create an unwarranted sentence

15   disparity, and we have a unique situation where we have

16   now -- well, where I personally have sentenced a very large

17   pool of defendants.  And so I know where different

18   defendants' conduct falls on the spectrum of severe to

19   less-severe.

20             I also know different defendants' acceptance of

21   responsibility on a similar spectrum and remorse.  So I have

22   to weigh all of those things.

23             But it's also relevant to me, at least when I

24   think about that factor, what my colleagues have done.  So

25   I'm not going to say because Judge X imposed a sentence of

1    37 months in a case, that I'm going to impose that same

2    sentence.  But it's not an irrelevant consideration.  And

3    I'm not suggesting you think it is, but that's why I asked

4    for the information.

5            **MS. MEDVIN:**  Yes, sir.

6            Out of the factors that are outlined by that Code

7    section -- I think there was seven total -- this was one of

8    the factors.  The other factors are looking at conduct and

9    contextualizing the conduct.

10           I do think while this plays somewhat into it, it

11   actually plays a very minor rule, like a 15 percent role, if

12   we were to give it a proportion.  It actually plays a minor

13   role.  We're supposed to be, again, looking at conduct.  I

14   keep concentrating on that word because of the charges.

15           **THE COURT:**  Yes.  I get all of that.  I get all of

16   that.

17           **MS. MEDVIN:**  That's all.  In terms of a response

18   to this particular list of cases, I don't have a specific

19   response.  I'm not familiar with the cases --

20           **THE COURT:**  Totally understood.  I understand.

21           **MS. MEDVIN:**  I just wanted to, for the record, add

22   that.

23           **THE COURT:**  And I agree.

24           **MS. MEDVIN:**  Thank you, Judge.

25           **THE COURT:**  Thank you.

1         So, Ms. Medvin, I'd be happy to hear now from

2    either Mr. DaSilva or his wife.

3            **MS. MEDVIN:**  May we have a 10-minute recess,

4    Judge?

5            **THE COURT:**  Sure.  Let's do that.  Let's take ten.

6    We'll come back on the record at -- we'll call it 11:35,

7    hear from whomever you think would like to speak, and then

8    I'll walk through the 3553(a) factors and my sentence.

9    Okay?

10           **MS. MEDVIN:**  Thank you, Judge.

11        (Recess from 11:22 a.m. to 11:36 a.m.)

12           **DEPUTY CLERK:**  Your Honor, we are now back on the

13   record.

14           **THE COURT:**  Thank you.

15           Ms. Medvin?

16           **MS. MEDVIN:**  Judge Nichols, my client's wife,

17   Christine DaSilva, would like to make a statement.

18           **THE COURT:**  Very well.  She may come forward.

19           Come on up.

20           Good morning, Ms. DaSilva.

21           **DEFENDANT'S WIFE:**  Good morning.  Let me get

22   control of myself.

23           First of all, thank you for letting me make a

24   statement.

25           I just wanted to let you know who my husband is as

1    a person and to let you know about the remorse that he

2    feels.  He is the most conscientious man I have ever known.

3    I have known him for 30-plus years.

4         The first thing he said to me when he came home

5    after this event was that he was sorry that he pushed on a

6    shield.  He pushed on a shield twice.  That's what he said

7    to me.  He has -- he felt remorse about this before any of

8    this happened.

9         He went to confession.  That week, we called our

10   priest at Mater Dei and asked the priest to sit with him.  I

11   sat in the car with our German shepherd puppy, because we

12   couldn't leave the dog alone.  And he went inside and met

13   with the priest.  He felt horrible about what happened.

14        We never had a situation like this.  He went to

15   Washington, D.C.  We thought it would be a peaceful protest.

16   There's a man at our church named Taylor Marshall who had

17   been giving talks on steps.  We thought it would be

18   something like that.  There was some kind of protest in

19   November before, and we thought it would be something like

20   that.  And my husband went.

21        We've been to, I think, one Trump rally.  The

22   police presence is enormous.  There was no expectation that

23   something like this would happen.  And it really surprised

24   him.  And he -- I mean, I talked to him on the phone.  We

25   thought he was going to die.  It was a melee of an event.

1        But the fact that he pushed on an officer's

2   shield, that he caused harm or that he, even for a scintilla

3   of a moment, created stress for an officer, absolutely broke

4   his heart.  Apart from all of this other -- all of these

5   other things, this has nothing to do with -- I know, I know

6   the statements were made.  This isn't that.  He feels

7   remorse about what happened.  He is extremely conscientious.

8        Now, he takes care of me.  He takes care of my

9   sister, who has MS.  He takes care of my aunt.  We have a

10   neighbor named Jim McClain, who has prostate cancer.  He

11   takes care of Jim.  He helps everyone in the neighborhood.

12   He is a good man.  And he does except guilt.  This is a

13   horrible thing that happened, and he knows that.

14        In an effort to try to understand how he could

15   react so badly in a situation, he started going to

16   counseling.  My husband would never go to counseling.  It

17   just boggled my mind that he wanted to do that because I

18   think we were all just in a strange place.  This was after

19   COVID.  We were both locked down.  I'm a teacher.  I taught

20   from home.  He's a researcher.  He researched from home.  It

21   was like -- I mean, his hair had grown out.  We

22   weren't -- it was a very shocking experience.

23        From the bottom my heart, Judge, we are so sorry

24   for the pain that was caused to the officer.  And I don't

25   know what to say.  I just desperately hope that you send

1    him -- I don't know what to say, but whatever you ask him to

2    do, he will.  Thank you.  He will do.  He is conscientious.

3    I don't know anyone else that I've known for 30 years who's

4    never lied to me.

5          If you ask him to do something, he will do it.  If

6    he had community service or he was home confined, I

7    don't -- I just want you to know that he did express remorse

8    and he does feel remorse for this action, apart from

9    sympathies and all of the things that happened when he talks

10   to someone's wife at the prison; that's a separate issue.

11         But I just wanted you to know that I, personally,

12   have knowledge of his remorse and it was profound and

13   transformative, and I just wanted you to know that, sir.

14         **THE COURT:**  Thank you very much.  Thank you for

15   being here this morning.

16         **DEFENDANT'S WIFE:**  Thank you.

17         **MS. MEDVIN:**  Judge, Matthew DaSilva will make a

18   statement.  I'll stand here in case he needs to consult

19   about anything.

20         **THE COURT:**  Of course.

21         Good morning, Mr. DaSilva.

22         **THE DEFENDANT:**  Good morning, Your Honor.  Thank

23   you.

24         It's been kind of a surreal experience, this case.

25   I haven't testified, and last time we were having a hearing

1    and there was a roomful of people talking about what my

2    intentions were.  I was sitting there and I was thinking,

3    why don't they just ask?

4              Yes, I definitely feel remorse, since the moment I

5    did it.  It's not in my nature to be confrontational.  I

6    don't even like making eye contact.  It's not something I

7    like to do.  I am extremely introverted, extremely shy.  I

8    do tend to become overwhelmed at times and that place was

9    overwhelming.

10             But I'm not the kind of person who normally does

11   that.  And my statement today is meant to give you a little

12   bit more context about what was going on in my mind at the

13   time.

14             I think a good place to start is at the end,

15   because I've talked to a lot of other defendants and I've

16   seen a lot from other cases, and one thing that people don't

17   do is babble incoherently and just sort of stand there.  And

18   that was me thinking aloud, which is something I have a

19   tendency to do, especially when I can't wrap my head around

20   something.

21             I'm a researcher by trade.  I have experience in

22   the Navy, working not just top secret, not just top secret

23   SCI, which is SIGINT, but also special access programs,

24   which is a level even above that; we're in code word

25   territory.

1          **THE COURT:**  Yes, I've had those clearances.

2          **THE DEFENDANT:**  And I want to make it clear,

3    because there is a stereotype that people in intelligence

4    tend to be proficient liars.  That is the case for people

5    who do human and people who do law enforcement undercover

6    type of stuff.  But SIGINTors, in order to become a

7    SIGINTor, in order to get to that level, you have to prove

8    your honesty.  So that qualification is, in a sense, as

9    Shakespeare would say, the government's hand against its own

10   heart.

11         SIGINTors don't lie and we lead very, very clean

12   and pure lives.  We don't fraternize with people who come

13   from another country, especially if that country might be

14   the target country where we do our mission.  And if we do

15   meet someone or have a conversation with them, we report it

16   up the chain of command.  We have to be very careful about

17   what we do.  We don't drive drunk.  We don't cause

18   disturbances in town.  Generally speaking, a SIGINTor,

19   especially in the Navy, is very unique compared to other

20   sailors.

21         I myself was very comfortable in that environment

22   because I am so careful about everything that I do.  I have

23   never smoked a marijuana cigarette in my life.  Every time I

24   mention that, I get laughed at.  What's wrong with you?  Are

25   you afraid of the experience?  Well, what's wrong with me, I

1    guess, is that it's illegal, so I won't do it.

2         I know there are a lot of people who don't feel

3    that way, that if they can get away with something, they do

4    it.  I'm not one of those people.  I take great pride in my

5    respect for the law and my respect for this country.  And I

6    worked very hard to protect the lives and security of

7    everyone in this room.

8         One of the things I hate about this moment right

9    now is that I have to defend myself.  I am not the kind of

10   person who likes to do that.  I don't like talking about

11   myself.  The award that Marina mentioned, I tried to walk

12   away in the middle of the ceremony.  I angered them,

13   actually, because I didn't want the attention.  It annoyed

14   me -- well, it didn't annoy me; it just felt embarrassing.

15   It was hard for me to do.

16        So we have the bookend, which is me babbling

17   incoherently, thinking aloud at the end.  I walk away.

18   Things are starting to be thrown.  I want to go back to the

19   beginning now where I'm at the door.  The video shows that

20   I'm pushing against the door and I'm holding a flag.  That

21   flag was still in my hand when I ascended the stairs.  It

22   was in my left hand.  I'm right-handed.

23        When the door was opened, I was one of the first

24   people through it.  All right.  Maybe I'm incriminating

25   myself more now.  I need to get this out.  I was one of the

1    first people through it.  And there on the cleanly swept

2    marble floor was a pitchfork.  I don't know how it got

3    there.  I didn't like that it was there.  I was confused for

4    a split second.

5           My thought process in that immediate moment was

6    thus:  You can't just leave it there.  Are you kidding me?

7    If you pick it up and walk up those stairs with all those

8    cameras, you are just going to be made the poster boy of

9    whatever is going on here.

10          Exhibit 205 will show the result of that internal

11   dialogue.  The pitchfork is in my right hand.  Mounting the

12   steps with both the flag and a pitchfork, a dangerous

13   weapon, metal tines, I do something that I've never done

14   before.  I tried to look casual holding a pitchfork in an

15   angry crowd.

16          First, I start going towards the steps.  And then

17   I realize this might not be a good idea because I might look

18   like I'm attacking or someone will see me on the stairs and

19   they will say, What a great idea, and grab it from my hand

20   and then go off and do something with it.

21          So I go back to the stairs.  The video shows that

22   I turn towards the stairs and I'm looking for an opportunity

23   to go back down the stairs I had just ascended.  There is a

24   tide of humanity that I am not willing to plunge through

25   with a pitchfork.  So I'm just sort of standing there for a

1   bit.

2          At the balustrade there is a man who is

3   communicating to the crowd.  And God forgive me if this

4   testimony does anything harmful to that man.  But he turns

5   around -- he has an accomplice or a friend down below who

6   points at me when I'm standing behind him holding a

7   pitchfork in front of everyone, and he turns around and he

8   says, What the hell are you doing with that?  Get that away

9   from me.

10          That's when I knew I could trust this guy.  'Cause

11   he didn't want to be seen with it any more than I did.  And

12   I said, I'm not going anywhere because someone can get hurt

13   with this.  He takes it from me.  He says, Okay, here.  He

14   takes it and he puts it down by the stairs on the ground.

15          At that point, his friend crawls on the steps,

16   wedged between the wall and the very edge of the steps,

17   worms their way up.  Reaches for the pitchfork, pulls it

18   down by the handle.  The pitchfork is never seen again.

19   Three years, it's never been seen.  No one was harmed with

20   the pitchfork.

21          I hate to say this.  There are some people who

22   would consider the actions that I and those others performed

23   that day to be heroic.  There were a lot of weapons, a lot

24   of random objects thrown at officers that day.  None were

25   sharpened metal tines.  Most were blunt.  There were bats,

1    sticks, batons, desk drawer.

2           So then the question becomes, Why the hell did you

3    stay?  Well, I wanted to leave but every time I approached

4    any of the four stairways, they were congested with

5    lollygaggers and injured people and people trying to come

6    up.  There were bottlenecks.  It was hard to get out.

7           Secondarily, I suspected the motives for the

8    placement of the pitchfork, that whoever put it there was

9    either irresponsible or trying to start something.

10          In university, I was a reporter for the school

11   newspaper.  A job I quit because I warned the student

12   government before they could be embezzled that a man was

13   trying to embezzle them.  My editor hated me for that.  I

14   wasn't the kind of person who wants to watch a crime happen

15   so I can write a story about it.

16          I also have a lot of experience in competitive

17   intelligence and commercial research and commercial

18   intelligence, along with other intelligence.  I was there to

19   collect.  Not bright.  I'm not arguing that I'm smart.  I am

20   not arguing that it was a good idea to do what I did,

21   subsequent to that.  Munafo tried to break the window open;

22   others succeeded.  There's no video of me screaming at the

23   top of my lungs, Stop him.  Stop that man.

24          At one point, though, the windows were broken and

25   people started pouring through.  It shocked me because I

1   thought, This is not what we should be doing.  And I was

2   confused because when Munafo started to break the window we

3   all stopped him.  We screamed, F Antifa.  And we said, No,

4   don't go there.  Don't do that.

5          But then the window was eventually broken and

6   people started pouring through.  I was invited through the

7   window.  A lady said, Come on.  Come on up.  I looked up at

8   here, and I said, Huh-uh.  I'm not going to do that.

9          I had no intention of getting inside that

10  building, and I could have, if I wanted to, go through the

11  window, which was wide opened and unguarded by any police,

12  as I'm sure Officer Sterling will attest.

13         At this point, I'm really confused about what I'm

14  seeing, and this jives perfectly with my statements before,

15  that I didn't I know what was going on.  So I mounted the

16  stairs after saying a prayer, because I really didn't

17  understand what I was supposed to be doing at that point in

18  time, and I pushed on the shields.

19         When pushing on the shield, I struck a dynamic

20  pose.  One foot back, one foot forward.  Iwo Jima.  This is

21  not, in terms of body mechanics, a very strong pose.  Anyone

22  who has been in a fight, and I've seen quite a few since

23  being incarcerated, knows that the proper way to attack

24  someone is to keep your feet beneath you, like a boxer, like

25  a fencer, like a sumo wrestler.

1        When you put your foot back, it looks dynamic.  It

2   looks like I'm putting all my weight forward.  It makes an

3   angle, straight line up like that.  But where is my center

4   of balance?  Well, it's always right below the head.  So

5   there's pressure.

6        I'm really sorry about the pressure.  And I'm

7   really sorry that I did that.  It was very uncharacteristic

8   of me and it was very stupid.  I shouldn't it have done it.

9   From the very beginning, I felt I shouldn't have done it.

10  Voice in the back of my head telling me, Hey, what are you

11  doing going up the stairs?  I don't know.  I don't know.

12       But I had at least the presence of mind not to

13  attack.  I'm over 200 pounds and I'm 6-foot-2.  If I wanted

14  to, I could have inflicted an enormous amount of pain or at

15  least grabbed someone and thrown them away.

16       Note, I did not go with the rest of the crowd.  I

17  went by myself, fact finding, collecting data.

18       After that exercise, I went down.  I felt stupid.

19  I've felt stupid every single day since.  Dumb.  It was

20  stupid.  It was wrong.  Now, I have opinions about other

21  things.  I feel like I have a right to those opinions.  I

22  think people's attitudes would change if they saw what I saw

23  in the pod and they talked to who I talked to in the pod.

24  I'm not saying they're all angels.  Right?  The first, at

25  the beginning of all of this, people were saying, Hey,

1   anyone who was breaking a window was Antifa.  No.  It was

2   Munafo.  It was Shane Jenkins.

3          So I took that data on board and I have accepted

4   that there were some people whose decision-making processes

5   were probably not as well guided as they should have been.

6   I regret those actions but I do not regret being the one to

7   take the pitchfork and secure it.

8          Ask yourself, you know, what would the day have

9   been like if someone had used a pitchfork?  Would it have

10  been able to pierce the gorget of the Metro Police armor?  I

11  think it could have.  Yikes.  That would have been terrible.

12         Maybe someone would panic and shoot the protester

13  carrying the pitchfork.  Again, terrible.  Lives were saved,

14  I believe this, truly, because of the actions that I took

15  that day.  I try to be a good person.  I don't always

16  succeed.

17         As for respect for the rule of law, counsel will

18  testify, prosecution will testify, that after securing their

19  conviction of me in July, I congratulated them.

20         Correct?  Did I not congratulate you in July?

21         **MS. BOYLES:**  Your Honor, I'm sorry.  I don't have

22  a specific recollection.  There were mutual --

23         **THE COURT:**  Pleasantries.

24         **MS. BOYLES:**  -- courteous words exchanged on both

25  sides.

1              **THE COURT:**  Okay.

2              **MS. MEDVIN:**  There were indeed courteous words

3     exchanged.  I am a witness to that.

4              **THE COURT:**  Okay.

5              **THE DEFENDANT:**  I also spoke to Officer Sterling

6     that day.  Marina was having a conniption fit as I did. I

7     just struck up a friendly conversation with him, about the

8     weight and the heat of his attire.  But I respect him for

9     who he is and I respect his service.

10             I don't know what else to say.  I'm really sorry.

11     I have opinions.  The whole story has not been known.

12             **THE COURT:**  What do you mean by that?

13             **THE DEFENDANT:**  Up until now, the whole story has

14     not been known.

15             **THE COURT:**  About what you said earlier?

16             **THE DEFENDANT:**  Yeah.  The stuff about the

17     pitchfork.

18             **THE COURT:**  The pitchfork.  Okay.

19             **THE DEFENDANT:**  Yeah.  Yeah.

20             Can we play the video for the Court?

21             **THE COURT:**  Sure.

22             **THE DEFENDANT:**  If we play the first two minutes

23     of it.

24             **THE COURT:**  You may.

25             **MS. MEDVIN:**  Judge, yes.  My client had requested

1    that we play Exhibit 205 during his testimony.  So I will

2    oblige per his request.

3              THE COURT:  We'll call it his statement.  He was

4    not sworn.

5              MS. MEDVIN:  I might have to bring the video up to

6    the Court.  It is not --

7              THE COURT:  We can figure it out.  Whatever is

8    most technologically simple.

9         (Brief pause.)

10             MS. MEDVIN:  I think it might be easier to just

11   show the exhibit on the laptop to the Court.

12             THE COURT:  We can take a minute if Ms. Moore

13   would like to see if she can get it working.  But if not,

14   I'm happy to review it myself on the laptop.

15             MS. MEDVIN:  If we may approach?

16             THE COURT:  You may.

17        (Video played for Judge Nichols via laptop.)

18             Okay.  I think it's fair to say that from my

19   review of the exhibit on the laptop, that the events with

20   the pitchfork are as described by Mr. DaSilva.

21             MS. MEDVIN:  And for the record --

22             THE COURT:  At least to the -- what I could see is

23   consistent with what Mr. DaSilva said.

24             MS. MEDVIN:  For the record, I'll add this is

25   Government's Exhibit 205, played from about 1:30 to 3:30 in

1    that exhibit.

2              **THE COURT:**  Thank you.

3              **THE DEFENDANT:**  Just finally, Your Honor, I would

4    just like to point out the fact that since my arrest I've

5    lost my job, my career.  I've lost my income.  I've

6    struggled very hard to make ends meet.  The reason why I've

7    become the cook of the house is because I'm very good at

8    organizing that kind of thing.

9              There's been a lot of difficulties with my family.

10   There have -- obviously, my wife is suffering a lot since my

11   incarceration.  I'm 52.  She is six years older than me.

12   She needs help.  I call and I hear that the light bulbs are

13   burned out or I can hear the smoke detector needs a new

14   battery.  I don't want her to change it because if she falls

15   and hurts herself, no one is going to be around to help her.

16             If I could have some -- [inaudible] -- and give

17   her, and then serve out my sentence and come back, I would.

18   I don't ask for leniency for my sake.  I ask it for hers.

19   Thank you.

20             **THE COURT:**  Thank you, Mr. DaSilva.

21             **MS. MEDVIN:**  Judge, as a final request, I would

22   say in the alternative to the defense sentencing arguments,

23   if the Court did feel that a longer period of incarceration

24   was applicable, I would ask that it be served as home

25   detention.

1          **THE COURT:**  Okay.

2          **MS. MEDVIN:**  Thank you.

3          **THE COURT:**  Anything else from the defense side,

4     Ms. Medvin?

5          **MS. MEDVIN:**  Nothing further.

6          **THE COURT:**  I'm going to take a 10-minute recess

7     and come back and pronounce the sentence.  Okay?

8          (Recess from 12:09 p.m. to 12:19 p.m.)

9          **DEPUTY CLERK:**  Your Honor, we are now back on the

10     record.

11          **THE COURT:**  Thank you, Ms. Moore.

12          Before I walk through my Section 3553(a) analysis

13     and pronounce the sentence, I am going to do what I do in

14     many sentences, which is to summarize the positions of the

15     parties.

16          The government, of course, requests a total of

17     41 months of incarceration, which is an in-guidelines', as

18     I've calculated them, proposal, though at the high end of

19     the guidelines, $2,000 restitution, three years of

20     supervised release and no fine.

21          Mr. DaSilva argues for a downward departure and/or

22     variance that would have resulted in a period of

23     three months of incarceration or now, really, a time-served

24     period.

25          And then probation, at least based on the

1    sentencing guidelines calculation within the PSR,

2    recommended a total of 31 months of incarceration followed

3    by 24 months of supervised release, an unspecified amount of

4    restitution and no fine.

5            Those are the parties' positions.

6            In imposing the sentence here, I am obligated to

7    consider and apply the various statutory factors.  The first

8    one, of which, is the nature and seriousness of the offense.

9    I've said this many, many, many times now:  The events of

10   January 6th were unquestionably serious.  Mr. DaSilva and

11   others entered the United States Capitol and its grounds

12   while a joint session of Congress was meeting to certify the

13   results of the presidential election.

14           Many of the rioters planned to come to the Capitol

15   for the express purpose of interrupting those proceedings.

16   Many used violence against law enforcement officers or

17   engaged in vandalism.  Many engaged in planning efforts

18   before January 6th, suggesting that they intended to engage

19   in violence.

20           But as I've said in almost every sentencing, as I

21   said earlier in this case, every participant in the riots

22   made an impact, as one of the primary strengths of the crowd

23   and the rioters on January 6th was the sheer number of them,

24   overwhelming law enforcement several times in several

25   locations.

1          As to Mr. DaSilva's personal conduct, that

2    conduct, in my view, was very serious.  He knew that

3    officers were trying to clear the area and were deploying

4    various measures, including gas and OC spray, to do so.

5    Mr. DaSilva can be heard on video stating that he had

6    personally been tear gassed multiple times.

7          He nonetheless remained and, indeed, violently

8    resisted law enforcement's attempts to get him and others to

9    leave the grounds.  He joined other protestors in

10   barricading a door in an effort to prevent officers from

11   dispersing the crowd, and he was part of a crowd that

12   attempted to breach a line of officers at the Lower West

13   Terrace door/tunnel.

14         And as I stated after the trial in my verdict, his

15   conduct grabbing at the riot shield and swatting at

16   Officer Sterling's hand when he was holding OC spray made it

17   harder for officers, and Officer Sterling in particular, to

18   protect themselves and posed greater danger to them.

19         In my view, the seriousness and intentional nature

20   of Mr. DaSilva's actions which, of course, lasted for longer

21   than an hour, weigh in favor of a significant sentence.

22         As to the next factor, the history and

23   characteristics of the defendant, Mr. DaSilva is in his

24   early fifties.  He appears to have a very, very close

25   relationship with his wife.  He served for 12 years in the

Navy before being honorably discharged, and he received many

commendations during service.  He takes care of his wife's

elderly sister and his elderly neighbor.  Since his offense,

he has attended counseling sessions regarding it.  In my

view, Mr. DaSilva's history and characteristics weigh in his

favor.

I have to ensure -- turning to the next factor --

that the sentence I impose promotes respect for the law.

This is particularly important in this case.

I have to ensure that the sentence imposed is

properly calibrated to deter both Mr. DaSilva and others

from engaging in such conduct.  I think it's pretty -- I

think Mr. DaSilva's risk of recidivism is quite low.  I

believe it unlikely that the precise circumstances that led

to Mr. DaSilva protesting inside the Capitol will occur, or

really anything like that.

But I can't say that his risk of recidivism is

zero because, again, Mr. DaSilva repeatedly ignored what he

knew to be the wishes of law enforcement, and aided in

interfering with their efforts to disperse the crowd, and he

engaged directly and violently with law enforcement.

And while I certainly understand what he reflected

today on the record about the incident with the pitchfork,

that incident, which occurred over, say, a five-minute

period at best, is five minutes out of an otherwise more

than an hour-long period where, among other things, he ended up engaging with Officer Sterling.

In my view, taken together, his actions on January 6th reflect a lack of respect for police and the rule of law. But this factor isn't just about deterring the defendant from engaging in similar actions. I have to think about deterrence as to others.

Being around and within a violent riot, even if you are not yourself violent, prevents police from dealing with those who are violent. January 6th wasn't an ordinary violent riot, if there is anything that you could call an ordinary violent riot. It was one that interfered with the counting of electoral votes and the peaceful transition of power.

Such transitions of power are one thing that allows us to have the democracy that we have. That's not to say that people are not allowed to question election integrity or fairness. They certainly can. But being part of a violent riot is always unacceptable, and especially when it comes to something as sensitive as the question of election integrity.

In my view, an exceedingly light sentence might not sufficiently deter other would-be rioters in future circumstances. As a result, the need for deterrence, in my view, does weigh in favor of a longer sentence.

1          The next factor I have to consider is how to avoid

2    unwarranted sentence disparities.  As the parties know, I

3    care a lot about this and I reflect on this at length in

4    other sentencings.  I've obviously sentenced a number of

5    January 6th defendants who, as I said earlier, run the

6    spectrum of not particularly culpable conduct to very

7    culpable, not particularly remorseful to quite remorseful,

8    not particularly accepting of responsibility to quite

9    accepting of responsibility.

10          The government provides one comparator, Thompson,

11    who is sentenced to a guidelines range sentence of

12    46 months, but that defendant pleaded guilty to assault with

13    a deadly or dangerous weapon, which Mr. DaSilva was not

14    charged with.

15          Mr. DaSilva has provided a host of comparators,

16    and I've reviewed all of them.  Many of them, in my view,

17    aren't very helpful.  For example, those who participated in

18    other protests who didn't face charges or faced less severe

19    charges.

20          The charging decisions of other U.S. Attorney's

21    Office is not particularly relevant to my analysis here.

22    Even if Mr. DaSilva's correct, that the DOJ's charging and

23    sentence recommendation decisions reflect some political

24    bias, a position I do not adopt here, what is important to

25    me is that I treat similarly situated defendants who come

1    before me similarly.  And I also care about how my

2    colleagues have treated others who engaged in similar

3    conduct on the very same day in the very same location.

4            So the past sentences I have imposed and the

5    sentences given to others for similar conduct by my

6    colleagues are much more salient in my analysis.

7            Mr. DaSilva does identify other January 6th

8    offenders.  Many of those defendants, rightly or wrongly,

9    were not convicted under Section 111, were sentenced under

10   2A2.4 instead of 2A2.2 and/or pleaded guilty, making their

11   guidelines ranges somewhat lower than Mr. DaSilva's.

12           But I do take the point and I certainly agree with

13   it that offenders who engaged in conduct similar to, or not

14   entirely dissimilar from, Mr. DaSilva's did not receive

15   sentences -- at least some of them -- in what I have now

16   calculated to be his guidelines range.

17           Looking at my own past cases, Mr. DaSilva's

18   conduct appears to be less severe than some of my other

19   defendants who faced 111 charges.  For example, Matthew

20   Beddingfield, who we discussed very slightly earlier,

21   received a 38-month sentence, which would be within the

22   guidelines range here, but he swung and jabbed a metal

23   flagpole at officers and actually entered Congress members'

24   officers.

25           And unlike Garrett Miller, who I sentenced to

1   38 months of incarceration, Mr. DaSilva appears not to have

2   engaged in the same level of planning by bringing, as

3   Mr. Miller did, riot gear, like rope and a grapple hook,

4   with him.

5        Mr. DaSilva's conduct is perhaps more similar to

6   Daniel Phipps, who received a 27-month sentence from me.

7   Mr. Phipps did act violently towards police but did not use

8   a weapon.  This is somewhat similar to how I view

9   Mr. DaSilva's conduct.  Unlike Mr. DaSilva, however,

10   Mr. Phipps had a long criminal history, which is, obviously

11   distinguishing in a way that is good for Mr. DaSilva, but

12   Mr. Phipps had a lower guidelines range than Mr. DaSilva, in

13   large part because Mr. Phipps received a three-level

14   reduction for accepting responsibility.

15        These, in my view, are all relevant comparators

16   but, of course, none of them is on all fours with this case.

17        I also care about remorse.  It seems to me that

18   Mr. DaSilva has said some things that reflect remorse, and I

19   believe Mr. DaSilva's wife reflected some remorse or remorse

20   on his part.  But in my view, while I think it's true that

21   Mr. DaSilva regrets his actions, I did not hear the same

22   level of remorse from him about his conduct that I have

23   heard from others.  I did not hear the same sort of true

24   apology that I have heard from some other defendants.

25        I'm not suggesting that that drives a particular

1    outcome but I do think it's important for the record to

2    reflect that.

3         As to restitution and the need to provide that to

4    the victims of the offense, I credit Mr. DaSilva's offer to

5    prepay restitution and that he, in fact, did attempt to

6    prepay restitution as, I think, part of the calculus in

7    thinking about his acceptance of responsibility in

8    attempting to do the right thing.  So he gets all the credit

9    for that.

10        But the parties didn't agree on that amount of

11   restitution.  In my view, restitution may only be imposed in

12   criminal proceedings when authorized by statute.  In other

13   cases I've concluded that the statutory basis for

14   restitution is not ordered.  Here, because it hasn't been

15   expressly agreed to and I'm unconvinced that there is a

16   legal basis for it, I do not order any.

17        Again, I want to make very clear, I fully credit

18   Mr. DaSilva's offer to pay restitution and to do so early,

19   to prepay it.  And so, in thinking about the other portions

20   of the sentence, I give him full credit for that.

21        Where does that leave thus?  I am going to vary

22   below guidelines because I think that an in-guideline

23   sentence here would create an unwarranted sentence disparity

24   and would otherwise be inconsistent with the Section 3553(a)

25   factors.

1          But I think that the proposed variance/departure

2     that the defendant has articulated is not even within the

3     realm of reason.  It itself would create an unwarranted

4     sentence disparity.  So while a variance is warranted, I

5     don't believe that anything approaching a variance to

6     three months or to time served is warranted.

7          In my view, the appropriate sentence here is to

8     commit you, Mr. DaSilva, to the custody of the Bureau of

9     Prisons for a term of imprisonment for concurrent terms of

10    28 months on each of Counts 1 and 2 and six months on

11    Count 7.  I further order you to serve concurrent terms of

12    six months of supervised release on Counts 1 and 2.

13         You are ordered to pay a special assessment of

14    $200.  In light of this term of incarceration and for the

15    reasons in the PSR, I am not going to impose a fine; that

16    special assessment of $200, which is the only financial part

17    of this, is payable immediately to the Clerk of Court.

18         While on supervision you are required to abide by

19    several mandatory conditions, which are imposed to establish

20    the basic expectations for your conduct.  You must not

21    commit another federal, state or local crime.  You must not

22    unlawfully possess a controlled substance.  You must refrain

23    from any unlawful use of a controlled substance.  You must

24    cooperate in the collection of DNA, as directed by the

25    probation officer.  I am going to waive the drug testing

1    requirement.

2            You must comply with the following special

3    conditions:  You must provide the probation officer access

4    to any requested financial information and authorize the

5    release of it.  You must participate in a mental health

6    treatment program and follow the rules and regulations of

7    that program.

8            I am not going to impose the financial

9    restrictions requirement, which would preclude you from

10   incurring new credit charges or open additional lines of

11   credit without the approval of the probation officer.  I am

12   not imposing that condition.

13           You shall comply with the discretionary conditions

14   outlined in Pages 25 to 27 of the final presentence report,

15   including you must report to the probation officer in the

16   federal judicial district where you are authorized to reside

17   within 72 hours from release of imprisonment.  You must not

18   knowingly leave that district where you are authorized to

19   reside without first getting permission from the Court or

20   the probation officer.

21           You must allow the probation officer to visit you

22   at any time at your home or elsewhere, and you must permit

23   the probation officer to take any items prohibited by the

24   conditions of your supervision that he or she observes in

25   plain view.

1          You must not communicate or interact with someone

2     you know is engaged in criminal activity.  If you know

3     someone has been convicted of a felony, you must not

4     knowingly communicate or interact with that person without

5     first getting the permission of the probation officer.  If

6     you are arrested or questioned by a law enforcement officer,

7     you must notify your probation officer within 72 hours.

8          I find that these conditions are reasonably

9     related to the relevant sentencing factors set forth in

10    3553(a) and involve no greater deprivation of liberty than

11    reasonably necessary to achieve the purposes of sentencing.

12    These conditions establish the basic expectations for an

13    individual under supervision and identify the minimum tools

14    needed by probation officers to administer the supervision,

15    and are therefore appropriate here.

16         The Probation Office shall release the PSR to all

17    appropriate agencies in order to execute the sentence.

18    Pursuant to 18 U.S. Code, Section 3742, you have a right to

19    appeal the sentence I've imposed.  If you were to choose to

20    appeal, you must do so, I believe, within 14 days after I

21    enter judgment, which will likely be today or tomorrow.

22         In the event you're unable to afford the cost of

23    an appeal, you may request permission from the Court to file

24    an appeal without cost to you.

25         Ms. Baker, any items that I have neglected to

1    mention, missed, misstated or otherwise screwed up?

2              **PROBATION:**  Excuse me, Your Honor.  My eye just

3    keeps running.

4              No, there is nothing else, Your Honor.

5              **THE COURT:**  Okay.  Thank you very much.

6              Counsel?

7              **MR. BOYLAN:**  Yes, Your Honor.  A couple things.

8    First of all, I think that there is a $10 special assessment

9    for Count 7., and I believe Your Honor said $200.  I think

10   it should be $210.

11             **THE COURT:**  Oh, I apologize.  I meant to say 210.

12             **MR. BOYLAN:**  Thank you, Your Honor.

13             **THE COURT:**  And that is because of the adding

14   together of the special assessment.  You agree with that.  I

15   apologize.  If I said 200, that was in error.  Special

16   assessment, $210 in total.

17             **MR. BOYLAN:**  Thank you, Your Honor.

18             Also, we would ask Your Honor to make a ruling

19   that you based your sentence on the 3553(a) factors,

20   regardless of your findings on the guidelines objections for

21   appellate review.

22             **THE COURT:**  So what do you want me to say that I

23   haven't already said?  I think I was pretty clear that I was

24   relying on all of the 3553(a) factors.  But what exactly

25   would you like me to say?

1        **MR. BOYLAN:**  Sure.  Your Honor, we would ask that

2    you would say that you would have imposed the same sentence

3    pursuant to the 3553(a) factors, regardless of your findings

4    on the guidelines and objections there.

5        **THE COURT:**  So you want me to say that even if I

6    had calculated a higher guidelines range, I would have

7    imposed the same sentence?

8        **MR. BOYLAN:**  Any different guidelines range, yes,

9    Your Honor.

10        **THE COURT:**  Any different guidelines range.  Am I

11    permitted to say that?

12        **MR. BOYLAN:**  Yes, Your Honor.  I think if

13    Your Honor is making a ruling that you are basing your

14    sentence on 3553 factors and would have come to the same

15    conclusion, yes.

16        **THE COURT:**  Ms. Medvin?

17        **MS. MEDVIN:**  I think this Court put significant

18    weight on calculating the guidelines and was considering

19    cases of other defendants within their guidelines sentences,

20    and was specifically seeking similarly guidelines

21    defendants.

22        I think the sentence considered guidelines in

23    addition to other factors, and I think the way that this

24    Court articulated it's reasoning should be sufficient.  I'm

25    not sure what the government is asking the Court to do but

1    it sounds like something other than what the Court is trying

2    to convey, and so I'm trying to prevent that from happening.

3    I would ask for us to rest on what the Court has stated.

4              (Brief pause.)

5              (Discussion off the record.)

6              **THE COURT:**  I am not going to make the statement

7    the government is asking for.  I am not prepared to state on

8    the record that if I had calculated a lower guidelines range

9    that I would have imposed the same sentence or if I had

10   calculated a higher guidelines range that I would have

11   imposed the same sentence.

12             What I am saying is that, based on the guidelines

13   range that I calculated, which is one of the 3553(a)

14   factors, together with all the other factors, I imposed the

15   sentence I am imposing here.  Okay?

16             Anything else, Counsel?

17             **MR. BOYLAN:**  No, Your Honor.

18             **THE COURT:**  Ms. Medvin, would you like me to make

19   a recommendation about location?

20             **MS. MEDVIN:**  Yes, Judge.  One of the facilities in

21   the Northern District of Texas.

22             **THE COURT:**  Happy to do that.

23             **MS. MEDVIN:**  Thank you.

24             **THE COURT:**  Is there a particular one or two that

25   you would like me to mention?

1        **MS. MEDVIN:**  They don't listen to our

2   recommendation.  That's why I'm not just saying a

3   jurisdiction.  Because when I make a specific request, it's

4   like a different state that is selected.  So I'll just ask

5   for a district now.  See if that gets us --

6        **THE COURT:**  A BOP facility in the Northern

7   District of Texas.

8        **MS. MEDVIN:**  In the Northern District of Texas.

9        **THE COURT:**  An appropriate BOP facility in the

10  Northern District of Texas.

11       **MS. MEDVIN:**  Yes, Your Honor.

12       **THE COURT:**  Okay.  Anything else you would like to

13  discuss?

14       **MS. MEDVIN:**  There's nothing further.

15       **THE COURT:**  Thank you, all.

16       (Proceedings concluded at 12:42 p.m.)

17

18

19

20

21

22

23

24

25

1                         **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8        __May 2, 2024__           __/s/   Lorraine T. Herman__
                **DATE**                    **Lorraine T. Herman**
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT'S WIFE:
**[2]** 58/21 61/16
**DEPUTY CLERK: [3]**
2/2 58/12 74/9
**MR. BOYLAN: [44]** 2/8
3/14 3/22 6/11 7/7 7/12
7/18 7/21 7/24 8/5 8/13
8/17 8/21 9/3 9/10 9/15
9/20 9/23 10/2 10/4
10/7 10/13 10/19 11/5
11/8 11/12 11/18 11/23
12/4 12/7 12/20 27/10
27/24 28/5 34/14 48/20
48/24 86/7 86/12 86/17
87/1 87/8 87/12 88/17
**MS. BOYLES: [15]**
2/20 49/2 49/10 49/12
49/25 50/21 50/24 51/3
51/7 51/11 52/9 52/13
54/10 70/21 70/24
**MS. MEDVIN: [56]**
2/13 2/22 4/1 4/3 4/7
6/7 14/1 14/25 15/3
15/7 17/21 18/14 18/21
18/24 19/8 20/5 20/8
20/10 20/23 27/13
27/17 37/13 39/14
40/12 40/19 40/21
40/24 41/2 43/19 49/9
55/13 57/5 57/17 57/21
57/24 58/3 58/10 58/16
61/17 71/2 71/25 72/5
72/10 72/15 72/21
72/24 73/21 74/2 74/5
87/17 88/20 88/23 89/1
89/8 89/11 89/14
**OFFICER STERLING:
[4]** 34/18 34/20 37/9
37/11
**PROBATION: [1]** 86/2
**THE COURT: [131]**
**THE DEFENDANT:
[11]** 6/16 6/20 6/23
61/22 63/2 71/5 71/13
71/16 71/19 71/22 73/3

**$**

**$10 [1]** 86/8
**$150,000 [1]** 26/23
**$2,000 [2]** 47/16 74/19
**$200 [3]** 83/14 83/16
86/9
**$210 [3]** 27/3 86/10

**$500 [1]** 47/7

**'**

**'Cause [3]** 19/24 20/2
66/10

**/**

**/s [1]** 90/8

**0**

**06510 [1]** 1/16

**1**

**10-minute [2]** 58/3
74/6
**107 [1]** 23/9
**109 [1]** 1/19
**10:07 [1]** 1/6
**11 [1]** 15/15
**111 [19]** 8/22 9/11 9/11
9/19 10/3 10/16 11/1
13/12 18/9 21/19 23/4
51/15 52/14 52/17
53/14 53/14 54/16 80/9
80/19
**111s [1]** 50/16
**11:22 a.m [1]** 58/11
**11:35 [1]** 58/6
**11:36 [1]** 58/11
**12 [2]** 14/4 15/15
**12 years [1]** 76/25
**122 [4]** 4/15 11/16 14/2
15/15
**12:09 p.m [1]** 74/8
**12:19 p.m [1]** 74/8
**12:42 p.m [1]** 89/16
**14 [1]** 23/25
**14 days [1]** 85/20
**15 percent [1]** 57/11
**15,000 [1]** 26/23
**1512 [1]** 50/15
**157 [1]** 1/16
**17 [4]** 52/18 52/24 53/3
53/8
**1752 [3]** 38/24 39/4
55/6
**18 [2]** 43/25 85/18
**18 U.S.C. 3553 [1]**
44/2
**1980s [1]** 12/24
**1:21-564 [1]** 1/3
**1:30 [1]** 72/25

**2**

**20 [8]** 17/18 24/3 25/23
26/18 50/10 51/20 52/1
52/6
**20-month [1]** 52/25
**200 [1]** 86/15
**200 pounds [1]** 69/13
**20001 [2]** 1/13 1/23
**2016 [1]** 17/3
**2020 [1]** 16/9
**2023 [1]** 23/15
**2024 [2]** 1/4 90/8
**205 [3]** 65/10 72/1
72/25
**21 [6]** 50/10 53/21
53/25 54/4 54/6 54/7
**21-564 [1]** 2/3
**21-CR-286 [1]** 54/5
**21-CR-330 [1]** 51/25
**21-CR-455 [1]** 51/19
**21-CR-623 [1]** 52/25
**21-CR-66 [1]** 54/8
**21-CR-679 [1]** 51/14
**21-CR-735 [1]** 54/4
**21-MJ-376 [1]** 53/3
**210 [1]** 86/11
**22 [7]** 5/5 6/5 17/11
50/10 51/16 53/21
53/23
**22314 [1]** 1/19
**23 [1]** 1/4
**231 [9]** 8/7 8/24 10/16
11/9 13/13 31/3 51/15
52/14 52/17
**231 offense [1]** 54/16
**24 months [2]** 52/21
75/3
**24-month [1]** 53/5
**25 [1]** 84/14
**25th [2]** 1/16 23/14
**26 [3]** 5/11 5/17 6/5
**27 [1]** 84/14
**27 months [1]** 53/8
**27-month [1]** 81/6
**28 months [1]** 83/10
**286 [1]** 54/5
**29 [8]** 5/18 6/5 14/18
14/20 14/24 15/1 15/7
15/8
**29 months [1]** 45/6
**2A2 [2]** 17/23 19/3
**2A2.2 [11]** 7/10 8/10
8/12 8/23 9/18 17/13
19/17 23/6 23/24 24/9

**2A2.2A2.2 [1]** 7/20
**2A2.3 [1]** 23/11
**2A2.4 [7]** 9/4 9/4 20/2
20/3 23/11 24/22 80/10
**2X [1]** 8/24

**3**

**30 [1]** 52/3
**30 years [1]** 61/3
**30-plus [1]** 59/3
**31 months [1]** 75/2
**32 [1]** 6/25
**33 [3]** 14/17 26/13
26/21
**33 months [2]** 52/5
52/15
**330 [1]** 51/25
**333 [1]** 1/22
**3535 [1]** 56/11
**3553 [12]** 28/8 43/25
44/2 58/8 74/12 82/24
85/10 86/19 86/24 87/3
87/14 88/13
**36 [1]** 16/9
**36 months [3]** 51/18
53/24 54/1
**37 months [4]** 52/3
54/5 54/6 57/1
**3742 [1]** 85/18
**376 [1]** 53/3
**38 months [2]** 54/7
81/1
**38-month [1]** 80/21
**3:30 [1]** 72/25
**3A1.2 [1]** 24/1
**3D1.2 [2]** 20/14 25/6
**3D1.4 [1]** 25/24
**3E1.1 [1]** 26/1

**4**

**41 months [4]** 26/22
28/10 34/10 74/17
**455 [1]** 51/19
**46 months [3]** 33/24
51/21 79/12

**5**

**51 [1]** 41/25
**5104 [1]** 13/13
**52 [3]** 41/24 41/25
73/11
**564 [2]** 1/3 2/3

**6**

**60 months [1]** 51/23
**601 [1]** 1/13
**623 [1]** 52/25
**66 [1]** 54/8
**679 [1]** 51/14
**6th [44]** 15/22 28/15
28/17 28/22 29/23
30/25 32/4 32/13 32/25
33/1 33/1 34/1 34/5
34/24 36/22 37/7 38/11
39/11 39/23 40/1 40/13
41/3 42/9 42/22 44/9
44/10 45/1 45/3 45/14
45/15 45/17 45/22
45/23 47/19 48/2 53/12
55/5 75/10 75/18 75/23
78/4 78/10 79/5 80/7

**7**

**72 hours [2]** 84/17
85/7
**735 [1]** 54/4

**8**

**80 [1]** 16/9

**9**

**900 [1]** 50/1
**916 [1]** 1/19

**A**

**a.m [3]** 1/6 58/11 58/11
**abide [1]** 83/18
**able [4]** 16/4 49/2 56/6
70/10
**about [69]** 5/11 5/18
6/18 8/3 13/19 17/9
17/11 17/15 19/22
19/23 27/21 29/6 29/9
30/21 32/20 34/1 37/17
38/18 38/19 39/1 39/6
39/12 39/23 39/24 40/8
40/10 40/13 40/15 41/8
42/3 42/23 44/1 44/2
46/2 47/14 49/13 50/1
54/22 55/24 56/24 59/1
59/7 59/13 60/7 61/19
62/1 62/12 63/16 63/22
64/8 64/10 67/15 68/13
69/6 69/20 71/7 71/15
71/16 72/25 77/23 78/5
78/7 79/3 80/1 81/17
81/22 82/7 82/19 88/19

**above [3]** 51/17 62/24
90/5
**above-entitled [1]**
90/5
**abreast [1]** 29/10
**absolutely [4]** 11/11
37/18 45/11 60/3
**accept [3]** 6/25 32/9
34/8
**acceptance [13]** 17/12
26/1 26/3 26/7 26/17
50/24 51/5 52/18 53/4
53/20 54/14 56/20 82/7
**accepted [1]** 70/3
**accepting [3]** 79/8
79/9 81/14
**access [2]** 62/23 84/3
**accomplice [1]** 66/5
**accomplished [2]**
47/22 47/24
**according [2]** 22/1
**accosted [1]** 36/2
**account [4]** 3/10 4/24
5/10 22/2
**accountability [3]**
32/24 36/7 37/3
**accountable [1]** 36/10
**accuses [1]** 31/12
**achieve [1]** 85/11
**acquit [1]** 15/17
**acquitted [4]** 23/9
38/22 38/23 39/2
**across [1]** 29/8
**act [2]** 22/5 81/7
**acted [1]** 42/15
**acting [1]** 23/23
**action [4]** 1/2 22/3
33/14 61/8
**actions [26]** 5/21
28/14 28/22 28/23 29/1
29/12 29/13 32/9 36/10
37/1 37/21 38/6 39/21
40/5 40/5 40/8 41/3
41/4 47/15 66/22 70/6
70/14 76/20 78/3 78/6
81/21
**activity [1]** 85/2
**acts [3]** 31/3 32/8
33/22
**actual [1]** 44/12
**actually [10]** 15/7 38/8
38/21 40/8 46/20 54/23
57/11 57/12 64/13
80/23

**add [3]** 37/9 87/21
72/24
**added [1]** 38/11
**adding [1]** 86/13
**addition [3]** 18/25
36/15 87/23
**additional [6]** 6/7 21/2
46/18 48/13 48/14
84/10
**address [2]** 12/13
43/13
**addressed [1]** 13/4
**adjustment [1]** 23/25
**administer [1]** 85/14
**adopt [5]** 5/7 5/15 5/19
7/2 79/24
**adopted [2]** 13/2 16/10
**adopting [1]** 13/1
**advance [1]** 37/17
**adversity [1]** 36/14
**advisory [1]** 23/2
**afford [1]** 85/22
**afraid [1]** 63/25
**after [47]** 4/17 14/11
14/14 15/10 17/7 30/12
46/23 59/5 60/18 68/16
69/18 70/18 76/14
85/20
**afternoon [1]** 34/16
**afterwards [1]** 31/8
**again [38]** 31/18 39/25
41/3 41/5 42/21 46/8
47/1 47/4 52/9 52/17
53/3 53/21 54/11 57/13
66/18 70/13 77/18
82/17
**against [13]** 8/8 22/4
22/14 26/9 29/1 29/20
31/3 35/15 36/6 36/9
63/9 64/20 75/16
**agencies [1]** 85/17
**aggravated [10]** 8/11
9/5 9/5 17/13 19/4
19/16 20/1 24/8 24/16
25/9
**aggravating [1]** 51/22
**aggregate [1]** 20/13
**ago [1]** 32/23
**agree [11]** 18/4 18/11
21/10 23/11 26/5 39/13
56/8 57/23 80/12 82/10
86/14
**agreed [2]** 27/6 82/15
**ahead [2]** 11/19 47/22

**aid [2]** 54/23 42/4
**aided [2]** 1/25 77/19
**air [1]** 5/8
**akin [1]** 33/10
**Alexandria [1]** 1/19
**all [53]** 3/11 5/4 6/12
9/13 10/21 10/24 12/23
13/5 15/11 29/8 29/22
35/13 36/8 39/10 40/14
43/3 44/25 45/22 45/24
45/24 45/25 47/23
47/23 49/7 50/7 50/11
52/10 55/7 55/24 56/22
57/15 57/15 57/17
58/23 60/4 60/4 60/18
61/9 64/24 65/7 68/3
69/2 69/24 69/25 79/16
81/15 81/16 82/8 85/16
86/8 86/24 88/14 89/15
**allocution [2]** 28/1
28/4
**allow [1]** 84/21
**allowed [2]** 14/7 78/17
**allows [1]** 78/16
**almost [2]** 35/10 75/20
**alone [1]** 59/12
**along [2]** 35/7 67/18
**aloud [2]** 62/18 64/17
**already [6]** 15/4 24/20
46/3 46/4 55/8 86/23
**also [32]** 4/14 5/18
11/9 13/2 15/24 18/25
19/2 23/15 25/18 27/2
33/23 35/11 36/15
36/19 38/23 43/13 44/9
45/2 50/25 51/5 52/16
53/10 53/25 56/3 56/20
56/23 62/23 67/16 71/5
80/1 81/17 86/18
**also -- there's [1]** 56/3
**alternative [1]** 73/22
**Although [1]** 5/8
**aluminum [1]** 5/23
**always [3]** 69/4 70/15
78/19
**am [25]** 2/9 4/5 4/9
6/23 12/13 12/16 34/21
62/7 63/22 64/9 65/24
67/19 71/3 74/13 75/6
82/21 83/15 83/25 84/8
84/11 87/10 88/6 88/7
88/12 88/15
**Amendment [3]** 14/15
14/22 15/13

## A

**AMERICA [2]** 1/2 2/3
**American [2]** 32/14 34/3
**among [5]** 18/6 28/15 51/11 54/13 78/1
**amount [5]** 20/12 20/17 69/14 75/3 82/10
**analog [1]** 8/12
**analogize [2]** 9/2 9/3
**analogous [1]** 19/15
**analysis [7]** 4/14 17/2 18/13 19/14 74/12 79/21 80/6
**angels [1]** 69/24
**angered [1]** 64/12
**angle [1]** 69/3
**angry [2]** 35/24 65/15
**annoy [1]** 64/14
**annoyed [1]** 64/13
**anomalous [1]** 7/14
**another [22]** 7/11 7/23 8/1 8/5 8/16 9/6 10/1 14/18 19/12 19/18 19/20 20/2 23/7 23/10 23/17 24/10 24/17 38/14 41/12 53/7 63/13 83/21
**answer [4]** 12/20 20/15 27/25 41/9
**answered [1]** 5/25
**answers [1]** 12/15
**Antifa [2]** 68/3 70/1
**any [37]** 3/12 3/19 5/15 5/19 6/9 11/6 15/12 15/17 16/5 16/23 16/24 17/22 24/25 25/13 27/7 27/9 32/25 33/2 36/9 39/8 39/17 39/19 45/16 48/11 56/4 59/7 66/11 67/4 68/11 82/16 83/23 84/4 84/22 84/23 85/25 87/8 87/10
**anyone [4]** 3/8 61/3 68/21 70/1
**anyone's [1]** 32/11
**anything [12]** 3/8 3/25 16/5 47/1 61/19 66/4 74/3 77/16 78/11 83/5 88/16 89/12
**anywhere [2]** 15/23 66/12
**apart [2]** 60/4 61/8
**apologize [5]** 51/13

apology [1] 81/24
**apparently [1]** 38/13
**appeal [4]** 85/19 85/20 85/23 85/24
**Appeals [1]** 22/15
**APPEARANCES [1]** 1/11
**appears [5]** 16/16 16/18 76/24 80/18 81/1
**appellate [1]** 86/21
**appendix [1]** 8/25
**applicable [4]** 20/24 26/22 27/2 73/24
**application [1]** 56/11
**applies [5]** 14/24 15/1 16/25 17/23 24/5
**apply [7]** 17/13 19/3 22/23 23/11 25/22 56/8 75/7
**applying [1]** 22/1
**appreciate [1]** 37/2
**appreciated [2]** 26/13 37/8
**appreciation [1]** 30/19
**approach [1]** 72/15
**approached [1]** 67/3
**approaching [1]** 83/5
**appropriate [13]** 3/17 4/21 25/21 26/18 27/22 34/12 45/12 45/19 48/5 83/7 85/15 85/17 89/9
**approval [1]** 84/11
**April [1]** 1/4
**apt [1]** 30/8
**are [92]**
**area [2]** 13/18 76/3
**areas [1]** 38/13
**aren't [5]** 16/2 41/19 50/14 55/19 79/17
**argue [4]** 25/8 26/2 26/4 56/6
**argued [1]** 47/18
**argues [2]** 23/9 74/21
**arguing [5]** 39/3 39/4 54/19 67/19 67/20
**argument [10]** 15/6 15/22 19/19 21/11 21/13 21/15 21/18 24/21 24/24 37/19
**arguments [4]** 15/11 26/9 30/22 73/22
**arm [2]** 35/19 35/19
**armor [2]** 10/24 70/10

arms [1] 37/23
**around [8]** 4/13 14/13 33/15 62/19 66/5 66/7 73/15 78/8
**arrest [1]** 73/4
**arrested [2]** 46/6 85/6
**arrived [2]** 31/2 34/24
**articulated [3]** 24/14 83/2 87/24
**as [109]**
**ascended [2]** 64/21 65/23
**ask [17]** 3/18 13/20 17/14 19/14 20/6 54/10 61/1 61/5 62/3 70/8 73/18 73/18 73/24 86/18 87/1 88/3 89/4
**asked [8]** 5/24 40/10 48/22 49/4 49/23 51/4 57/3 59/10
**asking [8]** 19/22 19/22 19/23 27/24 48/5 55/17 87/25 88/7
**assault [40]** 7/11 7/22 8/7 8/8 8/11 8/15 8/15 8/22 9/5 9/5 9/19 10/1 10/11 17/13 17/17 17/24 18/8 18/9 18/9 18/11 19/12 19/5 19/16 19/17 20/1 20/1 20/3 23/7 23/10 23/16 23/21 24/9 24/9 24/16 24/17 25/9 25/10 25/15 31/24 79/12
**assault -- a [1]** 18/9
**assaulted [2]** 19/1 31/6
**assaulting [5]** 11/2 11/6 18/7 45/4 45/5
**assaults [3]** 35/3 36/9 55/21
**assessment [7]** 27/2 41/7 83/13 83/16 86/8 86/14 86/16
**assume [1]** 9/13
**assuming [2]** 11/16 12/1
**assumption [1]** 11/18
**attached [1]** 3/6
**attack [6]** 31/25 34/3 34/4 36/25 68/23 69/13
**attacked [1]** 30/12
**attacking [1]** 65/18
**attacks [1]** 35/8

attempt [1] 82/5
**attempted [2]** 47/7 76/12
**attempting [1]** 82/8
**attempts [1]** 76/8
**attended [2]** 46/12 77/4
**attention [5]** 3/16 44/13 45/25 47/25 64/13
**attest [1]** 68/12
**attire [1]** 71/8
**attitudes [1]** 69/22
**Attorney's [2]** 49/23 79/20
**aunt [1]** 60/9
**authority [1]** 35/25
**authorize [1]** 84/4
**authorized [3]** 82/12 84/16 84/18
**Avenue [1]** 1/22
**average [1]** 56/9
**avoid [1]** 79/1
**award [2]** 47/16 64/11
**aware [3]** 3/13 3/25 15/23
**away [11]** 29/24 35/12 37/21 41/10 41/14 41/20 64/3 64/12 64/17 66/8 69/15

## B

**babble [1]** 62/17
**babbling [1]** 64/16
**back [18]** 19/6 25/14 35/22 42/3 42/6 50/2 52/8 58/6 58/12 64/18 65/21 65/23 68/20 69/1 69/10 73/17 74/7 74/9
**background [1]** 2/23
**backwards [3]** 35/15 41/17 41/18
**badly [1]** 60/15
**Baker [2]** 2/5 85/25
**balance [1]** 69/4
**balancing [1]** 35/14
**balustrade [1]** 66/2
**Bankruptcy [1]** 1/22
**Barnhart [1]** 53/23
**barricading [1]** 76/10
**bars [1]** 12/2
**base [2]** 23/24 49/19
**baseball [2]** 41/13 41/14

**B**

**based [8]**  11/9 23/19 44/23 51/13 52/6 74/25 86/19 88/12
**basic [2]**  83/20 85/12
**basically [1]**  9/25
**basing [1]**  87/13
**basis [6]**  20/12 20/17 22/17 31/3 82/13 82/16
**bat [3]**  5/23 41/13 41/14
**batons [1]**  67/1
**bats [1]**  66/25
**battery [1]**  73/14
**be [87]**  3/13 3/23 3/25 4/21 7/15 8/6 8/19 10/5 10/14 12/10 13/12 14/11 14/12 16/1 16/18 17/16 17/18 17/18 19/16 19/17 20/1 20/1 20/3 21/1 21/20 22/17 24/24 25/2 25/8 33/14 34/12 36/23 36/24 39/20 40/19 40/21 43/20 43/23 45/22 45/23 45/25 46/8 48/15 48/18 49/16 49/23 50/3 50/8 50/9 52/24 54/20 55/13 55/15 55/22 56/6 57/13 58/1 59/15 59/17 59/19 62/5 63/4 63/13 63/16 64/18 65/8 65/17 66/11 66/23 67/12 68/1 68/17 70/15 72/10 73/15 73/24 76/5 77/19 78/23 80/16 80/18 80/21 82/11 82/24 85/21 86/10 87/24
**because [52]**  5/20 9/18 10/3 12/14 14/6 16/1 17/17 19/3 19/9 21/5 22/23 23/6 24/1 24/9 24/16 24/23 25/9 44/1 44/7 44/19 46/10 46/21 50/12 51/23 52/2 52/18 53/4 53/17 55/25 56/25 57/14 59/11 60/17 62/15 63/3 63/22 64/13 65/17 66/12 67/11 67/25 68/2 68/16 70/14 73/7 73/14 77/18 81/13 82/14 82/22 86/13 89/3
**become [3]**  62/8 63/6

**becomes [1]**  67/2
**Beddingfield [2]**  54/6 80/20
**been [30]**  6/13 6/18 10/15 14/4 21/15 31/1 35/23 46/3 46/11 47/19 47/21 47/24 48/17 49/2 54/16 59/17 59/21 61/24 66/19 68/22 70/5 70/9 70/10 70/11 71/11 71/14 73/9 76/6 82/14 85/3
**before [26]**  1/9 3/8 14/4 14/13 17/11 22/21 33/3 38/1 39/3 40/1 41/7 46/5 46/6 46/6 46/23 49/14 52/10 59/7 59/19 65/14 67/12 68/14 74/12 75/18 77/1 80/1
**begin [3]**  3/8 4/9 23/4
**beginning [4]**  2/7 64/19 69/9 69/25
**behalf [3]**  2/9 2/14 56/6
**behavioral [2]**  46/22 46/25
**behind [2]**  29/10 66/6
**being [18]**  12/9 12/9 14/12 18/1 35/17 36/1 36/16 37/4 42/9 42/12 43/22 46/17 61/15 68/23 70/6 77/1 78/8 78/18
**belabor [1]**  12/7
**beliefs [1]**  30/21
**believe [13]**  4/20 8/15 15/23 27/22 33/23 44/19 47/21 70/14 77/14 81/19 83/5 85/20 86/9
**believes [2]**  38/20 55/4
**below [3]**  66/5 69/4 82/22
**bench [2]**  51/11 51/14
**beneath [1]**  68/24
**benefit [1]**  51/5
**best [3]**  9/1 9/3 77/25
**better [2]**  10/13 30/23
**between [3]**  27/15 33/11 66/16
**beyond [1]**  22/13
**bias [2]**  31/13 79/24

**bigger [1]**  34/1
**binding [1]**  22/24
**bit [5]**  4/14 38/11 43/25 62/12 66/1
**blames [5]**  32/5 32/5 32/6 32/6 32/7
**blessed [1]**  43/11
**Blockburger [5]**  13/10 13/10 13/15 22/1 22/18
**blunt [1]**  66/25
**board [1]**  70/3
**bodies [1]**  35/9
**body [4]**  5/12 5/12 29/19 68/21
**boggled [1]**  60/17
**book [1]**  52/8
**bookend [1]**  64/16
**BOP [2]**  89/6 89/9
**both [13]**  2/18 3/3 3/11 10/10 10/12 17/12 36/21 37/7 40/3 60/19 65/12 70/24 77/11
**bottlenecks [1]**  67/6
**bottom [5]**  28/3 28/5 54/17 54/18 60/23
**boxer [1]**  68/24
**boy [1]**  65/8
**Boylan [4]**  1/12 2/9 7/8 27/23
**Boyles [4]**  1/15 2/10 48/24 49/11
**breach [1]**  76/12
**break [2]**  67/21 68/2
**breaking [1]**  70/1
**brief [7]**  3/6 21/8 21/12 40/6 41/25 72/9 88/4
**briefly [4]**  6/20 32/20 48/20 49/6
**briefs [4]**  3/3 3/4 3/4 6/18
**bright [1]**  67/19
**bring [3]**  3/15 45/18 72/5
**bringing [1]**  81/2
**broke [1]**  60/3
**broken [2]**  67/24 68/5
**brought [7]**  36/24 44/13 45/2 45/25 46/5 46/7 47/25
**building [3]**  22/6 29/11 68/10
**bulbs [1]**  73/12
**Bureau [1]**  83/8

**burned [1]**  73/13

**C**

**C.A.A.F [1]**  16/9
**calculate [2]**  23/2 45/11
**calculated [7]**  44/19 74/18 80/16 87/6 88/8 88/10 88/13
**calculating [1]**  87/18
**calculation [2]**  8/4 75/1
**calculations [1]**  51/8
**calculus [1]**  82/6
**calibrated [1]**  77/11
**call [9]**  20/20 31/23 31/24 31/24 45/10 58/6 72/3 73/12 78/11
**called [2]**  38/10 59/9
**calls [6]**  26/14 31/21 32/2 32/6 38/13 55/1
**came [6]**  21/13 28/24 52/1 52/15 53/19 59/4
**cameras [1]**  65/8
**can [26]**  8/19 9/1 12/2 19/3 20/22 27/25 31/11 40/19 40/21 42/17 48/15 48/24 52/16 54/2 55/22 55/24 64/3 66/12 67/15 71/20 72/7 72/12 72/13 73/13 76/5 78/18
**can't [6]**  17/16 45/15 56/7 62/19 65/6 77/17
**canceled [1]**  53/19
**cancer [1]**  60/10
**cannot [3]**  22/2 22/17 36/22
**Capitol [12]**  13/14 22/6 22/14 28/24 29/11 32/13 33/6 47/10 47/10 75/11 75/14 77/15
**Capitol's [1]**  31/2
**captured [2]**  25/10 35/16
**car [1]**  59/11
**care [9]**  43/8 60/8 60/8 60/9 60/11 77/2 79/3 80/1 81/17
**career [2]**  45/5 73/5
**careful [2]**  63/16 63/22
**carefully [1]**  20/15
**CARL [1]**  1/9
**carrying [1]**  70/13
**case [65]**  2/3 2/25 4/21

**C**

case... **[62]** 6/19 12/21 12/23 12/23 15/2 15/3 15/21 16/6 16/7 16/9 16/19 16/20 17/6 22/8 23/19 26/16 27/3 28/11 28/13 29/13 30/3 31/16 32/7 32/10 32/25 33/20 33/22 33/24 38/8 39/12 39/19 41/11 41/20 44/22 45/3 45/6 45/12 46/3 47/6 47/11 47/22 48/6 50/12 51/14 51/23 51/25 52/1 52/13 52/16 52/24 53/7 53/12 54/2 54/21 56/9 57/1 61/18 61/24 63/4 75/21 77/9 81/16

case -- I'll **[1]** 47/6

cases **[48]** 12/16 15/16 15/22 16/8 16/12 16/14 16/21 16/25 17/1 32/21 33/19 44/14 44/24 45/2 45/2 45/13 45/14 45/22 45/24 45/25 47/9 47/25 48/3 48/22 50/1 50/6 50/8 50/10 50/14 51/12 52/22 53/10 53/12 53/13 54/8 54/11 54/13 55/15 55/16 55/19 56/3 56/4 57/18 57/19 62/16 80/17 82/13 87/19

cast **[1]** 12/24

casual **[1]** 65/14

category **[3]** 26/21 49/18 52/2

Category I **[1]** 26/21

caught **[1]** 30/24

cause **[2]** 26/10 63/17

caused **[3]** 5/18 60/2 60/24

caveats **[1]** 52/10

center **[1]** 69/3

centered **[1]** 46/23

ceremony **[1]** 64/12

certain **[3]** 22/4 22/14 39/16

certainly **[7]** 11/24 26/13 26/15 47/16 77/22 78/18 80/12

certify **[2]** 75/12 90/4

chain **[1]** 63/16

chance **[1]** 6/15

change **[2]** 69/22

changes **[1]** 10/8

chaos **[1]** 32/5

chaotic **[1]** 29/8

character **[2]** 42/22 43/20

characteristics **[2]** 76/23 77/5

charge **[1]** 44/20

charged **[2]** 44/4 79/14

charges **[13]** 13/8 15/18 44/7 44/10 44/11 46/5 46/6 50/22 57/14 79/18 79/19 80/19 84/10

charging **[2]** 79/20 79/22

chart **[1]** 49/15

chemicals **[1]** 35/3

child **[2]** 42/4 43/12

childhood **[1]** 43/15

chink **[1]** 10/23

choices **[3]** 30/24 30/25 43/10

choose **[1]** 85/19

chose **[1]** 29/4

Christensen **[1]** 51/19

Christine **[2]** 43/9 58/17

church **[2]** 1/16 59/16

cigarette **[1]** 63/23

Circuit **[11]** 12/24 12/25 13/2 13/3 15/16 17/5 22/9 22/19 22/20 22/20 22/22

circuits **[1]** 12/25

circularity **[2]** 24/18 24/19

circumstance **[1]** 7/1

circumstances **[8]** 5/9 6/3 6/10 25/1 30/7 51/22 77/14 78/24

cited **[4]** 14/17 15/14 16/7 16/12

cites **[2]** 12/22 38/7

civil **[32]** 7/9 7/15 7/19 8/2 8/6 8/11 8/19 8/21 9/17 9/18 10/10 10/20 13/13 17/13 17/23 17/24 18/6 18/9 18/23 19/7 19/8 19/9 19/10 19/20 19/24 21/22 23/7 23/23 24/16 25/8 25/17 25/18

claim **[1]** 14/23

claimed **[1]** 14/5

claiming **[1]** 14/9

clause **[1]** 21/14

clean **[2]** 41/24 63/11

cleanly **[1]** 65/1

cleanup **[2]** 47/11 47/14

clear **[11]** 11/2 13/8 23/18 49/16 51/21 54/14 55/3 63/2 76/3 82/17 86/23

clearances **[1]** 63/1

clearly **[1]** 45/21

Clerk **[1]** 83/17

client **[5]** 39/6 40/23 40/24 56/7 71/25

client's **[1]** 58/16

close **[1]** 76/24

co **[3]** 2/10 49/13 55/8

co-counsel **[3]** 2/10 49/13 55/8

code **[5]** 44/4 55/17 57/6 62/24 85/18

cognitive **[1]** 46/22

colleagues **[3]** 56/24 80/2 80/6

collect **[1]** 67/19

collecting **[1]** 69/17

collection **[1]** 83/24

COLUMBIA **[1]** 1/1

Columbus **[1]** 42/19

come **[16]** 2/6 34/22 45/8 50/1 58/6 58/18 58/19 63/12 67/5 68/7 68/7 73/17 74/7 75/14 79/25 87/14

comes **[2]** 12/17 78/20

comfortable **[2]** 13/19 63/21

coming **[4]** 41/12 50/13 50/15 50/16

command **[1]** 63/16

commendations **[1]** 77/2

commensurate **[1]** 45/13

commercial **[2]** 67/17 67/17

commit **[23]** 7/11 7/23 8/1 8/5 8/8 8/16 9/6 9/19 10/1 19/12 19/18 19/20 19/20 20/2 23/7

civilians **[1]** 33/7

23/10 23/17 24/10 24/17 38/21 38/24 83/8 83/21

commitment **[1]** 36/20

committed **[8]** 8/7 9/5 18/6 18/8 23/6 23/16 23/21 24/17

committing **[2]** 9/10 9/11

common **[1]** 25/6

communicate **[2]** 85/1 85/4

communicating **[1]** 66/3

community **[2]** 42/20 61/6

comparator **[3]** 32/21 33/19 79/10

comparators **[3]** 50/25 79/15 81/15

compare **[1]** 45/15

compared **[1]** 63/19

comparing **[2]** 21/24 44/23

Comparison **[1]** 32/25

competitive **[1]** 67/16

complaints **[1]** 26/8

complete **[1]** 10/17

complex **[1]** 21/5

complicated **[1]** 20/25

comply **[2]** 84/2 84/13

comports **[2]** 5/13 17/7

comprehensive **[1]** 54/12

comprised **[1]** 25/11

computer **[1]** 1/25

computer-aided **[1]** 1/25

concentrating **[1]** 57/14

concern **[1]** 22/22

concerns **[1]** 22/13

conclude **[2]** 23/16 23/17

concluded **[3]** 18/5 82/13 89/16

conclusion **[2]** 33/25 87/15

conclusions **[1]** 16/17

concurrent **[2]** 83/9 83/11

condition **[1]** 84/12

conditions **[7]** 29/7

**C**

conditions... [6] 83/19 84/3 84/13 84/24 85/8 85/12
conduct [48] 18/17 21/19 21/20 25/12 25/16 25/19 26/12 32/18 44/1 44/5 44/6 44/7 44/8 44/12 44/14 44/21 44/23 44/24 47/12 48/3 51/1 52/23 53/17 55/6 55/17 55/18 55/19 55/20 56/1 56/5 56/10 56/18 57/8 57/9 57/13 76/1 76/2 76/15 77/12 79/6 80/3 80/5 80/13 80/18 81/5 81/9 81/22 83/20
confess [1] 50/6
confession [1] 59/9
confidential [1] 43/16
confined [1] 61/6
confrontational [1] 62/5
confuse [1] 51/13
confused [3] 65/3 68/2 68/13
congested [1] 67/4
congratulate [1] 70/20
congratulated [1] 70/19
Congress [4] 22/12 33/4 75/12 80/23
connected [1] 25/6
conniption [1] 71/6
conscientious [3] 59/2 60/7 61/2
conscious [1] 30/14
consequences [1] 36/25
conservative [1] 43/2
consider [7] 23/3 44/3 54/11 56/13 66/22 75/7 79/1
consideration [1] 57/2
considerations [1] 43/6
considered [5] 12/10 20/19 45/22 46/1 87/22
considering [3] 4/9 49/22 87/18
consistent [1] 72/23
Constitution [1] 1/22
consult [1] 61/18

contact [2] 23/14 62/24
contained [1] 6/3
contend [2] 23/5 24/8
contention [1] 54/25
context [11] 19/24 29/12 29/13 29/22 31/9 33/15 33/21 34/1 38/11 39/3 62/12
contextualize [3] 42/16 45/1 55/22
contextualizing [1] 57/9
continually [1] 32/1
continued [5] 22/23 26/10 31/6 31/10 32/24
continuous [1] 31/15
continuously [1] 38/6
contra [3] 11/1 29/15 31/18
contributed [1] 33/8
contributor [1] 30/9
contributory [1] 30/10
control [3] 46/25 47/2 58/22
controlled [2] 83/22 83/23
conversation [2] 63/15 71/7
conversations [1] 40/9
convey [1] 88/2
conveying [3] 39/14 39/15 39/16
convicted [7] 11/2 11/5 38/20 51/14 54/16 80/9 85/3
convicting [1] 32/8
conviction [2] 51/4 70/19
convictions [1] 50/15
cook [1] 73/7
cooperate [1] 83/24
Copeland [1] 53/25
corner [4] 32/2 33/11 33/12 55/2
correct [10] 7/12 8/13 9/20 9/23 11/7 16/6 50/21 70/20 79/22 90/4
cost [2] 85/22 85/24
could [16] 5/22 11/23 14/3 19/10 19/16 19/17 48/13 60/14 66/10 67/12 68/10 69/14 70/11 72/22 73/16

couldn't [2] 49/14 59/12
counsel [12] 2/6 2/10 17/14 24/12 25/14 39/18 49/13 55/8 55/10 70/17 86/6 88/16
counseling [3] 60/16 60/16 77/4
count [41] 7/10 8/9 8/23 8/24 9/11 9/21 10/3 15/8 17/13 17/17 19/25 21/19 21/20 21/21 21/22 21/23 22/1 22/3 22/3 22/5 22/5 23/4 23/4 24/3 24/4 24/8 24/11 24/25 25/1 25/8 25/10 25/12 25/15 25/17 25/22 26/24 26/24 26/25 52/14 83/11 86/9
Count 1 [9] 21/20 21/21 24/4 24/8 24/11 24/25 25/8 87/14 87/25
Count 2 [11] 8/9 9/11 21/19 21/22 22/3 22/5 23/4 24/3 25/1 25/12 26/24
Count 7 [7] 21/23 22/3 22/5 25/22 26/25 83/11 86/9
counting [1] 78/13
country [6] 41/23 43/22 63/13 63/13 63/14 64/5
counts [16] 2/17 2/18 9/14 18/12 20/7 21/24 24/23 25/2 25/3 25/21 25/23 27/1 38/25 39/4 83/10 83/12
Counts 1 [7] 9/14 24/23 25/21 25/23 27/1 83/10 83/12
Counts 2 [1] 21/24
couple [6] 4/13 12/12 50/6 50/8 52/22 86/7
course [10] 3/10 5/8 22/10 23/1 45/1 46/24 61/20 74/16 76/20 81/16
court [63] 1/1 1/21 3/17 12/10 13/4 13/6 13/21 14/6 14/15 15/3 15/16 15/16 15/20 16/8

16/11 16/12 16/14 16/23 16/25 31/13 32/7 37/15 38/4 38/22 39/2 39/3 40/1 40/7 40/25 41/4 41/5 42/17 42/17 45/18 46/22 48/11 48/13 48/21 49/16 51/17 51/17 51/20 51/25 52/4 52/15 52/19 53/11 54/3 54/10 55/16 71/20 72/6 72/11 73/23 83/17 84/19 85/23 87/17 87/24 87/25 88/1 88/3 90/3
Court's [7] 3/15 12/20 14/14 27/13 44/13 45/25 47/25
courteous [2] 70/24 71/2
courthouse [1] 49/14
courtroom [1] 31/14
courts [5] 1/22 16/3 21/4 22/15 54/15
COVID [1] 60/19
CR [7] 51/14 51/19 51/25 52/25 54/4 54/5 54/8
crawls [1] 66/15
CRC [1] 1/21
create [4] 21/2 56/14 82/23 83/3
created [4] 10/23 10/24 35/9 60/3
creates [1] 44/20
credit [8] 48/10 48/13 82/4 82/8 82/17 82/20 84/10 84/11
credited [1] 48/15
crime [5] 38/19 38/23 38/24 67/14 83/21
crimes [6] 10/8 11/13 22/13 22/14 33/15 45/17
criminal [13] 1/2 1/15 2/3 26/19 26/20 39/19 45/13 45/24 49/18 52/2 81/10 82/12 85/2
crippling [1] 5/25
crowd [14] 32/5 35/11 35/16 35/17 37/24 42/10 42/12 65/15 66/3 69/16 75/22 76/11 76/11 77/20
crucial [1] 36/23

**C**

crux [1] 37/19
CT [1] 1/16
culpable [2] 79/6 79/7
currently [2] 16/3 56/7
custody [1] 83/8

**D**

D.C [2] 48/2 59/15
D.C. [2] 13/3 15/16
D.C. Circuit [2] 13/3
15/16
danger [1] 76/18
dangerous [4] 53/15
53/18 65/12 79/13
Daniel [1] 81/6
DaSILVA [61] 1/5 2/4
2/14 2/17 4/23 5/18
6/13 21/24 22/2 22/8
23/6 23/9 23/16 23/21
26/4 26/6 26/19 27/16
37/16 37/16 37/18
37/21 38/2 38/9 38/15
38/22 41/8 41/18 41/22
42/7 42/18 43/9 43/13
47/7 47/10 49/7 58/2
58/17 58/20 61/17
61/21 72/20 72/23
73/20 74/21 75/10 76/5
76/23 77/11 77/15
77/18 79/13 79/15 80/7
81/1 81/9 81/11 81/12
81/18 81/21 83/8
DaSilva's [30] 4/4 4/23
5/21 21/11 25/16 25/19
41/16 42/24 44/8 44/23
45/8 45/18 46/3 47/12
47/15 48/4 49/7 76/1
76/20 77/5 77/13 79/22
80/11 80/14 80/17 81/5
81/9 81/19 82/4 82/18
data [5] 49/21 50/2
51/21 69/17 70/3
date [2] 11/21 90/8
dates [1] 45/16
day [18] 30/6 33/5 34/6
35/2 35/23 36/6 39/23
42/9 42/14 42/16 49/5
66/23 66/24 69/19 70/8
70/15 71/6 80/3
days [1] 85/20
DC [5] 1/4 1/12 1/13
1/13 1/23
deadly [3] 53/15 53/18

dealing [2] 46/24 78/9
deals [1] 26/9
debris [1] 35/14
decide [2] 4/18 12/23
decided [1] 17/7
decides [1] 4/6
decision [8] 16/24
17/3 17/4 17/5 17/8
22/9 26/7 70/4
decision's [1] 22/10
decision-making [2]
17/5 70/4
decisions [4] 3/12
16/11 79/20 79/23
decline [1] 5/6
dedicated [4] 41/22
43/21 43/21 43/22
defend [1] 64/9
defendant [40] 1/6
1/18 2/16 3/5 9/12
10/20 10/23 18/5 18/6
28/17 28/24 29/13
29/16 29/17 30/9 30/16
30/21 31/12 31/25
32/10 33/5 33/16 33/23
33/24 34/2 34/6 47/5
52/14 52/17 52/20
52/23 52/25 53/8 53/13
55/4 56/11 76/23 78/6
79/12 83/2
defendant -- if [1] 18/5
defendant's [9] 3/6 3/7
5/12 28/14 28/21 29/12
31/18 32/17 55/3
defendants [19] 30/10
34/2 38/12 38/15 39/15
40/2 40/13 44/5 44/10
54/15 56/17 62/15 79/5
79/25 80/8 80/19 81/24
87/19 87/21
defendants' [2] 56/18
56/20
defense [8] 12/22
29/15 31/19 32/22
39/17 45/21 73/22 74/3
definitely [2] 6/1 62/4
Dei [1] 59/10
deliberate [1] 30/24
democracy [1] 78/16
democratic [1] 34/4
demonstrated [1] 44/8
denied [1] 32/22
Dennis [2] 51/12 51/14

deny [2] 22/23 23/1
Department [1] 34/21
departure [4] 45/10
54/17 74/21 83/1
depend [2] 18/14
20/22
deployed [1] 47/13
deploying [1] 76/3
deprivation [1] 85/10
described [1] 72/20
description [1] 30/8
desk [2] 29/25 67/1
desperately [1] 60/25
Despite [2] 36/1 36/11
detector [1] 73/13
detention [1] 73/25
deter [2] 77/11 78/23
determination [2] 4/19
20/24
determined [2] 20/12
20/16
deterred [3] 46/8
46/18 47/20
deterrence [6] 46/2
46/17 46/19 47/18 78/7
78/24
deterring [1] 78/5
develop [1] 49/24
developed [1] 15/20
dialogue [1] 65/11
dictates [1] 52/6
did [39] 6/17 14/9 15/8
15/9 23/13 26/10 29/14
29/21 30/15 30/18
31/20 31/21 34/5 34/6
34/7 38/3 38/24 39/23
40/8 40/23 48/23 55/4
61/7 62/5 66/11 67/2
67/20 69/7 69/16 70/20
71/6 73/23 80/14 81/3
81/7 81/7 81/21 81/23
82/5
didn't [23] 10/9 17/22
20/2 21/1 28/2 30/23
31/13 33/17 38/2 38/2
38/21 43/13 43/23 53/6
54/2 64/13 64/14 65/3
66/11 68/15 68/16
79/18 82/10
die [1] 59/25
difference [2] 33/11
51/8
different [26] 13/12
13/15 16/22 18/21

19/13 19/23 22/16
24/13 24/13 24/14
24/19 33/16 34/25 44/7
44/11 52/2 55/20 56/10
56/10 56/11 56/12
56/17 56/20 87/8 87/10
89/4
differentiate [1] 56/6
difficult [2] 30/1 55/21
difficulties [3] 36/11
43/15 73/9
difficulty [1] 10/24
directed [1] 83/24
directly [2] 12/21
77/21
disagree [3] 19/21
39/9 40/20
disagreed [2] 22/16
22/21
disagreeing [1] 9/7
discharged [1] 77/1
discharges [1] 35/3
discretionary [1]
84/13
discuss [2] 6/15 89/13
discussed [5] 6/20
16/12 22/10 24/4 80/20
discussing [3] 6/13
38/8 55/5
discussion [5] 12/6
16/15 27/15 54/22 88/5
dislinking [1] 11/12
disorder [32] 7/10
7/15 7/20 8/2 8/6 8/11
8/20 8/22 9/17 9/18
10/10 10/23 13/13
17/13 17/13 17/24 18/6
18/10 18/23 19/7 19/9
19/9 19/11 19/21 19/25
21/22 23/8 23/23 24/16
25/8 25/17 25/18
disparities [1] 79/2
disparity [3] 56/15
82/23 83/4
disperse [1] 77/20
dispersing [1] 76/11
dispositive [3] 12/10
12/22 13/7
dispute [3] 24/5 24/23
30/16
disregard [3] 16/20
31/8 31/10
dissimilar [1] 80/14
distinguishing [2]

**D**

distinguishing... [2]
16/24 81/11
district [12] 1/1 1/1 1/9
1/22 54/15 84/16 84/18
88/21 89/5 89/7 89/8
89/10
disturbances [1]
63/18
Division [1] 1/15
DNA [1] 83/24
do [70] 3/23 10/14
13/10 14/21 14/22 16/6
16/21 18/4 18/11 19/14
21/25 26/15 32/17
34/24 39/9 39/12 39/17
39/18 40/7 40/8 44/18
46/20 49/5 49/17 53/10
55/16 56/7 56/13 57/10
58/5 60/5 60/17 61/2
61/2 61/5 61/5 62/7
62/8 62/17 62/19 63/5
63/5 63/14 63/14 63/17
63/22 64/1 64/3 64/10
64/15 65/13 65/20
67/20 68/4 68/8 70/6
71/12 74/13 74/13 76/4
79/24 80/12 82/1 82/8
82/16 82/18 85/20
86/22 87/25 88/22
document [1] 6/13
documents [4] 3/12
3/14 3/24 4/1
does [16] 3/8 6/9
17/16 26/4 26/16 34/6
41/5 41/18 41/20 60/12
61/8 62/10 66/4 78/25
80/7 82/21
doesn't [10] 10/5
15/12 19/9 38/9 38/18
38/25 39/6 39/23 52/5
55/25
dog [1] 59/12
doing [7] 28/23 29/3
30/11 66/8 68/1 68/17
69/11
DOJ [2] 1/12 32/6
DOJ's [1] 79/22
DOJ-USAO-DC [1]
1/12
don't [46] 7/5 8/21
10/7 11/5 13/3 13/10
13/19 13/24 15/24
17/22 19/10 24/22

25/22 27/22 38/18
40/22 47/15 49/5 49/5
49/20 57/18 60/24 61/1
61/3 61/7 62/3 62/6
62/16 63/11 63/12
63/17 63/17 64/2 64/10
65/2 68/4 68/4 69/11
69/11 70/15 70/21
71/10 73/14 73/18 83/5
89/1
don't -- I [1] 61/7
done [9] 4/19 13/13
41/23 42/7 42/19 56/24
65/13 69/8 69/9
Doolin [1] 30/3
door [8] 11/10 31/3
31/4 64/19 64/20 64/23
76/10 76/13
door/tunnel [1] 76/13
double [3] 14/22 15/13
21/14
doubt [1] 25/13
doubted [1] 12/25
down [13] 10/23 12/14
12/24 13/6 29/21 53/6
54/2 60/19 65/23 66/5
66/14 66/18 69/18
downward [1] 74/21
drawer [2] 29/25 67/1
drive [1] 63/17
drives [1] 81/25
drug [1] 83/25
drunk [1] 63/17
due [1] 16/2
Dumb [1] 69/19
during [2] 72/1 77/2
duties [2] 21/22 36/20
duty [4] 14/15 15/17
36/3 36/16
dynamic [2] 68/19
69/1

**E**

each [5] 15/8 18/2 50/7
56/5 83/10
earlier [11] 18/10
18/23 21/12 21/15
22/10 24/4 24/6 71/15
75/21 79/5 80/20
early [2] 76/24 82/18
easier [1] 72/10
easily [1] 21/2
easy [2] 11/20 49/20
ECF [5] 4/15 11/16

ECF No. 122 [1] 4/15
ECF-107 [1] 23/9
ECF-122 [2] 14/2
15/15
Eckerman [1] 52/24
edge [1] 66/16
editor [1] 67/13
educated [1] 30/17
effect [1] 46/10
efficiency [1] 14/20
effort [3] 47/11 60/14
76/10
efforts [2] 75/17 77/20
eight [1] 26/24
eight years [1] 26/24
Eighth [1] 22/20
either [7] 14/19 15/24
27/8 53/13 53/21 58/2
67/9
elderly [1] 77/3 77/3
election [3] 75/13
78/17 78/21
electoral [1] 78/13
elements [6] 13/9
13/12 16/20 18/16
21/25 22/17
Elizabeth [1] 1/15
Elliott [1] 54/4
else [7] 38/10 61/3
71/10 74/3 86/4 88/16
89/12
elsewhere [1] 84/22
Email [3] 1/14 1/17
1/20
embarrassing [1]
64/14
embezzle [1] 67/13
embezzled [1] 67/12
emerged [1] 36/5
employees [2] 22/4
22/15
encountered [2] 35/2
35/8
end [10] 28/11 35/11
52/20 53/20 54/19 55/9
55/22 62/14 64/17
74/18
endangered [2] 30/1
31/7
ended [4] 13/24 35/21
35/24 78/1
endless [1] 34/25
ends [1] 73/6

endured [1] 35/4
enforcement [12]
23/22 24/2 30/7 31/5
45/4 45/5 63/5 75/16
75/24 77/19 77/21 85/6
enforcement's [1]
76/8
engage [3] 11/23 32/1
75/18
engaged [10] 21/16
21/21 46/21 75/17
75/17 77/21 80/2 80/13
81/2 85/2
engaging [4] 46/22
77/12 78/2 78/6
enhance [1] 18/1
enhancement [1]
53/14
enormous [2] 59/22
69/14
enough [5] 6/17 13/22
20/21 23/15 30/18
ensure [2] 77/7 77/10
enter [1] 85/21
entered [4] 47/9 47/10
75/11 80/23
entire [2] 23/19 28/23
entirely [3] 25/16 27/6
80/14
entitled [2] 6/14 90/5
environment [2] 36/18
63/21
Eric [2] 1/12 2/8
eric.boylan [1] 1/14
error [1] 86/15
especially [6] 12/17
33/7 62/19 63/13 63/19
78/19
essentially [1] 35/6
establish [2] 83/19
85/12
estimated [1] 26/19
evaluating [1] 56/1
even [23] 14/13 14/24
15/1 17/16 31/20 36/14
36/18 38/1 38/9 41/19
42/14 45/7 46/5 46/9
46/10 46/15 60/2 62/6
62/24 78/8 79/22 83/2
87/5
event [4] 33/2 59/5
59/25 85/22
events [4] 32/14 36/22
72/19 75/9

**E**

eventually [1]  68/5
ever [7]  12/9 19/10
32/10 33/2 43/9 47/1
59/2
every [11]  15/8 30/4
56/9 56/10 56/10 56/11
63/23 67/3 69/19 75/20
75/21
everyone [3]  60/11
64/7 66/7
everything [2]  37/17
63/22
evidence [5]  5/13
23/15 23/19 23/20 26/6
evident [1]  31/20
exactly [4]  14/3 33/14
38/18 86/24
example [3]  33/13
79/17 80/19
exceed [1]  55/23
exceedingly [1]  78/22
except [1]  60/12
exchanged [2]  70/24
71/3
excluded [1]  17/1
excuse [2]  51/12 86/2
execute [1]  85/17
exercise [1]  69/18
exhibit [6]  65/10 72/1
72/11 72/19 72/25 73/1
Exhibit 205 [3]  65/10
72/1 72/25
exhibited [3]  28/17
28/19 31/2
exhibits [3]  3/5 30/22
30/23
exist [1]  19/10
expectation [1]  59/22
expectations [2]  83/20
85/12
expected [1]  34/22
experience [7]  5/22
39/24 60/22 61/24
62/21 63/25 67/16
experienced [2]  43/17
43/24
explain [2]  38/18
40/25
explained [1]  55/8
explicitly [1]  16/16
explosions [1]  35/4
exposed [1]  29/24
express [3]  36/20 61/7

expressed [1]  22/22
expressly [2]  13/1
82/15
extent [1]  25/13
extinguisher [1]  35/2
extremely [3]  60/7
62/7 62/7
eye [2]  62/6 86/2

**F**

face [4]  36/11 36/14
36/25 79/18
faced [3]  34/25 79/18
80/19
facilities [1]  88/20
facility [2]  89/6 89/9
facing [1]  35/24
fact [10]  12/22 19/11
22/3 53/19 54/22 55/4
60/1 69/17 73/4 82/5
factor [8]  31/15 31/17
56/13 56/24 76/22 77/7
78/5 79/1
factors [17]  28/9 44/25
56/12 57/6 57/8 57/8
58/8 75/7 82/25 85/9
86/19 86/24 87/3 87/14
87/23 88/14 88/14
facts [5]  7/2 14/21
14/22 18/14 50/7
factual [7]  4/10 5/6 6/2
6/10 6/25 26/9 41/7
factually [1]  41/21
fair [7]  10/14 13/22
20/21 31/13 36/12
47/14 72/18
fairly [1]  48/10
fairness [1]  78/18
fall [2]  15/12 35/15
falls [4]  26/20 53/12
56/18 73/14
familiar [2]  56/4 57/19
family [3]  3/19 36/16
73/9
far [12]  12/13 14/12
38/25 39/5 40/3 41/7
43/11 44/20 47/2 47/14
47/18 48/5
father [1]  36/16
favor [3]  76/21 77/6
78/25
February [2]  38/22
39/2

federal [7]  16/19 16/21
16/22 17/1 17/1 83/21
84/16
feel [7]  5/22 13/19 61/8
62/4 64/2 69/21 73/23
feeling [2]  5/24 39/15
feelings [2]  37/18
37/20
feels [3]  31/19 59/2
60/6
feet [1]  68/24
fell [1]  37/23
fellow [1]  36/3
felony [27]  7/11 7/15
7/15 7/16 7/16 7/23 8/1
8/2 8/6 8/16 8/19 9/6
9/6 17/24 19/12 19/18
19/20 20/3 23/7 23/8
23/10 23/17 24/10
24/10 50/14 51/4 85/3
felt [10]  35/20 38/4
38/5 38/5 59/7 59/13
64/14 69/9 69/18 69/19
fencer [1]  68/25
few [5]  5/2 12/2 36/19
48/25 68/22
Fifth [7]  12/24 14/15
14/22 15/13 17/5 22/9
22/22
fifties [1]  76/24
fight [1]  68/22
fighting [1]  35/16
figure [1]  72/7
figuring [1]  43/4
file [1]  85/23
filed [6]  6/18 11/21
12/9 15/21 15/25 40/1
files [1]  39/18
filled [1]  5/8
final [4]  26/18 48/18
73/21 84/14
finality [1]  50/2
finally [1]  73/3
financial [3]  83/16
84/4 84/8
find [6]  7/17 9/1 10/9
16/4 19/11 85/8
finder [1]  19/11
finding [9]  16/12 18/25
19/1 19/2 19/4 19/10
20/10 25/18 69/17
findings [4]  4/10 6/25
86/20 87/3
fine [5]  12/3 26/22

fire [1]  35/2
firmly [1]  30/21
first [26]  3/24 9/16
11/24 11/24 13/5 15/21
15/21 19/6 21/9 21/11
31/2 42/4 46/14 50/11
51/12 58/23 59/4 64/23
65/1 65/16 69/24 71/22
75/7 84/19 85/5 86/8
fit [1]  71/6
five [5]  26/24 29/9 51/8
77/24 77/25
five minutes [1]  77/25
five years [1]  26/24
five-minute [1]  77/24
five-offense [1]  51/8
Fl [1]  1/16
flag [3]  64/20 64/21
65/12
flagpole [1]  80/23
floor [2]  29/8 65/2
flying [1]  29/25
focus [1]  23/13
focused [2]  25/16
25/19
follow [2]  22/24 84/6
followed [1]  75/2
following [1]  84/2
foot [5]  35/18 68/20
68/20 69/1 69/13
forcible [2]  21/19
21/20
forcibly [1]  13/13
foreclosed [1]  12/9
foregoing [1]  90/4
forgive [1]  66/3
forgot [1]  48/21
format [1]  50/3
forth [1]  85/9
forward [4]  2/6 58/18
68/20 69/2
found [3]  2/18 44/5
53/10
four [3]  53/14 53/18
67/4
fours [1]  81/16
Fourth [1]  13/2
framing [2]  50/11
53/16
fraternize [1]  63/12
Freedom [2]  32/1 55/2
Friedman [2]  15/25
15/25

**F**

friend [2]  66/5 66/15
friendly [1]  71/7
front [5]  15/25 16/3
33/13 33/21 66/7
fulfill [1]  36/12
full [8]  5/12 28/1 28/4
29/19 40/4 46/25 48/16
82/20
fully [1]  82/17
fulsome [1]  49/3
fulsomely [1]  12/16
functionally [1]  21/13
further [5]  4/1 27/8
74/5 83/11 89/14
future [2]  47/1 78/23

**G**

Galetto [1]  53/6
Garrett [1]  80/25
gas [3]  5/7 35/7 76/4
gassed [1]  76/6
gear [2]  36/2 81/3
general [8]  39/13
39/15 39/24 40/11
40/13 40/18 47/18 55/6
generalities [2]  38/19
39/24
generally [6]  37/7
39/10 40/16 40/17
40/18 63/18
generis [1]  33/2
German [1]  59/11
get [19]  8/23 11/24
19/4 30/24 31/13 33/5
41/7 57/15 57/15 58/21
63/7 63/24 64/3 64/25
66/8 66/12 67/6 72/13
76/8
gets [4]  9/17 45/6 82/8
89/5
getting [5]  17/10 35/22
68/9 84/19 85/5
Gibson [11]  12/21
13/7 16/6 16/10 16/11
16/15 16/15 17/6 22/9
22/19 22/23
Gibson's [1]  22/16
give [8]  27/25 28/3
45/12 55/25 57/12
62/11 73/16 82/20
given [2]  48/11 80/5
giving [4]  18/18 48/10
55/24 59/17

go [18]  4/18 8/10 8/24
9/1 11/19 13/6 13/21
15/15 29/4 35/10 60/16
64/18 65/20 65/21
65/23 68/4 68/10 69/16
God [2]  35/5 66/3
goes [2]  16/7 19/6
going [39]  3/18 4/9
4/11 4/18 5/2 5/6 5/18
12/13 22/24 30/14
30/23 33/15 41/8 41/8
43/16 46/9 50/2 52/23
56/8 56/25 57/1 59/25
60/15 62/12 65/8 65/9
65/16 66/12 68/8 68/15
69/11 73/15 74/6 74/13
82/21 83/15 83/25 84/8
88/6
good [28]  2/2 2/8 2/11
2/12 2/13 2/15 13/2
22/12 24/21 34/16
34/16 34/18 41/24 43/7
43/20 43/23 49/24
58/20 58/21 60/12
61/21 61/22 62/14
65/17 67/20 70/15 73/7
81/11
gorget [1]  70/10
got [2]  13/12 65/2
gotten [3]  37/2 46/13
46/13
government [47]  2/7
2/20 6/9 7/6 7/9 7/25
14/5 14/6 14/17 15/11
15/23 17/14 21/11 22/4
22/14 23/5 23/12 24/6
24/7 24/12 25/7 25/14
26/2 26/5 26/15 27/9
27/23 28/7 28/12 34/9
35/1 35/24 38/7 41/9
44/15 44/17 45/7 45/15
45/23 47/9 47/17 48/4
67/12 74/16 79/10
87/25 88/7
government's [11]
3/13 11/22 19/19 37/19
41/9 50/12 50/16 51/7
51/23 63/9 72/25
grab [1]  65/19
grabbed [1]  69/15
grabbing [1]  76/15
Grady [1]  54/5
grapple [1]  81/3
great [3]  53/12 64/4

greater [3]  14/7 76/18
85/10
greatly [1]  37/7
ground [3]  5/23 35/15
66/14
grounds [3]  22/7
75/11 76/9
group [6]  9/14 10/17
18/12 25/21 25/23
29/10
grouped [5]  10/6
17/16 17/17 24/24 25/2
grouping [4]  18/15
18/15 19/23 21/1
groups [1]  20/6
grown [1]  60/21
guess [2]  4/12 64/1
guidance [1]  55/24
guide [1]  17/4
guided [1]  70/5
guideline [11]  7/10
7/17 17/14 19/15 19/16
20/24 23/24 24/5 24/22
54/20 82/22
guidelines [49]  4/14
8/25 9/17 17/9 18/12
19/14 21/1 23/1 23/5
25/9 25/22 26/21 26/25
27/5 28/10 28/11 44/18
44/19 45/8 45/18 50/13
52/3 52/8 52/20 53/1
53/17 54/17 54/18 55/9
74/19 75/1 79/11 80/11
80/16 80/22 81/12
82/22 86/20 87/4 87/6
87/8 87/10 87/18 87/19
87/20 87/22 88/8 88/10
88/12
guidelines' [4]  4/19
7/4 7/8 74/17
guilt [2]  26/10 60/12
guilty [12]  2/18 26/8
44/6 51/4 52/14 52/23
53/4 53/13 53/25 54/14
79/12 80/10
guy [2]  42/18 66/10
guys [1]  37/11

**H**

had [34]  6/14 18/5
18/6 18/7 22/12 27/18
30/14 30/21 38/3 43/13
43/14 46/10 48/21

16 50/10
52/23 55/16 59/14
59/16 60/21 61/6 63/1
65/23 68/9 69/12 70/9
71/25 76/5 81/10 81/12
87/6 88/8 88/9
hair [1]  60/21
half [1]  28/25
hand [9]  29/21 46/13
46/13 63/9 64/21 64/22
65/11 65/19 76/16
handed [1]  64/22
handle [2]  49/20 66/18
handled [2]  32/7 52/17
hands [3]  29/18 37/25
41/19
happen [4]  32/15 47/1
59/23 67/14
happened [21]  11/10
29/19 29/22 30/8 30/14
31/25 32/24 33/1 33/3
33/3 33/16 33/21 41/11
46/14 46/15 54/23 59/8
59/13 60/7 60/13 61/9
happening [3]  29/2
29/3 88/2
happy [5]  4/5 49/6
58/1 72/14 88/22
hard [6]  35/4 37/2 64/6
64/15 67/6 73/6
harder [1]  76/17
harm [4]  20/13 20/17
20/18 60/2
harmed [1]  66/19
harmful [1]  66/4
harsh [1]  26/9
has [61]  7/10 10/15
12/24 13/2 13/4 14/6
14/11 14/15 14/21
14/22 15/3 22/19 22/22
26/6 26/15 28/18 28/19
31/1 31/12 31/25 34/7
37/2 38/5 39/8 39/18
40/5 41/4 41/6 41/22
41/23 41/24 41/25 42/7
42/18 42/19 43/1 43/21
43/22 45/5 45/21 46/11
46/11 46/16 47/19
47/21 48/7 48/18 59/7
60/5 60/9 60/10 66/5
68/22 71/11 71/13 77/4
79/15 81/18 83/2 85/3
88/3
has -- he [1]  59/7

**H**

hasn't [2] 32/10 82/14
hate [2] 64/8 66/21
hated [1] 67/13
have [128]
Haven [1] 1/16
haven't [5] 3/25 49/2
50/7 61/25 86/23
having [3] 53/25 61/25
71/6
he [235]
he -- I [1] 59/24
he'd [1] 3/16
he's [24] 30/17 30/17
30/18 32/2 38/18 38/18
38/19 39/7 39/12 39/14
40/7 40/23 42/5 42/15
43/2 43/3 43/10 43/21
46/9 46/13 46/18 46/25
47/2 60/20
head [6] 35/4 35/6
49/14 62/19 69/4 69/10
health [1] 84/5
hear [17] 4/5 4/11 4/14
4/17 4/20 4/22 27/21
34/12 42/11 49/5 49/6
58/1 58/7 73/12 73/13
81/21 81/23
heard [9] 4/24 17/14
23/20 29/5 39/7 54/23
76/5 81/23 81/24
hearing [3] 23/15
37/17 61/25
heart [4] 37/14 60/4
60/23 63/10
heat [1] 71/8
held [3] 30/21 36/10
38/12
hell [2] 66/8 67/2
helmet [1] 35/5
help [4] 26/15 35/21
73/12 73/15
helpful [5] 50/8 53/11
53/16 55/14 79/17
helping [1] 42/20
helpless [1] 35/20
helps [1] 60/11
her [7] 4/6 6/18 37/23
37/25 73/14 73/15
73/17
here [39] 2/16 3/16 4/8
7/14 8/14 9/22 14/9
14/24 18/19 18/22 24/5
26/3 26/5 26/16 30/8

33/16 37/3 39/14 42/14
44/17 45/7 54/13 54/19
55/9 55/21 61/15 61/18
65/9 66/13 68/8 75/6
79/21 79/24 80/22
82/14 82/23 83/7 85/15
88/15
HERMAN [4] 1/21 90/3
90/8 90/8
heroic [1] 66/23
hers [1] 73/18
herself [1] 73/15
Hey [2] 69/10 69/25
high [4] 28/11 54/19
55/22 74/18
higher [6] 24/25 44/19
45/8 45/19 87/6 88/10
highest [1] 17/18
highly [1] 30/17
him [28] 2/18 23/10
32/8 39/2 42/11 42/15
43/20 45/12 46/14
48/10 48/10 48/13 59/3
59/10 59/24 59/24 61/1
61/1 61/5 66/6 67/23
68/3 71/7 71/8 76/8
81/4 81/22 82/20
him -- I [1] 61/1
his [88] 5/12 5/21 23/6
26/7 26/8 26/9 26/10
26/12 26/12 26/14
26/16 28/18 28/19
28/19 28/20 29/18
29/19 30/20 31/20 32/1
32/9 32/11 32/18 32/18
37/18 37/20 37/21
37/22 37/23 37/25
39/12 39/13 39/23 40/4
40/5 40/8 41/3 41/17
41/18 41/22 42/3 42/6
42/7 42/13 42/16 42/20
42/20 42/21 42/22
42/23 43/2 43/6 43/8
43/10 43/15 43/19
43/21 43/22 43/22
43/22 44/10 46/6 46/24
56/1 58/2 60/4 60/21
61/12 66/15 71/8 71/9
72/1 72/2 72/3 76/14
76/23 76/25 77/2 77/3
77/3 77/5 77/17 78/3
80/16 81/20 81/21
81/22 82/7
history [7] 26/20 26/21

49/18 52/2 76/22 77/9
81/10
holding [6] 5/23 35/18
64/20 65/14 66/6 76/16
home [6] 59/4 60/20
60/20 61/6 73/24 84/22
honesty [1] 63/8
Honor [75] 2/2 2/8
2/20 3/14 3/22 6/11
6/16 6/20 6/23 7/7 7/13
7/24 8/7 8/13 8/18 8/22
9/7 10/14 10/20 11/9
11/19 11/24 12/8 12/12
12/14 13/7 13/20 27/10
27/24 28/6 28/12 28/21
29/5 29/12 29/19 30/3
30/16 31/14 31/17
32/16 32/20 32/23
33/11 33/20 33/25 34/2
34/9 34/14 37/9 48/20
49/10 49/12 49/17
49/25 50/3 50/7 50/21
58/12 61/22 70/21 73/3
74/9 86/2 86/4 86/7
86/9 86/12 86/17 86/18
87/1 87/9 87/12 87/13
88/17 89/11
Honor's [3] 28/9 50/9
54/8
HONORABLE [1] 1/9
honorably [1] 77/1
hook [1] 81/3
hope [1] 60/25
horrible [2] 59/13
60/13
host [1] 79/15
hour [3] 49/13 76/21
78/1
hour-long [1] 78/1
hours [7] 18/7 18/10
18/19 18/23 28/25
84/17 85/7
house [2] 33/3 73/7
how [17] 4/8 8/19
16/10 17/23 20/23
30/21 37/23 37/24 38/4
42/3 45/16 45/19 60/14
65/2 79/1 80/1 81/8
however [5] 28/9
45/10 45/11 53/19 81/9
Huh [1] 68/8
Huh-uh [1] 68/8
hum [1] 12/2
human [1] 63/5

Humanity [1] 65/24
hurt [1] 66/12
hurts [1] 73/15
husband [5] 36/17
43/7 58/25 59/20 60/16
hypothetical [1] 18/18
hypothetically [1] 18/5

**I**

I'd [6] 3/15 4/8 4/14
11/8 33/25 58/1
I'll [12] 4/22 4/24 14/2
23/4 28/5 28/21 37/14
47/6 58/8 61/18 72/24
89/4
I'm [69] 3/10 4/11 4/18
5/2 5/6 5/18 9/7 12/1
14/25 16/23 18/18
19/22 19/22 19/23
20/18 21/15 22/24
24/13 34/16 34/21
39/14 41/8 49/6 52/5
55/13 55/14 56/4 56/8
56/25 57/1 57/3 57/19
60/19 62/10 62/21 64/4
64/19 64/20 64/20
64/22 64/24 65/18
65/22 65/25 66/6 66/12
67/19 67/19 68/8 68/12
68/13 68/13 69/2 69/6
69/6 69/13 69/13 69/24
70/21 71/10 72/14 73/7
73/11 74/6 81/25 82/15
87/24 88/2 89/2
I've [28] 4/19 4/24 5/8
6/4 7/2 18/19 43/9
48/21 49/23 55/1 61/3
62/15 62/15 63/1 65/13
68/22 69/19 73/4 73/5
73/5 73/6 74/18 75/9
75/20 79/4 79/16 82/13
85/19
idea [5] 39/8 41/6
65/17 65/19 67/20
identified [1] 24/20
identify [2] 80/7 85/13
ignored [1] 77/18
Ill [1] 52/3
illegal [2] 25/11 64/1
imagine [1] 49/17
immediate [1] 65/5
immediately [1] 83/17
impact [4] 12/15 30/5
35/9 75/22

**impacts [1]** 35/4
**impede [1]** 23/22
**imperative [1]** 36/8
**importance [2]** 36/8 36/13
**important [6]** 4/12 41/2 45/1 77/9 79/24 82/1
**impose [4]** 57/1 77/8 83/15 84/8
**imposed [14]** 44/16 51/17 51/20 56/25 77/10 80/4 82/11 83/19 85/19 87/2 87/7 88/9 88/11 88/14
**imposing [4]** 7/3 75/6 84/12 88/15
**imprisonment [3]** 26/23 83/9 84/17
**inaccurate [1]** 41/21
**inapposite [1]** 33/1
**inappropriate [1]** 39/11
**inaudible [1]** 73/16
**incapacitation [1]** 47/4
**incarcerated [3]** 46/4 46/17 68/23
**incarceration [19]** 26/22 48/8 48/9 51/18 51/21 51/24 53/9 53/24 54/1 54/5 54/6 54/7 73/11 73/23 74/17 74/23 75/2 81/1 83/14
**incident [7]** 21/22 23/23 39/22 43/12 46/15 77/23 77/24
**include [3]** 10/18 10/19 35/4
**included [5]** 4/15 7/5 11/15 14/10 21/10
**including [3]** 38/23 76/4 84/15
**incoherently [2]** 62/17 64/17
**income [1]** 73/5
**inconsistent [2]** 52/7 82/24
**incorrect [1]** 21/18
**increase [1]** 25/24
**incredible [3]** 42/1 42/20 43/8
**incriminating [1]**

**incurring [1]** 84/10
**indeed [6]** 22/15 25/7 39/2 39/4 71/2 76/7
**indicated [2]** 24/6 49/13
**indictment [1]** 21/14
**individual [4]** 40/5 40/8 45/4 85/13
**individuals [4]** 36/8 36/25 38/9 38/16
**individuals' [1]** 44/9
**indulgence [1]** 27/13
**inequities [3]** 39/16 39/19 39/25
**inequity [1]** 44/20
**inflicted [1]** 69/14
**information [3]** 55/11 57/4 84/4
**initial [3]** 3/6 20/24 51/7
**injured [1]** 67/5
**inside [11]** 15/5 29/7 30/13 31/4 31/7 32/13 33/3 33/22 59/12 68/9 77/15
**insistence [1]** 26/10
**instantly [1]** 35/10
**instead [1]** 80/10
**institution [1]** 34/3
**institutions [1]** 35/24
**integrity [2]** 78/18 78/21
**intelligence [4]** 63/3 67/17 67/18 67/18
**intelligent [1]** 30/17
**intend [2]** 21/1 40/23
**intended [3]** 21/4 40/22 75/18
**intensive [1]** 50/4
**intent [22]** 7/11 7/22 8/1 8/5 8/8 8/15 8/16 9/6 9/18 9/25 19/2 19/11 19/18 19/19 19/20 20/2 23/7 23/10 23/17 23/21 24/10 24/17
**intention [1]** 68/9
**intentional [1]** 76/19
**intentions [1]** 62/2
**interact [2]** 85/1 85/4
**interacting [2]** 31/21 42/12
**interaction [1]** 31/23

**interfere [1]** 23/22
**interfered [2]** 10/21 78/12
**interfering [1]** 77/20
**internal [1]** 65/10
**interpreted [2]** 40/19 40/21
**interrupting [1]** 75/15
**introduce [2]** 2/6 37/16
**introverted [1]** 62/7
**investigation [2]** 3/2 6/14
**invited [1]** 68/6
**involve [3]** 7/10 25/4 85/10
**involved [3]** 18/10 24/9 50/22
**irrelevant [1]** 57/2
**irresponsible [1]** 67/9
**is [269]**
**isn't [6]** 14/19 31/19 32/21 33/10 60/6 78/5
**issue [13]** 13/4 14/21 15/12 15/13 15/18 15/19 16/1 16/7 39/3 47/3 47/7 55/6 61/10
**issues [7]** 4/12 4/13 12/17 21/9 43/16 46/25 47/21
**it [180]**
**it's [53]** 5/25 5/25 8/6 8/22 9/4 9/10 9/11 9/16 9/18 12/23 13/8 14/5 15/20 17/17 18/19 20/16 20/18 21/5 21/13 24/6 25/21 28/25 31/15 33/2 33/3 37/7 39/20 40/12 41/2 44/3 44/4 44/5 44/22 45/11 53/7 54/12 55/2 55/3 56/1 56/23 57/2 61/24 62/5 62/6 64/1 66/19 69/4 72/18 77/12 81/20 82/1 87/24 89/3
**items [2]** 84/23 85/25
**its [5]** 18/1 28/7 35/11 63/9 75/11
**itself [8]** 9/10 12/24 17/24 22/22 24/11 44/20 46/16 83/3
**lwo [1]** 68/20

**jabbed [1]** 80/22
**jail [4]** 26/14 38/10 39/7 40/14
**James [1]** 54/4
**January [44]** 15/22 28/15 28/17 28/22 29/23 30/25 32/4 32/13 32/25 33/1 33/1 34/1 34/5 34/24 36/22 37/7 38/11 39/11 39/23 40/1 40/13 41/3 42/9 42/22 44/9 44/10 45/1 45/3 45/14 45/15 45/17 45/22 45/23 47/19 48/2 53/12 55/5 75/10 75/18 75/23 78/4 78/10 79/5 80/7
**January 6th [43]** 15/22 28/15 28/17 28/22 29/23 30/25 32/4 32/13 32/25 33/1 33/1 34/1 34/5 34/24 36/22 37/7 38/11 39/11 39/23 40/1 40/13 41/3 42/9 42/22 44/10 45/1 45/3 45/14 45/15 45/17 45/22 45/23 47/19 48/2 53/12 55/5 75/10 75/18 75/23 78/4 78/10 79/5 80/7
**Jason [2]** 34/20 53/3
**jeans [1]** 41/17
**Jenkins [1]** 70/2
**jeopardy [3]** 14/23 15/13 21/14
**Jim [2]** 60/10 60/11
**Jima [1]** 68/20
**jives [1]** 68/14
**job [4]** 35/11 41/23 67/11 73/5
**jobs [1]** 30/1
**joined [3]** 2/9 18/1 76/9
**joint [1]** 75/12
**joke [1]** 15/5
**Jonathan [1]** 51/25
**Joshua [1]** 30/3
**judge [30]** 1/9 2/13 2/22 4/7 6/7 15/25 15/25 27/13 27/17 33/21 37/13 39/6 39/7 41/5 41/6 42/11 49/9 52/19 55/13 56/25 57/24 58/4 58/10 58/16

**J**

judge... [6]  60/23
61/17 71/25 72/17
73/21 88/20
judged [1]  39/20
judges [2]  16/4 31/12
judgment [2]  20/20
85/21
judicial [1]  84/16
July [2]  70/19 70/20
jurisdiction [2]  14/14
89/3
jurisdictional [6]
12/18 13/18 16/20
21/25 22/13 22/17
jurisdictions [2]  16/22
48/1
just [49]  2/23 4/13 5/2
6/4 10/25 12/2 13/24
27/17 27/24 30/9 33/10
33/17 34/24 36/12 37/5
45/22 49/16 49/18
50/11 53/11 53/16 55/2
55/5 56/8 57/21 58/25
60/17 60/18 60/25 61/7
61/11 61/13 62/3 62/17
62/22 62/22 64/14 65/6
65/8 65/23 65/25 71/7
72/10 73/3 73/4 78/5
86/2 89/2 89/4
justice [1]  36/24
justifies [1]  55/8

**K**

Katherine [2]  1/15
2/10
katherine.boyles [1]
1/17
keep [4]  29/10 43/15
57/14 68/24
keeps [1]  86/3
Kelly [3]  39/6 39/7
41/6
Kevin [1]  53/6
kidding [1]  65/6
kind [14]  16/24 39/19
42/4 42/5 42/7 43/5
49/16 49/20 59/18
61/24 62/10 64/9 67/14
73/8
kindest [1]  43/9
kinds [1]  43/3
knew [7]  28/23 29/2
29/3 30/11 66/10 76/2

Knights [1]  42/19
know [46]  10/13 19/21
30/18 30/23 36/5 37/15
38/4 38/9 39/1 39/6
40/22 41/6 43/12 46/4
47/15 47/23 48/20 49/3
49/18 52/6 52/9 54/24
55/1 55/22 56/17 56/20
58/25 59/1 60/5 60/5
60/25 61/1 61/3 61/7
61/11 61/13 64/2 65/2
68/15 69/11 69/11 70/8
71/10 79/2 85/2 85/2
knowingly [2]  84/18
85/4
knowledge [1]  61/12
known [5]  59/2 59/3
61/3 71/11 71/14
knows [3]  30/22 60/13
68/23
Knox [1]  51/19

**L**

lack [9]  28/16 28/18
31/1 31/14 31/18 32/18
32/19 54/21 78/4
lady [1]  68/7
Lamberth [1]  33/21
Landon [1]  53/24
language [11]  5/11
5/13 5/14 5/15 5/17
5/19 18/17 20/11 20/14
21/3 21/5
laptop [4]  72/11 72/14
72/17 72/19
large [3]  35/13 56/16
81/13
largely [2]  20/12 20/16
last [3]  15/14 46/14
61/25
lasted [1]  76/20
late [2]  21/13 49/4
later [3]  18/7 18/20
19/2
laughed [1]  63/24
law [26]  1/18 23/22
24/2 28/17 30/7 31/1
31/5 31/9 31/15 32/18
35/25 36/14 36/24 45/4
45/5 63/5 64/5 70/17
75/16 75/24 76/8 77/8
77/19 77/21 78/5 85/6
lead [1]  63/11

leading [1]  30/6
least [9]  25/5 25/11
37/8 56/23 69/12 69/15
72/22 74/25 80/15
leave [6]  59/12 65/6
67/3 76/9 82/21 84/18
led [1]  77/14
left [2]  35/17 64/22
leg [2]  35/16 35/17
legal [1]  82/16
legs [1]  41/16
length [1]  79/3
leniency [1]  73/18
less [4]  48/3 56/19
79/18 80/18
less-severe [1]  56/19
lesser [7]  4/15 7/5
11/15 14/8 14/10 21/10
44/15
lesser-included [4]
4/15 7/5 11/15 21/10
let [5]  35/10 37/15
58/21 58/25 59/1
let's [4]  9/13 20/11
58/5 58/5
letter [3]  37/22 42/2
42/3
letters [2]  3/4 42/21
letting [1]  58/23
level [40]  8/3 17/10
17/18 17/19 19/23
19/25 20/4 20/11 20/16
23/25 23/25 24/3 24/25
25/23 25/24 26/18
49/19 50/10 50/19 51/8
51/16 51/20 52/1 52/6
52/18 52/24 53/3 53/7
53/21 53/21 53/23
53/25 54/4 54/6 54/7
62/24 63/7 81/2 81/13
81/22
liars [1]  63/4
liberty [1]  85/10
lie [1]  63/11
lied [1]  61/4
life [17]  34/22 35/17
36/5 41/22 42/7 42/16
42/25 42/25 43/2 43/5
43/10 43/21 43/22
43/22 46/11 46/12
62/23
light [6]  26/7 28/8 28/9
73/12 78/22 83/14
like [54]  3/15 3/16 3/20

1/21 4/6 4/8 4/14 4/23
13/21 18/2 27/8 27/9
27/21 29/20 33/25 34/1
34/15 41/13 42/16
43/23 45/3 45/12 52/22 54/3
56/9 57/11 58/7 58/17
59/14 59/18 59/19
59/23 60/21 62/6 62/7
64/10 65/3 65/18 68/24
68/24 68/25 69/2 69/3
69/21 70/9 72/13 73/4
77/16 81/3 86/25 88/1
88/18 88/25 89/4 89/12
liked [1]  49/15
likely [1]  85/21
likes [1]  64/10
limited [1]  27/25
line [6]  10/21 28/3 28/6
29/24 69/3 76/12
lineman [1]  29/20
lines [1]  84/10
linked [1]  9/24
linking [1]  10/7
list [1]  57/18
listen [1]  89/1
listened [1]  55/1
litigate [1]  32/22
little [4]  4/14 24/7
38/11 62/11
live [1]  36/7
lives [4]  33/6 63/12
64/6 70/13
local [1]  83/21
location [2]  80/3 88/19
locations [1]  75/25
locked [1]  60/19
Logan [1]  53/23
logical [1]  30/22
Logically [1]  22/12
lollygaggers [1]  67/5
long [3]  28/25 78/1
81/10
longer [3]  73/23 76/20
78/25
look [11]  20/14 20/15
44/25 45/16 45/20
45/24 55/17 56/5 56/5
65/14 65/17
looked [3]  15/21 50/7
68/7
looking [15]  18/15
20/16 20/18 44/4 44/5
44/5 45/17 50/4 50/9
55/14 55/15 57/8 57/13

**L**

**looking... [2]** 65/22 80/17
**looks [5]** 14/20 41/13 52/22 69/1 69/2
**LORRAINE [4]** 1/21 90/3 90/8 90/8
**loss [2]** 20/17 20/18
**loss...natural [1]** 20/13
**lost [2]** 73/5 73/5
**lot [13]** 29/13 50/25 55/2 56/3 62/15 62/16 64/2 66/23 66/23 67/16 73/9 73/10 79/3
**loud [1]** 29/7
**love [1]** 29/17
**loved [1]** 36/18
**low [2]** 52/20 77/13
**lower [7]** 19/25 44/16 45/7 76/12 80/11 81/12 88/8
**lungs [1]** 67/23
**Lynch [2]** 17/3 17/7

**M**

**M.J [1]** 16/9
**made [20]** 5/8 16/23 20/24 30/1 30/5 30/21 30/24 31/12 35/10 38/13 38/16 38/17 39/5 39/10 42/9 43/10 60/6 65/8 75/22 76/16
**main [1]** 42/10
**make [19]** 3/17 4/10 4/18 5/4 17/22 23/18 35/14 38/3 40/24 58/17 58/23 61/17 63/2 73/6 82/17 86/18 88/6 88/18 89/3
**makes [5]** 8/14 24/2 33/15 44/21 69/2
**making [10]** 15/5 17/5 20/19 38/14 43/20 46/25 62/6 70/4 80/10 87/13
**man [18]** 28/23 30/17 30/22 30/23 31/19 34/22 41/24 42/5 43/7 46/8 46/9 59/2 59/16 60/12 66/2 66/4 67/12 67/23
**mandatory [3]** 23/2 27/2 83/19

**many [15]** 30/6 34/5 39/10 40/1 50/14 74/14 75/9 75/9 75/9 75/14 75/16 75/17 77/1 79/16 80/8
**marble [1]** 65/2
**marijuana [1]** 63/23
**marina [5]** 1/18 1/20 2/13 64/11 71/6
**Marshall [1]** 59/16
**mask [1]** 35/7
**match [1]** 16/16
**matches [1]** 48/4
**Mater [1]** 59/10
**materials [3]** 3/9 3/10 12/8
**matter [4]** 16/5 36/13 45/19 90/5
**matters [2]** 29/13 33/18
**MATTHEW [5]** 1/5 2/4 54/6 61/17 80/19
**maximum [1]** 26/23
**may [16]** 16/2 19/21 48/20 50/8 50/8 54/20 55/12 55/22 58/3 58/18 71/24 72/15 72/16 82/11 85/23 90/8
**maybe [6]** 11/23 20/2 28/5 31/17 64/24 70/12
**McClain [1]** 60/10
**me [49]** 17/10 17/14 24/18 24/21 26/15 28/3 35/10 35/18 35/22 37/8 42/2 51/12 51/13 56/23 58/21 58/23 59/4 59/7 60/8 61/4 62/18 63/25 64/14 64/14 64/15 64/16 65/6 65/18 66/3 66/6 66/9 66/13 67/13 67/22 67/25 69/8 69/10 70/19 73/11 79/25 80/1 81/6 81/17 86/2 86/22 86/25 87/5 88/18 88/25
**me -- well [1]** 64/14
**mean [16]** 5/25 9/25 10/5 11/20 13/8 13/9 17/11 20/21 22/2 25/14 28/3 42/24 43/1 59/24 60/21 71/12
**means [1]** 25/21
**meant [2]** 62/11 86/11
**measures [1]** 76/4
**mechanics [1]** 68/21

**Medvin [2]** 1/18 1/19 2/12 2/14 2/21 3/24 6/6 6/15 13/23 21/7 27/12 27/15 37/12 48/19 49/6 55/12 58/1 58/15 74/4 87/16 88/18
**Medvin's [1]** 6/21
**medvinlaw.com [1]** 1/20
**meet [2]** 63/15 73/6
**meeting [1]** 75/12
**melee [1]** 59/25
**members [2]** 3/19 35/11
**members' [1]** 80/23
**memo [2]** 31/19 43/14
**memorandum [4]** 29/15 37/15 37/22 48/7
**memos [1]** 39/25
**mental [1]** 84/5
**mention [5]** 16/15 48/21 63/24 86/1 88/25
**mentioned [6]** 3/25 6/4 7/2 16/17 47/4 64/11
**mentions [4]** 39/22 39/22 41/3 41/5
**mere [1]** 35/9
**merited [1]** 28/13
**merits [3]** 11/22 12/12 12/13
**met [3]** 43/9 47/19 59/12
**metal [3]** 65/13 66/25 80/22
**Metro [2]** 33/13 70/10
**Metropolitan [1]** 34/21
**Michael [1]** 52/24
**middle [4]** 29/14 33/18 52/4 64/12
**might [14]** 4/3 20/1 33/14 49/15 49/17 49/23 50/3 51/1 63/13 65/17 65/17 72/5 72/10 78/22
**military [1]** 16/7
**Miller [2]** 80/25 81/3
**mind [4]** 32/23 60/17 62/12 69/12
**minimum [1]** 85/13
**Minneapolis [1]** 48/2
**minor [2]** 57/11 57/12
**minute [4]** 58/3 72/12 74/6 77/24

**minutes [2]** 71/22 77/25
**misdemeanor [1]** 47/8
**misdemeanors [1]** 51/16
**missed [1]** 86/1
**mission [1]** 63/14
**misstated [1]** 86/1
**mistakes [1]** 42/9
**MJ [1]** 53/3
**mob [1]** 35/24
**modifications [1]** 7/2
**moment [5]** 35/16 60/3 62/4 64/8 65/5
**month [5]** 21/12 52/25 53/5 80/21 81/6
**months [39]** 26/22 26/25 28/10 32/23 33/24 34/10 45/6 46/4 46/16 47/5 48/7 48/8 48/9 48/14 48/15 51/18 51/21 51/23 52/3 52/5 52/15 52/21 53/8 53/24 54/1 54/5 54/6 54/7 57/1 74/17 74/23 75/2 75/3 79/12 81/1 83/6 83/10 83/10 83/12
**Moore [2]** 72/12 74/11
**more [19]** 3/1 13/20 16/14 20/25 30/1 30/10 44/11 44/14 46/18 47/5 53/18 55/8 55/20 62/12 64/25 66/11 77/25 80/6 81/5
**morning [14]** 2/2 2/8 2/11 2/12 2/13 2/15 34/17 34/18 52/11 58/20 58/21 61/15 61/21 61/22
**most [10]** 4/12 16/10 19/15 31/17 36/8 43/4 43/5 59/2 66/25 72/8
**motion [20]** 4/16 4/18 7/5 11/16 11/16 11/22 12/9 13/25 14/3 14/3 14/5 14/6 14/11 14/18 15/9 15/14 21/10 22/25 23/12 32/22
**motion -- so [1]** 15/14
**motions [3]** 3/7 12/15 23/15
**motivated [1]** 24/1
**motives [1]** 67/7
**mounted [1]** 68/15

**M**

Mounting [1] 65/11
mouth [1] 30/13
moving [1] 33/14
Mr. [93]
Mr. Boylan [2] 7/8
27/23
Mr. DaSilva [55] 2/14
2/17 4/23 5/18 6/13
21/24 22/2 22/8 23/6
23/9 23/16 23/21 26/4
26/6 26/19 27/16 37/16
37/16 37/18 37/21 38/2
38/9 38/15 38/22 41/8
41/18 41/22 42/7 42/18
43/13 47/7 47/10 49/7
58/2 61/21 72/20 72/23
73/20 74/21 75/10 76/5
76/23 77/11 77/15
77/18 79/13 79/15 80/7
81/1 81/9 81/11 81/12
81/18 81/21 83/8
Mr. DaSilva's [30] 4/4
4/23 5/21 21/11 25/16
25/19 41/16 42/24 44/8
44/23 45/8 45/18 46/3
47/12 47/15 48/4 49/7
76/1 76/20 77/5 77/13
79/22 80/11 80/14
80/17 81/5 81/9 81/19
82/4 82/18
Mr. Dennis [1] 51/14
Mr. Miller [1] 81/3
Mr. Phipps [4] 81/7
81/10 81/12 81/13
MS [1] 60/9
Ms. [25] 2/12 2/21 3/24
6/6 6/15 6/21 13/23
21/7 27/12 27/15 37/12
48/19 48/24 49/6 49/11
55/12 58/1 58/15 58/20
72/12 74/4 74/11 85/25
87/16 88/18
Ms. Baker [1] 85/25
Ms. Boyles [2] 48/24
49/11
Ms. DaSilva [1] 58/20
Ms. Medvin [18] 2/12
2/21 3/24 6/6 6/15
13/23 21/7 27/12 27/15
37/12 48/19 49/6 55/12
58/1 58/15 74/4 87/16
88/18
Ms. Medvin's [1] 6/21

Ms. Moore [2] 72/12
74/11
much [7] 37/23 37/24
45/19 56/2 61/14 80/6
86/5
multiple [6] 14/7 18/2
45/4 46/11 50/15 76/6
multiplicitous [1]
15/17
Munafo [4] 51/25
67/21 68/2 70/2
must [20] 22/24 23/2
36/17 36/24 36/25
83/20 83/21 83/22
83/23 84/2 84/3 84/5
84/15 84/17 84/21
84/22 85/1 85/3 85/7
85/20
mutual [1] 70/22
my [124]
myself [7] 58/22 63/21
64/9 64/11 64/25 69/17
72/14

**N**

name [2] 34/20 51/12
named [3] 56/4 59/16
60/10
nature [4] 42/23 62/5
75/8 76/19
Navy [5] 41/23 42/1
62/22 63/19 77/1
nearly [1] 50/2
necessary [2] 46/19
85/11
necessities [1] 47/23
need [4] 21/20 64/25
78/24 82/3
needed [2] 35/21
85/14
needs [4] 46/8 61/18
73/12 73/13
neglected [1] 85/25
neighbor [2] 60/10
77/3
neighborhood [1]
60/11
neighbors [1] 42/20
neither [1] 21/22
never [17] 17/1 19/11
39/22 39/22 41/3 41/4
42/15 46/12 46/13
47/10 59/14 60/16 61/4
63/23 65/13 66/18

66/19
new [4] 1/16 14/18
73/13 84/10
newspaper [1] 67/11
next [3] 76/22 77/7
79/1
NICHOLS [5] 1/9 2/13
37/13 58/16 72/17
nine [5] 46/4 46/16
47/5 48/8 48/9
nine months [5] 46/4
46/16 47/5 48/8 48/9
Ninth [2] 12/25 22/20
no [33] 1/3 3/14 6/11
8/10 8/24 16/4 19/13
24/24 25/24 26/2 26/17
27/10 28/4 30/16 31/24
35/1 35/25 39/8 41/6
45/19 46/18 59/22
66/19 67/22 68/3 68/9
70/1 73/15 74/20 75/4
85/10 86/4 88/17
No. [2] 4/15 11/16
No. 122 [1] 11/16
noises [1] 32/5
none [4] 16/15 38/7
66/24 81/16
nonetheless [1] 76/7
normal [1] 35/23
normally [1] 62/10
Northern [4] 88/21
89/6 89/8 89/10
not [139]
note [4] 27/8 41/2
43/16 69/16
noted [3] 5/3 27/19
27/20
notes [2] 51/13 52/10
nothing [7] 4/1 6/7
14/21 60/5 74/5 86/4
89/14
notice [1] 55/11
notify [1] 85/7
notion [1] 21/25
notwithstanding [1]
26/8
novel [1] 15/19
November [2] 45/3
59/19
now [25] 9/16 9/24
11/15 23/17 27/21
34/12 35/21 35/21
41/24 41/25 46/16
56/16 58/1 58/12 60/8

64/9 64/19 64/25 69/20
71/13 74/9 74/23 75/9
80/15 89/5
now -- it [1] 35/21
now -- well [1] 56/16
number [10] 12/21
28/14 28/16 30/6 42/11
42/12 53/7 53/10 75/23
79/4
numbers [1] 54/2
NW [2] 1/13 1/22

**O**

oath [1] 36/5
objection [2] 5/15 5/19
objections [11] 4/9 5/2
5/6 6/2 6/9 17/21 27/7
27/9 27/18 86/20 87/4
objects [3] 29/25 36/1
66/24
obligated [1] 75/6
obligations [1] 36/15
oblige [1] 72/2
observes [1] 84/24
obstruct [1] 23/22
obstructed [1] 31/4
obviously [8] 2/24
12/8 13/9 13/15 24/12
73/10 79/4 81/10
OC [3] 29/8 76/4 76/16
occur [1] 77/15
occurred [2] 36/22
77/24
October [3] 23/14
38/17 39/2
October 25th [1] 23/14
odd [1] 7/16
odds [1] 36/6
off [8] 27/15 35/6 35/6
41/20 42/3 42/6 65/20
88/5
offenders [2] 80/8
80/13
offense [48] 4/15 6/3
6/10 7/1 7/5 8/3 11/15
14/8 17/10 17/18 17/19
19/23 19/25 20/4 20/11
20/16 21/10 23/24 24/1
24/3 24/25 25/23 25/24
26/18 44/20 49/19
50/10 50/19 51/8 51/16
51/20 52/1 52/6 52/18
52/24 53/3 53/7 53/21
53/21 53/23 53/25 54/4

# O

**offense... [6]** 54/5 54/7 54/16 75/8 77/3 82/4
**offense-level [1]** 8/3
**offenses [2]** 5/9 14/10
**offensive [1]** 29/20
**offer [2]** 82/4 82/18
**offered [1]** 26/9
**Office [4]** 49/23 49/24 79/21 85/16
**officer [58]** 2/5 3/16 3/20 4/22 5/20 5/24 8/8 10/11 10/16 10/18 10/19 10/25 11/3 18/7 18/8 18/9 18/11 18/11 24/2 25/4 25/5 25/10 25/17 25/19 26/11 29/6 29/6 29/9 31/22 31/23 32/3 32/12 33/23 34/13 34/16 34/17 34/21 37/5 40/6 41/10 41/15 60/3 60/24 68/12 71/5 76/16 76/17 78/2 83/25 84/3 84/11 84/15 84/20 84/21 84/23 85/5 85/6 85/7
**Officer A [2]** 18/7 18/11
**Officer B [1]** 18/9
**Officer B -- so [1]** 18/8
**Officer Sterling [26]** 3/16 3/20 5/24 10/11 10/16 10/18 10/19 10/25 11/3 25/4 25/5 25/10 25/17 25/19 26/11 29/6 29/6 29/9 31/23 32/3 34/13 41/10 68/12 71/5 76/17 78/2
**Officer Sterling's [3]** 5/20 32/12 76/16
**officer's [3]** 29/21 41/12 60/1
**officers [34]** 10/17 10/21 10/24 11/6 21/21 22/4 22/15 29/1 29/9 29/25 30/2 30/12 30/13 31/4 31/6 31/7 32/3 33/6 33/7 36/4 36/9 42/13 45/4 45/5 54/24 66/24 75/16 76/3 76/10 76/12 76/17 80/23 80/24 85/14
**officers' [1]** 30/1
**Official [2]** 1/21 90/3

**often [1]** 50/25
**Oh [2]** 49/18 86/11
**Okay [24]** 4/2 4/5 6/8 9/13 11/14 12/19 13/22 17/9 20/5 20/21 21/7 21/9 41/1 58/9 66/13 71/1 71/4 71/18 72/18 74/1 74/7 86/5 88/15 89/12
**old [2]** 12/23 41/24
**older [1]** 73/11
**Once [1]** 4/19
**one [51]** 5/5 7/9 9/1 9/3 12/21 14/17 14/18 15/12 15/19 24/20 25/23 27/1 28/14 30/5 30/25 35/5 38/16 42/11 43/4 43/4 43/9 48/3 48/6 48/12 51/4 53/7 54/8 55/2 56/5 56/13 57/7 59/21 62/16 64/4 64/8 64/23 64/25 66/19 67/24 68/20 68/20 70/6 73/15 75/8 75/22 78/12 78/15 79/10 88/13 88/20 88/24
**ones [2]** 33/20 36/18
**only [15]** 3/15 8/14 11/2 16/25 19/3 22/23 28/3 32/23 40/5 40/7 44/15 51/3 51/3 82/11 83/16
**onslaught [1]** 36/4
**open [2]** 67/21 84/10
**opened [2]** 64/23 68/11
**opinion [2]** 16/5 22/20
**opinions [3]** 69/20 69/21 71/11
**opportunity [1]** 65/22
**order [7]** 42/4 45/12 63/6 63/7 82/16 83/11 85/17
**ordered [3]** 48/17 82/14 83/13
**ordinarily [1]** 51/1
**ordinary [2]** 78/10 78/12
**organizing [1]** 73/8
**orienting [1]** 53/11
**original [2]** 3/4 48/6
**other [68]** 3/5 3/12 3/14 3/19 6/2 6/4 6/4 7/15 7/16 7/19 8/19 9/6

9/21 9/6 9/13 9/18 12/19 12/25 15/22 17/24 18/2 18/6 20/7 22/15 24/10 28/15 29/9 30/10 31/12 32/3 34/1 39/5 39/15 40/1 44/9 44/24 45/13 45/14 45/16 45/17 46/9 48/1 48/22 50/22 52/22 56/1 57/8 60/4 60/5 62/15 62/16 63/19 67/18 69/20 76/9 78/1 78/23 79/4 79/18 79/20 80/7 80/18 81/24 82/12 82/19 87/19 87/23 88/1 88/14
**other -- all [1]** 60/4
**others [14]** 10/11 29/25 34/23 38/20 38/23 66/22 67/22 75/11 76/8 77/11 78/7 80/2 80/5 81/23
**otherwise [3]** 77/25 82/24 86/1
**our [17]** 9/12 10/14 10/15 12/8 12/10 15/14 16/1 17/21 35/23 37/14 39/17 52/9 59/9 59/11 59/16 63/14 89/1
**our -- you [1]** 52/9
**out [24]** 28/15 29/11 33/25 37/14 37/15 43/4 45/8 45/21 46/13 46/13 50/15 51/1 52/1 52/15 53/19 57/6 60/21 64/25 67/6 72/7 73/4 73/13 73/17 77/25
**outcome [1]** 82/1
**outlined [2]** 57/6 84/14
**outside [4]** 30/12 32/25 42/22 45/2
**outstanding [2]** 3/7 5/2
**over [7]** 2/25 18/19 18/22 29/2 29/2 69/13 77/24
**overall [2]** 47/19 55/14
**overlap [1]** 25/20
**overrule [1]** 5/15
**overwhelmed [2]** 30/7 62/8
**overwhelming [2]** 62/9 75/24
**Owens [2]** 53/3 54/5
**own [4]** 31/20 32/11

# P

**P R O C E E D I N G S [1]** 2/1
**p.m [3]** 74/8 74/8 89/16
**Page [2]** 15/15 15/15
**Page 11 [1]** 15/15
**Page 12 [1]** 15/15
**pages [2]** 15/14 84/14
**Pages 25 [1]** 84/14
**pain [5]** 5/18 26/11 35/10 60/24 69/14
**painful [2]** 5/24 6/1
**panic [1]** 70/12
**paragraph [4]** 5/5 5/7 5/11 26/13
**Paragraph 22 [1]** 5/5
**Paragraph 26 [1]** 5/11
**Paragraph 33 [1]** 26/13
**Paragraphs [2]** 5/7 6/5
**Paragraphs 22 [1]** 6/5
**Paragraphs 26 [1]** 5/17
**parse [1]** 13/17
**part [6]** 76/11 78/18 81/13 81/20 82/6 83/16
**participant [2]** 30/4 75/21
**participate [2]** 36/9 84/5
**participated [3]** 34/2 34/3 79/17
**participating [1]** 37/24
**particular [9]** 5/1 11/21 27/5 42/22 56/14 57/18 76/17 81/25 88/24
**particularly [6]** 54/13 77/9 79/6 79/7 79/8 79/21
**parties [11]** 2/18 4/11 4/17 4/20 27/4 27/21 43/2 43/4 74/15 79/2 82/10
**parties' [1]** 75/5
**party [1]** 27/8
**pass [3]** 13/10 13/10 13/15
**past [6]** 33/5 46/11 47/16 48/14 80/4 80/17

**P**

path [1] 12/14
pattern [1] 54/13
pause [3] 21/8 72/9
88/4
pay [2] 82/18 83/13
payable [1] 83/17
peaceful [5] 33/8 34/4
43/4 59/15 78/13
pelted [1] 36/1
penalize [1] 48/10
penalties [2] 18/2 21/2
penalty [4] 48/5 48/6
48/17 48/18
people [25] 3/20 32/12
34/25 35/8 39/8 43/9
47/9 62/1 62/16 63/3
63/4 63/5 63/12 64/2
64/4 64/24 65/1 66/21
67/5 67/5 67/25 68/6
69/25 70/4 78/17
people's [1] 69/22
pepper [1] 47/12
per [1] 72/2
percent [1] 57/11
perfect [1] 54/12
perfectly [1] 68/14
performed [1] 66/22
perhaps [5] 4/25 10/11
24/14 24/19 81/5
period [5] 73/23 74/22
74/24 77/25 78/1
permission [3] 84/19
85/5 85/23
permit [1] 84/22
permitted [2] 3/23
87/11
person [14] 37/16 42/5
42/7 42/15 43/5 43/20
43/23 46/23 59/1 62/10
64/10 67/14 70/15 85/4
person-centered [1]
46/23
personal [3] 36/16
39/21 76/1
personally [5] 36/21
52/16 56/16 61/11 76/6
perspective [8] 3/13
4/13 32/11 32/12 32/14
50/13 50/16 55/25
phenomenal [1] 41/23
Phipps [5] 81/6 81/7
81/10 81/12 81/13
phone [2] 38/13 59/24

phones [1] 38/12
physical [2] 22/6
23/14
physically [1] 36/2
pick [1] 65/7
piece [1] 56/10
pierce [1] 70/10
pitchfork [17] 65/2
65/11 65/12 65/14
65/25 66/7 66/17 66/18
66/20 67/8 70/7 70/9
70/13 71/17 71/18
72/20 77/23
place [4] 22/6 60/18
62/8 62/14
placement [1] 67/8
plain [1] 84/25
Plaintiff [2] 1/3 1/12
planned [1] 75/14
planning [2] 75/17
81/2
planted [1] 35/18
play [4] 53/15 71/20
71/22 72/1
played [3] 43/19 72/17
72/25
plays [3] 57/10 57/11
57/12
plaza [1] 31/2
PLC [1] 1/18
plea [4] 26/9 38/2
50/19 54/14
plead [2] 26/8 51/4
pleaded [2] 79/12
80/10
pleading [2] 39/18
53/4
pleadings [3] 16/1
28/20 39/17
Pleasantries [1] 70/23
please [3] 2/6 27/14
34/19
pled [6] 51/1 52/14
52/17 52/23 53/13
53/25
plethora [1] 15/15
plunge [1] 65/24
plus [3] 53/14 53/18
59/3
plus-four [2] 53/14
53/18
pod [2] 69/23 69/23
point [20] 4/22 11/8
11/24 11/25 12/7 35/5

35/20 37/3 47/16 47/24
49/7 50/4 51/1 54/24
66/15 67/24 68/13
68/17 73/4 80/12
pointed [2] 26/15
45/21
pointing [1] 25/25
points [3] 26/20 51/16
66/6
police [10] 29/1 31/7
33/5 34/21 59/22 68/11
70/10 78/4 78/9 81/7
political [4] 42/23
42/24 43/1 79/23
politicians [1] 43/1
pool [1] 56/17
portion [3] 5/7 25/11
25/18
portions [1] 82/19
Portland [1] 48/1
pose [2] 68/20 68/21
posed [1] 76/18
position [7] 9/12 12/11
13/1 13/3 24/13 24/15
79/24
positions [4] 27/5 27/6
74/14 75/5
possess [1] 83/22
possibly [1] 8/11
post [3] 3/9 31/11
50/19
post-plea [1] 50/19
post-trial [2] 3/9 31/11
poster [1] 65/8
pounds [1] 69/13
poured [1] 37/14
pouring [2] 67/25 68/6
power [4] 33/9 34/5
78/14 78/15
prayer [1] 68/16
pre [2] 44/9 47/24
pre-January 6th [1]
44/9
pre-sentence [1]
47/24
precedent [1] 22/24
precise [1] 77/14
preclude [1] 84/9
preparation [1] 2/24
prepared [2] 12/16
88/7
prepay [4] 47/7 82/5
82/6 82/19
preponderance [1]

prerequisite [1] 19/4
presence [3] 13/14
59/22 69/12
presented [2] 46/21
55/16
presentence [3] 3/2
6/14 84/14
presided [1] 2/25
presidential [1] 75/13
pressure [2] 69/5 69/6
pretrial [1] 14/5
pretty [8] 13/9 13/15
21/3 24/1 49/4 50/18
77/12 86/23
prevent [2] 76/10 88/2
prevents [1] 78/9
previously [1] 24/14
pride [1] 64/4
pries [1] 41/13
priest [3] 59/10 59/10
59/13
primary [6] 22/8 28/13
30/5 32/16 42/24 75/22
Prince [1] 1/19
principally [1] 10/10
prior [2] 15/4 28/7
prison [1] 61/10
prisoner [1] 38/14
Prisons [1] 83/9
pro [5] 42/25 42/25
43/5 46/11 46/12
pro-life [2] 46/11 46/12
probably [2] 21/4 70/5
probation [16] 2/5
26/2 26/5 40/6 74/25
83/25 84/3 84/11 84/15
84/20 84/21 84/23 85/5
85/7 85/14 85/16
probation's [1] 3/2
problem [2] 24/18
24/19
proceed [4] 2/19 4/8
4/20 14/7
proceedings [5] 1/24
75/15 82/12 89/16 90/5
process [4] 34/4 49/25
50/4 65/5
processes [1] 70/4
produced [1] 1/25
professional [1] 36/15
professionally [1]
36/21
proficient [1] 63/4

**P**

profound [1] 61/12
program [2] 84/6 84/7
programs [1] 62/23
prohibited [1] 84/23
prominent [1] 10/12
promotes [1] 77/8
pronounce [3] 4/24
74/7 74/13
proof [3] 21/23 22/3
22/5
proper [3] 33/19 44/2
68/23
properly [1] 77/11
proportion [1] 57/12
proposal [1] 74/18
proposed [2] 48/6
83/1
proposition [4] 19/21
22/16 22/21 44/2
prosecution [2] 32/21
70/18
prosecutions [3]
39/11 40/17 47/19
prostate [1] 60/10
protect [3] 34/22 64/6
76/18
protecting [1] 35/23
protective [1] 36/2
protects [1] 35/1
protest [2] 59/15 59/18
protester [1] 70/12
protesting [1] 77/15
protestors [1] 76/9
protests [4] 46/9 46/11
46/12 79/18
prove [1] 63/7
provide [4] 36/17 54/2
82/3 84/3
provided [2] 26/6
79/15
provides [1] 79/10
provision [3] 17/14
23/6 23/24
PSR [17] 4/10 5/1 5/6
5/13 6/3 7/1 7/25 23/5
23/12 24/7 25/8 26/13
43/14 44/22 75/1 83/15
85/16
PSR's [1] 5/19
psychologist [1] 30/20
public [3] 32/14 38/12
47/20
pull [2] 41/18 41/20

pulled [9] 10/23 29/24
29/24 35/6 35/12 35/17
35/22 41/10 41/19
pulling [1] 55/11
pulls [1] 66/17
puppy [1] 59/11
pure [1] 63/12
purpose [1] 75/15
purposes [10] 2/24
3/10 7/3 8/3 9/17 15/7
18/12 18/15 19/7 85/11
pursuant [3] 6/25
85/18 87/3
push [2] 11/10 33/17
pushed [8] 29/16
29/19 33/17 33/23 59/5
59/6 60/1 68/18
pushes [2] 33/12
33/13
pushing [3] 33/10
64/20 68/19
put [9] 21/5 29/19 33/6
42/2 49/14 50/3 67/8
69/1 87/17
puts [1] 66/14
putting [3] 29/18
37/25 69/2

**Q**

qualification [1] 63/8
qualifies [1] 24/8
question [16] 3/24
11/21 12/3 12/15 12/20
17/10 17/15 19/7 19/22
20/23 24/6 27/25 50/11
67/2 78/17 78/20
questioned [2] 22/19
85/6
questions [5] 4/17 7/4
7/9 17/20 50/9
quit [1] 67/11
quite [8] 43/25 49/20
52/5 54/21 68/22 77/13
79/7 79/8

**R**

raise [1] 14/13
raised [9] 14/4 14/11
14/12 14/12 15/12
15/23 16/5 21/11 21/15
rally [1] 59/21
random [2] 35/8 66/24
range [19] 26/21 26/22
26/25 45/8 45/18 52/3

52/4 53/2 53/22 79/11
80/16 80/22 81/12 87/6
87/8 87/10 88/8 88/10
88/13
ranges [1] 80/11
reached [1] 16/17
Reaches [1] 66/17
reaching [1] 16/1
react [1] 60/15
read [2] 12/8 17/22
reading [3] 10/14
10/15 40/12
ready [1] 2/18
realize [3] 54/20 54/24
65/17
realized [1] 49/4
really [17] 3/9 5/6 7/9
9/24 12/5 13/8 13/14
13/14 13/19 59/23
68/13 68/16 69/6 69/7
71/10 74/23 77/16
realm [1] 83/3
reason [9] 8/10 9/15
9/25 13/2 21/4 25/7
44/1 73/6 83/3
reasonable [1] 28/8
reasonably [2] 85/8
85/11
reasoning [6] 16/16
16/18 22/11 22/23
23/13 87/24
reasons [10] 13/5
22/13 25/2 25/20 28/14
32/16 33/19 34/9 55/7
83/15
recalculation [1] 28/9
recall [1] 43/18
receive [1] 80/14
received [7] 33/24
51/5 53/5 77/1 80/21
81/6 81/13
recent [4] 16/11 16/14
17/4 45/3
recently [2] 3/1 16/10
recess [5] 4/25 58/3
58/11 74/6 74/8
recidivism [2] 77/13
77/17
recognize [1] 34/7
recognized [1] 25/15
recognizing [2] 27/4
53/17
recollection [1] 70/22
recommend [2] 28/10

recommendation [6]
3/3 28/7 51/23 79/23
88/19 89/2
recommended [3]
44/22 53/1 75/2
recommends [2]
28/13 34/10
reconsideration [1]
3/1
record [21] 2/7 3/11
5/3 5/13 23/19 27/7
27/9 27/15 27/18 41/24
57/21 58/6 58/13 72/21
72/24 74/10 77/23 82/1
88/5 88/8 90/5
recorded [1] 1/24
recordings [3] 38/7
38/8 38/15
reduction [4] 26/3
26/4 26/17 81/14
Reed [1] 51/19
refer [1] 7/16
reflect [5] 78/4 79/3
79/23 81/18 82/2
reflected [2] 77/22
81/19
reflects [1] 10/22
refrain [1] 83/22
refusal [1] 32/24
refused [2] 32/1 34/7
refuses [1] 32/9
regard [1] 54/11
regarding [9] 4/1 5/9
5/11 5/17 6/19 7/1 24/5
26/12 77/4
regardless [3] 45/16
86/20 87/3
regards [1] 35/25
regret [3] 38/5 70/6
70/6
regrets [6] 29/18 42/10
42/10 42/13 42/22
81/21
regretted [3] 37/21
37/24 37/25
regulations [1] 84/6
rehabilitated [1] 46/20
rehabilitation [2]
46/21 47/2
reject [1] 5/19
related [2] 23/25 85/9
relates [1] 5/5
relationship [1] 76/25

**release [10]** 27/1 48/11 48/12 48/16 74/20 75/3 83/12 84/5 84/17 85/16
**relevant [10]** 5/8 7/17 9/21 23/5 23/24 24/22 56/23 79/21 81/15 85/9
**relies [3]** 16/7 21/25 22/8
**relying [3]** 21/16 36/3 86/24
**remained [2]** 36/2 76/7
**remaining [1]** 36/13
**remorse [24]** 28/18 31/18 31/19 31/21 32/19 37/19 37/20 38/5 38/5 54/21 54/23 56/21 59/1 59/7 60/7 61/7 61/8 61/12 62/4 81/17 81/18 81/19 81/19 81/22
**remorseful [2]** 79/7 79/7
**render [1]** 42/4
**renewal [1]** 27/20
**renewing [1]** 27/17
**repeatedly [2]** 29/2 77/18
**repeating [1]** 39/7
**report [6]** 3/2 6/14 6/18 63/15 84/14 84/15
**Reported [1]** 1/21
**reporter [3]** 1/21 67/10 90/3
**reproduced [1]** 26/12
**Republican [1]** 43/3
**request [4]** 72/2 73/21 85/23 89/3
**requested [4]** 44/15 45/7 71/25 84/4
**requesting [2]** 47/17 48/15
**requests [2]** 47/9 74/16
**require [1]** 19/9
**required [3]** 19/4 21/20 83/18
**requirement [2]** 84/1 84/9
**requirements [1]** 26/17
**requires [10]** 13/12 13/13 13/13 17/12

19/1 21/6 21/21 21/23 22/3 22/5
**requisite [1]** 26/6
**research [1]** 67/17
**researched [1]** 60/20
**researcher [2]** 60/20 62/21
**reserve [2]** 15/8 15/10
**reside [2]** 84/16 84/19
**resisted [1]** 76/8
**resolution [1]** 16/4
**resolve [1]** 24/23
**resource [1]** 35/12
**respect [15]** 3/12 4/10 5/16 28/16 31/1 31/14 32/18 35/1 64/5 64/5 70/17 71/8 71/9 77/8 78/4
**respectfully [1]** 9/8
**respond [1]** 55/12
**response [4]** 15/24 47/12 57/17 57/19
**responsibilities [2]** 36/12 36/21
**responsibility [21]** 17/12 26/2 26/3 26/7 26/17 32/9 34/8 39/21 40/3 40/4 50/24 51/5 52/19 53/4 53/20 54/14 56/21 79/8 79/9 81/14 82/7
**responsible [1]** 36/23
**responsive [1]** 50/9
**rest [2]** 69/16 88/3
**restitution [14]** 47/6 47/7 47/8 47/13 47/16 74/19 75/4 82/3 82/5 82/6 82/11 82/11 82/14 82/18
**restrictions [1]** 84/9
**restrictive [1]** 21/3
**result [3]** 23/23 65/10 78/24
**resulted [1]** 74/22
**resulting [1]** 52/3
**results [1]** 75/13
**retribution [2]** 47/21 47/21
**returned [1]** 36/11
**review [6]** 6/15 14/15 50/2 72/14 72/19 86/21
**reviewed [3]** 3/2 25/14 79/16
**Rice [3]** 16/9 17/6 17/7

right [29] 6/12 7/2 8/12 8/17 9/14 10/18 13/6 18/18 19/6 20/21 35/18 35/19 37/21 39/17 40/10 49/8 50/18 51/6 52/6 55/25 64/8 64/22 64/24 65/11 69/4 69/21 69/24 82/8 85/18
**right-handed [1]** 64/22
**rightly [1]** 80/8
**riot [11]** 29/14 29/22 33/3 33/18 41/10 76/15 78/8 78/11 78/12 78/19 81/3
**rioter [1]** 41/12
**rioters [7]** 28/16 29/11 30/6 34/5 75/14 75/23 78/23
**riots [2]** 30/5 75/21
**risk [3]** 33/6 77/13 77/17
**Robert [1]** 51/11
**role [3]** 43/19 57/11 57/13
**room [1]** 64/7
**roomful [1]** 62/1
**rope [1]** 81/3
**rough [1]** 52/10
**route [2]** 13/6 23/14
**routinely [1]** 54/15
**RPR [1]** 1/21
**rule [19]** 6/25 14/4 14/17 14/18 14/20 14/24 15/1 15/7 15/8 28/17 31/1 31/8 31/15 32/18 36/14 36/24 57/11 70/17 78/5
**Rule 12 [1]** 14/4
**Rule 29 [3]** 14/18 14/20 15/8
**Rule 32 [1]** 6/25
**Rule 33 [1]** 14/17
**ruled [1]** 15/3
**rules [3]** 12/8 14/17 84/6
**ruling [2]** 86/18 87/13
**run [1]** 79/5
**running [1]** 86/3

S

**sacred [1]** 35/23
**safe [1]** 36/17
**said [32]** 8/5 9/16 9/25 13/1 15/1 15/16 18/19

22/21 30/4 31/13 37/5 37/6 40/4 40/18 41/9 46/9 59/4 59/6 66/12 68/3 68/7 68/8 71/15 72/23 75/9 75/20 75/21 79/5 81/18 86/9 86/15 86/23
**sailors [1]** 63/20
**sake [1]** 73/18
**salient [1]** 80/6
**same [19]** 9/15 14/8 24/18 25/4 27/17 33/14 33/21 44/18 57/1 80/3 80/3 81/2 81/21 81/23 87/2 87/7 87/14 88/9 88/11
**sat [1]** 59/11
**satisfied [1]** 6/21
**satisfy [1]** 26/16
**satisfying [1]** 22/17
**saved [1]** 70/13
**saw [3]** 29/3 69/22 69/22
**say [30]** 6/4 7/25 8/2 12/12 12/21 13/5 19/15 24/15 41/8 47/6 47/13 49/18 56/25 60/25 61/1 63/9 65/19 66/21 71/10 72/18 73/22 77/17 77/24 78/17 86/11 86/22 86/25 87/2 87/5 87/11
**saying [11]** 16/25 37/14 39/12 42/5 46/2 52/5 68/16 69/24 69/25 88/12 89/2
**says [10]** 7/19 8/24 9/4 10/22 29/17 32/2 32/8 45/15 66/8 66/13
**scheme [1]** 25/6
**school [1]** 67/10
**SCI [1]** 62/23
**scintilla [1]** 60/2
**screamed [1]** 68/3
**screaming [1]** 67/22
**screwed [1]** 86/1
**sea [2]** 29/10 34/25
**Seattle [1]** 48/1
**second [3]** 11/25 49/22 65/4
**Secondarily [1]** 67/7
**secret [2]** 62/22 62/22
**section [11]** 21/19 26/1 44/4 51/15 54/16

**section...** [6] 55/17 57/7 74/12 80/9 82/24 85/18
**Section 111** [4] 21/19 51/15 54/16 80/9
**Section 3742** [1] 85/18
**secure** [1] 70/7
**securing** [1] 70/18
**security** [1] 64/6
**see** [7] 17/22 20/11 31/11 65/18 72/13 72/22 89/5
**seeing** [1] 68/14
**seeking** [2] 44/17 87/20
**seem** [2] 24/8 47/14
**seems** [7] 7/16 17/10 24/18 24/21 32/22 52/7 81/17
**seen** [9] 15/22 32/10 41/17 41/17 62/16 66/11 66/18 66/19 68/22
**selected** [1] 89/4
**selective** [1] 32/21
**self** [1] 46/21
**self-rehabilitation** [1] 46/21
**send** [1] 60/25
**sense** [8] 3/9 8/14 17/22 39/21 40/13 40/14 44/21 63/8
**sensed** [1] 39/19
**sensitive** [1] 78/20
**sentence** [60] 2/16 4/21 4/25 7/3 27/22 28/8 28/10 28/12 30/4 32/17 34/10 42/14 44/3 44/15 44/16 45/7 45/12 47/24 51/18 51/20 52/25 53/5 54/18 54/20 55/9 55/23 56/14 56/14 56/25 57/2 58/8 73/17 74/7 74/13 75/6 76/21 77/8 77/10 78/22 78/25 79/2 79/11 79/23 80/21 81/6 82/20 82/23 82/23 83/4 83/7 85/17 85/19 86/19 87/2 87/7 87/14 87/22 88/9 88/11 88/15
**sentenced** [12] 45/6 52/4 52/20 52/25 53/8 53/24 54/1 56/16 79/4

**sentences** [7] 55/21 55/23 74/14 80/4 80/5 80/15 87/19
**sentences -- at** [1] 80/15
**sentencing** [20] 1/8 3/3 3/6 3/11 6/19 14/12 14/13 14/14 21/12 27/5 29/15 47/22 47/23 50/17 54/15 73/22 75/1 75/20 85/9 85/11
**sentencings** [1] 79/4
**separate** [5] 18/25 20/8 20/10 21/2 61/10
**separately** [1] 11/10
**serious** [4] 44/14 53/18 75/10 76/2
**seriousness** [2] 75/8 76/19
**serve** [2] 73/17 83/11
**served** [7] 48/7 48/14 48/18 73/24 74/23 76/25 83/6
**service** [6] 37/7 48/15 48/16 61/6 71/9 77/2
**services** [1] 6/22
**session** [1] 75/12
**sessions** [1] 77/4
**set** [1] 85/9
**sets** [1] 4/12
**seven** [1] 57/7
**several** [3] 75/24 75/24 83/19
**severe** [7] 44/11 48/4 55/20 56/18 56/19 79/18 80/18
**severity** [1] 36/22
**shaken** [1] 36/4
**Shakespeare** [1] 63/9
**shall** [2] 84/13 85/16
**Shane** [1] 70/2
**shaping** [1] 43/19
**share** [3] 25/3 25/5 36/19
**sharpened** [1] 66/25
**she** [8] 4/6 4/6 58/18 72/13 73/11 73/12 73/14 84/24
**sheer** [2] 30/6 75/23
**shepherd** [1] 59/11
**Sherry** [1] 2/5
**shield** [25] 5/21 10/23 29/17 29/18 29/20

33/17 35/9 35/10 37/25 39/22 41/10 41/12 41/14 41/18 41/19 41/19 41/20 59/6 59/6 60/2 68/19 76/15
**shields** [1] 68/18
**shirt** [2] 42/3 42/6
**shocked** [1] 67/25
**shocking** [1] 60/22
**shoot** [1] 70/12
**short** [2] 4/25 55/11
**shorthand** [1] 1/24
**should** [25] 3/13 3/25 4/21 10/5 12/10 14/12 16/20 16/21 21/15 23/11 24/24 25/2 25/8 30/23 35/22 39/20 45/22 45/25 48/18 55/13 55/15 68/1 70/5 86/10 87/24
**shouldn't** [5] 12/23 13/6 55/23 69/8 69/9
**show** [2] 65/10 72/11
**showed** [1] 35/25
**showing** [5] 41/12 42/21 55/19 55/20 56/1
**shown** [1] 37/22
**shows** [4] 32/23 48/3 64/19 65/21
**shy** [1] 62/7
**side** [1] 74/3
**sides** [1] 70/25
**SIGINT** [1] 62/23
**SIGINTor** [2] 63/7 63/18
**SIGINTors** [2] 63/6 63/11
**significant** [8] 22/12 25/11 25/18 31/15 31/17 43/14 76/21 87/17
**significantly** [2] 44/16 55/20
**similar** [20] 5/22 16/18 18/17 18/17 33/22 38/24 44/6 44/8 44/9 52/23 55/16 55/18 55/19 56/21 78/6 80/2 80/5 80/13 81/5 81/8
**similarly** [5] 12/25 51/19 79/25 80/1 87/20
**simple** [1] 72/8
**simply** [2] 34/22 42/25

**simultaneously** [1] 14/8
**since** [11] 28/18 28/19 30/25 31/10 41/25 62/4 68/22 69/19 73/4 73/10 77/3
**single** [3] 15/8 48/3 69/19
**sir** [4] 14/1 34/18 57/5 61/13
**sister** [2] 60/9 77/3
**sit** [1] 59/10
**sitting** [1] 62/2
**situated** [1] 79/25
**situation** [3] 56/15 59/14 60/15
**six** [7] 23/25 26/25 48/14 48/15 73/11 83/10 83/12
**six months** [4] 26/25 48/15 83/10 83/12
**six years** [1] 73/11
**six-level** [1] 23/25
**Sixth** [1] 22/19
**slamming** [1] 5/23
**slight** [1] 53/1
**slightly** [2] 52/1 80/20
**small** [2] 35/13 54/17
**smart** [3] 30/17 30/18 67/19
**smoke** [1] 73/13
**smoked** [1] 63/23
**so** [93]
**solely** [1] 21/16
**some** [18] 12/14 33/24 35/5 38/19 44/10 47/11 50/22 56/9 59/18 66/21 70/4 73/16 79/23 80/15 80/18 81/18 81/19 81/24
**someone** [15] 33/10 33/11 33/12 33/12 33/13 38/10 63/15 65/18 66/12 68/24 69/15 70/9 70/12 85/1 85/3
**someone's** [1] 61/10
**something** [18] 5/22 15/20 39/6 39/20 56/9 59/18 59/19 59/23 61/5 62/6 62/18 62/20 64/3 65/13 65/20 67/9 78/20 88/1
**sometimes** [3] 50/19

**sometimes... [2]** 50/19 51/12
**somewhat [4]** 53/19 57/10 80/11 81/8
**soon [1]** 35/21
**sorry [12]** 14/25 28/2 34/16 46/4 46/5 54/23 59/5 60/23 69/6 69/7 70/21 71/10
**sort [10]** 25/25 26/6 35/5 50/3 50/11 53/11 53/16 62/17 65/25 81/23
**sorts [1]** 35/13
**sound [1]** 52/5
**sounds [2]** 3/20 88/1
**speak [8]** 3/20 4/4 4/6 4/23 12/16 34/15 52/16 58/7
**speaking [4]** 13/19 38/15 38/19 63/18
**special [8]** 27/2 62/23 83/13 83/16 84/2 86/8 86/14 86/15
**specific [8]** 43/16 45/23 46/2 46/17 46/18 57/18 70/22 89/3
**specifically [6]** 5/21 39/1 39/12 43/3 45/14 87/20
**spectrum [4]** 53/12 56/18 56/21 79/6
**spent [2]** 43/25 46/16
**split [1]** 65/4
**spoke [1]** 71/5
**spoken [3]** 40/6 40/8 43/10
**spouses [1]** 43/11
**spray [4]** 29/8 47/12 76/4 76/16
**spreadsheet [3]** 49/3 49/17 49/24
**St [1]** 1/19
**stable [1]** 36/17
**stairs [9]** 64/21 65/7 65/18 65/21 65/22 65/23 66/14 68/16 69/11
**stairways [1]** 67/4
**stand [3]** 28/15 61/18 62/17
**standard [1]** 47/8
**standing [4]** 35/13

**stands [1]** 28/7
**start [11]** 7/5 13/24 14/2 17/11 27/23 28/5 28/21 37/14 62/14 65/16 67/9
**started [4]** 60/15 67/25 68/2 68/6
**starting [3]** 21/9 25/25 64/18
**state [7]** 16/19 16/25 27/9 39/1 83/21 88/7 89/4
**stated [6]** 14/7 17/21 23/14 27/7 76/14 88/3
**statement [14]** 3/17 26/12 30/20 31/20 38/3 38/16 40/24 41/9 58/17 58/24 61/18 62/11 72/3 88/6
**statements [11]** 5/9 26/14 28/20 31/11 38/17 38/25 39/5 39/9 39/13 60/6 68/14
**states [10]** 1/1 1/2 1/9 2/3 2/9 5/7 16/9 17/6 22/9 75/11
**stating [1]** 76/5
**station [1]** 33/13
**status [1]** 24/2
**statute [1]** 82/12
**statutes [1]** 49/19
**statutory [2]** 75/7 82/13
**stay [1]** 67/3
**stayed [1]** 28/24
**steadfast [1]** 36/3
**stenotype [1]** 1/24
**steps [5]** 59/17 65/12 65/16 66/15 66/16
**stereotype [1]** 63/3
**Sterling [27]** 3/16 3/20 5/24 10/11 10/16 10/18 10/19 10/25 11/3 25/4 25/5 25/10 25/17 25/19 26/11 29/6 29/6 29/9 31/23 32/3 34/13 34/20 41/10 68/12 71/5 76/17 78/2
**Sterling's [3]** 5/20 32/12 76/16
**stick [1]** 41/14
**sticks [1]** 67/1
**still [5]** 2/17 14/15 23/2

**stimuli [1]** 32/6
**stood [2]** 30/12 31/5
**Stop [2]** 67/23 67/23
**stopped [1]** 68/3
**stopping [1]** 33/8
**story [3]** 67/15 71/11 71/13
**straight [1]** 69/3
**strange [2]** 24/7 60/18
**street [4]** 1/13 1/16 33/10 33/12
**strengths [2]** 30/5 75/22
**stress [1]** 60/3
**stripped [1]** 36/1
**strive [1]** 36/17
**strong [1]** 68/21
**struck [3]** 29/20 68/19 71/7
**struggled [1]** 73/6
**student [1]** 67/11
**stuff [2]** 63/6 71/16
**stupid [4]** 69/8 69/18 69/19 69/20
**subject [1]** 51/3
**submitted [2]** 33/20 42/21
**subsequent [1]** 67/21
**substance [3]** 21/17 83/22 83/23
**substantial [2]** 25/20 51/9
**substantive [1]** 12/5
**succeed [1]** 70/16
**succeeded [1]** 67/22
**such [4]** 19/9 21/23 77/12 78/15
**suffering [1]** 73/10
**sufficiency [1]** 14/21
**sufficient [5]** 14/20 26/14 46/16 47/5 87/24
**sufficiently [2]** 47/20 78/23
**suggest [2]** 28/3 39/10
**suggesting [4]** 24/13 57/3 75/18 81/25
**suggests [1]** 28/8
**sui [1]** 33/1
**Suite [1]** 1/19
**summarize [1]** 74/14
**sumo [1]** 68/25
**supervised [6]** 27/1 48/12 48/16 74/20 75/3

**supervision [4]** 83/18 84/24 85/13 85/14
**supplemental [2]** 3/4 21/12
**support [3]** 3/5 16/11 35/14
**supported [2]** 43/1 43/3
**supports [2]** 17/5 17/6
**supposed [3]** 44/3 57/13 68/17
**Supreme [9]** 13/4 14/6 15/16 16/8 16/11 16/12 16/14 16/23 16/24
**sure [18]** 5/4 10/2 10/4 12/1 12/4 16/23 20/19 35/14 39/14 46/25 49/1 55/13 55/15 58/5 68/12 71/21 87/1 87/25
**surprised [1]** 59/23
**surreal [1]** 61/24
**suspect [1]** 22/11
**suspected [1]** 67/7
**swatting [1]** 76/15
**swept [1]** 65/1
**sworn [1]** 72/4
**swung [1]** 80/22
**sympathies [1]** 61/9

**T**

**table [1]** 52/8
**tacking [1]** 18/2
**take [13]** 4/24 5/10 22/2 32/24 38/2 42/6 58/5 64/4 70/7 72/12 74/6 80/12 84/23
**taken [3]** 27/4 50/5 78/3
**takes [10]** 9/4 41/13 43/8 60/8 60/8 60/9 60/11 66/13 66/14 77/2
**taking [3]** 3/10 39/21 40/3
**talk [6]** 6/17 32/20 39/23 40/14 48/21 48/24
**talked [7]** 29/6 42/23 46/2 59/24 62/15 69/23 69/23
**talking [8]** 8/3 38/18 38/19 39/1 40/12 44/1 62/1 64/10
**talks [6]** 30/20 39/24

**T**

**talks... [4]** 42/3 44/2 59/17 61/9
**tap [1]** 29/17
**target [1]** 63/14
**targeting [1]** 22/13
**taught [1]** 60/19
**taunted [2]** 30/13 31/8
**Taylor [1]** 59/16
**teacher [1]** 60/19
**team [3]** 35/14 35/18 36/12
**teammates [1]** 43/8
**tear [2]** 5/7 76/6
**technically [1]** 15/9
**technologically [1]** 72/8
**television [1]** 32/15
**tell [1]** 15/19
**telling [1]** 69/10
**ten [1]** 58/5
**tend [2]** 62/8 63/4
**tendency [1]** 62/19
**tenor [3]** 39/13 40/11 40/18
**term [2]** 83/9 83/14
**terms [8]** 26/23 46/17 51/1 55/24 57/17 68/21 83/9 83/11
**Terrace [1]** 76/13
**terrible [2]** 70/11 70/13
**territory [1]** 62/25
**test [4]** 13/10 13/11 13/16 22/1
**testified [1]** 61/25
**testify [2]** 70/18 70/18
**testimony [3]** 5/20 66/4 72/1
**testing [1]** 83/25
**Texas [4]** 88/21 89/7 89/8 89/10
**than [27]** 6/4 6/5 10/14 16/14 20/25 24/19 25/1 30/10 39/15 44/16 45/7 45/8 45/19 46/18 47/5 48/4 55/8 56/1 66/11 73/11 76/21 78/1 80/11 80/18 81/12 85/10 88/1
**than -- conveying [1]** 39/15
**thank [43]** 4/7 6/8 6/24 21/7 27/11 27/19 34/10 34/11 35/5 37/4 37/4 37/5 37/6 37/9 37/10

37/11 37/13 48/19 49/9 49/10 49/12 55/10 55/10 57/24 57/25 58/10 58/14 58/23 61/2 61/14 61/14 61/16 61/22 73/2 73/19 73/20 74/2 74/11 86/5 86/12 86/17 88/23 89/15
**that [484]**
**that's [46]** 7/12 8/17 9/13 9/21 9/21 12/3 13/18 13/20 15/9 15/14 15/18 16/8 16/9 18/20 19/3 25/25 29/11 29/18 30/8 31/20 31/25 33/2 33/16 40/7 40/10 40/22 41/11 42/4 42/5 42/6 42/7 43/5 43/21 44/21 46/6 46/19 47/14 51/8 55/24 57/3 57/17 59/6 61/10 66/10 78/16 89/2
**their [10]** 27/20 30/6 35/9 36/10 37/1 66/17 70/18 77/20 80/10 87/19
**them [25]** 5/4 9/24 16/13 16/15 23/3 29/10 31/8 35/1 38/8 43/12 43/18 55/2 56/5 63/15 64/12 67/13 69/15 70/19 74/18 75/23 76/18 79/16 79/16 80/15 81/16
**them -- in [1]** 80/15
**themselves [1]** 76/18
**then [21]** 4/11 4/19 4/24 5/17 9/14 13/7 17/16 17/16 17/17 18/7 20/6 26/1 28/18 49/6 58/7 65/16 65/20 67/2 68/5 73/17 74/25
**therapy [2]** 46/22 46/23
**there [67]** 3/18 5/1 5/3 5/19 6/2 9/25 13/9 15/17 18/25 19/1 19/3 19/17 20/8 20/10 23/15 26/23 27/7 28/16 28/25 29/8 30/4 32/3 33/7 38/12 44/14 47/11 47/12 50/14 50/25 51/22 52/2 52/18 53/17 53/20 54/13 57/7 59/18 59/22 62/1 62/2 62/17

65/3 65/6 65/23 65/25 66/2 66/21 66/23 66/25 67/6 67/8 67/18 68/4 70/4 70/22 71/2 73/10 78/11 82/15 86/4 86/8 87/4 88/24
**there's [23]** 8/24 11/12 17/12 18/19 23/25 24/4 24/21 24/24 25/13 25/24 27/2 30/16 33/11 41/11 46/18 47/13 55/2 56/3 59/16 67/22 69/5 73/9 89/14
**therefore [4]** 26/18 26/20 26/21 85/15
**these [25]** 5/5 13/8 13/23 14/10 16/12 16/23 21/9 25/2 38/15 39/4 39/8 49/19 50/8 51/12 52/10 53/13 54/11 55/15 55/19 55/23 56/4 60/4 81/15 85/8 85/12
**they [40]** 4/20 5/3 10/5 13/1 14/9 16/22 17/1 23/1 23/2 27/19 27/22 28/22 28/22 29/7 29/7 38/9 38/20 38/24 40/4 40/14 40/16 43/11 44/11 51/3 51/4 53/16 55/19 55/21 62/3 64/3 64/3 65/19 67/4 67/12 69/22 69/23 70/5 75/18 78/10 79/17 80/8
**they -- he [1]** 40/4
**they're [5]** 16/16 17/23 52/23 54/11 69/24
**They've [1]** 46/12
**thing [10]** 3/15 11/8 28/2 44/18 59/4 60/13 62/16 73/8 78/15 82/8
**things [15]** 12/13 13/14 18/17 33/24 39/7 42/10 56/22 60/5 61/9 64/8 64/18 69/21 78/1 81/18 86/7
**think [79]** 5/2 5/3 7/12 8/6 8/17 8/21 8/22 8/23 9/7 10/7 10/22 11/1 11/5 12/14 13/3 13/8 13/18 14/3 16/6 17/3 17/4 17/5 17/6 17/7 17/11 18/14 19/10

20/14 20/23 20/25 20/25 21/3 24/12 24/14 34/1 34/12 40/16 40/21 41/2 44/22 46/20 47/20 48/5 48/9 48/17 48/24 50/8 53/10 54/12 54/21 55/7 55/14 56/24 57/3 57/7 57/10 58/7 59/21 60/18 62/14 69/22 70/11 72/10 72/18 77/12 77/13 78/6 81/20 82/1 82/6 82/22 83/1 86/8 86/9 86/23 87/17 87/22 87/23
**thinking [6]** 42/24 62/2 62/18 64/17 82/7 82/19
**third [1]** 28/18
**this [161]**
**Thompson [2]** 33/20 79/10
**those [59]** 3/9 4/17 5/10 7/2 10/8 10/24 11/6 11/12 12/17 13/5 13/14 14/19 15/12 16/24 17/20 18/12 25/20 27/6 30/1 30/2 30/12 30/25 31/7 32/14 32/16 33/7 33/15 33/19 34/9 36/23 36/25 38/6 38/9 40/5 40/9 42/12 42/13 43/6 43/15 44/25 48/3 48/15 48/25 54/2 54/3 55/1 56/22 63/1 64/4 65/7 65/7 66/22 69/21 70/6 75/5 75/15 78/10 79/17 80/8
**though [7]** 24/19 31/18 36/4 42/14 46/10 67/24 74/18
**thought [8]** 24/15 31/4 59/15 59/17 59/19 59/25 65/5 68/1
**thoughts [1]** 36/19
**thousands [1]** 29/11
**three [16]** 2/17 13/8 13/23 27/1 28/13 32/16 48/7 48/12 48/14 50/2 51/12 66/19 74/19 74/23 81/13 83/6
**three months [3]** 48/7 74/23 83/6
**three years [4]** 27/1 50/2 66/19 74/19
**three-first-name [1]**

**T**

three-first-name... [1] 51/12
three-level [1] 81/13
three-years [1] 48/12
threw [1] 33/23
through [13] 4/18 16/8 28/19 28/20 58/8 64/24 65/1 65/24 67/25 68/6 68/6 68/10 74/12
throughout [1] 43/2
thrown [3] 64/18 66/24 69/15
thus [2] 65/6 82/21
tide [1] 65/24
time [26] 6/17 13/20 15/21 21/12 27/8 28/23 28/25 34/12 36/7 39/17 40/7 43/25 46/14 48/11 48/12 48/13 49/22 50/4 61/25 62/13 63/23 67/3 68/18 74/23 83/6 84/22
time-intensive [1] 50/4
time-served [1] 74/23
timeliness [2] 14/2 15/11
timely [2] 12/1 14/3
times [6] 14/7 36/18 62/8 75/9 75/24 76/6
timing [2] 11/20 21/16
tines [2] 65/13 66/25
today [16] 3/11 4/9 13/19 22/10 24/13 28/20 31/11 37/5 40/7 48/18 50/17 51/17 54/22 62/11 77/23 85/21
together [11] 3/5 18/1 21/6 24/24 25/3 38/12 49/15 55/11 78/3 86/14 88/14
told [2] 37/23 37/25
tomorrow [1] 85/21
too [3] 12/13 21/13 56/1
took [7] 22/6 24/12 29/13 40/4 42/3 70/3 70/14
tools [1] 85/13
top [3] 62/22 62/22 67/23
topics [1] 13/23
Torres [1] 17/3
total [7] 20/12 20/17

318/57/ 74/16 75/2 86/16
totality [2] 20/18 20/19
Totally [1] 57/20
touched [1] 42/2
towards [4] 48/16 65/16 65/22 81/7
town [1] 63/18
trade [1] 62/21
tragic [1] 43/12
train [1] 33/14
training [1] 36/3
transaction [1] 25/4
transcript [3] 1/8 1/25 90/4
transcription [1] 1/25
transfer [2] 33/8 34/4
transformative [1] 61/13
transition [1] 78/13
transitions [1] 78/15
travel [1] 7/20
treat [1] 79/25
treated [2] 25/8 80/2
treatment [1] 84/6
tremendous [1] 36/6
trial [23] 2/25 3/9 3/11 5/14 5/20 14/4 14/8 14/11 14/18 15/10 23/20 28/19 29/5 31/10 31/11 31/13 37/6 38/1 38/3 46/23 50/15 51/15 76/14
trials [1] 51/11
tried [5] 33/5 41/4 64/11 65/14 67/21
true [6] 23/18 37/18 37/20 81/20 81/23 90/4
truly [1] 70/14
Trump [1] 59/21
trust [1] 66/10
try [2] 60/14 70/15
trying [9] 7/17 12/2 29/10 67/5 67/9 67/13 76/3 88/1 88/2
tunnel [10] 10/17 29/4 29/7 29/16 30/13 31/7 33/8 33/22 35/22 76/13
turn [3] 26/1 48/21 65/22
turned [1] 41/25
turning [6] 5/1 7/4 11/15 23/1 25/22 77/7
turns [2] 66/4 66/7

twice [1] 59/6
two [24] 4/12 7/8 11/12 15/14 16/3 16/4 16/21 17/20 18/1 18/7 18/10 18/12 18/19 18/23 25/3 28/16 28/25 42/10 42/12 43/8 50/14 51/16 71/22 88/24
two hours [2] 18/7 18/10
two minutes [1] 71/22
type [1] 63/6
types [3] 16/21 16/22 55/21

**U**

U.S [3] 1/22 49/23 79/20
U.S. [1] 85/18
U.S. Code [1] 85/18
U.S.C. [2] 43/25 44/2
U.S.C. 3553 [1] 43/25
uh [1] 68/8
unable [1] 85/22
unacceptable [1] 78/19
unbiased [1] 36/13
uncertain [1] 36/18
uncharacteristic [1] 69/7
unconvinced [1] 82/15
uncriminal [3] 32/8 55/5 55/6
under [20] 8/10 8/11 14/15 14/19 15/8 15/12 16/18 20/1 21/20 24/1 24/9 24/25 25/6 25/9 25/12 25/24 44/4 80/9 80/9 85/13
undercover [1] 63/5
underlying [1] 44/21
understand [11] 11/21 15/6 19/13 36/13 42/17 50/23 52/12 57/20 60/14 68/17 77/22
understanding [1] 2/24
understated [1] 36/23
understood [2] 51/10 57/20
unfortunately [2] 43/11 49/20
unfounded [2] 39/11 40/17

unguarded [1] 68/11
unique [5] 15/20 50/12 50/18 56/15 63/19
UNITED [9] 1/1 1/2 1/9 2/3 2/9 16/8 17/6 22/9 75/11
university [1] 67/10
unlawful [1] 83/23
unlawfully [1] 83/22
unless [1] 9/4
unlike [5] 22/3 22/5 33/2 80/25 81/9
unlikely [1] 77/14
unnecessary [1] 47/3
unprecedented [1] 33/2
unpublished [1] 22/20
unquestionably [1] 75/10
unspecified [1] 75/3
until [2] 16/2 71/13
untimely [1] 11/17
unusual [2] 54/20 54/21
unwarranted [4] 56/14 79/2 82/23 83/3
up [20] 28/20 30/24 31/10 35/24 53/20 58/19 63/16 65/7 65/7 66/17 67/6 68/7 68/7 69/3 69/11 71/7 71/13 72/5 78/2 86/1
upheld [2] 36/5 36/24
upholding [3] 35/11 36/14 36/20
upper [1] 55/8
us [7] 37/2 55/17 55/24 55/25 78/16 88/3 89/5
USAO [2] 1/12 1/15
usdoj.gov [2] 1/14 1/17
use [7] 5/12 7/10 9/3 9/4 55/24 81/7 83/23
used [4] 5/14 21/1 70/9 75/16
using [4] 17/23 17/23 35/9 41/14

**V**

VA [1] 1/19
vandalism [1] 75/17
variance [7] 44/21 45/10 53/1 74/22 83/1 83/4 83/5

**V**

variance/departure [1] 83/1
variety [2] 44/14 46/12
various [11] 3/3 16/8 27/4 35/3 35/3 35/8 39/18 39/25 43/1 75/7 76/4
vary [1] 82/21
verdict [14] 2/25 3/1 5/10 5/14 10/9 10/12 10/13 10/22 11/1 11/9 23/13 25/14 25/15 76/14
versa [1] 17/25
versus [6] 2/3 16/19 16/25 18/24 22/9 44/11
very [41] 4/5 7/16 16/18 17/4 25/5 25/7 28/25 30/17 33/16 35/1 52/10 55/3 55/11 56/16 57/11 58/18 60/22 61/14 63/11 63/11 63/16 63/19 63/21 64/6 66/16 68/21 69/7 69/8 69/9 73/6 73/7 76/2 76/24 76/24 79/6 79/17 80/3 80/3 80/20 82/17 86/5
veteran [1] 42/1
via [1] 72/17
vice [1] 17/25
victim [17] 10/10 10/15 10/16 18/16 18/19 18/20 18/21 18/22 18/23 18/24 18/24 19/1 19/2 23/25 25/3 25/5 32/2
victim's [2] 20/11 24/2
victim-related [1] 23/25
victims [6] 3/19 10/8 18/16 20/8 21/2 82/4
video [8] 41/11 64/19 65/21 67/22 71/20 72/5 72/17 76/5
videos [1] 41/16
view [26] 5/13 11/22 17/20 19/24 21/18 22/11 23/18 24/7 24/23 25/3 25/20 26/13 26/16 76/2 76/19 77/5 78/3 78/22 78/25 79/16 81/8 81/15 81/20 82/11 83/7

34/25
views [1] 55/3
violated [1] 21/14
violation [2] 18/10 51/15
violence [4] 22/6 29/1 75/16 75/19
violent [12] 28/15 28/22 29/1 29/22 30/9 32/17 78/8 78/9 78/10 78/11 78/12 78/19
violently [4] 34/6 76/7 77/21 81/7
vis [4] 25/16 25/16 25/19 25/19
visit [1] 84/21
Voice [1] 69/10
voiced [1] 39/25
volunteered [1] 42/18
volunteers [1] 42/19
votes [1] 78/13
vs [1] 1/4

**W**

waive [1] 83/25
walk [5] 58/8 64/11 64/17 65/7 74/12
walking [2] 41/17 41/17
wall [1] 66/16
Walton [1] 52/19
want [18] 5/4 12/5 32/20 32/22 37/6 43/20 43/23 45/10 45/11 61/7 63/2 64/13 64/18 66/11 73/14 82/17 86/22 87/5
wanted [11] 36/19 38/4 43/15 57/21 58/25 60/17 61/11 61/13 67/3 68/10 69/13
wants [2] 45/23 67/14
warned [1] 67/11
warrant [1] 47/15
warranted [4] 26/3 44/23 83/4 83/6
wary [1] 12/13
was [173]
Washington [5] 1/4 1/13 1/23 48/2 59/15
wasn't [6] 21/4 29/17 30/9 55/5 67/14 78/10
watch [1] 67/14
watched [1] 32/14
water [1] 29/8

way [18] 2/23 8/14 8/23 16/17 19/3 21/4 21/5 31/5 32/7 40/19 40/22 48/9 55/15 64/3 66/17 68/23 81/11 87/23
Wayne [1] 51/11
ways [1] 18/2
we [136]
we'd [1] 13/20
we'll [3] 58/6 58/6 72/3
we're [11] 13/6 13/17 14/9 20/19 42/14 43/16 44/4 48/14 54/19 57/13 62/24
we've [7] 6/13 9/24 13/12 32/7 47/4 47/25 59/21
weapon [6] 35/18 53/15 53/19 65/13 79/13 81/8
weapons [1] 66/23
wedged [1] 66/16
week [1] 59/9
weigh [4] 56/22 76/21 77/5 78/25
weight [5] 5/12 29/19 69/2 71/8 87/18
Welcome [1] 2/11
well [31] 4/3 4/5 5/14 8/1 9/16 10/13 11/23 12/7 16/13 17/21 18/4 19/16 19/17 19/19 24/5 27/7 37/20 42/11 45/16 46/3 47/21 47/22 50/5 51/15 56/16 58/18 63/25 64/14 67/3 69/4 70/5
went [10] 16/10 25/13 29/16 46/5 59/9 59/12 59/14 59/20 69/17 69/18
were [60] 3/19 14/13 21/21 26/9 28/15 28/16 28/22 28/22 29/7 29/7 29/10 31/3 32/3 32/13 33/22 37/20 38/9 38/17 38/20 38/23 39/3 39/4 39/5 43/11 43/14 44/10 44/11 45/2 46/5 46/7 47/1 50/13 51/3 51/22 56/3 57/12 60/6 60/18 60/19 61/25 62/2 66/23 66/24 66/25 66/25 67/4

67/6 67/24 69/25 70/4 70/5 70/13 70/22 71/2 75/10 76/3 76/3 80/9 80/9 85/19
weren't [1] 60/22
weren't -- it [1] 60/22
West [1] 76/12
wet [1] 35/13
what [98]
what's [9] 7/14 12/17 12/18 13/17 13/18 30/22 33/15 63/24 63/25
whatever [4] 8/24 61/1 65/9 72/7
when [35] 3/17 5/24 12/17 17/22 18/15 19/1 19/14 20/11 20/16 20/19 22/1 29/3 29/15 29/16 29/24 31/2 31/6 41/19 46/5 46/15 56/23 59/4 61/9 62/19 64/21 64/23 66/6 66/10 68/2 68/19 69/1 76/16 78/20 82/12 89/3
where [34] 9/7 13/20 13/24 15/16 16/5 18/19 35/20 36/7 44/14 45/3 49/17 50/13 50/14 50/25 51/17 52/13 52/17 52/22 53/8 53/11 53/13 53/14 53/16 54/13 56/15 56/16 56/17 63/14 64/19 69/3 78/1 82/21 84/16 84/18
whether [7] 3/18 17/11 18/16 20/6 39/12 45/17 56/13
which [58] 2/17 4/4 4/15 8/8 9/4 9/11 10/24 11/1 12/24 13/25 14/8 14/9 15/24 16/7 16/22 19/7 22/1 25/10 28/11 28/15 30/7 35/19 37/19 38/24 39/5 39/25 42/2 42/10 43/4 43/4 43/13 43/14 44/2 44/4 48/7 51/8 52/9 52/21 55/17 56/7 62/18 62/23 62/24 64/16 68/11 74/14 74/17 75/8 76/20 77/24 79/13 80/21 81/10 83/16 83/19 84/9 85/21 88/13

**W**

**while [14]** 16/1 16/15 21/19 21/22 23/13 35/13 36/19 48/10 57/10 75/12 77/22 81/20 83/4 83/18
**who [58]** 3/20 4/3 10/8 18/16 23/22 28/16 28/23 30/22 30/23 31/19 32/13 32/14 33/12 33/12 36/9 37/15 38/13 38/16 38/23 39/6 39/8 41/6 42/15 42/18 43/7 46/8 46/9 47/9 58/25 59/16 60/9 60/10 62/10 63/5 63/5 63/12 64/2 64/10 66/2 66/5 66/21 67/14 68/22 69/23 70/1 71/9 78/10 79/5 79/11 79/17 79/18 79/25 80/2 80/13 80/19 80/20 80/25 81/6
**who's [1]** 61/3
**whoever [1]** 67/8
**whole [4]** 28/2 45/24 71/11 71/13
**whomever [1]** 58/7
**whose [1]** 70/4
**why [20]** 7/5 9/14 10/5 13/24 15/24 16/19 16/21 25/7 27/22 40/10 44/1 44/21 49/5 49/5 52/9 57/3 62/3 67/2 73/6 89/2
**wide [1]** 68/11
**wife [14]** 4/4 4/23 37/22 38/14 40/4 43/8 46/6 49/7 58/2 58/16 61/10 73/10 76/25 81/19
**wife's [2]** 37/23 77/2
**will [29]** 3/23 4/19 5/10 5/15 11/24 12/12 12/15 15/19 23/12 40/6 40/24 40/25 42/6 42/11 42/16 50/6 61/2 61/2 61/5 61/17 65/10 65/18 65/19 68/12 70/17 70/18 72/1 77/15 85/21
**willing [1]** 65/24
**window [6]** 67/21 68/2 68/5 68/7 68/11 70/1
**windows [1]** 67/24
**wish [1]** 49/16

**wishes [1]** 77/19
**within [11]** 14/14 22/6 26/20 75/1 78/8 80/21 83/2 84/17 85/7 85/20 87/19
**without [7]** 4/25 50/15 50/24 84/11 84/19 85/4 85/24
**withstand [1]** 36/4
**witness [2]** 4/3 71/3
**witnessed [1]** 29/1
**witnesses [1]** 3/19
**woman [2]** 38/13 38/14
**won't [3]** 12/7 15/25 64/1
**wonderful [2]** 43/7 43/10
**word [2]** 57/14 62/24
**words [3]** 7/19 70/24 71/2
**work [4]** 34/24 35/23 37/2 42/20
**worked [1]** 64/6
**working [3]** 50/1 62/22 72/13
**world [1]** 9/18
**worms [1]** 66/17
**would [76]** 3/20 3/21 4/6 4/23 7/15 8/6 12/21 13/5 13/15 13/21 17/4 17/18 17/18 18/11 18/14 19/25 20/3 20/3 22/2 24/25 27/8 27/8 27/21 28/10 31/23 31/24 31/24 34/12 34/15 47/13 47/14 48/11 48/17 54/3 54/10 56/4 56/14 58/7 58/17 59/15 59/17 59/19 59/23 60/16 63/9 66/22 69/22 70/8 70/9 70/11 70/12 72/13 73/3 73/17 73/21 73/24 74/22 78/23 80/21 82/23 82/24 83/3 84/9 86/18 86/25 87/1 87/2 87/2 87/6 87/14 88/3 88/9 88/10 88/18 88/25 89/12
**would-be [1]** 78/23
**wouldn't [3]** 9/14 19/8 20/1
**wrap [1]** 62/19

**wrestler [1]** 68/25
**write [3]** 53/6 54/2 67/15
**wrong [5]** 13/17 34/7 63/24 63/25 69/20
**wrongly [1]** 80/8
**wrote [1]** 37/17

**Y**

**yanked [1]** 35/6
**Yeah [4]** 11/4 71/16 71/19 71/19
**year [1]** 46/24
**years [12]** 26/24 26/24 27/1 41/24 48/12 50/2 59/3 61/3 66/19 73/11 74/19 76/25
**Yep [1]** 51/2
**yes [32]** 3/18 3/22 5/25 5/25 6/16 6/23 7/7 7/24 8/1 8/13 8/17 9/9 10/19 11/18 14/1 20/9 27/19 34/14 49/4 52/7 54/9 57/5 57/15 62/4 63/1 71/25 86/7 87/8 87/12 87/15 88/20 89/11
**Yikes [1]** 70/11
**you [162]**
**you're [4]** 18/15 18/15 45/17 85/22
**you've [2]** 9/25 12/8
**your [101]**
**Your Honor [71]** 2/2 2/8 2/20 3/14 3/22 6/11 6/16 6/20 6/23 7/7 7/13 7/24 8/7 8/13 8/18 8/22 10/14 10/20 11/9 11/19 11/24 12/12 12/14 13/7 13/20 27/10 27/24 28/6 28/12 28/21 29/5 29/12 29/19 30/3 30/16 31/14 31/17 32/16 32/20 32/23 33/11 33/20 33/25 34/2 34/9 34/14 37/9 48/20 49/10 49/12 49/17 49/25 50/3 50/7 50/21 58/12 61/22 70/21 73/3 74/9 86/2 86/4 86/7 86/9 86/12 86/17 86/18 87/12 87/13 88/17 89/11
**Your Honor's [3]** 28/9 50/9 54/8
**yourself [3]** 19/15 70/8

**yourselves [1]** 2/7
**youth [1]** 43/24

**Z**

**zero [2]** 26/19 77/18
**zoom [1]** 33/25